UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------- X
                                                                          :
THE BOARD OF TRUSTEES OF THE SOUTHERN                                     :
CALIFORNIA IBEW-NECA DEFINED CONTRIBUTION                                 :
PLAN, *on behalf of itself and all others similarly situated*,            :
                                                                          :   09-CV-6273 (RMB) (AJP)
                                                        Plaintiff,         :
                                                                          :   **Electronically filed**
            vs.                                                           :
                                                                          :
THE BANK OF NEW YORK MELLON CORPORATION                                   :
and BNY MELLON, NATIONAL ASSOCIATION,                                     :
*formerly known as* MELLON BANK, N.A.,                                     :
                                                                          :
                                                        Defendants.        :
                                                                          :
------------------------------------------------------------------------- X

**REPLY MEMORANDUM OF LAW OF DEFENDANTS THE BANK
OF NEW YORK MELLON CORPORATION AND BNY MELLON, N.A.
<u>IN SUPPORT OF RULE 12(b)(6) MOTION TO DISMISS COMPLAINT</u>**

BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York , New York  10022
Telephone:  (212) 446-2300

*Attorneys for Defendants The Bank of New York
Mellon Corporation and BNY Mellon, N.A.*

December 22, 2009

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ..................................................................................... ii

I.    THE AMENDED COMPLAINT FAILS TO SATISFY THE *IQBAL* STANDARD......... 1

II.   THE AMENDED COMPLAINT MUST BE
      DISMISSED UNDER THE *IN PARI DELICTO* DOCTRINE......................................... 4

      A.    The Board Cannot Absolve Itself of Liability by
            Erroneously Labeling the Bank an "Investment Manager." ................................. 4

      B.    The Board Is Not an "Innocent Party."............................................................. 6

      C.    Public Policy Concerns Weigh in Favor of Dismissal to
            Avoid the Board's Conflict of Interests with the Plan Participants. ..................... 7

III.  COUNT II OF THE AMENDED COMPLAINT MUST BE DISMISSED...................... 8

# **TABLE OF AUTHORITIES**

## **Cases**

*Ashcroft v. Iqbal,*
129 S. Ct. 1949 (2009) ........................................................................... 1, 3

*Bd. of Trs. of the Operating Eng'rs Pension Trust v. JPMorgan Chase Bank, N.A.,*
No. 09-CV-9333 (BSJ) (S.D.N.Y.) ............................................................. 2

*Caplin v. Marine Midland Grace Trust Co. of N.Y.,*
406 U.S. 416 (1972) ............................................................................... 7, 8

*Chao v. Merino,*
452 F.3d 174 (2d Cir. 2006) ...................................................................... 1

*Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.,*
302 F.3d 18 (2d Cir. 2002) ...................................................................... 10

*Knight v. Standard Ins. Co.,*
No. CIV. 07-1691, 2008 WL 343852 (E.D. Cal. Feb. 6, 2008) ................... 5

*Liss v. Smith,*
991 F. Supp. 278 (S.D.N.Y. 1998) ............................................................. 6

*Torres v. Mazzuca,*
246 F. Supp. 2d 334 (S.D.N.Y. 2003) ........................................................ 5

*Whitfield v. Cohen,*
682 F. Supp. 188 (S.D.N.Y. 1988) ............................................................. 4

## **Statutes, Rules and Regulations**

29 C.F.R. § 2550.408b-2(e) ......................................................................... 10

29 U.S.C. § 1104 (ERISA § 404) .................................................................... 6

29 U.S.C. § 1105 (ERISA § 405) ............................................................... 4, 5, 6

29 U.S.C. § 1106 (ERISA § 406) ............................................................ 8, 9, 10

29 U.S.C. § 1109 (ERISA § 409) .................................................................... 8

29 U.S.C. § 1132 (ERISA § 502) .................................................................... 7

Fed. R. Civ. P. 12 ............................................................................................................ 3

Prohibited Transaction Exemption 2006-16
          71 Fed. Reg. 63786 (Oct. 31, 2006) ....................................................... 9, 10

Defendants The Bank of New York Mellon Corporation and BNY Mellon, N.A. (together, the "Bank"), by and through their undersigned counsel, respectfully submit this reply memorandum of law in support of their motion to dismiss the Amended Complaint ("AC").

