UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x
THE BOARD OF TRUSTEES OF THE          :   Civil Action No. 09-cv-06273
SOUTHERN CALIFORNIA IBEW-NECA         :
DEFINED CONTRIBUTION PLAN, On         :   CLASS ACTION
Behalf of Itself and All Others Similarly  :
Situated,                             :
                                      :   PLAINTIFF'S MOTION AND
                   Plaintiff,         :   INCORPORATED MEMORANDUM OF
                                      :   LAW TO ALTER, AMEND OR GRANT
                                      :   RELIEF FROM ORDER OF DISMISSAL
      vs.                             :   FOR PURPOSES OF FILING SECOND
                                      :   AMENDED CLASS ACTION COMPLAINT
THE BANK OF NEW YORK MELLON           :
CORPORATION, *et al*.,                :
                                      :
                   Defendant.         :
                                      :
———————————————————— x

**REDACTED PURSUANT TO THE CONFIDENTIALITY STIPULATION AND ORDER FILED ON 12/17/2009**

## TABLE OF CONTENTS

I.  STATEMENT OF THE CASE.................................................................................2

  A.  Procedural History .....................................................................2

  B.  Facts Obtained During Discovery ...........................................................5

II.  ARGUMENT ......................................................................................................9

III.  CONCLUSION ...............................................................................................21

CERTIFICATE OF SERVICE .............................................................................................23

REDACTED PURSUANT TO THE CONFIDENTIALITY STIPULATION AND ORDER FILED ON 12/17/2009

# TABLE OF AUTHORITIES

## CASES

*Alpern v. Utilicorp United, Inc.*,
    84 F.3d 1525 (8th Cir. 1996) ........................................................................17

*Am. Alliance Ins. Co. v. Eagle Ins. Co.*,
    92 F.3d 57 (2d Cir. 1996)...............................................................................14

*Bankers Mortgage Co. v. United States*,
    423 F.2d 73 (5th Cir. 1970) ...........................................................................13

*Block v. First Blood Assocs.*,
    988 F.2d 344 (2d Cir. 1993)............................................................................10

*by Bell Atlantic Co. v. Twombly*,
    550 U.S. 544 (2007)..........................................................................................1

*Commer v. McEntee*,
    2005 WL 1250214 (S.D.N.Y. May 27, 2005) ................................................18

*Conley v. Gibson*,
    355 U.S. 41 (1957)........................................................................................1, 9

*Crown Castle USA, Inc. v. Fred A. Nudd Corp.*,
    No. 05-cv-6163, 2008 WL 3841298 (W.D.N.Y. Aug. 13, 2008) ...................18

*Davis v. Musler*,
    713 F.2d 907 (2d Cir. 1983)............................................................................14

*Foman v. Davis*,
    371 U.S. 178 (1962)......................................................................................9, 10

*Frankel v. ICD Holdings S.A.*,
    939 F. Supp. 1124 (S.D.N.Y. 1996).................................................................15

*Frishberg v. Esprit de Corp*,
    1993 WL 403980 (S.D.N.Y. Oct. 6, 1993) ......................................................14

*Griggs v. Hinds Junior Coll.*,
    563 F.2d 179 (5th Cir. 1977) ...........................................................................13

*House v. Sec'y of Health & Human Servs.*,
    688 F.2d 7 (2d Cir. 1982).................................................................................13

*Hunt v. Alliance N. Am. Gov't Income Trust Inc.*,
    159 F.3d 723 (2d Cir. 1998)............................................................................11

REDACTED PURSUANT TO THE CONFIDENTIALITY STIPULATION AND ORDER FILED ON 12/17/2009

*In re Eaton Vance Mut. Funds Fee Litig.*,
   403 F. Supp. 2d 310 (S.D.N.Y. 2005), aff'd, 481 F.3d 110 (2d Cir. 2007)......................21

*In re Gildan Activewear, Inc. Sec. Litig.*,
   No. 08-cv-5048, 2009 WL 4544287 (S.D.N.Y. Dec. 4, 2009) ..........................................19

*In re Health Mgmt. Sys., Inc. Sec. Litig.*,
   113 F. Supp. 2d 613 (S.D.N.Y. 2000)................................................................................16

*Koehler v. New York City*,
   No. 04-cv-6929, 2005 U.S. Dist. LEXIS 8901 (S.D.N.Y. May 11, 2005)
   (Berman, J.)........................................................................................................................13

*Kurzweil v. Philip Morris Cos., Inc.*,
   1997 WL 167043 (S.D.N.Y. Apr. 9, 1997).........................................................15, 16, 17

*Meteor Ag v. Fed. Exp. Corp.*,
   No. 08-cv-3773, 2009 WL 3853802 (S.D.N.Y. Nov. 18, 2009)......................................14

*Morin v. Trupin*,
   809 F. Supp. 1081 (S.D.N.Y. 1993)..................................................................................18

*Paddington Partners v. Bouchard*,
   34 F.3d 1132 (2d Cir. 1994)..............................................................................................13

*Radack v. Norweigan Am. Line Agency, Inc.*,
   318 F.2d 538 (2d Cir. 1963)..............................................................................................14

