UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | | |
|---|---|---|
| —————————————— x | | |
| THE BOARD OF TRUSTEES OF THE SOUTHERN CALIFORNIA IBEW-NECA DEFINED CONTRIBUTION PLAN, On Behalf of Itself and All Others Similarly Situated, | : : : : : | Civil Action No. 09-cv-06273(RMB)(AJP) |
| | : | CLASS ACTION |
| Plaintiff, | : : | PLAINTIFF'S MOTION AND INCORPORATED MEMORANDUM OF |
| vs. | : : | LAW TO DISMISS DEFENDANTS' CROSS-CLAIM AND STRIKE |
| THE BANK OF NEW YORK MELLON CORPORATION, et al., | : : : | DEFENDANTS' AFFIRMATIVE DEFENSES |
| Defendants. | : : | |
| —————————————— x | | |

# TABLE OF CONTENTS

MOTION TO DISMISS DEFENDANT'S CROSS-CLAIM .........................................................1

PRELIMINARY STATEMENT .............................................................................................1

FACTUAL BACKGROUND ..................................................................................................2

ARGUMENT .......................................................................................................................5

I.  Standard of Review ....................................................................................................5

II. Defendant Has Failed to State a Claim for Breach of Fiduciary Duty ...............................6

    A.  Defendant Lacks Standing to Bring Such a Claim .................................................6

    B.  Defendant Fails to Allege Facts Demonstrating that Plaintiff Was a Fiduciary with Respect to the Investments at Issue .................................................8

III. Defendant Has Failed to State a Claim for Breach of Co-Fiduciary Duty under Section 405 ...............................................................................................................12

    A.  Section 405(d) Forecloses Plaintiff's Liability under Sections 405(a)(2)-(3) .......12

    B.  Defendant Has Failed to Allege Sufficient Facts to Support a Claim Under Section 405(a)(1) ...........................................................................................13

IV. Defendant's Contribution and Indemnification Claims Should Also Be Dismissed .........15

    A.  Defendant's Claims for Contribution and Indemnification Are Premature ..........15

    B.  There Is No Cause of Action for Contribution and Indemnification Under ERISA .........................................................................................................17

    C.  Even if the Court Were to Recognize a Cause of Action for Contribution or Indemnification, These Claims Should Be Dismissed  Under Applicable Trust Law .....................................................................................................21

        1.  Defendant Has Failed to Allege that the Board of Trustees Received any Benefit from the Breach of Trust ........................................................21

        2.  Defendant's Cross-Claim Fails to Set Forth Facts to Infer that Plaintiff is "Substantially More at Fault" than Defendant ........................22

V.  Conclusion ..............................................................................................................24

MOTION TO STRIKE DEFENDANT'S AFFIRMATIVE DEFENSES ....................................24

i

**TABLE OF AUTHORITIES**

**CASES**

*Aks v. Southgate Trust Co.*,
   1992 U.S. Dist. LEXIS 20442 (D. Kan. Dec. 24,1992)....................................................21

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009).....................................................................................6, 14, 15, 23

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007)...........................................................................................6, 8, 15, 23

*BP Corp. N. Am. v. N. Trust Invs., N.A.*,
   692 F. Supp. 2d 980 (N.D. Ill. 2010) ("*BP*")........................................................... *passim*

*Chemung Canal Trust Co. v. Sovran Bank/Md.*,
   939 F.2d 12 (2nd Cir. 1991)...........................................................................18, 19, 20, 21

*Cohen v. Baker*,
   845 F. Supp. 289 (E.D. Pa. 1994) .......................................................................................5

*Coleman v. Nationwide Life Ins. Co.*,
   969 F.2d 54 (4th Cir. 1992) ...............................................................................................20

*Diduck v. Kaszycki & Sons Contractors, Inc.*,
   974 F.2d 270 (2nd Cir. 1992)......................................................................................18, 19

*Fedex Corp. v. N. Trust Co.*,
   2010 WL 2836345 (W.D. Tenn. Jul. 16, 2010) .........................................................15, 20

*Franklin v. Aetna Life Ins. Co.*,
   1988 U.S. Dist. LEXIS 10842 (D.S.C. July 18, 1988) ....................................................21

*FSP, Inc. v. Societe Generale*,
   2003 WL 124515 (S.D.N.Y. Jan. 14, 2003) ....................................................................16

*FSP, Inc. v. Societe Generale*,
   2005 WL 475986 (S.D.N.Y. Feb. 28, 2005)....................................................................24

*Gerosa v. Savasta & Co., Inc.*,
   329 F.3d 317 (2nd Cir. 2003)...........................................................................................19

*Great-West Life & Annuity Ins. Co. v. Knudson*,
   534 U.S. 204 (2002)..............................................................................................18, 19, 20

*Haddock v. Nationwide Fin. Servs.*,
   570 F. Supp. 2d 355 (D. Conn. 2008) ("*Haddock III*") .........................................6, 21, 22

*Haddock v. Nationwide Fin. Servs., Inc.*,
    2010 WL 2976910 (D. Conn. Jul. 23, 2010) ("*Haddock IV*") .........................................7, 8

*Harris Trust & Sav. Bank v. Salomon Bros., Inc.*,
    832 F. Supp. 1169 (N.D. Ill. 1993) ...........................................................................11, 13

*Harris Trust and Savs. v. John Hancock Mut. Life Ins. Co.*,
    122 F. Supp. 2d 444 (S.D.N.Y. 2000).................................................................................23

*Hollingshead v. Burford Equip. Co.*,
    747 F. Supp. 1421 (M.D. Ala. 1990) ..................................................................................21

*Int'l Bhd. of Painters & Allied Trades Union and Indus. Pension Plan v. Duval*,
    1994 WL 903314 (D.D.C. April 14, 1994) .........................................................................21

*Kim v. Fujikawa*,
    871 F.2d 1427 (9th Cir. 1989) ............................................................................................20

*Lerner v. Fleet Bank, N.A.*,
    318 F.3d 113 (2d Cir. 2003)...................................................................................................6

*Lowen v. Tower Asset Mgmt., Inc.*,
    829 F.2d 1209 (2d Cir. 1987)..................................................................................11, 13, 25

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000)...................................................................................................5

*Mars Assocs., Inc. v. N.Y. City Educ. Constr. Fund*,
    513 N.Y.S.2d 125 (N.Y. App. Div. 1987) ..........................................................................16

*Mass. Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985) ("*Russell*") ..........................................................................7, 8, 17, 18

*McDermott v. City of N.Y.*,
    428 N.Y.S.2d 643 (1980).....................................................................................................16

*Mertens v. Hewitt Assocs.*,
    508 U.S. 248 (1993)........................................................................................................18, 19

*Murphy v. New Milford Zoning Comm'n*,
    402 F.3d 342 (2d Cir. 2005)...................................................................................................6

*Openshaw v. Cohen, Klingenstein & Marks, Inc.*,
    320 F. Supp. 2d 357 (D. Md. 2004) ....................................................................................20

*Plumbers Local 93 Health and Welfare and Pension Fund v. DiPietro Plumbing Co.*,
    1999 U.S. Dist. Lexis 6913 (N.D. Ill. Apr. 30, 1999).......................................................21

*Provident Life & Accident Ins. Co. v. Waller*,
    906 F.2d 985 (4th Cir. 1990) ...................................................................20

*Radutzky v. Wallert*,
    1988 U.S. Dist. LEXIS 15152 (E.D.N.Y. Dec. 30, 1988) ...............................7, 8

*Scalp & Blade, Inc. v. Advest, Inc.*,
    755 N.Y.S.2d 140 (N.Y. App. Div. 2002) ......................................................23