**I.    THE AMENDED COMPLAINT FAILS TO SATISFY THE *IQBAL* STANDARD.**

In its Opposition ("Pl. Opp."), plaintiff The Board of Trustees (the "Board") of the Southern California IBEW-NECA Defined Contribution Plan (the "Plan") concedes that the Amended Complaint's allegations regarding the Fee Arrangement and "risky investments" are insufficient to state a claim under the pleading requirements articulated by the Supreme Court in *Iqbal* and *Twombly*.   With regard to the Amended Complaint's remaining allegations concerning an alleged March 23, 2007 investment in a Lehman Brothers floating rate note, the Board points to only two factual allegations to support its claim that this single investment (in a multi-billion dollar securities lending program) breached the Bank's fiduciary duties to the Plan:  (1) the Bank's "investment in Lehman on behalf of the Plan alone lost more than $2.5 million of value"; and (2) "the well-documented news reports that both pre-dated the investment and led up to that loss."  Pl. Opp. at 6.  As explained in the Bank's Opening Brief ("Def. Br."), these allegations are insufficient to stave off dismissal for three simple reasons.  *See* Def. Br. at 7-13.

First, Second Circuit law is clear that the fact that a loss of value in an investment does not support an inference of imprudence or breach of fiduciary duty.  *E.g.*, *Chao v. Merino*, 452 F.3d 174, 182 (2d Cir. 2006) ("Because the fiduciary's obligation is to exercise care prudently and with diligence under the circumstances then prevailing, his actions are not to be judged from the vantage point of hindsight.") (internal citations omitted); *see also* Def. Br. at 8-11.

Second, the news articles and blog postings selectively quoted throughout the Amended Complaint do not support an inference that the Bank knew or should have known that the March 23, 2007 investment in a Lehman note was "too risky for a securities lending program."  Indeed,

most of the quoted articles do not relate to Lehman in any way, but instead deal with the sub-prime mortgage market or the use of financial derivatives by mutual funds. *See* Def. Br. at 12. Even the articles that do discuss Lehman analyze only the prudence of an investment in Lehman *stock* – as opposed to the Lehman note at issue here. Moreover, when the Board's selective quotations are put into the context of the entire cited articles, no inference of imprudence can be supported. For example, to support its claim that maintaining a prior investment in Lehman debt was imprudent, the Board relies on a post on the "Huffington Post" blog regarding a UBS equity analyst's downgrade of Lehman stock to "neutral." Even if this single opinion of Lehman stock had any relevance to the issue of the propriety of maintaining an investment in a Lehman bond – and it does not – the quoted blog post when reviewed in its entirety still fails to raise an inference of imprudence. Indeed, Amended Complaint fails to include the very next sentence of the blog post, which states that Moody's had maintained a positive rating on Lehman. *See* Def. Br. at 10.

Third, even if the allegations in the Amended Complaint could support an inference that the Lehman investment was "too risky for a securities lending program," any such inference could not survive the fact that the very Lehman investment that the Board now challenges was expressly approved as an appropriate investment under the Board's investment guidelines. *See* Def. Br. at 11-12. It strains credulity for the Board to argue that the Bank should have known that an investment specifically approved by the Board's own securities lending investment guidelines was, nonetheless, "too risky for a securities lending program."[1] Pl. Opp. at 6.