*Ruotolo v. City of New York*,
   514 F.3d 184 (2d. Cir. 2008)................................................................................10, 12, 13

*State Trading Corp. of India v. Asssuranceforeningen Skuld*,
   921 F.2d 409 (2d Cir. 1990).............................................................................................20

*Strategic Capital Dev. Group, Ltd. v. Sigma-Tau Pharms., Inc.*,
   198 F.3d 234 (2d Cir. 1999)..............................................................................................19

*Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*,
   956 F.2d 1245 (2d Cir. 1992)............................................................................................14

*Weissmann v. Freeman*,
   120 F.R.D. 474 (S.D.N.Y. 1988) ......................................................................................15

**REDACTED PURSUANT TO THE CONFIDENTIALITY STIPULATION AND ORDER FILED ON 12/17/2009**

On April 14, 2010, the Court issued a Decision & Order granting the motion to dismiss filed by defendant BNY Mellon ("Defendant"), and ordering the Clerk of the Court to close the case, which it did upon entering judgment the very next day, on April 15, 2010.  Astley Decl. ¶28.[1] ("MTD Order").

In granting Defendant's motion to dismiss with prejudice, the Court denied Plaintiff the right to amend its complaint pursuant to Federal Rule of Civil Procedure 15(a) and disregarded Supreme Court precedent rejecting the concept that "pleading is a game of skill in which one misstep by counsel may be decisive to the outcome" rather than the principle that "the purpose of pleading is to facilitate a proper decision on the merits." *Conley v. Gibson*, 355 U.S. 41, 48 (1957), *abrogated on other grounds by Bell Atlantic Co. v. Twombly*, 550 U.S. 544 (2007).[2]

Plaintiff is now required to seek relief from the judgment, a much higher burden to achieve, in order to present ***all*** of the facts discovered throughout the course of discovery to the Court for a full and fair adjudication of the sufficiency of pleadings.  Therefore, Plaintiff respectfully moves to alter or amend the Court's MTD Order, pursuant to Federal Rule of Civil Procedure 59(e) and Local Rule 6.3, or, alternatively, for relief from the MTD Order pursuant to Rules 60(b)(2) and/or 60(b)(6) in order to file a Second Amended Class Action Complaint ("SAC"), pursuant to Rule 15, and attached hereto as Exhibit 2, in light of additional facts that have been obtained in discovery.

---

[1]     References to the "Astley Decl. ¶ __" are to the Declaration of Stephen R. Astley in Support of Plaintiff's Motion and Incorporated Memorandum of Law to Alter, Amend or Grant Relief from Order of Dismissal for Purposes of Filing a Second Amended Complaint dated May 12, 2010, and attached hereto as Exhibit 1.

[2]     Unless otherwise noted all emphasis is added and citations are omitted.

1

**REDACTED PURSUANT TO THE CONFIDENTIALITY STIPULATION AND ORDER FILED ON 12/17/2009**

I.     STATEMENT OF THE CASE

A.     Procedural History

Plaintiff filed a class action complaint against BNY Mellon on July 13, 2009, alleging various causes of action stemming from breaches of ERISA fiduciary duties pursuant to a securities lending arrangement between the parties. Astley Decl. ¶3. Following Plaintiff's unopposed motion to be appointed interim class counsel, Defendant requested a pre-motion conference, pursuant to the Court's individual practices, to file a motion to dismiss Plaintiff's complaint. Astley Decl. ¶6. Consistent with the Court's endorsement of Defendant's pre-motion conference correspondence, on October 8, 2009, Plaintiff responded to Defendant's request to file a motion to dismiss. A status conference was convened for October 15, 2009. Astley Decl. ¶7.

With the aim of avoiding repetitive rounds of motion to dismiss briefing where Plaintiff may later seek to amend the complaint, at the status conference, the Court suggested that Plaintiff amend its complaint in light of the points advanced in Defendant's pre-motion conference letter requesting leave to file a motion to dismiss. Plaintiff was not informed that by choosing to amend the complaint, any order of dismissal would thereby be made with prejudice. Plaintiff elected to proceed with amendment, and its amended complaint was timely filed on October 29, 2009. Astley Decl. ¶8.

Plaintiff's Amended Class Action Complaint (" Amended Complaint") alleged that Defendant, fiduciary for hundreds of retirement plans, imprudently invested Collateral obtained through its securities lending program and caused the participating Plans to suffer massive losses by exposing them to inappropriate levels of risk through those imprudent collateral investments. Specifically, BNY Mellon made risky and imprudent investments of the Collateral in direct violation of its duties of loyalty and prudence under ERISA, which directly harmed the Plan and, upon information and belief, the Class Plans, in that the Collateral, as a result of the perilous investments made, not only earned less than it would have had such investments been prudently made, but also

2

lost principal.  Contrary to Defendant's arguments, Plaintiff does not challenge the securities lending arrangement or the receipt of Collateral from securities borrowed pursuant to that arrangement. Rather, the Amended Complaint challenges Defendant's subsequent imprudent investment of the Collateral in violation of ERISA.