*Schloegel v. Boswell*,
    766 F. Supp. 563 (S.D. Miss. 1991) ............................................................21

*Shechter v. Comptroller of City of N.Y.*,
    79 F.3d 265 (2d Cir. 1996)........................................................................24

*Shinew v. Wszola*,
    2009 WL 1076279 (E.D. Mich. Apr. 21, 2009)...............................................24

*Solow Bldg. Co., LLC v. ATC Assocs., Inc.*,
    388 F. Supp. 2d 136 (E.D.N.Y. 2005) .........................................................16

*State St. Bank and Trust Co. v. Denman Tire Corp.*,
    240 F.3d 83 (1st Cir. 2001).......................................................................20

*Sunderlin v. First Reliance Standard Life Ins. Co.*,
    235 F. Supp. 2d 222 (W.D.N.Y. 2002) .........................................................23

*Texas v. United States*,
    523 U.S. 296 (1998)................................................................................16

*Toledo Blade Newspaper Unions-Blade Pension Plan v. Inv. Performance Servs., LLC*,
    448 F. Supp. 2d 871 (N.D. Ohio 2006) ........................................................21

*Travelers Prop. Cas. Corp. v. Winterthur Int'l*,
    2002 WL 1391920 (S.D.N.Y. June 25, 2002) .................................................16

*Travelers Cas. and Sur. Co. of Am. v. IADA Servs., Inc.*,
    497 F.3d 862 (8th Cir. 2007) .....................................................................20

*Ulico Cas. Co. v. Clover Capital Mgmt, Inc.*,
    217 F. Supp. 2d 311 (N.D.N.Y. 2002).....................................................11, 25

*Williams v. Provident Inv. Counsel, Inc.*,
    279 F. Supp. 2d 894 (N.D. Ohio 2003)....................................................17, 20

Plaintiff/Cross-Claim-Defendant The Board of Trustees of the Southern California IBEW-NECA Defined Contribution Plan ("Plaintiff" or the "Board of Trustees"), respectfully requests that the Court dismiss Defendants/Cross-Claim-Plaintiffs The Bank of New York Mellon Corporation and BNY Mellon, National Association's (collectively, "BNY Mellon" or "Defendant") Cross-Claim pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.  Plaintiff also respectfully requests that the Court strike Defendant's affirmative defenses pursuant to Rule 12(f).

## MOTION TO DISMISS DEFENDANT'S CROSS-CLAIM

## PRELIMINARY STATEMENT

In response to the well-pleaded allegations of the Second Amended Class Action Complaint ("SAC")[1] that Defendant breached its fiduciaries duties under the Employee Retirement Income Security Act, 29 U.S.C. §§1001, *et seq.* ("ERISA") in making and maintaining imprudent investments in Lehman Brothers Holdings, Inc. ("Lehman") floating rate notes with the Plans' Collateral (the "Investments"), Defendant has brought a cross-claim against the Board of Trustees.  At bottom, the Cross-Claim is nothing more than an attempt to shift Defendant's liability to the Board of Trustees – a nominal plaintiff who received no benefit from Defendant's breach and bore no responsibility for Defendant's Investments.

Indeed, while Defendant once held itself out as a sophisticated investment manager and "the global leader in the securities lending industry," (SAC at ¶1), it now claims that the Board of Trustees – comprised of volunteers in the electrical profession who do not have Defendant's investment expertise – should have provided constant supervision over Defendant's discretionary investment decisions.  Essentially, Defendant alleges that although it was appointed as agent and Investment

---

[1]     References to the SAC are cited as "SAC at ¶__."  The allegations of the SAC and all of its defined terms are incorporated by reference herein.

1

Manager for the Plan with respect to the Securities Lending Program ("SLP"), the Board of Trustees should have reviewed and evaluated every discretionary investment decision made by Defendant under the same criteria that Defendant – a sophisticated, expert Investment Manager – was expected to follow.  Based on this illogical theory, Defendant seeks to eliminate or lessen its liability for its own conduct by holding Plaintiff liable for breach of fiduciary duty and co-fiduciary duty, and by pursuing claims of contribution and indemnity against Plaintiff.  Such claims are inconsistent with the principles of trust law undergirding ERISA.

Notwithstanding the specious nature of its allegations, Defendant fails to state claims upon which relief can be granted.  Specifically, Defendant lacks standing to pursue a claim for breach of fiduciary and co-fiduciary duty because it brings this claim solely for its own benefit.  Moreover, as Defendant was appointed by the Board of Trustees as Investment Manager for the Plan's SLP assets, Defendant is the **sole** fiduciary with authority to invest the Collateral, and ERISA forecloses Plaintiff's liability for Defendant's breaches of fiduciary duty arising out of such investments.

Defendant's claims for contribution and indemnity should also be dismissed.  As a preliminary matter, these claims are not ripe for adjudication at this juncture because no liability has been imposed on Defendant.  Further, no such causes of action exist under ERISA.  And, even if the Court were to consider such causes of action, Defendant's claims for contribution and indemnification fail under applicable trust principles.  Finally, Defendant's Cross-Claim lacks sufficient factual matter to state a claim for relief that is plausible on its face.  Accordingly, for all the reasons set forth herein, the Court should summarily dismiss Defendant's Cross-Claim.

## FACTUAL BACKGROUND

Plaintiff filed the SAC on September 21, 2010.  The SAC alleges that Defendant breached its fiduciary duties to the Plan and Class Plans under ERISA, the Securities Lending Agreement and

2

Guaranty (the "Agreement"), the Securities Lending Guidelines (the "Guidelines"), and the Plan's Investment Policy Statement ("IPS"). *See* SAC, Exhibits A, C, and D, respectively.

The SAC alleges that in 1998, Plaintiff entered into the Agreement with Defendant, a sophisticated financial institution. SAC at ¶2. Under the Agreement, Defendant provided investment management services to Plaintiff as its fiduciary under ERISA. *Id.* Defendant had ***full discretion*** to loan the Plan's securities to borrowers in return for cash and non-cash collateral (the "Collateral"). *Id.* Defendant also had ***full discretion*** to invest the Collateral. *Id.* While Plaintiff kept abreast of the performance of the SLP through presentations made by Defendant, Plaintiff relied on Defendant to make prudent investment decisions as required by ERISA, the Agreement, the Guidelines executed by the parties, correspondence, and the IPS. *Id.* The clear investment objective under each was to earn a sufficient return to ensure safety of principal over all other considerations. *Id.* Under the Agreement, Defendant was paid 40% of any profit earned from Collateral investments but had no liability if the investments lost money, except due to its negligence, bad faith, willful misconduct, or failure to act in accordance with the Prohibited Transaction Class Exemption 81-6. *Id.* The Plan participated in the SLP as a means to offset custodial fees associated with maintaining its trust funds. SAC at ¶1.