Instead of refuting these points, the Board urges the Court to "construe[] the complaint

---

[1] The suitability of the Lehman investment for securities lending collateral is further underscored by the fact that, in addition to the Bank, many of the largest and most sophisticated securities lending agents also invested securities lending cash collateral in Lehman notes *E.g.*, *Bd. of Trs. of the Operating Eng'rs Pension Trust v. JPMorgan Chase Bank, N.A.*, 09-CV-9333 (BSJ) (S.D.N.Y.) (Class Action Complaint alleging JPMorgan invested in "risky" Lehman notes).

liberally, accepting all factual allegations in the complaint as true, and drawing all reasonable inferences in the plaintiff's favor." Pl. Opp. at 4-5. The Board's plea, however, ignores the Supreme Court's recent articulations of the pleading standard required to survive dismissal under Rule 12(b)(6). <u>First</u>, contrary to the Board's assertion, this Court is not free simply to accept all of the allegations in the Amended Complaint as true. The Supreme Court's holdings in *Twombly* and *Iqbal* are clear that a court may not credit "allegations in the complaint that are not entitled to the assumption of truth," *Ashcroft v. Iqbal*, 129 S. Ct. 1949, 1951 (2009), including "legal conclusion[s] couched as a factual allegation," and formulaic "recitals of the elements of a cause of action, supported by mere conclusory statements." *Id.* at 1949-50.

Second, again contrary to the Board's assertion, this Court is not free to draw all inferences in the Plaintiff's favor, but instead must determine if the alleged facts entitled to the assumption of truth "plausibly suggest an entitlement to relief." *Iqbal*, 129 S. Ct. at 1951. Thus, for example, in *Twombly*, the Supreme Court acknowledged that the parallel conduct alleged in the complaint was arguably consistent with an unlawful agreement, but nevertheless concluded that "it did not plausibly suggest an illicit accord because it was not only compatible with, ***but indeed was more likely explained by***, lawful, unchoreographed free-market behavior." *Id*. at 1950 (emphasis added). Although the Court accepted "the well-pleaded fact of parallel conduct," it did not simply draw the most favorable inference for the plaintiff – *i.e.*, the existence of a conspiracy. *Id*. Instead, the Court dismissed the complaint because a competing inference provided a more plausible explanation of the defendants' behavior. *See id*.

The Board asks the Court to draw an inference that the Bank knew or should have known that the March 23, 2007 investment in a Lehman note was "too risky for a securities lending program" based upon nothing more than the fact that the investment ultimately lost value and the

selective quotation of a few news articles and blog posts.  *See* Pl. Opp. at 6-7.  The more

plausible inference, however, is just the opposite – that a AAA rated note backed by one of the

world's largest publicly traded financial institutions was a prudent investment of securities

lending cash collateral.  This is especially the case when the Lehman note was expressly

approved by the Board's securities lending investment guidelines.

## II.    THE AMENDED COMPLAINT MUST BE DISMISSED UNDER THE *IN PARI DELICTO* DOCTRINE.

### A.    The Board Cannot Absolve Itself of Liability by Erroneously Labeling the Bank an "Investment Manager."

In its Opening Brief, the Bank demonstrated that the Amended Complaint should be

dismissed under the doctrine of *in pari delicto* because the Board had the authority to monitor

and control the investments made by the Bank, but failed to do so.  In response, the Board does

not cite a single case holding that the *in pari delicto* doctrine is inapplicable in ERISA cases.

Instead, the Board makes the argument that it is not at fault for the investment losses because it

appointed the Bank as an investment manager.  *See* Pl. Opp. at 13-19.  Specifically, the Board

argues that by appointing the Bank as an investment manager, Section 405(d)(1) of ERISA

absolves it of all responsibility for securities lending investment losses.  *See id.* at 15-16.  This

argument is wrong on both facts and the law.

Section 405(d)(1) provides that

> If an investment manager or managers have been appointed … then, notwithstanding
> subsections (a)(2) and (3) and subsection (b) of this section, no trustee shall be liable for
> the acts or omissions of such investment manager or managers, or be under an obligation
> to invest or otherwise manage any asset of the plan which is subject to the management
> of such investment manager.

29 U.S.C. § 1105(d)(1).  To rely on this defense, however, the Board must allege that the Bank is

an "investment manager" as defined by ERISA.  *See Whitfield v. Cohen*, 682 F. Supp. 188, 196

(S.D.N.Y. 1988) (because investment advisors "were not investment managers of the Plan as that

term is defined under ERISA," § 405(d)(1) did not shield named fiduciaries from liability).