Defendant moved to dismiss the Amended Complaint on November 9, 2009 and briefing was completed on December 22, 2009.  Astley Decl. ¶9.  On October 15, 2009, following the status conference with the Court, the Court entered a Case Management Plan ordering that all discovery be completed by March 1, 2010.  Astley Decl. ¶9.  On October 2, 2009 and October 23, 2009, Plaintiff exchanged its first and second document requests with Defendant.  On November 2, 2009 and November 23, 2009, Defendant responded to Plaintiff's first and second document requests, respectively.  Thereafter, the parties met and conferred multiple times over the scope, substance, and timing of Defendant's document production, including Defendant's agreement to complete their document production by January 15, 2010 commensurate with the then-existing March 1, 2010 discovery deadline.  Astley Decl. ¶10.

In light of the anticipated volume of production of documents from Defendant and the March 1, 2010 discovery cutoff, on December 15, 2009, the parties jointly submitted a request for an enlargement of the global discovery cutoff until June 30, 2010, which the Court subsequently denied without prejudice.  Astley Decl. ¶11.  On January 20, 2010, due to the volume of documents that Defendant was and would be producing and the then-impending March 1, 2010 discovery deadline, Plaintiff submitted a second request to extend the discovery cutoff.  The Court referred the case to Magistrate Judge Andrew J. Peck for general pretrial procedures, including scheduling, discovery, non-dispositive pretrial motions and settlement.  Astley Decl. ¶12.

**REDACTED PURSUANT TO THE CONFIDENTIALITY STIPULATION AND ORDER FILED ON 12/17/2009**

An initial pre-trial conference was held before Magistrate Judge Peck on February 5, 2010. There, the Court ruled, among other things, that fact and expert discovery was to be completed by September 30, 2010 and that Class Certification motions be due by June 30, 2010.  Astley Decl. ¶13. A follow-up status conference was held before Judge Peck on March 22, 2010.

Discovery commenced in December 2009 and continued on a rolling-basis until April 2010, despite an oral agreement with the Defendant that discovery would be complete by January 2010. Astley Decl. ¶10.  As a result of fourteen different productions,[3] Defendant produced over 5.5 million pages of documents.  When metadata was finally produced, however, it was corrupt and unsearchable, therefore Defendant's production did not become fully searchable until March 10, 2010 – five months *after* the filing of the Amended Complaint, *after* the Motion to Dismiss had been fully briefed, and less than one month before the hearing on the motion to dismiss.  Astley Decl. ¶¶14, 15, 18, 19, 20.  As a result of the court-imposed deadlines and the quantity of pages produced, Plaintiff employed third-party vendors, experts, contract attorneys and other support staff to quickly and diligently manage, organize, review and analyze the documents.  Astley Decl. ¶¶16, 24.

---

[3]     Plaintiff received documents in the following batches: 1) December 15, 2009, 2 DVDs bates labeled BNYM-SL 00000001-15215; 2) January 8, 2010, 1 DVD bates labeled BNYM-I00000001-12307; 3) January 14, 2010, a portable hard drive bates labeled BNYM-I-00012308-679583; 4) January 20, 2010, 2 DVDs bates labeled BNYM-I-00679584-847527; 5) January 27, 2010, a portable hard drive bates labeled BNYM-I 0847528-1420667 and a CD bates labeled BNYM-I 01420668-1425253; 6) February 3, 2010, a portable hard drive bates labeled BNYM-I 01425254-02189203; 7) February 5, 2010, a portable hard drive bates labeled BNYM-I 2189204-2836296; 8) February 17, 2010, a CD bates labeled BNYM-I 02836297-2880858; 9) February 17, 2010, a portable hard drive bates labeled BNYM-I 02880859-3513784; 10) February 23, 2010, a production of the metadata relating to the documents produced to date; 11) February 24, 2010, a portable hard drive bates labeled 03513785-4059457; 12) March 3, 2010, another production of searchable metadata as a result of Defendant's failure to so produce; 13) March 5, 2010, 2 DVDs bates labeled BNYM-I 04059458-4228083 and a CD of metadata of documents produced to date, including what was previously produced corrupted; 14) April 5, 2010, a portable hard drive bates labeled BNYM-I 04228084-5515635.  Astley Decl. ¶15.

4

In addition to managing and reviewing Defendants' voluminous productions, Plaintiff has also been steadily meeting its own discovery obligations. Astley Decl. ¶25. In total, Plaintiff's document production efforts included review of over 250,000 pages of documents for responsiveness and privilege, as well as the preparation of associated privilege logs. Astley Decl. ¶25.[4]

On April 8, 2010, the Court heard oral argument on Defendant's Motion to Dismiss the Amended Complaint. Astley Decl. ¶26. Following a letter submission by Plaintiff, the Court granted Defendant's motion on April 14, 2010, finding that Plaintiff failed to adequately state a claim upon which relief could be granted. Judgment was entered April 15, 2010. Astley Decl. ¶¶27, 28.