As the Plan's Investment Manager, Defendant made various investments with the Plan's Collateral. In particular, it invested the Collateral in Lehman floating rate notes. The SAC alleges that beginning in 2007, and continuing into 2008, it became increasingly apparent to the market and Defendant, that there was tremendous uncertainty surrounding Lehman's financial stability. SAC at ¶3. By August of 2008, Defendant's concern about Lehman's financial uncertainty was so great that Defendant, who was also one of a handful of clearing banks for Lehman, required additional collateral from Lehman as a required condition to allow Lehman to continue its operations with Defendant. *Id.* Additionally, in the summer and fall of 2008, executives within Defendant's SLP attempted to

minimize BNY Mellon's exposure in securities lending loans to Lehman, for which Defendant would ultimately be held liable should Lehman collapse.  *Id.*

The SAC further alleges that despite Defendant's concerns regarding Lehman's stability and its own actions to minimize its exposure to a Lehman default, Defendant surprisingly took no action with respect to the Collateral investments it made on behalf of the Plan and the Class Plans.  SAC at ¶4.  Although Defendant could have divested the Lehman Note and other similar Lehman investments at any point during 2007 through 2008, and significantly minimized or eliminated any losses, Defendant held on to the Investments.  *Id.*  In such a way, Defendant took a gamble with the Plan's and the Class Plans' money for which it bore no risk of loss.  *Id.*  Defendant took this gamble because under the Agreement, Defendant had no risk of loss but was paid 40% of any profit.  *Id.*

When Lehman declared bankruptcy on September 15, 2008, the Plans suffered more than a billion dollars in losses.  SAC at ¶5.  The SAC alleges that Defendant's gamble of holding on to the Investments violated the Agreement, the Guidelines, the IPS, and its fiduciary duties under ERISA.  *Id.*  In particular, Defendant violated the Agreement, the Guidelines, the IPS, and ERISA by: (1) failing to adhere to the key objective of safety of principal and corpus being paramount over all other considerations; (2) failing to diversify the Collateral investments; (3) imprudently maintaining the investments in Lehman despite growing uncertainty over Lehman's financial stability; and (4) acting in its own self-interest by failing to modify its risky investment strategy because it was the beneficiary of profits but none of the losses.  *Id.*  Plaintiff filed this action to recover losses to both principal and profits caused by Defendant's breaches of its fiduciary duty to the Plans.  SAC at ¶6.

In response, Defendant filed its Answer to Second Amended Class Action Complaint and Cross-Claim on October 8, 2010 [Dkt. No. 91] (herein, "Cross-Claim").[2]  Defendant alleges four cross-claims against the Board of Trustees: (i) Breach of Fiduciary Duty (CC at ¶¶27-31); (ii) Breach of Co-Fiduciary Duty (CC at ¶¶32-35); (iii) Equitable Indemnification (CC at ¶¶36-40); and (iv) Contribution (CC at ¶¶41-43).[3] In support of this Cross-Claim, Defendant argues that if it is found liable for breaches of its fiduciary duties to the Plan, then the Board of Trustees also breached its fiduciary duties to the Plan, and that such breaches "caused, entirely or in part, any alleged loses by the IBEW Plan."  CC at ¶5.  *See also* CC at ¶¶26, 31, 35, 39, and 43.  For the reasons stated below, Defendant's allegations fail to state claims upon which relief can be granted.  Accordingly, this Court should dismiss Defendant's Cross-Claim pursuant to Fed. R. Civ. P. 12(b)(1) and (6).

## ARGUMENT

### I.    Standard of Review

Dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction is proper where the court "lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d

---

[2]    References to Defendant's Cross-Claim will be cited as "CC at ¶__."

[3]    Defendant's Cross-Claim is procedurally improper and should be dismissed.  Although styled as a "cross-claim," it in fact appears to contain counterclaims.  *Compare* Fed. R. Civ. P. 13(g) (providing that a "pleading may state as a crossclaim any claim by one party against a coparty") *with* Fed. R. Civ. P. 13(a) ("A pleading must state as a counterclaim any claim that – at the time of its service – the pleader has against an ***opposing party*** . . . .").  Although the Second Circuit does not recognize a difference, the appropriate mechanism for Defendant's claims is a third-party complaint.  While the Board of Trustees is a party to this action as a representative of the Plan, it is not a party to this action in its capacity as a fiduciary, and thus a third-party suit is the appropriate vehicle for bringing suit against the Board of Trustees here.  *See Cohen v. Baker*, 845 F. Supp. 289, 291 (E.D. Pa. 1994).  However, as is further detailed herein, a third party complaint should not be allowed because it would be futile.  Thus, dismissal should be with prejudice.

110, 113 (2d Cir. 2000).  Ripeness of an alleged claim is a jurisdictional prerequisite.  *See Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347-48 (2d Cir. 2005).[4]

Rule 12(b)(6) allows a plaintiff to challenge the legal sufficiency of a defendant's counterclaim in the same manner that defendant may challenge the sufficiency of a plaintiff's complaint.  *See generally Haddock v. Nationwide Fin. Servs.*, 570 F. Supp. 2d 355, 358 (D. Conn. 2008).[5]  In order to survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully," and "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Indeed, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Twombly*, 550 U.S. at 555.

## II.   Defendant Has Failed to State a Claim for Breach of Fiduciary Duty

### A.   Defendant Lacks Standing to Bring Such a Claim

Count I of Defendant's Cross-Claim ostensibly seeks to bring a claim for breach of fiduciary duty against Plaintiff on behalf of the Plan.  CC at ¶¶27-31.  However, Defendant lacks standing to bring such a claim because it pursues this claim solely for its own benefit.  Accordingly, this claim should be dismissed.[6]

---

[4]      The standards for dismissal under Fed R. Civ. P. 12(b)(1) and 12(b)(6) are identical.  *See Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003).

[5]      Internal quotations and citations are omitted, and emphasis is added, unless otherwise noted.

[6]      As an initial matter, Defendant has failed to provide a legal basis for its breach of fiduciary duty claim.  In Count I, Defendant fails to cite a provision under which Plaintiff can be held liable. CC at ¶¶27-31.  While Section 404(a)(1) – the ***only*** section cited by Defendant in this Count – sets

ERISA provides that any relief granted for ERISA violations must go to the Plan itself and ***not*** to individuals bringing suit for such violations. *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985) ("*Russell*"). Indeed, claims brought pursuant to ERISA must be made on behalf of the Plan as a whole, and ***not*** for the benefit of an individual participant, beneficiary or fiduciary. *See Russell*, 473 U.S. at 144 ("the entire text of §409 persuades us that Congress did not intend that section to authorize any relief except for the plan itself"); *see also BP Corp. N. Am. v. N. Trust Invs., N.A.*, 692 F. Supp. 2d 980, 984 (N.D. Ill. 2010) ("*BP*") (noting that in *Russell,* the Supreme Court "held quite clearly that the recovery for a violation of Section 409 must 'inure to the benefit of the plan as a whole' and 'Congress did not intend that section to authorize any relief except for the plan itself'") (quoting *Russell*, 473 U.S. at 140, 144)); *Haddock v. Nationwide Fin. Servs., Inc.*, No. 3:01cv1552, 2010 WL 2976910, at *3 (D. Conn. Jul. 23, 2010) ("*Haddock IV*") (noting that defendant's counterclaim "may be pursued if, and only if, it is solely in the interest of the [Plans'] participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries"); *Radutzky v. Wallert*, No. 87 C 4340, 1988 U.S. Dist. LEXIS 15152, at *7 (E.D.N.Y. Dec. 30, 1988) (dismissing counterclaims for joint and several liability that defendant fiduciary purported to bring on behalf of the plan under Section 409 because "in asserting plaintiff's joint and several liability, defendants [did] not seek to recover additional funds for the Funds. Rather, they [sought] to diminish their own exposure by apportioning some of the liability to plaintiffs."). Here, Defendant does not purport to bring its breach of fiduciary duty cross-claim for the benefit of the Plan

---

forth a fiduciary's duties, this provision does not provide for liability under ERISA. *See* 29 U.S.C. §1104(a)(1). Rather, statutory liability for breach of fiduciary duty under ERISA is governed by Section 409, 29 U.S.C. §1109. Although Defendant only vaguely references this provision in the Jurisdiction section of its Cross-Claim, Plaintiff will treat this claim as being brought pursuant to Section 409. CC at ¶11. This defect alone, however, warrants dismissal.