The Amended Complaint contains no allegation that the Bank is an "investment manager" as defined by ERISA.  Moreover, the Board's public filings refute any inference that the Bank is an "investment manager."  For the plan year from July 1, 2007 to June 30, 2008, the Board filed its Annual Return/Report (the "Form 5500") with the United States Department of Labor (the "DOL").  The Form 5500 is a publicly filed statement sworn under penalty of perjury.[2]  In Schedule C of the Form 5500, the Board attached a list of service providers. Schedule C contains the name of BNY Mellon Trust Company, a subsidiary of the Bank, and lists its official plan position as a "co-trustee."  *See* Duffy Reply Decl. Ex. A at 6.  This title stands in stark contrast to the entity listed immediately above, Earnest Partners, whose title is "Investment Manager."  *See id.*  Similarly, the Plan's Financial Statements also listed BNY Mellon Trust Company as a "Corporate Co-Trustee" as opposed to including the Bank among the Plan's list of "Investment Managers."  *See id*. at 12.  If the Board had appointed the Bank as an "investment manager," one would expect that it would be reflected as such on the Form 5500.

Moreover, even if the Bank were an "investment manager," the Board would still be liable for investment losses caused by its own fiduciary breaches.  Section 405(d)(2) clearly states that "Nothing in this subsection shall relieve any trustee [*i.e.*, the Board] of any liability under this part for any act of such trustee."  Thus, even if Section 405(d)(1) applied to immunize the Board for any co-fiduciary liability arising from the Bank's actions, the Board would still be

---

[2]  A true and correct copy of an excerpt of the Form 5500 is attached as Exhibit A to the accompanying Reply Declaration of Christopher E. Duffy, dated December 18, 2009 (the "Duffy Reply Decl.").  The Court may take judicial notice of the Form 5500.  *Knight v. Standard Ins. Co.*, No. CIV. 07-1691, 2008 WL 343852, at *2 (E.D. Cal. Feb. 6, 2008) (taking judicial notice of ERISA Form 5500 in deciding a motion to dismiss).  The "district court's consideration of … matters of which judicial notice may be taken, would not convert the motion to dismiss into one for summary judgment."  *Torres v. Mazzuca*, 246 F. Supp. 2d 334, 338 (S.D.N.Y. 2003).

liable for any losses caused by its own breaches. Here, if one credits the allegations in the Amended Complaint, the Board breached its independent duties under Section 404(a) by failing to adequately monitor and control the Bank's investment decisions.

The Board is an "authorizing fiduciary," and the Board's appointment and termination power "carries with it the concomitant duty to monitor" the performance of the appointed fiduciary and "to take action upon discovery that the appointed fiduciaries are not performing properly." *Liss v. Smith*, 991 F. Supp. 278, 311 (S.D.N.Y. 1998). The breach of this duty to monitor is an independent breach of fiduciary duty under Section 404. *Id.* (by "failing to take appropriate steps to remove Union-appointed trustees who it knew were breaching their fiduciary obligations to the Fund, defendant … failed to act solely in the interest of the Fund's participants and beneficiaries … in violation of ERISA §§ 404(a)(1)(A) and (B)") (internal citation omitted). Simply stated, even if Section 405(d)(1) were to apply here – and it does not – it would not shield the Board from liability for breach of its independent fiduciary duty under Section 404.

**B.    The Board is Not an "Innocent Party."**

The Board next claims that the *in pari delicto* defense is inapplicable because it is an "innocent party." However, if one credits the Amended Complaint's allegations, it is clear that the Board is anything but "innocent" here. The Board is a party to both the securities lending agreement and the investment guidelines. These documents limit the discretion of the Bank with regard to investments of the Plan collateral and provide the Board itself with the authority to direct the sale of any investments made by the Bank with the Plan's collateral.

Furthermore, the Amended Complaint cites only to public news articles to support its assertion that the Bank should have known that Lehman investments were "too risky for a securities lending program." These public sources of information were equally available to the Board. If the Board's assertions regarding the imprudence of the Lehman investment are to be

6

credited, then the Board's failure to take action to divest the Plan's assets from Lehman renders the Board, as the primary fiduciary of the Plan, substantially more responsible than the Bank.