### B.    Facts Obtained During Discovery

Plaintiff received the first batch of Defendant's documents nearly two months *after* filing its Amended Complaint and one month *after* the motion to dismiss had been filed. Astley Decl. ¶8, 9, 15. It was finally fully searchable *after* the briefing had been completed and only one month before the Court's ruling. Astley Decl. ¶9, 15. Notwithstanding a vigorous attempt to timely, effectively and efficiently review each page produced (Astley Dec. ¶16-17), Plaintiff did not become aware of

---

[4]    Plaintiff made the following document productions to Defendants: 1) January 14, 2010, a CD bates labeled  IBEW-NECA 00001-000911; 2) January 15, 2010, a replacement CD bates labeled IBEW-NECA 00001-000946 (this replaced the January 14, 2010 production to redact privileged and confidential information, such as Social Security numbers); 3) January 20, 2010, a replacement CD bates labeled IBEW-NECA 00001-000946 provided as a courtesy to Defendants, who requested multiple PDF files for Plaintiff's prior January 15, 2010 production; 4) January 26, 2010, a CD bates labeled IBEW-NECA  000947-001246; 5) January 26, 2010, a CD bates labeled IBEW-NECA 000112-000324 containing replacement color copies of presentations prepared by The Bank of New York Mellon, which were previously produced in black and white as part of the January 15, 2010 Plaintiff production; 6) March 18, 2010, a CD bates labeled IBEW-NECA 001247-002370; 7) March 30, 2010, a production of documents with metadata by way of a secure FTP site and available for Defendant's retrieval, bates labeled IBEW-NECAe 0000001-0039282; 8) March 31, 2010, a DVD containing Plaintiff's prior metadata production of March 30, 2010, bates labeled IBEW-NECA 0000001-0039282, provided as a convenience to Defendant. Astley Decl. ¶24.

**REDACTED PURSUANT TO THE CONFIDENTIALITY STIPULATION AND ORDER FILED ON 12/17/2009**

several key pieces of evidence that were buried within the piles (virtual or otherwise) of documents in its possession. Astley Decl. ¶20.  Much like searching for a needle in a haystack, Plaintiff tediously reviewed pages and pages of often times irrelevant or non-responsive documents in an effort to identify those certain materials which it knew existed, that would support its claims. Astley Decl. ¶¶16, 17.

Whether because Plaintiff's valiant due diligence had not yielded their discovery, or, more likely, because they had yet to be produced, the following pieces of evidence were discovered after Plaintiff had been given its first opportunity to amend and ***after*** the filing of Defendant's motion to dismiss had been fully briefed.



6



Likewise, the Examiner's Report shed light on Defendant's true knowledge as to Lehman's financial uncertainty in the month leading up to Lehman's filing for Chapter 11 bankruptcy protection on September 15, 2008. ¶¶181-185. The Examiner's Report indicated that BNY Mellon,

7

REDACTED PURSUANT TO THE CONFIDENTIALITY STIPULATION AND ORDER FILED ON 12/17/2009

as one of approximately six clearing banks for Lehman, was so concerned with its Lehman exposure that it demanded that Lehman post $125 million in collateral in order to continue its operations with Defendant.   In such a way, while Defendant focused on reducing its own Lehman exposure, the evidence shows that it took no action to minimize Plaintiff's and the Class Plans' losses, where internal documents reveal that Defendant could have sold the Investments for nearly full value.



In such a way, the evidence detailed above and in the SAC materially supports Plaintiff's claims and provides an appropriate basis for seeking relief from the judgment and an opportunity to file a SAC.

REDACTED PURSUANT TO THE CONFIDENTIALITY STIPULATION AND ORDER FILED ON 12/17/2009

## II.    ARGUMENT

Fundamentally, Rule 8 requires that a pleading provide "fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Conley*, 355 U.S. at 47, *abrogated on other grounds by Twombly*, 127 S. Ct. at 1969.  Rule 8(e) directs district courts to construe pleadings "so as to do justice." *See, e.g., id*. at 48 ("The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits.").  Instead, as detailed below, the preferred procedure is to grant leave for the party to amend its complaint, unless there is some showing that justifies denial. *See, e.g., Foman v. Davis*, 371 U.S. 178, 182 (1962) (citing Fed. R. Civ. P. 15(a)(2) (providing that courts should "freely" grant leave to amend "when justice so requires.")).

Here, the proposed SAC details several additional facts to support Plaintiff's claim that Defendant knew or should have known that its investments in Lehman Brothers were imprudent.  On April 14, 2010, the Court dismissed the Complaint for failure to plead sufficient "factual enhancement" to show that Defendant "actually or constructively knew about Lehman's imminent collapse" (Dkt. No. 59, at 11) in order to take the claims alleged beyond the merely "theoretically conceivable" (Dkt. No. 59, at 12). The Court's MTD Order challenges the lack of "factual enhancements" provided in the complaint – it does not, because it cannot, conclude that the complaint was comprised of "mere conclusions" or "bare bones" allegations of facts.  In light of this, rather than dismiss the complaint with prejudice, the court should have, based on the facts presented and the law in this District and elsewhere, provided Plaintiff the opportunity to, at a minimum, advance a Rule 15 motion to show the additional information discovered in the course of discovery. Instead, Plaintiff now finds itself in a much tougher position where it is required to overcome an

9

additional obstacle of altering, amending or setting aside the judgment of dismissal under Rule 59(e) and/or 60(b).