but rather clearly seeks to offset its own liability. *See, e.g.*, CC at ¶31 ("If BNYM or any affiliate is found liable, the equities in this require the Board of Trustees to bear their full share of responsibility for any alleged losses as a result of their own breaches of fiduciary duties to the IBEW Plan."). This is precisely the type of counterclaim that the District of Connecticut rejected in *Haddock IV* and is not permitted under *Russell*:

> Nationwide's theory of damages also makes little sense given its litigation posture as Plan fiduciaries. As I stated above, Nationwide is pursuing its counterclaim only in the event that it is found to have breached its fiduciary duty to the Plans; ***it is simply trying to pin its monetary liability on the Trustees.*** Nonetheless, Nationwide does not deny that it received the revenue sharing payments that the Trustees seek to disgorge, and does not contend that the Trustees received any personal benefits, other than perhaps better services and value for their Plans, from the purported revenue sharing scheme. ***Nationwide's position, therefore, is internally inconsistent.*** The defendants claim to represent the Plans' interests in their counterclaim against the Trustees; but, for Nationwide to reach its counterclaim, it must first be found to have breached its fiduciary duty and garnered the revenue sharing payment proceeds, the net profits of which would be deemed payable to the Plans. ***If the defendants were truly acting in the Plans' interests, it would seem that Nationwide, the possessor of the revenue sharing payments' net profits, should be the party that disgorges the monetary relief, and not the Trustees.***

*Haddock IV*, 2010 WL 2976910, at *7.

Similarly, if this Court finds that Defendant is liable for breaches of its fiduciary duties, the Plan and Plan participants will be made whole by the award against Defendant. Accordingly, as the only beneficiary of Defendant's breach of fiduciary duty claim would be Defendant itself, this claim is not permitted by ERISA and should be dismissed. *See Russell*, 473 U.S. at 144; *BP,* 692 F. Supp. 2d at 984; *Haddock IV*, 2010 WL 2976910, at *3; *Radutzky*, 1988 U.S. Dist. LEXIS 15152, at *7.

**B.     Defendant Fails to Allege Facts Demonstrating that Plaintiff Was a Fiduciary with Respect to the Investments at Issue**

Aside from Defendant's lack of standing to bring a claim against Plaintiff for breach of fiduciary duty, the claim is also implausible on its face because Defendant has not alleged facts to support that Plaintiff was a fiduciary with respect to the SLP assets. *See Twombly*, 550 U.S. at 570.

8

Under ERISA, a person is a fiduciary only to the extent he acts in a fiduciary capacity.  ERISA §3(21)(A) states:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. §1002(21)(A).  Under this provision, the Plaintiff is only a fiduciary to the extent that it selected the Defendant to be the Investment Manager of the Collateral.  Plaintiff's decision to delegate investment responsibilities to Defendant was based on Defendant's representations as to its 30 years of SLP experience without losses and advice of its Investment Consultant, Wurts and Associates.  *See* SAC at ¶22.  This delegation was permissible both under ERISA and various Plan documents, which Defendant does not dispute.  *See* 29 U.S.C. §1102(c)(3);[7] SAC at ¶47, Exs. C and D.[8]  Thus, in hiring Defendant as an investment fiduciary with the responsibility and expertise to invest the Collateral, Plaintiff fully and properly fulfilled its fiduciary duties.  *See* SAC at ¶¶ 13, 47.

---

[7]     Section 402(c)(3) of ERISA states that "a person who is a named fiduciary with respect to control or management of the assets of the plan may appoint an investment manager or managers to manage (including the power to acquire and dispose of) any assets of a plan."  29 U.S.C. 1102(c)(3).

[8]     The Agreement and Declaration of Trust of the Southern California IBEW-NECA Pension Plan ("Trust Agreement") provides that "Trustees may . . . allocate in whole or part the investment powers and authority herein set forth to a committee of Trustees, or delegate such powers and authority to an Investment Manager . . . . If an Investment Manager is appointed . . . no Trustee shall be liable for the Acts or omissions of the Investment Manager, and no Trustee shall be obligated to invest or otherwise manage any asset of the plan." SAC at ¶47.

In appointing Defendant as the Investment Manager[9] and agent for the Plan with respect to the SLP, the Board of Trustees allowed Defendant *full discretion* within the scope of the Agreement and the Guidelines.  SAC at ¶24.  Specifically, Defendant was "*authorized* and directed, *without obtaining any further approval* from Lender [the Plan], to invest and reinvest all or substantially all of the Cash Collateral received in any Approved Investment" (SAC, Ex. A at 6) and had "*full investment discretion*" within the scope of pre-determined Guidelines.  SAC, Ex. C at 1.  Thus, through the Board of Trustees' appointment of Defendant as Investment Manager with full discretionary authority, Defendant was the *sole* ERISA fiduciary with responsibility, authority, and control over the management or disposition of the Collateral and the Investments.  Accordingly, it is Defendant *and only* Defendant who is the ERISA fiduciary for the decisions it made as the Plan's Investment Manager to invest the Plan's Collateral in the Lehman floating rate notes.  As Plaintiff was not the investment fiduciary for the Collateral, it could not have breached any fiduciary duties to the Plan with respect to the SLP Collateral.

Despite this, Defendant alleges that Plaintiff breached its fiduciary duties to the Plan by failing to monitor and review Defendant's investment decisions, failing to notify Defendant of questions as to its investment decisions, and failing to notify Defendant of any "concerns" it had regarding Defendant's investments in Lehman.  CC at ¶¶29-30.  In such a way, Defendant attempts to hold Plaintiff liable for its discretionary acts as the appointed, sophisticated Investment Manager.

---

[9]     Defendant has acknowledged that it is the Plan's Investment Manager.  In executing the Guidelines, Defendant acknowledged that "As an authorized representative of Bank of New York, *provider of investment management services* to the Southern California I.B.E.W. – N.E.C.A. Defined Contribution Plan, I hereby acknowledge receipt on behalf of Bank of New York and agree on behalf of Bank of New York to *conduct investment management services* in accordance with the terms of this addendum *as well as the Investment Policy Statement* as set by the Board of Trustees".  *See* SAC at ¶35, Exhibit C.  Defendant has also admitted that it is an ERISA fiduciary to the Plan through its provision of securities lending services.  CC at ¶¶2, 10.

ERISA does not permit Defendant to shift its liability to Plaintiff in this manner.  Rather, under ERISA, once an Investment Manager is appointed by a named fiduciary (*i.e.*, the Board of Trustees), the named fiduciary cannot be held liable for the acts or omissions of the Investment Manager:

> The obligations of named fiduciaries with regard to their duty of care, however, can be reduced by the appointment of an investment manager under ERISA Section 402(c)(3).  Under Section 405(d)(1), once such an appointment has been made, ***the trustees cannot be held liable for any act or omission of that investment manager so far as the assets entrusted to the manager are concerned***.  The plain intent of this statutory structure is to allow plan trustees to delegate investment authority to a professional advisor who then becomes a fiduciary with a duty of care and duty of loyalty to the plan while the trustees' legal responsibilities regarding the wisdom of investments are correspondingly reduced.

*Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1219 (2d Cir. 1987); *see also Harris Trust & Sav. Bank v. Salomon Bros., Inc.*, 832 F. Supp. 1169, 1178 (N.D. Ill. 1993) (trustee or named fiduciary cannot be held liable for acts and omissions of appointed investment manager), citing, *inter alia*, 29 C.F.R. §2509.75-8, FR-14 Q&A ("Department of Labor stated that named fiduciaries can delegate managerial authority over plan assets to an investment manager, thereby ***releasing the named fiduciary*** from liability for the acts or omissions of the person to whom authority was delegated.") *and* H.R. Conf. Rep. No. 1280, 93rd Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 4639, 5038, 5082 (Congress explained that "as long as the named fiduciary had chosen and retained the investment manager prudently, the named fiduciary ***would not be liable*** for the acts or omissions of the manager); *Ulico Cas. Co. v. Clover Capital Mgmt, Inc.*, 217 F. Supp. 2d 311, 316 (N.D.N.Y. 2002) (fiduciary obligations of an investment manager require it to exercise independent professional judgment; "ERISA's purpose of clearly locating legal obligations will be vitiated if plaintiffs are required to engage in an after-the-fact sorting out of actions, statements and states of mind among possible fiduciaries to determine which is legally responsible").

11

Accordingly, as Plaintiff was not a fiduciary with respect to the Collateral and is not liable for Defendant's discretionary investment decisions, Defendant cannot state a claim against Plaintiff for breach of fiduciary duty, and thus it should be dismissed.

## III. Defendant Has Failed to State a Claim for Breach of Co-Fiduciary Duty under Section 405

Defendant next alleges that Plaintiff is liable as a co-fiduciary under Section 405 of ERISA. CC at ¶¶32-35.  As Plaintiff, through its appointment of Defendant as Investment Manager, was not a fiduciary with respect to the Collateral, it follows that it cannot be held liable for a breach of co-fiduciary duty, and that this claim fails as a matter of law.  However, even assuming *arguendo* that Plaintiff is a fiduciary with respect to the Collateral, Defendant has still failed to state a claim for breach of co-fiduciary duty as set forth below.

### A. Section 405(d) Forecloses Plaintiff's Liability under Sections 405(a)(2)-(3)

Section 405(a), which provides for co-fiduciary liability, states that "a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in three circumstances:

> (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach;
>
> (2) if, by his failure to comply with section 404(a)(1) [29 USCS §1104(a)(1)] in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or
>
> (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach."

29 U.S.C. §1105(a).

However, as further detailed above, Section 405 also ***limits*** a fiduciary's liability based on a co-fiduciary's misconduct if the co-fiduciary is an appointed investment manager:

> If an investment manager or managers have been appointed under section 402(c)(3) [29 USCS § 1102(c)(3)], then, notwithstanding subsections (a) (2) and (3) and

subsection (b), *no trustee shall be liable for the acts or omissions of such investment manager or managers, or be under an obligation to invest or otherwise manage any asset of the plan which is subject to the management of such investment manager*.

29 U.S.C. §1105(d). *Lowen*, 829 F.2d at 1219; *Harris*, 832 F. Supp. at 1178; *BP*, 692 F. Supp. 2d at 982 ("Where fiduciaries have appointed investment managers, they are insulated from liability pursuant to Section 405(a)(2)-(3).").

As detailed in Section II.B above and the SAC, Plaintiff appointed Defendant as Investment Manager for the Plan with respect to the SLP assets. Accordingly, under Section 405(d), Plaintiff is not liable for Defendant's acts or omissions and was not under an obligation to invest or otherwise manage any asset of the plan which was subject to management by Defendant. Thus, any claim by Defendant based on Sections 405(a)(2) and (3) is foreclosed. *See BP*, 692 F. Supp. 2d at 982.

**B.    Defendant Has Failed to Allege Sufficient Facts to Support a Claim Under Section 405(a)(1)**

As a result, assuming *arguendo* that Plaintiff is a fiduciary with respect to the Plan's SLP assets, Plaintiff's only potential liability to the Plan for Defendant's breaches of its fiduciary duty lies under Section 405(a)(1). *See* 29 U.S.C. §1105(d). Under Section 405(a)(1), a co-fiduciary may be liable *only* "if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach." *Id.* at §1105(a)(1). Section 405(a)(1) "requires *active participation* in a co-fiduciaries breach." *BP*, 692 F. Supp. 2d at 985 n.4.

As an initial matter, Defendant's Cross-Claim fails to state a claim under Section 405(a)(1) for breach of co-fiduciary duty as a matter of law because it is utterly devoid of allegations that Plaintiff knowingly participated in or undertook to conceal Defendant's breaches of fiduciary duty. 29 U.S.C. §1105(a)(1). Indeed, Defendant has denied that it breached its fiduciary duties to the Plan (CC at ¶¶4, 26), and its Cross-Claim simply alleges that to the extent Defendant is found liable for breaches of fiduciary duty, the Board of Trustees is also liable as a co-fiduciary. CC at ¶34. Thus, in and of itself,

13

Defendant's denial of liability demonstrates that Plaintiff could not possibly be an "active participant" in breaches of fiduciary duty that Defendant supposedly did not commit. Likewise, Defendant's Cross-Claim fails as a matter of law because it contains no allegations that Plaintiff actively participated in or concealed its imprudent investment decisions made in the exercise of its discretionary authority. *See BP*, 692 F. Supp. 2d at 985 n.4 (holding that a remedy under Section 405(a)(1) is unavailable because it requires active participation and defendant made no allegations that plaintiffs "somehow participated in the decisions to manage the Index Lending Funds or the collateral pools.").

Moreover, Defendant's Cross-Claim lacks sufficient factual content to allow the Court to draw an inference that Plaintiff was an active participant in Defendant's breaches of fiduciary duty. *See Iqbal*, 129 S. Ct. at 1949. Indeed, the SAC alleges that Defendant breached its fiduciary duties in the following manner: (1) maintaining the Plans' Collateral Investments in Lehman despite its knowledge as a sophisticated Investment Manager that Lehman's financial outcome was uncertain (SAC at ¶¶207-210); (2) acting in its own interests and not the Plans' by reducing its own Lehman exposure while at the same time failing to act to limit the Plains' exposure to the Investments (SAC at ¶¶211-212); (3) failing to diversify the Investments made with Plan assets and in so doing, increasing Plaintiff's risk of large losses (SAC at ¶213); and (4) failing to conduct independent due diligence regarding Lehman (SAC at ¶¶214-215). Yet, Defendant's Cross-Claim is wholly lacking in factual averments that Plaintiff knowingly participated in or undertook to conceal these breaches.

Indeed, rather than setting forth facts as to Plaintiff's active participation in Defendant's breaches of fiduciary duty, Defendant's claim for co-fiduciary duty appears to rest on vague allegations that Plaintiff failed to monitor or review Defendant's discretionary investment decisions with respect to the Collateral. For example, the Cross-Claim makes the following conclusory

allegation: "[t]he Board of Trustees had knowledge of, enabled, or participated knowingly in the failure to monitor and review the performance of BNYM with regard to the investment of securities lending collateral, and knowingly participating, enabling, and failing to remedy the investment – the purchase or maintenance of Lehman floating rate notes."  CC at ¶34.  This allegation is precisely the type rejected by the Supreme Court as a "naked assertion" devoid of any further factual enhancement. *Iqbal*, 129 S. Ct. at 1949.  Indeed, to the extent Defendant has alleged that Plaintiff had "knowledge" of its actions (*see* CC at ¶34), such allegations are nothing more than a formulaic recitation of an element of liability under Section 405(a)(1), wholly insufficient to meet Rule 8(a) pleading standards under *Iqbal*.  129 S. Ct. at 1949-50 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").[10]  Accordingly, Defendant's Cross-Claim is factually deficient and fatally defective under *Twombly* and *Iqbal*.  *See Twombly*, 550 U.S. at 570; *Iqbal*, 129 S.Ct. at 1949-50.