The Board cannot have it both ways. The Board had the duty to monitor the Bank's investments of the Plan's collateral and the power to direct the sale of any investment of the Plan's collateral for any reason. If the Board wishes the Court to credit its allegations regarding the propriety of the Lehman investment, the Board must bear responsibility for the results of that investment. To hold otherwise would permit the Board to escape liability for these alleged breaches simply because it filed its lawsuit first.

### C.    Public Policy Concerns Weigh in Favor of Dismissal to Avoid the Board's Conflict of Interests with the Plan Participants.

Finally, the Board argues that the doctrine of *in pari delicto* should not be applied in this case because the Board merely asserts the claims on behalf of the Plan, an innocent party. *See* Pl. Opp.at 19-21. Contrary to the Board's assertions, public policy concerns weigh in favor of dismissing this suit brought by the Board to avoid the serious conflict of interests that exist between the Board and the Plan participants.

As explained in the Opening Brief, dismissal of the Amended Complaint would not harm the interests of Plan participants because the participants are free to pursue the claims on their own behalf under Section 502(a)(2) of ERISA. *See* Def. Br. at 19-20. The Supreme Court has addressed this exact issue in the bankruptcy context. *E.g.*, *Caplin v. Marine Midland Grace Trust Co. of N.Y.*, 406 U.S. 416 (1972) (holding that lawsuits by individual debenture holders were more sensible, from a policy perspective, than action by bankruptcy trustee on their behalf). The Supreme Court stated that it "is difficult to see precisely why it is at that point that the trustee in reorganization should represent the interests of the debenture holders, who are capable of deciding for themselves whether or not it is worthwhile to seek to recoup whatever losses they

may have suffered by an action against the indenture trustee." *Id.* at 431. Dismissing the claims brought by the trustee would also avoid conflict of interests, as noted by the Court: "it is extremely doubtful that the trustee and all debenture holders would agree on the amount of damages to seek, or even on the theory on which to sue." *Id.* at 432.

The problems identified in *Caplin* are amplified here, where the allegations of the Amended Complaint make clear that the Board itself is primarily liable for the very wrong it purports to seek to remedy. The Board's interest in this case – shielding itself from liability for its own breaches of fiduciary duty by blaming the Bank first – is inconsistent with the interests of Plan participants. Indeed, the Board is highly unlikely to pursue all of the available statutory remedies on behalf of the Plan because doing so may result in its own liability and/or removal as a fiduciary of the Plan. *See* 29 U.S.C. § 1109(a) (a fiduciary "shall be subject to such other equitable or remedial relief as the court may deem appropriate, including removal of such fiduciary"). In short, the plaintiff here is deeply conflicted. The Plan's participants, on the other hand, would not face this type of conflict of interest in bringing any appropriate claims against disloyal Plan fiduciaries, if any existed, including the Board.

## III.   COUNT II OF THE AMENDED COMPLAINT MUST BE DISMISSED.

In Count II of the Amended Complaint, the Board accuses the Bank of dealing with the Plan assets "in its own interest or for its own account in that it invested the Collateral for the express purpose of making investments for its own financial benefit and earning profits for itself and at the expense of the Plan" in violation of Section 406 of ERISA. *See* AC at ¶ 89. In its Opposition Brief, however, the Board effectively abandons Count II.

The Opposition Brief states that the Board does not challenge the propriety of the existence and structure of the Fee Arrangement between the Bank and the Plan. *See* Pl. Opp. at 2 (the suggestion "that Plaintiff challenges the existence and structure of the fee arrangement … is

simply not true"); *id.* at 9-10 ("Plaintiff Does Not Challenge the Fee Arrangement"); *id.* at 19

("there was nothing inherently improper or illegal about the fee arrangement"); *id.* at 22-23.[3]

Instead of focusing on the purported impropriety of the Fee Arrangement alleged in the

Amended Complaint, the Board runs from its own allegations and now states that the Bank

violated Section 406 of ERISA by "investing the Collateral in high-risk investments, such as the

Lehman notes, so as to maximize Defendant's own profits without regard to the preservation of

Collateral principal, to the detriment of the Plan and its participants." Pl. Opp. at 21-22.