As shown by the attached Second Amended Complaint, the recently discovered, additional evidence found as a result of a review of over 5.5 million pages produced during the course of discovery, is sufficient to state a claim that would entitle Plaintiff to relief.  For the reasons stated below, Plaintiff is entitled to relief from the order of dismissal and should be granted leave to file a Second Amended Complaint pursuant to Rule 15.

### A.    The Plaintiff Should be Granted Leave to Amend pursuant to Rule 15(a)

Rule 15(a) states that "a party may amend the party's pleading only by leave of the court . . . and leave shall be freely given when justice so requires." Fed. R. Civ. P. 15(a).  The Supreme Court has stated that "if the underlying circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits."  *Foman*, 371 U.S. at 182 (1962) (denial of leave to amend appropriate where there is "repeated failure to cure deficiencies by amendments previously allowed").   Specifically, "[i]n the absence of any apparent or declared reason-such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc.-the leave sought should, as the rules require, be 'freely given.'"  *Id*.; *see also Block v. First Blood Assocs.*, 988 F.2d 344, 350 (2d Cir. 1993); *see also Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d. Cir. 2008) (leave to amend may properly be denied for: "undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, [or] futility of the amendment. . . .").  Of

REDACTED PURSUANT TO THE CONFIDENTIALITY STIPULATION AND ORDER FILED ON 12/17/2009

these reasons, only two, futility of the amendment and prejudice to the opposing party, may be advanced to challenge an amendment, yet both are inapplicable.

### 1.      The Proposed Amendment is Neither Futile nor Prejudicial

A proposed amendment is futile if it would not withstand a Rule 12(b)(6) motion to dismiss, that is, when it fails to state a claim.  *See Hunt v. Alliance N. Am. Gov't Income Trust Inc.*, 159 F.3d 723, 728 (2d Cir. 1998); *see also Roussin v. AARP, Inc.*, 664 F. Supp. 2d 412, 419 (S.D.N.Y. 2009) ("Repleading would be futile if the proposed amended complaint were to make the same allegations and seek the same relief as the Complaint here.")   Such an amendment may be denied "where the claim or defense proposed to be added has 'no colorable merit."  *Oliver v. DeMarinis & Co.*, 90 Civ. 7950(SS), 1993 WL 33421, at *2 (S.D.N.Y. Jan. 29, 1993) (Sotomayor, J.).

The request for leave to amend here is based on Plaintiff's discovery of supplemental evidence that buttresses its claims and provides additional support to its allegations for relief.



11



This evidence is admissible and, based on the Court's finding that the claims lacked sufficient "factual enhancements," would undoubtedly change the outcome.

Moreover, Defendant would not be prejudiced by a second amendment. When gauging prejudice courts consider, among other factors, "whether an amendment would 'require the opponent to expend significant additional resources to conduct discovery and prepare for trial'" or "significantly delay the resolution of the dispute." *Ruotolo*, 514 F.3d at 192. Here, discovery is not merely underway, but significant resources have already been expended in an effort to efficiently and diligently meet the Court's September 30, 2010 deadline. To that end, Defendant would not be required to employ additional resources outside of what was originally anticipated from the inception of the case. In fact, while Plaintiff does not concede this point, Defendant has already represented to the Court, by letter dated April 30, 2010, that it had already produced 5.5 million pages and that "Plaintiff[] will be unable to demonstrate any reason for additional discovery beyond that."

### 2.    Plaintiff Should be Given an Opportunity to Cure its Deficiencies

A third consideration in deciding whether to grant leave to amend is whether there has been a "repeated failure to cure deficiencies by amendments previously allowed." While Plaintiff has only

REDACTED PURSUANT TO THE CONFIDENTIALITY STIPULATION AND ORDER FILED ON 12/17/2009

been given a *single* opportunity to amend, it bears mentioning this consideration to highlight that the usual course of practice recognizes that amendments should be freely given. *See, e.g., Koehler v. New York City*, No. 04-cv-6929, 2005 U.S. Dist. LEXIS 8901, at *28 (S.D.N.Y. May 11, 2005) (Berman, J.) (in granting leave to amend, recognizing that even after a first amended complaint was filed, "[i]t is the usual practice upon granting a motion to dismiss to allow leave to replead."); *see also Griggs v. Hinds Junior Coll*., 563 F.2d 179 (5th Cir. 1977) (per curiam) (granting leave to amend is especially appropriate when trial court has dismissed the complaint for failure to state a cause of action).

Here, Plaintiff has only been afforded a single attempt at a pre-motion amendment and Plaintiff should not, therefore, be precluded from advancing a second amendment simply because it has already been given a *single* chance to do so.

### B.     The Plaintiff is Entitled to Relief from the Judgment

Where a party seeks to file an amended complaint after final judgment has been entered in the case, the party must first seek relief from the underlying judgment. *Ruotolo*, 514 F.3d at 191. Rules 59(e) and 60(b) provide the basis for the relief.    "Properly applied, the rules preserve a balance between serving the ends of justice and ensuring that litigation reaches an end within a finite period of time." *House v. Sec'y of Health & Human Servs.*, 688 F.2d 7, 9 (2d Cir. 1982); *Bankers Mortgage Co. v. United States*, 423 F.2d 73, 77 (5th Cir. 1970) ("The provisions of [Rules 59 and 60(b)] must be carefully interpreted to preserve the delicate balance between the sanctity of final judgments ... and the incessant command of the court's conscience that justice be done in light of *all* the facts."). The appropriate balance between these competing policies is inherent in the structure and design of the rule itself. *Paddington Partners v. Bouchard*, 34 F.3d 1132, 1144 (2d Cir. 1994);

13

REDACTED PURSUANT TO THE CONFIDENTIALITY STIPULATION AND ORDER FILED ON 12/17/2009

*see Frishberg v. Esprit de Corp*, 1993 WL 403980, at *1 (S.D.N.Y. Oct. 6, 1993) (rules 59(e) and 60(b) "[were] designed to balance the ends of justice with the finality of judgments").