**IV.   Defendant's Contribution and Indemnification Claims Should Also Be Dismissed**

**A.   Defendant's Claims for Contribution and Indemnification Are Premature**

Similarly, Defendant has failed to state claims for contribution and indemnification.[11]  As an initial matter, Defendant's claims for contribution and indemnification are premature at this juncture as Defendant's liability for its breaches of fiduciary duty has not yet been determined.  Indeed, "[a]

---

[10]   Likewise, Defendant fails to plead facts demonstrating that Plaintiff participated knowingly in, or knowingly undertook to conceal, an act or omission of Defendant, ***knowing that such act or omission was breach***.  29 USC at §1105(a)(1).

[11]   Claims for contribution and indemnity are virtually identical and, accordingly, courts treat them interchangeably in their analysis.  *See Fedex Corp. v. N. Trust Co.*, No. 08-2827, 2010 WL 2836345, at *3 (W.D. Tenn. Jul. 16, 2010) (acknowledging that "[c]ontribution is essentially a subset of indemnity," and "treat[ing] the claims for contribution and indemnification interchangably and apply[ing] the same analysis").  To avoid duplication and for purposes of brevity, Plaintiff will address these claims collectively.

claim resting on contingent future events that may occur as anticipated or may not occur at all, is ***not ripe for adjudication***." *FSP, Inc. v. Societe Generale*, No.02 CV 4786, 2003 WL 124515, at *4 (S.D.N.Y. Jan. 14, 2003) (citing *Texas v. United States,* 523 U.S. 296, 300 (1998)).  "Claims concerning indemnification obligations . . . are not ripe for adjudication until liability has been imposed upon the party to be indemnified." *Id.*  Federal courts generally decline to award declaratory relief in indemnification actions.  *Solow Bldg. Co., LLC v. ATC Assocs.*, *Inc.*, 388 F. Supp. 2d 136, 139-40 (E.D.N.Y. 2005) (noting that decisions about indemnity should be postponed until the underlying liability has been established, because making any decision earlier would consume judicial time in order to produce a decision that may turn out to be irrelevant). *See also Travelers Prop. Cas. Corp. v. Winterthur Int'l*, 02 Civ. 2406, 2002 WL 1391920 (S.D.N.Y. June 25, 2002) (deciding that a declaratory judgment for indemnification was not ripe where the underlying liability had not yet been established).  Likewise, under New York law, an action for contribution or indemnification does not exist until the party seeking contribution or indemnification has made payment to a claimant. *McDermott v. City of N.Y.*, 428 N.Y.S.2d 643 (1980); *Mars Assocs., Inc. v. N. Y. City Educ. Constr. Fund*, 513 N.Y.S.2d 125 (N.Y. App. Div. 1987).  Here, Defendant's claims for contribution and indemnification are not ripe for adjudication as liability has not yet been imposed upon Defendant. *See Societe Generale*, 2003 WL 124515, at *4 (holding that "[t]he subject action is not justicable to the extent it seeks a declaration regarding defendant's obligation to defend and indemnify plaintiff with regard to potential, unfiled claims, and seeks reimbursement for losses arising from the eight filed actions and future, anticipated claims").  For this reason alone, Defendant's claims for contribution and indemnity should be dismissed under Fed. R. Civ. P. 12(b)(1).

**B.     There Is No Cause of Action for Contribution and Indemnification Under ERISA**

In any event, Defendant's claims for contribution and equitable indemnification are not valid claims under ERISA.  *See Williams v. Provident Inv. Counsel, Inc.*, 279 F. Supp. 2d 894, 899 (N.D. Ohio 2003) ("There is . . . almost universal acknowledgment that ERISA does not speak to, much less expressly authorize, a right of contribution among ERISA fiduciaries.").  Accordingly, in order to recognize a common law claim for contribution or indemnification, a court would have to imply remedies into ERISA's comprehensive statutory scheme.  Such an approach is contrary to that consistently espoused by the United States Supreme Court.

In *Russell*, the Supreme Court considered whether a fiduciary to an employee benefit plan could be held personally liable to a plan participant or beneficiary for extracontractual compensatory or punitive damages under ERISA.  473 U.S. at 136.  The Supreme Court held that there was no support for extracontractual compensatory or punitive damages in the text of the statute and thus no **express authority** for such damage awards.  *Id.* at 144.  Moreover, the Supreme Court determined that there was no **implied authority** for a cause of action for extracontractual compensatory or punitive damages under ERISA.  *Id.* at 148.  In so holding, the Supreme Court analyzed the structure of the ERISA statute and its legislative history and stated:

> The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted, however, ***provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly***. The assumption of inadvertent omission is rendered especially suspect upon close consideration of ERISA's interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a "comprehensive and reticulated statute."

*Id.* at 146.  The Supreme Court further held it was "reluctant to tamper with an enforcement scheme crafted with such evident care as the one in ERISA" and that "[w]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it."  *Id.* at 147.  Moreover, the Supreme Court noted that "[t]he presumption that a remedy was deliberately omitted from a

17

statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement." *Id.* at 147.

Moreover, since *Russell*, the Supreme Court has repeatedly refused to recognize other implied relief or remedies not included in ERISA's statutory provisions. *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 254-259 (1993) (reiterating its "unwillingness to infer causes of action in the ERISA context, since that statute's carefully crafted and detailed enforcement scheme provides strong evidence that Congress did ***not*** intend to authorize other remedies that it simply forgot to incorporate expressly," and holding that "[t]he authority of courts to develop a federal common law under ERISA is not the authority to revise the text of the statute.") (emphasis in original); *see also Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) (holding that ERISA Section 502(a)(3) did not authorize trustees to enforce reimbursement provision of an ERISA plan as an equitable remedy). Accordingly, Supreme Court precedent establishes that there is no express or implied authority for a cause of action for contribution or indemnity under ERISA.

While in *Chemung Canal Trust Co. v. Sovran Bank/Md.*, 939 F.2d 12, 16 (2nd Cir. 1991), a divided panel of the Second Circuit held that a defendant in an ERISA case may bring claims for contribution and indemnity pursuant to the federal common law of ERISA, *Chemung* is no longer good law. Its holding cannot survive the Supreme Court's decisions in *Mertens* and *Great-West*. The Second Circuit itself has reached the same conclusion with respect to a companion case to *Chemung*. Indeed, following its issuance of the *Chemung* opinion, the Second Circuit issued an opinion in *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 280-81 (2nd Cir. 1992). In *Diduck*, the Second Circuit considered whether a court may impose liability against a non-fiduciary for breach of fiduciary duties under ERISA. *Id.* at 279. The Second Circuit relied on *Chemung* in holding that although no such implied right of action existed under ERISA, courts could find a need for

"interstitial lawmaking" and imply such a cause of action under the federal common law. *Id.* at 280-81. Thus, the Second Circuit's decisions in both *Diduck* and *Chemung*, were premised on the idea that courts can engage in interstitial lawmaking to fill in gaps in the remedies provided by ERISA.

The Second Circuit has since recognized that this precise aspect of its opinion in *Diduck* – which also underlies *Chemung* – did not survive subsequent Supreme Court holdings, including those of *Mertens* and *Great-West*. In *Gerosa v. Savasta & Co., Inc.*, 329 F.3d 317, 322 (2nd Cir. 2003), the Second Circuit stated:

> *We think, however, that this aspect of Diduck has not survived subsequent Supreme Court determinations.* In *Mertens*, the Court rejected the central holding of *Diduck*, finding that non-fiduciaries who knowingly participate in a fiduciary breach cannot be liable for ordinary money damages. In rejecting several arguments based on ERISA's general purposes, *the Court emphasized ERISA's comprehensiveness, as well as the clear text of the ERISA civil remedies provisions, which in combination it argued provided strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly. Twice in its most recent term, the Court has repeated its belief that ERISA's express remedies, as the product of long and careful study and compromise, should remain exclusive. We see little room in this framework for judicially-created, "interstitial" remedies*.