What the Board ignores, however, is the fact that the only benefit the Bank receives from

the investment of the Plan's collateral is a fee determined pursuant to the terms of the Fee

Arrangement. Accordingly, any claim that the Bank acted in order to maximize its own profits is

ultimately a challenge to the legality of the Fee Arrangement – which the Amended Complaint

alleges is at the heart of the self-dealing claim. It is not surprising that the Board has abandoned

its claim challenging the Fee Arrangement, since that claim is clearly barred by both the statute

of limitations and a DOL exemption. However, the Board cannot simply ignore the allegations

actually pled in the Amended Complaint and recast Count II at the eleventh hour.

Moreover, even if one credits the Board's sudden change in course, dismissal is still

appropriate. As recast by the Board, Count II of the Amended Complaint is indistinguishable

from Count I and simply challenges the Bank's decision to invest collateral in a Lehman note.

As the Board itself acknowledges, however, "ERISA §406 expressly prohibits self-dealing…

Specifically, section 406(b) states, '[a] fiduciary with respect to a plan shall not . . . deal with the

assets of the plan in his own interest or for his own account.'" Pl. Opp. at 21(citing 29 U.S.C.

---

[3]  In addition, the Board does not dispute that Prohibited Transaction Exemption 2006-16, 71 Fed. Reg. 63786 (Oct. 31, 2006) ("PTE 2006-16"), exempted the fee arrangement between the Bank and the Board from restrictions in Section 406.

§ 1106(b)(1)).  The purpose of Section 406 is to deter fiduciaries from exercising their

"authority, control, or responsibility" as fiduciaries when they have interests that conflict with

those of the plan.  *E.g.,* 29 C.F.R. § 2550.408b-2(e).  In other words, prohibited self-dealing

includes transactions in which the fiduciary uses its position to advance its own interest.  *See id.*;

*see also*, *e.g.*, *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 32 (2d

Cir. 2002) (insurer engaged in self-dealing by investing plan assets in insurer's own properties,

and charging itself below-market rental rates).

The Amended Complaint contains no allegation that the Bank benefited itself through the

authority, control, or responsibility as a fiduciary.  In the entire securities lending program, the

Bank received no benefit other than the fees it shared with the Plan pursuant to the Fee

Arrangement, an arrangement that the Board now concedes is lawful, and that in any event is

expressly exempted by PTE 2006-16.  Simply stated, allegedly imprudent investments are not

self-dealing transactions.  Count II must be dismissed.

Dated:  December 22, 2009                Respectfully submitted,
       New York, New York

                                 /s/
                        Damien J. Marshall
                        dmarshall@bsfllp.com
                        BOIES, SCHILLER & FLEXNER LLP
                        401 East Las Olas Boulevard, Suite 1200
                        Fort Lauderdale, Florida 33301
                        Tel.: 954-356-0011
                        Fax: 954-356-0022

                        Christopher E. Duffy
                        cduffy@bsfllp.com
                        BOIES, SCHILLER & FLEXNER LLP
                        575 Lexington Avenue, 7th Floor
                        New York, New York 10022
                        Tel.: 212-446-2300
                        Fax: 212-446-2350
                        *Attorneys for Defendants Bank of New*
                        *York Mellon Corp. and BNY Mellon, N.A.*

## <u>CERTIFICATE OF SERVICE</u>

     I HEREBY CERTIFY that I caused a true and correct copy of the foregoing REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS COMPLAINT to be served on December 22, 2009 to Plaintiff through its counsel via ECF, electronic mail and U.S. Mail:

> Stephen R. Astley
> COUGHLIN STOIA GELLER RUDMAN &
>  ROBBINS LLP
> 120 East Palmetto Park Road, Suite 500
> Boca Raton, Florida  33432


          /s/
          Christopher E. Duffy