Because "[s]trong public policy favors resolving disputes on the merits" (*Am. Alliance Ins. Co. v. Eagle Ins. Co.*, 92 F.3d 57, 61 (2d Cir. 1996)), "all doubts should be resolved in favor of those seeking relief under…[Rule] 60(b)." *Davis v. Musler*, 713 F.2d 907, 915 (2d Cir. 1983); *see Radack v. Norweigan Am. Line Agency, Inc.*, 318 F.2d 538, 542 (2d Cir. 1963) ("[Rule 60] should be liberally construed when substantial justice will thus be served.").

While there are no formal guidelines, courts have recognized four basic grounds on which a judgment may be altered or amended pursuant to Rule 59(e): the need to prevent manifest injustice, the need to correct errors of law or fact, the availability of new evidence, or an intervening change in controlling law. *See Virgin Atl. Airways, Ltd. v. Nat'l Mediation Bd.*, 956 F.2d 1245, 1255 (2d Cir. 1992). Of the four grounds, the need to prevent manifest injustice and the availability of new evidence are applicable here. Similarly, Rule 60(b) allows a court to relieve a party from a final judgment for, among other reasons, "(2) newly discovered evidence. . ." or "(6) any other reason that justifies relief." *Meteor Ag v. Fed. Exp. Corp.*, No. 08-cv-3773, 2009 WL 3853802, at *3 (S.D.N.Y. Nov. 18, 2009). Although the rules are different, the analysis under both the manifest injustice and the newly discovered evidence paradigms are the same and will, thus, be discussed accordingly.

### 1.    Newly Discovered Evidence

Courts employ a four prong approach to their analysis of whether to grant relief from judgment based on newly discovered evidence. In order to prevail on such grounds, plaintiffs must demonstrate that "(1) the newly discovered evidence was of facts that existed at the time of trial or other dispositive proceeding, (2) that the movant must have been justifiably ignorant of them despite due diligence, (3) the evidence must be admissible and of such importance that it probably would

REDACTED PURSUANT TO THE CONFIDENTIALITY STIPULATION AND ORDER FILED ON 12/17/2009

have changed the outcome, and (4) the evidence must not be merely cumulative or impeaching."

*Frankel v. ICD Holdings S.A.*, 939 F. Supp. 1124, 1127 (S.D.N.Y. 1996) (citing *Weissmann v. Freeman*, 120 F.R.D. 474, 476 (S.D.N.Y. 1988); *Kurzweil v. Philip Morris Cos., Inc.*, 1997 WL 167043, at *4 (S.D.N.Y. Apr. 9, 1997).

Plaintiff here meets all four prongs.  First, although discovery was conducted over the course of four months, several key documents were not produced until April 2010 (Astley Decl. ¶20), but in no way was the production made fully searchable until March 10, 2010 - nearly three months ***after*** the briefing on the motion to dismiss was complete (Astley Decl. ¶¶19, 20).  To that end, the facts Plaintiff seeks to introduce as new evidence existed at the time of the motion to dismiss hearing.

Next, despite Plaintiff's strong efforts and due diligence, the sheer volume of pages that had to be identified, retrieved, reviewed and analyzed made it impossible to organize and present to the Court prior to its ruling on the motion. Astley Decl. ¶¶16-18.  Nor had the Lehman Examiner's Report filed in connection with the Lehman bankruptcy proceeding become publicly available until March 11, 2010.  For example, as a result of fourteen different productions, Defendant produced over 5.5 million pages of documents, yet those documents did not become fully searchable until March 2010 – five months ***after*** the filing of the Amended Complaint, ***after*** the Motion to Dismiss had been fully briefed, and less than one month before the hearing on the motion to dismiss. Astley Decl. ¶¶8, 9, 15, 19, 20.    As a result of the court-imposed deadlines and the quantity of pages produced, Plaintiff employed third-party vendors, experts, contract attorneys and other support staff to quickly and diligently manage, organize, review and analyze the documents. Astley Decl. ¶¶16, 17.  In addition to managing and reviewing Defendant's voluminous productions, Plaintiff had also been steadily meeting its own discovery obligations. Astley Decl. ¶¶21, 22.  In total, Plaintiff's

15

**REDACTED PURSUANT TO THE CONFIDENTIALITY STIPULATION AND ORDER FILED ON 12/17/2009**

document production efforts included review of over 250,000 pages of documents for responsiveness and privilege as well the preparation of associated privilege logs. Astley Decl. ¶23.