*Id.* Moreover, the Second Circuit rejected the district court's attempts to distinguish *Mertens* and *Great-West*, finding that:

> Nor are we convinced by the District Court's efforts to distinguish *Mertens* and *Great-West*. The arguments it offers, although quite thoughtful, are ultimately not in keeping with the Supreme Court's directives. . . . Great-West is quite explicit, however, that it is . . . *not our job to find reasons for what Congress has plainly done.* That comment, taken in the context of other recent Court opinions applying a strong presumption that creation of an express remedy clearly forecloses others, makes evident that *we are no longer free to fill in unwritten gaps in ERISA's civil remedies.* Accordingly, . . . the Supreme Court has instructed that it is not for us to decide the best ERISA remedial scheme.

*Id.*

As *Diduck* and *Chemung* are both based on interstitial remedies, it is evident that the Second Circuit's holding in *Gerosa* that "the limited text of ERISA's civil remedies is inconsistent with judicial discovery of new liabilities," applies with equal force to *Chemung. See id.* at 323 n.6. The

Eight Circuit – in the only appellate decision directly addressing the issue of contribution or indemnification claims after the Supreme Court's decisions in *Great-West* and *Mertens* – has also acknowledged as much. *See Travelers Cas. and Sur. Co. of Am. v. IADA Servs., Inc.*, 497 F.3d 862, 867 (8th Cir. 2007). In reaching its holding that claims for contribution or indemnification may not be brought under ERISA, the Eighth Circuit found that *Chemung* was no longer supportable:

> Since the Second Circuit's decision in *Chemung Canal*, moreover, the Supreme Court has reiterated more than once its admonition that notwithstanding the authority to fashion certain rules of federal common law under ERISA, the statute's "carefully crafted and detailed enforcement scheme provides strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly."

*Travelers*, 497 F.3d at 866 (emphasis in original).

The Eighth Circuit is not alone in its determination. Rather, it is one of many courts nationwide that has held that claims for contribution or indemnification may not be brought under ERISA. Indeed, the Ninth Circuit has precluded such claims. *See Kim v. Fujikawa*, 871 F.2d 1427, 1432 (9th Cir. 1989) (holding that there is no right to contribution or indemnity under ERISA).[12] District courts across the country have also rejected a cause of action for contribution or indemnification under ERISA. *See, e.g.*, *FedEx Corp.*, 2010 WL 2836345, at *4 (holding that ERISA does not include a right of contribution); *Openshaw v. Cohen, Klingenstein & Marks, Inc.*, 320 F. Supp. 2d 357, 364 (D. Md. 2004) (dismissing defendant's counterclaim for contribution because "ERISA's structure counsels against the creation of a cause of action for contribution"); *Williams*, 279

---

[12] The Fourth Circuit has similarly stated that "Federal common law, however, does not grant federal courts 'carte blanche authority . . . to re-write a federal statute.'" *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 58 (4th Cir. 1992) (quoting *Provident Life & Accident Ins. Co. v. Waller*, 906 F.2d 985, 992 (4th Cir. 1990)). The First Circuit has held that "courts are careful not to allow federal common law to rewrite ERISA's carefully crafted statutory scheme, and recognize that federal common law will only give rise to a claim pursuant to ERISA in the limited class of cases 'where the issue in dispute is of central concern to the federal statute.'" *State St. Bank and Trust Co. v. Denman Tire Corp.*, 240 F.3d 83, 89 (1st Cir. 2001).

F. Supp. 2d at 900 ("Congress did not intend the courts to create a right of contribution among ERISA

co-fiduciaries."). [13]

      **C.**     **Even if the Court Were to Recognize a Cause of Action for Contribution or Indemnification, These Claims Should Be Dismissed Under Applicable Trust Law**

             **1.**     **Defendant Has Failed to Allege that the Board of Trustees Received any Benefit from the Breach of Trust**

Even if the remedies of contribution and equitable indemnification are available, the Second

Circuit has stated that trust law and the Restatement (Second) of Trusts §258 (1959) govern such

claims. *Chemung*, 939 F.2d at 16. Under the Restatement (Second) of Trusts §258, where two

fiduciaries breach their duties but only one receives any benefit, ***no claim for indemnification or

contribution lies against the fiduciary who received no benefit***. *See* Restatement (Second) of Trusts

§258(1)(b); *see also Haddock v. Nationwide Fin. Servs.*, 570 F. Supp. 2d 355, 364 (D. Conn. 2008)

("*Haddock III*") (holding that defendant had no right, as a matter of law, to seek contribution or

indemnification for a damages award arising out of revenue sharing payments from trustees in the

absence of any allegation that the Trustees directly benefitted in some way from the revenue sharing

payments). Here, Defendant does not, and cannot, plead facts to support that the Board of Trustees

received any benefit from Defendant's alleged breaches. Indeed, the Board of Trustees were

volunteers who received ***no*** compensation for their work in this capacity. *See* SAC at ¶47. Only

---

[13]     *See also Toledo Blade Newspaper Unions-Blade Pension Plan v. Inv. Performance Servs., LLC*, 448 F. Supp. 2d 871, 875 (N.D. Ohio 2006); *Plumbers Local 93 Health and Welfare and Pension Fund v. DiPietro Plumbing Co.*, No. 94 C 7378, 1999 U.S. Dist. Lexis 6913, at *15 (N.D. Ill. Apr. 30, 1999); *Int'l Bhd. of Painters & Allied Trades Union and Indus. Pension Plan v. Duval*, Civ. A. 92-1099, 1994 WL 903314 (D.D.C. April 14, 1994); *Schloegel v. Boswell,* 766 F. Supp. 563, 569 (S.D. Miss. 1991); *Hollingshead v. Burford Equip. Co.,* 747 F. Supp. 1421, 1445 (M.D. Ala. 1990); *Aks v. Southgate Trust Co.*, Civil Action No. 92-2193, 1992 U.S. Dist. LEXIS 20442, at *38-*40 (D. Kan. Dec. 24,1992); *Franklin v. Aetna Life Ins. Co.*, C/A No. 7:87-3384-17, 1988 U.S. Dist. LEXIS 10842, at *2-*11 (D.S.C. July 18, 1988).

Defendant received a benefit from its breach in that it received 40% of the profits made from the Collateral investments, although it bore none of the risk of loss.  SAC at ¶29.  The remaining 60% of any profits went to the Plan, not to the Board of Trustees.  *Id.*  Accordingly, under the Restatement (Second) of Trusts §258(1)(b), Defendant is not entitled to indemnity or contribution from Plaintiff for the Plan's losses.  Indeed, to allow it to seek contribution from Plaintiff would "permit it to retain some of the benefit of its breach, which is contrary to the principles of the law of trusts."  *Haddock III*, 570 F. Supp. 2d at 364.