Third, the factual evidence Plaintiff seeks to include details, through various emails, reports, news articles and other internal documents, that, among other things, and as described more fully above (see section A.1 *supra*)



This evidence is admissible, would undoubtedly change the outcome, and finally, is neither cumulative nor impeaching.

Although reconsideration of a court's prior order "is an extraordinary remedy to be employed sparingly" in the interest of finality, *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000), courts in the Second Circuit have granted such relief in very similar circumstances. For example, this District, in *Kurzweil v. Philip Morris Companies, Inc.*, granted plaintiff's motion for relief from the judgment in order to file an amended complaint alleging new evidence. Nos. 94-cv-2373, 94-cv-2546, 1997 WL 167043 (S.D.N.Y. Apr. 9, 1997). The court

16

recognized that under the rule, the new evidence must have existed at the time of the decision, but if it was "in the possession of the party before the judgment [or order] was rendered it is not newly discovered and does not entitle the party to relief." *Id.* at *4. Unlike here, the "new evidence," however, that plaintiff sought to include, was defendant's internal and industry documents that were publicly available, and thus (as defendant's argued) reasonably discoverable by due diligence. *Id*. By contrast, the plaintiff argued that it exercised due diligence in that the new evidence could not have reasonably been discovered and presented to the court prior to the order of dismissal because the information "lay within the knowledge, possession and access of defendants and was disclosed and made available too late to have affected the [order]." *Id*.

The court, acknowledging that it is improper to reopen final judgments or litigate decided issues based on evidence in plaintiff's possession or evidence capable of discovery at a time when it could have been presented to the court or the trier of fact, nevertheless granted plaintiff leave to amend based on: 1) the volume of pages that plaintiffs were required to identify, retrieve, review and analyze; 2) the fact that the evidence plaintiff sought to include was admissible; 3) the inclusion of the new evidence probably would have changed the outcome. *Id*. at *4-*9. In other words, given the volume and timing of defendant's production even due diligence would not have allowed plaintiff to discover this evidence in time for the previous order.

Similarly, in *Alpern v. Utilicorp United, Inc.*, 84 F.3d 1525 (8th Cir. 1996) the Eighth Circuit reversed the district court's denial of a 60(b)(2) reconsideration of a partial summary judgment order where plaintiff presented newly discovered evidence that, while technically in his possession at time of the order, had not been produced by defendants until a few weeks before the entry of the order. Specifically, the evidence had been produced four months after defendant filed for summary judgment, and two months after plaintiff had filed his opposition. The court concluded,

17

therefore, that the plaintiff lacked sufficient time to analyze and submit the evidence before the order was issued, and defendants' delayed disclosures should not be viewed as a lack of due diligence on the part of the plaintiff.

In *Crown Castle USA, Inc. v. Fred A. Nudd Corp.*, No. 05-cv-6163, 2008 WL 3841298 (W.D.N.Y. Aug. 13, 2008), the plaintiff moved for reconsideration of the court's order on defendant's motion for partial summary judgment or, alternatively, to amend its complaint to include more facts, based on new evidence that had been revealed during discovery and which was unavailable to it at the time of the order.  Plaintiff argued,  and the court agreed, that the new evidence was highly relevant and had it been included would have warranted a different result. *Id*. at *1, *6.  In granting plaintiff's motion for reconsideration and vacating its prior decision, the court reasoned that the new evidence had not been fully developed at the summary judgment stage, that defendants had been given a full and fair opportunity to respond to the motion and that it had not been prejudiced by the reconsideration. *Id*. at *6-*7.

Moreover, in *Morin v. Trupin*, 809 F. Supp. 1081, 1085-86 (S.D.N.Y. 1993), plaintiff's second amended complaint was dismissed with prejudice.  It moved for reconsideration and leave to amend a third time based on new evidence culled from affidavits that had been recently procured by plaintiffs from five individuals that held close ties to defendants who had recently signed releases with plaintiffs. The court rationalized that "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reasons . . . the leave sought should, rules require, [be] 'freely given.'" *Id*. at 1086-87.  *See also Commer v. McEntee*, 2005 WL 1250214, at *3 (S.D.N.Y. May 27, 2005) (granting plaintiff's motion based on showing that additional evidence could not have been presented in the course of the underlying motion).