### 2.    Defendant's Cross-Claim Fails to Set Forth Facts to Infer that Plaintiff is "Substantially More at Fault" than Defendant

Additionally, Defendant has not set forth facts to infer that Plaintiff is substantially more at fault then Defendant and, thus, under applicable trust principles, Defendant is not entitled to contribution.  *See BP*, 692 F. Supp. 2d at 985 (holding that even if ERISA allowed for indemnification between co-fiduciaries, such a right was limited to circumstances in which a passive trustee seeks indemnification from a more culpable active trustee).  Under the Restatement (Second) of Trusts §258(1)(a), "if one [fiduciary] is substantially more at fault than the other, he is not entitled to contribution from the other. . . ."  Indeed, comment d to this Section provides in pertinent part that:

> Where a breach of trust is committed and one of two trustees is substantially more at fault than the other, although both are liable to the beneficiary for the breach of trust, *the loss should ultimately be borne by the trustee who is more at fault.*

> In determining whether one trustee is so substantially more at fault that he should bear the whole of the loss resulting from a breach of trust, the following factors are to be considered: (1) whether he fraudulently induced the other to join in the breach of trust; (2) whether he intentionally committed a breach of trust and the other was at most guilty of negligence; (3) *whether because of his greater experience he controlled the conduct of the other, as in the case where he was an attorney and the other was a person without business experience who was accustomed to rely upon his judgment*; (4) *whether he alone committed the breach of trust and the other is liable only because of an improper delegation, or failure to exercise reasonable care to prevent him from committing a breach of trust, or neglect to take proper steps to compel him to redress the breach of trust.*

Restatement (Second) of Trusts §258, comment d.

Defendant's Cross-Claim attempts to meet this requirement of trust law by alleging that Plaintiff is "substantially more at fault" than Defendant because Plaintiff "approved, ratified, and acquiesced" Defendant's investments of securities lending collateral (CC at ¶¶18-19, 25), failed to object to Defendant's investments and direct their liquidation (CC at ¶26), and failed to monitor and review Defendant's investment of Collateral (*id.*).  As with Defendant's other claims, this argument turns the provisions of ERISA on their head.  Indeed, Defendant has failed to set forth any factual content supporting the "naked assertion" that the Board of Trustees is substantially more at fault than Defendant for investment decisions it made pursuant to its discretionary authority as Plaintiff's Investment Manager.  *Twombly*, 550 U.S. at 570; *Iqbal*, 129 S. Ct. at 1949.

At best, Defendant's conclusory allegations concerning Plaintiff's conduct are nothing more than allegations of ***nonfeasance***, insufficient to demonstrate that Plaintiff was substantially more at fault than Defendant.  *See BP*, 692 F. Supp. 2d at 985 (rejecting defendants' counterclaim and finding that they were unable to seek indemnification from plaintiffs because the allegations were based on acts of ***nonfeasance*** and ***not malfeasance***).[14]  In sharp contrast, Defendant's own allegations establish that its conduct in making and maintaining the Investments were acts of ***malfeasance***.  Indeed,

---

[14]      *See also Scalp & Blade, Inc. v. Advest, Inc.*, 755 N.Y.S.2d 140 (N.Y. App. Div. 2002) (citing Restatement [Second] of Trusts § 258) (investment advisor who was delegated investment authority by trustees, and who was also a member of the board of trustees, was not entitled to contribution from fellow trustees for alleged mismanagement of the trust fund because he was "substantially more at fault for the investment losses sustained by plaintiffs," and because he was the "one who benefitted from the investment activity"); *Harris Trust and Savs. v. John Hancock Mut. Life Ins. Co.*, 122 F. Supp. 2d 444, 464 (S.D.N.Y. 2000) ("Hancock was substantially more at fault than its co-fiduciaries; it therefore is not entitled to contribution"), *modified in part on other grounds*, 137 F. Supp. 2d 351 (S.D.N.Y. 2001), *rev'd in part on other grounds*, 302 F.3d 18 (2d Cir. 2002); *Sunderlin v. First Reliance Standard Life Ins. Co.*, 235 F. Supp. 2d 222, 237 (W.D.N.Y. 2002) (holding that employer who failed to provide a summary plan description was "substantially more at fault" than co-defendant insurance company because the employer's own actions caused plaintiff's damages).

Defendant has admitted that it made and maintained all of the Investments pursuant to its discretionary authority as a sophisticated Investment Manager for the Plan.  CC at ¶2.  Accordingly, these allegations fail to pass muster.

## V.      Conclusion

For the reasons set forth herein, Defendant has failed to state a cross-claim upon which relief can be granted and, accordingly, the Court should grant Plaintiff's Motion to Dismiss Defendant's Cross-Claim with prejudice because any proposed amendments to the Cross-Claim would be futile.

### MOTION TO STRIKE DEFENDANT'S AFFIRMATIVE DEFENSES

Plaintiff moves pursuant to Fed. R. Civ. P. 12(f) to strike Defendant's affirmative defenses from its Answer to Second Amended Complaint and Cross-Claim.  For each affirmative defense, Defendant has failed to satisfy the standard for pleading an appropriate affirmative defense.  First, not a single affirmative defense, as pled, has put Plaintiff on notice of the basis for the defense. *Shechter v. Comptroller of City of N.Y.*, 79 F.3d 265, 270 (2d Cir. 1996) (striking affirmative defense; noting that affirmative "defenses which amount to nothing more than mere conclusions of law and are not warranted by any asserted facts have no efficacy"); *see FSP, Inc. v. Societe Generale*, No. 02CV4786GBD, 2005 WL 475986, at *8 (S.D.N.Y. Feb. 28, 2005) ("[a] motion to strike an affirmative defense, pursuant to Fed.R.Civ.P. 12(f), is also governed by the same standard applicable to a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6).").  Boilerplate affirmative defenses that provide little or no factual support can have the same detrimental effect on the cost of litigation as poorly worded complaints. *See Shinew v. Wszola,* Civil Action No. 08-14256, 2009 WL 1076279 at *1-*3 (E.D. Mich. Apr. 21, 2009).

For others, including affirmative defenses numbers 6, 9, 10, 11, 12, 13, 19, and 20, even assuming certain facts, the defenses are either improper or legally baseless.  In each of these defenses, Defendant attempts to shift liability to Plaintiff for various breaches of the Board of Trustees' duties

to the Plan, which is irrelevant to whether BNY Mellon is liable for its own claim of breach of fiduciary duty and, moreover, unacceptable under the tenets of ERISA law.  *See Lowen*, 829 F.2d at 1219 (declining to permit defendant to shift its ERISA liability to plaintiff); *Ulico Cas. Co.*, 217 F. Supp. 2d at 316 (fiduciary obligations of an investment manager require it to exercise independent professional judgment; "ERISA's purpose of clearly locating legal obligations will be vitiated if plaintiffs are required to engage in an after-the-fact sorting out of actions, statements and states of mind among possible fiduciaries to determine which is legally responsible").  These defenses are, therefore, futile, contradictory and should be stricken.

To allow the affirmative defenses to remain in the litigation as pled will cause undue prejudice to Plaintiff, as the purpose of requiring affirmative defenses to be pleaded is to avoid surprise and to give Plaintiff an opportunity to respond.  Accordingly, for the reasons stated herein, Plaintiff respectfully requests the entry of an order striking Defendant's affirmative defenses or, at a minimum, requiring that Defendant provide additional factual support sufficient to put Plaintiff on notice of the basis for each defense it raises.

For the foregoing reasons, the Court should grant Plaintiff's motion to strike affirmative defenses pursuant to Fed. R. Civ. P. 12(f).  To the extent the Court declines to strike certain defenses, Plaintiff respectfully requests that Defendant be ordered to amend the remaining defenses to include a sufficient factual basis for its assertions.

DATED:  December 20, 2010

ROBBINS GELLER RUDMAN
  & DOWD LLP
PAUL J. GELLER (*pro hac vice*)
STEPHEN R. ASTLEY (*pro hac vice*)
ELIZABETH A. SHONSON (*pro hac vice*)
SABRINA E. TIRABASSI (*pro hac vice*)


_____
        */s/ Stephen R. Astley*
STEPHEN R. ASTLEY

120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

**Attorneys for Plaintiff and Proposed Class**

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on December 20, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

_____/s/ Stephen R. Astley_____
STEPHEN R. ASTLEY