18

**REDACTED PURSUANT TO THE CONFIDENTIALITY STIPULATION AND ORDER FILED ON 12/17/2009**

2.        **Manifest Injustice**

Under Rule 59(e) or 60(b)(6) a district court may relieve a party from a final judgment in order to "prevent manifest injustice" or "upon such terms as are just." Fed. R. Civ. P. 59(e), 60(b)(6).  In *Strategic Capital Dev. Group, Ltd. v. Sigma-Tau Pharms., Inc.*, 198 F.3d 234 (2d Cir. 1999), the district court entered judgment only one week after its decision to grant the motion to dismiss and subsequently denied plaintiff's motion for relief from judgment dismissing the complaint and for leave to file an amended complaint because the court was "concern[ed] that the new complaint closely tracked the contours of the district court's opinion dismissing the original complaint" and the court's "substantial doubts as to plaintiff's good faith." *Id.* at *1.  Yet upon review of the proposed amendment, the Second Circuit found that the proposed amended complaint stated several claims upon which relief could be granted as well as that the new allegations in the case were not necessarily incompatible with the old pleading.  Noting also that the district court had entered judgment ***only one week after*** its decision to grant the motion, the Second Circuit vacated the judgment dismissing the case and remanded it to the district court recognizing that Rule 60(b)(6) permits parties to come forward with "any ... reason justifying relief from the operation of the judgment." *Strategic Capital, Ltd*, 198 F.3d at 234; *cf. In re Gildan Activewear, Inc. Sec. Litig.*, No. 08-cv-5048, 2009 WL 4544287, *1 (S.D.N.Y. Dec. 4, 2009) (denying relief from the judgment of dismissal after "the Court at oral argument asked Plaintiffs' counsel how they might amend their allegations if given the opportunity to replead, to which counsel responded that 'it depends on what your Honor was concerned about.'").

It can be gleaned from the proposed Second Amended Complaint attached hereto that the newly added facts enhance the alleged claims such that they adequately plead an entitlement of

19

relief.  Likewise, it adds additional factual support consistent with the theories put forth in the first amended complaint.  Moreover, at this stage of the proceedings where the pleading standard requires only that a plaintiff provide factual allegations sufficient to raise a right to relief above the speculative level, it is incumbent on the Court to permit the newly discovered materials be presented. Justice and public policy require that plaintiffs be afforded the opportunity to present *all* of the facts they have gathered and their case to be considered based upon *all* of the evidence available in support of its claims.  With that in mind, the Court should have permitted Plaintiff time to request leave to amend before entering a final judgment on the motion to dismiss ***the day after*** its decision to grant the motion was rendered.  In so doing, the Court essentially eliminated the Plaintiff's opportunity to move to replead under the general Rule 15(a) standards.

Moreover, the situation here is distinguishable from that in *State Trading Corp. of India v. Asssuranceforeningen Skuld*, 921 F.2d 409, 418 (2d Cir. 1990), where the moving party had an opportunity to assert the amendment earlier but waited until after the judgment was entered to request leave.  Rather, here, Plaintiff was given the opportunity to amend its complaint based on a pre-motion conference letter very early on in the litigation where it was not informed that by choosing to amend the complaint, any order of dismissal would thereby be made with prejudice. Additionally, key relevant documents now included in the proposed Second Amended Complaint were not discovered prior to the order because Defendant's production did not become fully searchable until March 2010 – five months ***after*** the filing of the Amended Complaint, *after* the Motion to Dismiss had been fully briefed, and less than one month before the hearing on the motion to dismiss.  Nevertheless, after the motion to dismiss was heard, the Court entered its decision to grant with prejudice and ***the very next day*** entered judgment.  Plaintiff was not given the opportunity to request an amendment prior to the entry of that judgment.

20

Nor is this case similar to *In re Eaton Vance Mut. Funds Fee Litig.*, 403 F. Supp. 2d 310, (S.D.N.Y. 2005), aff'd, 481 F.3d 110 (2d Cir. 2007), where the court denied plaintiff's motion for leave to amend after entry of final judgment because plaintiffs had ample notice of defects in their complaint and two previous opportunities to amend the complaint. There, the court held that plaintiffs "were not entitled to an advisory opinion from the Court informing them of the deficiencies of the complaint and then an opportunity to cure those deficiencies." Here, Plaintiff only had one opportunity to amend based solely on a pre-motion conference letter. Further, the amendments Plaintiff now seeks to make are not based on the written decision of the Court after considering its ruling and correcting any "deficiencies" highlighted therein. Instead, the amendments are based on the result of an extensive and vigorous document review of over 5.5 million pages, many of which were not searchable until *after* the briefing on the motion to dismiss had been completed, over the course of several months.

## III.   CONCLUSION

For the foregoing reasons, the Court should grant plaintiff's motion for relief from the April 14, 2010 Order and April 15, 2010 Judgment pursuant to Fed. R. Civ. P. 59(e), 60(b)(2) or (b)(6), and grant Plaintiff leave to file a Second Amended Complaint pursuant to Fed. R. Civ. P. 15(a) in light of the overwhelming evidence discovered as a result of discovery.


DATED:  May 12, 2010                    ROBBINS GELLER RUDMAN
                                          & DOWD LLP
                                        PAUL J. GELLER (*pro hac vice*)
                                        STEPHEN R. ASTLEY (*pro hac vice*)
                                        ELIZABETH A. SHONSON (*pro hac vice*)
                                        SABRINA E. TIRABASSI (*pro hac vice*)


                                        _____
                                              */s/ Stephen R. Astley*
                                              STEPHEN R. ASTLEY

21

**REDACTED PURSUANT TO THE CONFIDENTIALITY STIPULATION AND ORDER FILED ON 12/17/2009**

120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

***Attorneys for Plaintiff and Proposed Class***

REDACTED PURSUANT TO THE CONFIDENTIALITY STIPULATION AND ORDER FILED ON 12/17/2009

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 12, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

*/s/ Stephen R. Astley*
STEPHEN R. ASTLEY

**REDACTED PURSUANT TO THE CONFIDENTIALITY STIPULATION AND ORDER FILED ON 12/17/2009**