**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

THE BOARD OF TRUSTEES OF THE SOUTHERN
CALIFORNIA IBEW-NECA DEFINED CONTRIBUTION
PLAN, *on behalf of itself and all others similarly situated*,

                               Plaintiffs,

      vs.

THE BANK OF NEW YORK MELLON CORPORATION,
*et al.*,

                               Defendants.

09-CV-6273 (RMB) (AJP)

**DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION**
**TO PLAINTIFFS' MOTION TO DISMISS DEFENDANTS'**
**CROSS-CLAIM AND STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES**

BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York , New York  10022
Telephone:  (212) 446-2300

*Attorneys for Defendants The Bank of New York*
*Mellon Corporation and BNY Mellon, N.A.*

January 10, 2011

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................................1

RELEVANT BACKGROUND ...................................................................................2

LEGAL STANDARD ...............................................................................................4

ARGUMENT ............................................................................................................4

    I.    The Bank Of New York Mellon Has Stated A Claim For Breach of Fiduciary
        Duty.................................................................................................................4

        A.    BNYM Has Standing to bring A Claim Against the Board of
                Trustees, on Behalf of the IBEW Plan, For Breach of Fiduciary
                Duty ................................................................................................4

        B.    The Board of Trustees is a Fiduciary with Respect to the
                Investments at Issue.......................................................................6

        C.    The Board of Trustees Breached its Fiduciary Duties.............................8

    II.    The Bank Has Stated A Claim for Breach of Co-Fiduciary Duty .............................9

    III.    The Bank Has Alleged Claims For Equitable Indemnification and
         Contribution under ERISA ...............................................................................11

        A.    The Bank's Claims for Equitable Indemnification and Contribution
                are Ripe for Adjudication .......................................................................11

        B.    ERISA Provides For the Remedy of Contribution and
                Indemnification ..............................................................................14

        C.    The Bank's Claims for Indemnification and Contribution are
                Further Supported By Applicable Trust Law...........................................18

              1.    The Bank Has Alleged that the Board of Trustees is
                      Substantially More at Fault or of Equal Fault .............................18

               2.    The Bank Does Not Need To Allege That the Board of
                      Trustees Received A Benefit .......................................................20

    IV.    The Court Should Deny the Board of Trustees' Motion To Strike
         Defendant's Affirmative Defenses ........................................................................20

CONCLUSION.............................................................................................................22

## <u>TABLE OF AUTHORITIES</u>

<u>Cases</u>

*Aga Correa & Son v. Nautical Gold Creations*,
    No. 05 Civ. 624, 2005 WL 823927 (S.D.N.Y. Apr. 6, 2005) ................................... 21, 22

*Agway, Inc., Emps.' 401(k) Thrift Inv. Plan v. Magnuson*,
    No. 03-CV-1060, 2006 WL 2934391 (N.D.N.Y. Oct. 12, 2006) .................................... 8

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) ................................................................................................... 4

*Atwood v. Burlington Indus. Equity, Inc.*,
    No. 92CV00716, 1994 WL 698314 (M.D.N.C. Aug. 3, 1994) ........................................ 9

*Barry v. Trustees of Int'l Ass'n Full-Time Salaried Officers &*
    *Employees of Outside Local Unions & District Counsel's Pension Plan*,
    404 F. Supp. 2d 145 (D.D.C. 2005) ............................................................................... 7

*Bell Atl. Corp. v. Twombley*,
    550 U.S. 544 (2007) ....................................................................................................... 4

*Book v. Moulton*,
    No. 05 CV 0875, 2005 WL 3307361 (N.D.N.Y. Dec. 6, 2005) .................................... 21

*Bouboulis v. Transp. Workers Union of Am.*,
    442 F.3d 55 (2d Cir. 2006) ............................................................................................ 6

*BP Corp. N. Am. Inc. Sav. Plan Inv. Oversight Comm. v. N. Trust Invs.*,
    692 F. Supp. 2d 980 (N.D. Ill. 2010) .......................................................................... 10

*Breedlove v. Cabou*,
    296 F. Supp. 2d 253 (N.D.N.Y. 2003) ......................................................................... 21

*Byas v. N.Y. City Dep't of Corr.*,
    173 F.R.D. 385 (S.D.N.Y. 1997) ................................................................................. 21

*Chacko v. Dynair Servs., Inc.*,
    No. 96 CV 2220, 1998 WL 199866 (E.D.N.Y. Mar. 15, 1998) ................................... 21

*Chambers v. Time Warner, Inc.*,
    282 F.3d 147 (2d Cir. 2002) .......................................................................................... 4

*Chemung Canal Trust Company v. Sovran Bank/Maryland*,
    939 F.2d 12 (2d Cir. 1991) .............................................................. 5, 14, 15, 16, 17, 18

*DiFolco v. MSNBC Cable, L.L.C.*,
   622 F.3d 104 (2d Cir. 2010)..........................................................................................4

*Firestone Tire & Rubber Co. v. Bruch*,
   489 U.S. 101 (1989) ...................................................................................................15

*FSP, Inc. v. Société Générale*,
   No. 02 CV 4786, 2003 WL 124515 (S.D.N.Y. Jan. 14, 2003) .......................................13

*Gerosa v. Savasta & Co*,
   329 F.3d 317 (2d Cir. 2003).................................................................................. 16, 17

*Great-West Life & Annuity Ins. Co. v. Knudson*,
   534 U.S. 204 (2002) ........................................................................................ 14, 15, 16

*Haddock v. Nationwide Fin. Servs., Inc.*,
   No. 01cv1552, 2010 WL 2976910 (D. Conn. July 23, 2010)....................................5, 17

*Haddock v. Nationwide Fin. Servs., Inc.*,
   570 F. Supp. 2d 355 (D. Conn. 2008).........................................................................5, 18

*Harley v. Minn. Mining & Mfg. Co.*,
   42 F. Supp. 2d 898 (D. Minn. 1999) .............................................................................9

*Harris Trust and Sav. Bank v. Salomon Bros.*,
   832 F. Supp. 1169 (N.D. Ill. 1993)................................................................................7

*In re AEP ERISA Litig.*,
   327 F. Supp. 2d 812 (S.D. Ohio 2004) .......................................................................10

*In re CMS Energy ERISA Litig.*,
   312 F. Supp. 2d 898 (E.D. Mich. 2004) .....................................................................10

*In re GCO, LLC*,
   324 B.R. 459 (Bankr. S.D.N.Y. 2005)..................................................................10, 14

*In re Masters Mates & Pilots Pension Plan & IRAP Litig.*,
   957 F.2d 1020 (2d Cir. 1992).......................................................................................14

*Jones v. Trevor, Stewart, Burton & Jacobsen, Inc.*,
   No. 90CV420, 1992 WL 252137 (N.D. Ga. Aug. 21, 1992)..........................................14

*Kramer v. Lockwood Pension Servs., Inc.*,
   653 F. Supp. 2d 354 (S.D.N.Y. 2009) ....................................................................12, 13

*Leigh v. Engle*,
    727 F.2d 113 (7th Cir. 1984) ............................................................................9

*Liss v. Smith*,
    991 F. Supp. 278 (S.D.N.Y. 1998) ..................................................................9

*Lowen v. TowerAsset Mgmt., Inc.*, 653 F. Supp. 1542 (S.D.N.Y. 1987)
    *aff'd,* 829 F.2d 1209 (2d Cir. 1987) ............................................................6, 8

*Massachusetts Mutual Life Insurance Co. v. Russell*,
    473 U.S. 134 (1985) .......................................................................... 5, 14, 16, 17

*Mertens v. Hewitt Assocs.*,
    508 U.S. 248 (1993) ............................................................................. 14, 16, 17

*Muller v. Walt Disney Prods.*,
    876 F. Supp. 502 (S.D.N.Y. 1994) ................................................................12

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*,
    461 U.S. 190 (1983) ......................................................................................12

*Pilot Life Ins. Co. v. Dedeaux*,
    481 U.S. 41 (1987) ................................................................................. 14, 15

*Schoenholtz v. Doniger*,
    No. 83 Civ. 2740, 1984 WL 374 (S.D.N.Y. May 4, 1984) ..............................4

*Scipar Inc. v. Simses*,
    No. 07CV63A, 2008 WL 3851817 (W.D.N.Y. Aug. 15, 2008) .....................12

*Site-Blauvelt Eng'rs, Inc. v. First Union Corp.*,
    153 F. Supp. 2d 707 (E.D. Pa. 2001) ............................................................14

*Smith v. Local 819 I.B.T. Pension Plan*,
    291 F.3d 236 (2d Cir. 2002) ..........................................................................14

*Solow Bldg. Co. v. ATC Assocs.*,
    388 F. Supp. 2d 136 (E.D.N.Y. 2005) ..........................................................13

*Travelers Cas. & Sur. Co. of Am. v. IADA Servs., Inc.*,
    497 F.3d 862 (8th Cir. 2007) .................................................................. 17, 18

*Varity Corp. v. Howe*,
    516 U.S. 489 (1996) ......................................................................................15

*Youngberg v. Bekins Co.*,
    930 F. Supp. 1396, 1399-400 (E.D. Cal. 1996) ...............................................14

## **Statutes**

29 U.S.C. § 1001 ............................................................................................................1

29 U.S.C. § 1002 .......................................................................................................6, 7

29 U.S.C. § 1104 ............................................................................................................8

29 U.S.C. § 1105 .......................................................................................................9, 10

29 U.S.C. § 1109 ............................................................................................................5

29 U.S.C. § 1132 ............................................................................................................4

## **Rules**

Fed. R. Civ. P. 8 ...................................................................................................4, 21, 22

## **Other Authorities**

Restatement (Second) of Trusts (1959) § 258 ............................................... 18, 19, 20

Defendants Bank of New York Mellon Corporation and BNY Mellon, N.A. (together, the "Bank") and Cross-Claim Plaintiff Bank of New York Mellon ("BNYM")[1] submit this Memorandum of Law in Opposition to the Motion to Dismiss Defendant's Cross-Claim and the Motion to Strike Defendant's Affirmative Defenses of the Board of Trustees of the Southern California IBEW-NECA Defined Contribution Plan (the "Plaintiff" or the "Board of Trustees").

## PRELIMINARY STATEMENT

As alleged in the Cross-Claims, to the extent that the allegations in the Second Amended Complaint state a claim for breach of fiduciary duty against the Bank, there can be no doubt that Plaintiff breached its own fiduciary duties to the Southern California IBEW-NECA Defined Contribution Plan (the " IBEW Plan").  The Board of Trustees' Motion to Dismiss the Bank of New York Mellon's Cross-Claims contains a series of "duck and cover" maneuvers seeking to pin liability on the Bank, while illogically disclaiming any possibility that the Board of Trustees is liable for its breach of fiduciary duties. *First,* the Board of Trustees attempts to escape liability for its own breaches of fiduciary duties by asserting that it is not a fiduciary with respect to the investments at issue, despite the fact that it exercised discretion and authority over the Bank's investment activities. *Second*, the Board of Trustees contends that it has no co-fiduciary liability because it appointed the Bank as its investment manager despite the fact that the Employees Retirement Security Act, 29 U.S.C. §§ 1001 *et seq.* ("ERISA") does not provide such an absolute shield. *Third,* in clear contravention of Second Circuit law, the Board of Trustees

---

[1] We have informed Plaintiff that it has incorrectly named the Bank of New York Mellon Corporation and BNY Mellon, N.A. as Defendants in this action.  The Bank of New York Mellon (a state-chartered bank) is the entity that provides securities lending services to the IBEW Plan.  We have also informed Plaintiff that we will not oppose its request to amend the complaint to name the proper party.  Thus, the cross-claim is brought on behalf of Bank of New York Mellon, the proper party in this action.

asserts that BNYM cannot state claims for indemnification or contribution under ERISA.  None of these contentions shields Plaintiff from liability for breaches of its fiduciary duties.

## RELEVANT BACKGROUND

The Board of Trustees serves as a named fiduciary of the IBEW Plan.  In that capacity, the Board of Trustees has overall authority and control over the investment of assets of the IBEW Plan.  *See* Defs.' Cross-Claims dated Oct. 8, 2010 ("CC") ¶ 1.  In 1998, the Board of Trustees entered into a Securities Lending Agreement (the "Agreement")[2] with the Bank, pursuant to which the Bank agreed to act as the Board of Trustees' agent and lend securities owned by the IBEW Plan to "approved 'credit-worthy' borrowers" (the "Loaned Securities").  *See* Second Am. Compl. dated Sept. 21, 2010 (the "SAC" or "Second Amended Complaint") ¶¶ 23, 24.  In a lending transaction, the Bank, as agent for the Board of Trustees, collects collateral from a borrower worth at least 102% of the market value of the Loaned Securities (the "Collateral").  *Id.* ¶ 25.  The Agreement requires the Bank to invest the entire cash portion of the IBEW Plan's Collateral in "Approved Investments" in accordance with the terms of the Agreement's "Securities Lending Guidelines"[3] (the "Guidelines") and "Investment Policy Statement"[4] (the "IPS") set by the Board of Trustees.  *Id.* ¶ 31.

Under the Agreement, the Bank must adhere to the Guidelines "unless explicitly authorized in writing by the Board of Trustees to do otherwise."  *See* Agreement at 1.  The Guidelines required the Bank to invest the Collateral in "Fixed Income Securities," which "shall" be composed of securities in each of several sub-categories.  *Id.*  In addition, the Agreement reserved to the Board of Trustees the power to prohibit the Bank from investing "with particular

---

[2] The Agreement is attached as Exhibit A to the Second Amended Complaint.

[3] The Guidelines is attached as Exhibit C to the Second Amended Complaint.

[4] The IPS is attached as Exhibit D to the Second Amended Complaint.

financial institutions or issuers" by delivering a written notice to the Bank with appropriate instructions. *Id.* Art. IV.2(b). The Board also retained the right to terminate the Agreement "without penalty" to the IBEW Plan on five days' written notice. *Id.* Art. IV.3.

Pursuant to the Guidelines and the IPS, the Bank invested the Collateral in a separate account that only contained the Plan's Collateral and investments. CC ¶ 18. The Board of Trustees knew that the separate account acquired and held Lehman floating rate notes. CC ¶ 19. At all times, the Board of Trustees had a fiduciary duty to the IBEW Plan to the extent that it exercised discretion and authority over the Collateral: it was required to act as prudently in directing and establishing the Guidelines for the investment of the Collateral, for monitoring the investment of the Collateral, and for directing the Bank to preclude or terminate investments when necessary. CC ¶ 20-23.

On September 21, 2009, the Board of Trustees brought a putative class action against the Bank in an attempt to recoup an alleged loss in the wake of unprecedented events of the financial crisis. The Board of Trustees claims that the Bank violated ERISA, alleging that the Bank breached its fiduciary duties by acquiring and maintaining Lehman floating rate notes. SAC ¶¶ 207-215. The Board of Trustees alleged that the Bank should never have invested the Collateral in Lehman floating rate notes and that based on publicly available information, the Bank should have known to liquidate those investments in Lehman floating rate notes before Lehman's collapse. *Id.*

If any of these allegations are found to be true – which the Bank denies – then the Board of Trustees, by necessary extension, also committed a primary and active breach of fiduciary duty. CC ¶ 26.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 8, a pleading is only required to give "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).  To survive a motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombley*, 550 U.S. 544, 570 (2007).  A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1950 (2009).  Furthermore, in considering a motion to dismiss for failure to state a claim, a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint. *DiFolco v. MSNBC Cable, L.L.C.*, 622 F.3d 104, 111 (2d Cir. 2010) (citing *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

## ARGUMENT

**I.      The Bank Of New York Mellon Has Stated A Claim For Breach of Fiduciary Duty**

**A.      BNYM Has Standing to bring A Claim Against the Board of Trustees, on Behalf of the IBEW Plan, For Breach of Fiduciary Duty**

Contrary to the Board of Trustees' assertion, BNYM brings this action on behalf of the IBEW Plan for the benefit of the IBEW Plan.  It is well established that a fiduciary may bring an action, on behalf of a plan, for another fiduciary's breach of duties to the plan. *See Schoenholtz v. Doniger*, No. 83 Civ. 2740, 1984 WL 374, at *4 (S.D.N.Y. May 4, 1984); *see also* 29 U.S.C. § 1132(a)(3) ("A civil action may be brought by a participant, beneficiary or fiduciary (A) to enjoin any act or practice which violates any provision of [ERISA] or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of [ERISA] or the terms of the plan.").

4

The Board of Trustees contends that BNYM brings this action on BNYM's own behalf and the Supreme Court has foreclosed ERISA claims brought by plaintiffs for its own benefit. *See* Pls.' Mot. & Incorporated Memo. of Law to Dismiss Defs.' Cross-Claim & Strike Def.' Affirmative Defenses ("MTD") at 7.  The Board of Trustees cite to *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134 (1985) ("*Russell*"), where the Supreme Court held that an individual participant, beneficiary or fiduciary may not bring a claim pursuant to ERISA solely for its own benefit; rather, the remedy sought must benefit the plan.  *Id.*

*Russell* is inapplicable here.  BNYM alleges that the Board of Trustees breached its fiduciary duties and its co-fiduciary duties to the IBEW Plan.  *See* CC ¶¶ 27-35.  Under ERISA Section 409, the Board of Trustees is "personally liable to make good to such plan any losses to the plan resulting from each such breach."  29 U.S.C. §1109(a).  Here, BNYM seeks a declaratory judgment that the Board of Trustees violated its fiduciary duties under ERISA and that the members of the Board of Trustees be held individually liable to the IBEW Plan for any losses arising therefrom.  *See* CC at Prayer for Relief at (a); *see also Haddock v. Nationwide Fin. Servs., Inc.*, No. 01cv1552, 2010 WL 2976910, at *3 (D. Conn. July 23, 2010) (financial service provider's counterclaim against trustees under ERISA for breach of fiduciary duties allowed if solely in the interest of the plans' participants and beneficiaries and for the exclusive purpose of providing benefits to participants and their beneficiaries.).[5]  As a fiduciary of the IBEW Plan,

---

[5] The fact that the Bank also brings claims for equitable indemnification and contribution has no bearing on this analysis.  As explained by the Second Circuit in *Chemung Canal Trust Company v. Sovran Bank/Maryland*, 939 F.2d 12, 15 (2d Cir. 1991), it is misleading to characterize a claim for indemnification and contribution as a "right of action."  Rather, claims for equitable indemnification and contribution are "procedural device[s] for equitably distributing responsibility for plaintiff's losses proportionally among those responsible for the losses, and without regard to which particular persons plaintiff chose to sue in the first instance."  *Id.* at 15-16; *see also Haddock v. Nationwide Fin. Servs., Inc.*, 570 F. Supp. 2d 355, 360 (D. Conn. 2008).

BNYM may bring an action against the Board of Trustees for a breach of its fiduciary duties to the IBEW Plan pursuant to ERISA Section 409.

### B.      The Board of Trustees is a Fiduciary with Respect to the Investments at Issue

"A person[6] is a fiduciary with respect to a plan, and therefore subject to ERISA fiduciary duties, to the extent that he or she exercises any discretionary authority or discretionary control respecting management of the plan, or has any discretionary authority or discretionary responsibility in the administration of the plan." *Bouboulis v. Transp. Workers Union of Am.*, 442 F.3d 55 (2d Cir. 2006) (internal quotation marks omitted); *see also* 29 U.S.C. § 1002(21)(A). The Board of Trustees does not dispute that it is a named trustee of the IBEW Plan and that it exercises discretionary authority or discretionary responsibility in the administration of the IBEW Plan.  SAC ¶¶ 8, 13.  Instead, the Board of Trustees contends that its fiduciary duties to the IBEW Plan ended when it selected BNYM to be the investment manager of the Collateral. See MTD at 9 ("[I]n hiring Defendant as an investment fiduciary with the responsibility and expertise to invest the Collateral, [the Board of Trustees] *fully* and properly fulfilled its fiduciary duties.") (emphasis added).

The Board of Trustees' theory that the delegation of its investment duties to an investment manager completely eviscerates its fiduciary duties to the IBEW Plan is contrary to the plain language of ERISA's broad definition of a fiduciary.  *See Lowen v. Tower Asset Mgmt., Inc.*, 653 F. Supp. 1542, 1550 (S.D.N.Y. 1987), *aff'd,* 829 F.2d 1209 (2d Cir. 1987).  ERISA §3(21)(A)(i) plainly provides that the Board of Trustees is a fiduciary to the extent it "exercises *any* discretionary authority or discretionary control respecting management of such plan or exercises *any* authority or control respecting management or disposition of its assets."  29 U.S.C.

---

[6] "The term 'person' means an individual, partnership, joint venture, corporation, mutual company, joint-stock company, trust, estate, unincorporated organization, association, or employee organization."  29 U.S.C. §1002.

§ 1002(21) (emphasis added).  Thus, fiduciary duties attach "to the extent that [an entity] possesses or exercises the requisite discretion or control."  *Barry v. Trustees of Int'l Ass'n Full-Time Salaried Officers & Employees of Outside Local Unions & District Counsel's Pension Plan*, 404 F. Supp. 2d 145, 154 (D.D.C. 2005) (internal quotation marks omitted).

In *Harris Trust and Sav. Bank v. Salomon Bros.*, 832 F. Supp. 1169 (N.D. Ill. 1993), the court declined to dismiss a counterclaim against a trustee for breach of its fiduciary duties despite a delegation of authority of the pension trust's assets to an investment manager.  The court held that "[b]ecause ERISA finds fiduciary duties where there is actual authority, and because a trustee can retain some control over a pension trust's assets despite delegation of authority to an investment manager, it is possible that [the trustee] retained and exercised actual control over the disposition of [the fund's] assets such that it owed the fund a fiduciary duty of care."  *Id.* at 1178.  The court found significant that the trustee did not allege that the investment manager had sole authority over the pension plan's assets.  *Id.*  Similarly here, the Board of Trustees cannot allege that BNYM had sole authority or full discretion over the IBEW Plan's assets.  The Board of Trustees concedes that under the Agreement, it expressly retained the power to direct and control the investment of the Collateral through the Guidelines and the IPS, both of which are entirely set by the Board of Trustees, and under which BNYM's investment activities are limited.  *See* MTD at 10 (The Bank "had full investment discretion within the scope of pre-determined Guidelines." "The Board of Trustees allowed [the Bank] ***full discretion*** within the scope of the Agreement and the Guidelines.")   Furthermore, under the Securities Lending Agreement, the Board of Trustees reserved the power to prohibit the Bank from investing "with particular institutions or issuers" by simply delivering a written notice to the Bank with

7

appropriate instructions.  *See* Agreement, Art. IV.2(b).[7]  Thus, the Board of Trustees maintained "authority [and] control respecting management or disposition of its assets" such that it owed the IBEW Plan a fiduciary duty of care.[8]

### C.    The Board of Trustees Breached its Fiduciary Duties

The Board of Trustees, as a fiduciary of the IBEW Plan, is obligated to discharge its duties with the care, loyalty, skill, prudence and diligence necessary to safeguard the IBEW Plan assets and ensure that the assets are invested in the interest of the IBEW Plan, the participants and the beneficiaries.  *See* 29 U.S.C. § 1104(a)(1).  To state a claim for breach of fiduciary duty under ERISA, a plaintiff must allege that "1) the defendant was a fiduciary of an ERISA plan who, 2) acting within the scope of his or her capacity as a fiduciary, 3) engaged in conduct constituting a breach of his or her fiduciary duty."  *See Agway, Inc., Emps.' 401(k) Thrift Inv. Plan v. Magnuson*, No. 03-CV-1060, 2006 WL 2934391, at *13 (N.D.N.Y. Oct. 12, 2006).

By retaining discretion and control over the investments of the assets of the IBEW Plan through the Guidelines and the IPS and its reservation of rights to prohibit investments, the

---

[7] *Lowen v. Tower Asset Management, Inc.* is inapposite to the situation here.  In *Lowen*, the trustees of the plan and the investment manager entered into a "Discretionary Investment Management Agreement" that gave the investment manager "full discretion and authority to manage, invest and reinvest the [assets of the plan] as fully as the Trustees themselves could do." 829 F.2d 1209, 1212 (2d Cir. 1987).  Here, the Board of Trustees explicitly retained discretionary authority to limit BNYM's investments, prohibit any investments and terminate the relationship at any time.

[8] The Board of Trustees also asserts that the Trust Agreement insulates it from liability for breaches of its fiduciary duties.  The Board of Trustees misreads the Trust Agreement.  The Trust Agreement provides that "if an investment manager is appointed . . . no Trustee shall be liable for the Acts or omissions of the investment manager, and no Trustee shall be obligated to invest or otherwise manage any asset of the plan."  First, the Bank seeks to hold the Board of Trustees liable for its own breaches of fiduciary duties.  Second, the plain language of the Trust Agreement does not limit the Board of Trustees' liability when it voluntarily retains authority and control over the management of the IBEW Plan's assets, it simply *does not obligate* the Board of Trustees to invest or manage any asset of the IBEW Plan when it appoints an investment manager.

Board of Trustees retained fiduciary duties to the extent that it had a duty to ensure that BNYM's investment activities remained within the parameters set by the Guidelines and the IPS and to direct BNYM to liquidate any investments which were not in the best interest of the IBEW Plan. *See Harley v. Minn. Mining & Mfg. Co.*, 42 F. Supp. 2d 898, 908 n.13 (D. Minn. 1999) (stating that fiduciary had a duty to monitor the investment when the delegation of duty to administer a plan's assets was according to agreed upon terms relating to that investment); *see also Liss v. Smith*, 991 F. Supp. 278, 311 (S.D.N.Y. 1998) (an ERISA fiduciary's appointment and termination power "carries with it the concomitant duty to monitor" the performance of the appointed fiduciary and "to take action upon discovery that the appointed fiduciaries are not performing properly.") (citing *Leigh v. Engle*, 727 F.2d 113, 134-35 (7th Cir. 1984)); *see also Atwood v. Burlington Indus. Equity, Inc.*, No. 92CV00716, 1994 WL 698314, at *13 (M.D.N.C. Aug. 3, 1994)).

BNYM has alleged that to the extent that the SAC states a claim for breach of fiduciary duty, the Board of Trustees also breached its fiduciary duties by (1) failing to monitor and review investment of Collateral pursuant to the Agreement, (2) failing to notify the Bank of any questions concerning the investment of Collateral pursuant to the Agreement or the purported belief that investments were not consistent with the investment guidelines specified in the Guidelines and the IPS, and (3) failing to notify the Bank of any concerns about the Lehman floating rate notes before the failure of Lehman.  CC ¶ 29.  These actions fall squarely within the discretion and authority that the Board of Trustees retained for itself in the Agreement and thus, BNYM has stated a claim for a breach of fiduciary duty.

## II.    The Bank Has Stated A Claim for Breach of Co-Fiduciary Duty

A fiduciary may be liable for another fiduciary's breach under ERISA Section 405.  *See* 29 U.S.C. § 1105(a)(1)-(3).  The Board of Trustees asserts that ERISA Section 405 limits its

liability for breach of its co-fiduciary duties where it has appointed an investment manager.  *See* MTD at 12-13.

ERISA Section 405 was not intended to be an absolute shield to a fiduciary's potential liability for a breach of its own duties.  *In re GCO, LLC*, 324 B.R. 459, 464 (Bankr. S.D.N.Y. 2005).  Despite the Board of Trustee's appointment of BNYM as an investment manager, the Board of Trustees is still liable under ERISA Sections 405(a)(1) and 409.  *See BP Corp. N. Am. Inc. Sav. Plan Inv. Oversight Comm. v. N. Trust Invs.*, 692 F. Supp. 2d 980 (N.D. Ill. 2010); *see also* 29 U.S.C. § 1105(a)(1).  Section 405(a)(1) provides that a fiduciary is liable for breach of its co-fiduciary duties if it "participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach.[9]  29 U.S.C. § 1105(a)(1).

In the primary action, the Board of Trustees alleges that the Bank violated its fiduciary duties because it should never have invested the Collateral in Lehman floating rate notes and that based on publicly available information, the Bank should have known to liquidate investments in Lehman floating rate notes before Lehman's collapse.  SAC ¶¶ 207-215.  If the Board of Trustees' theory is found to be true, then the Board of Trustees must necessarily have participated knowingly in the Bank's alleged breach.  *First*, by expressly retaining discretion over BNYM's activities, the Board of Trustees had a continuing fiduciary duty to ensure that

---

[9] Co-fiduciary liability necessarily requires that there is a primary breach of a duty by a co-fiduciary.  The Board of Trustees asserts that there is no primary breach of duty in light of the Bank's denial of any breach of fiduciary duties in the main proceeding.  MTD at 13-14.  However, to the extent that the SAC states a claim for breach of fiduciary duty, the Cross-Claims allege that the Board of Trustees also breached their duty.  Moreover, at the motion to dismiss stage, courts have declined to dismiss co-fiduciary claims on the basis that they also had declined to dismiss the primary breach of duty claims.  Here, despite the Bank's denial, the Court has allowed the proceeding to continue beyond the motion to dismiss stage.  *In re AEP ERISA Litig.*, 327 F. Supp. 2d 812, 833 (S.D. Ohio 2004); *In re CMS Energy ERISA Litig.*, 312 F. Supp. 2d 898, 910 (E.D. Mich. 2004).

BNYM's investments remained within the Guidelines set by the Board of Trustees and to direct BNYM to liquidate any investment of the Collateral that the Board of Trustees did not believe was in the best interest of the IBEW Plan.  Although BNYM had invested in Lehman floating rate notes since March of 2007, the Board of Trustees never prohibited the investments either by either amending the Guidelines or by written correspondence to BNYM as provided for in the Agreement or in any other way.  *Second*, if the allegation that BNYM should have known to liquidate the Lehman floating rate notes based on publicly available information is found to be true in this case, then by necessary extension, the Board of Trustees *also* should have known to liquidate investments in Lehman floating rate notes before Lehman's collapse based on publicly available information.  Thus, by failing to direct the Bank to take action to preclude or liquidate the investments, as the Board of Trustees explicitly reserved the right to do, the Board of Trustees itself "participated knowingly in an act" that gave rise to the alleged fiduciary breach by the Bank.  In other words, the Board of Trustees' failure to direct BNYM to preclude the investment in the Lehman floating rate notes in the first instance and its failure to direct the Bank to liquidate the investment based on subsequent publicly available information assisted in the alleged breach by the Bank.  Therefore, to the extent that the Court finds the Bank violated ERISA as alleged, the Board of Trustees itself is also liable for breach of its co-fiduciary duties under Section 405(a)(1).

## III.   The Bank Has Alleged Claims For Equitable Indemnification and Contribution under ERISA

### A.   The Bank's Claims for Equitable Indemnification and Contribution are Ripe for Adjudication

The Board of Trustees disputes that the BNYM's claims for indemnification and contribution are ripe for adjudication.  "Whether a question is ripe for adjudication 'turns on the fitness of the issues for judicial decision' and 'the hardship to the parties of withholding court

consideration.'"  *Muller v. Walt Disney Prods.*, 876 F. Supp. 502, 505 (S.D.N.Y. 1994) (quoting

*Pac. Gas & Elec. Co. v. State Energy Res. Conservation & Dev. Comm'n*, 461 U.S. 190, 201

(1983).)  Plaintiff asserts that courts generally decline to adjudicate indemnification and

contribution claims before underlying liability is established.  *See* MTD at 15-16.

   Contrary to the Board of Trustees' contention, New York courts allow claims for

indemnification and contribution to proceed where parties seek to establish their rights and

liabilities in one action for the sake of judicial economy and fairness, *see Scipar Inc. v. Simses*,

No. 07CV63A, 2008 WL 3851817, at *3 n.3 (W.D.N.Y. Aug. 15, 2008), *Kramer v. Lockwood

Pension Servs., Inc.*, 653 F. Supp. 2d 354, 391 (S.D.N.Y. 2009), or where the determination of

the liability claim does not provide any evidence necessary to the court's determination of

indemnification, *see Muller*, 876 F. Supp. at 505.  In *Kramer*, the court denied defendant's

motion to dismiss the plaintiff's indemnification claim because plaintiff "may assert cross-claims

and third-party claims that are contingent on its liability on the main claims and that are factually

and legally intertwined with the main claims."  653 F. Supp. 2d at 391.  In *Muller*, the court held

that Disney's claim for indemnification was ripe despite the fact that Disney may never incur the

liability for which it sought indemnity.  876 F. Supp. at 505.  The court held that the issue of

liability was not necessary to its determination of whether the plaintiff was obligated to

indemnify Disney, rather the issue of indemnification turned on the interpretation of a contract

between the parties and its relationship.  *Id.*  Thus, Disney's claim for indemnification was ripe

for adjudication.  *Id.*

   Both circumstances are present here.  *First*, the BNYM's cross-claim for indemnification

and contribution are brought simultaneously with its cross-claims alleging the Board of Trustees'

breach of its fiduciary and co-fiduciary duties, and in response to the Board of Trustees' claim

that the Bank allegedly violated its fiduciary duties.  Thus, BNYM seeks to establish all of its rights and liabilities in one single action, in line with the court's policy to advance judicial efficiency and fairness.  *Second*, the determination of liability will not provide the court with any evidence necessary to the determination of the indemnification and contribution claims.  The issue of whether the Board of Trustees may be liable to BNYM for indemnification and contribution is not contingent on any facts that will be adduced from the establishment of liability.  Thus, the claims for indemnification and contribution may appropriately be asserted.  *See Kramer*, 653 F. Supp.2d at 391 (preserving third party claim that is factually and legally intertwined and contingent on liability of main claim "serves the interests of judicial economy, and avoids the potential inconsistent fact-finding and adjudication of issues that may otherwise occur if the issues . . . are litigated in multiple actions").

        The cases cited by the Board of Trustees are inapposite to the circumstances present here.  In both *FSP, Inc. v. Société Générale*, No. 02 CV 4786, 2003 WL 124515 (S.D.N.Y. Jan. 14, 2003) and *Solow Bldg. Co. v. ATC Assocs.*, 388 F. Supp. 2d 136 (E.D.N.Y. 2005), the court was unwilling to consider claims for indemnification where the underlying action to establish liability for which the plaintiffs sought indemnification had not yet been initiated and it was unclear whether one would ever be initiated.  *See FSP, Inc.*, 2003 WL 124515, at *4 ("The subject action is not justicable [sic] to the extent it seeks a declaration regarding defendant's obligation to defend and indemnity plaintiff with regard to potential, unfiled claims, and seeks reimbursement for losses arising from the eight filed actions and future, anticipated claims."); *Solow Bldg. Co.*, 388 F. Supp. 2d at 140 (dismissing plaintiff's claim for indemnification where "plaintiffs [have] not yet been sued").  It was in light of that uncertainty that the court determined the indemnification claims were not yet ripe for adjudication.  Here, the actions to establish liability

13

are currently pending before the same court in the same action.  Accordingly, this Court has subject matter jurisdiction over BNYM's claims for equitable indemnification and contribution.

**B.      ERISA Provides For the Remedy of Contribution and Indemnification**

The Board of Trustees asserts that BNYM's claims for contribution and equitable indemnification are not valid claims under ERISA.   While the Board of Trustees acknowledges that the Second Circuit has squarely held that ERISA provides a claim for indemnification and contribution, *see Chemung Canal Trust Co. v. Sovran Bank/Md.*, 939 F.2d 12, 18 (2d Cir. 1991), *cert. denied,* 505 U.S. 1212 (1992), it contends that the decision has been overruled by the Supreme Court.  *See* MTD at 17-20.  The Board of Trustees is wrong.

Contrary to the Board of Trustees' assertion, *Chemung* has not been overruled by the Supreme Court's decisions in *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 254-59 (1993) and *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002).  Rather, *Chemung* remains good law that has been adopted by the Second Circuit in subsequent decisions.  *See In re Masters Mates & Pilots Pension Plan & IRAP Litig.*, 957 F.2d 1020 (2d Cir. 1992); *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002). [10]  The Board of Trustees' circuitous reasoning to reach the conclusion that there is no federal common-law right to contribution and indemnification is contrary to Congress' expressed intent about the purposes and scheme of ERISA.  *See Russell*, 473 U.S. at 157-58 (Brennan, J., joined by White, Marshall and Blackmun, JJ., concurring in judgment) (courts, when determining questions of appropriate relief under ERISA, should look to traditional recoveries permitted and see if they conflict with the purposes and scheme of ERISA).

---

[10] The Second Circuit's holding in *Chemung* has also been adopted by other courts.  *See Jones v. Trevor, Stewart, Burton & Jacobsen, Inc.*, No. 90CV420, 1992 WL 252137, at *5 (N.D. Ga. Aug. 21, 1992); *Site-Blauvelt Eng'rs, Inc. v. First Union Corp.*, 153 F. Supp. 2d 707, 710 (E.D. Pa. 2001); *In re GCO, LLC*, 324 B.R. 459, 463-64 (Bankr. S.D.N.Y. 2005); *Youngberg v. Bekins Co.*, 930 F. Supp. 1396, 1399-400 (E.D. Cal. 1996).

In *Chemung*, the Second Circuit held that a defendant in an ERISA case may bring claims for contribution and indemnity pursuant to the federal common law of ERISA. 939 F.2d at 18. The Second Circuit acknowledged that ERISA does not explicitly provide for a right to contribution or indemnification, but held that a fiduciary's claim for indemnification and contribution was proper and based on traditional trust law that is preserved as part of a federal common law of ERISA. *Id.* The United States Supreme Court has recognized that Congress wanted courts "to develop a 'federal common law of rights and obligations under ERISA-regulated plans.'" *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 110 (1989) (quoting *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 56 (1987)). "Rather than explicitly enumerating *all* of the powers and duties of trustees and other fiduciaries, Congress invoked the common law of trusts to define the general scope of their authority and responsibility." *Varity Corp. v. Howe*, 516 U.S. 489, 496 (1996) (internal citations and quotation marks omitted). Relying on these principles enunciated by the United States Supreme Court, the Second Circuit in *Chemung* looked to traditional trust law to find that the right to contribution and indemnification must also be recognized as part of ERISA. *See Chemung*, 939 F.2d at 16-18.

The Board of Trustees asserts that *Chemung* has been implicitly overruled because it was premised on the idea that courts can engage in interstitial lawmaking to fill in gaps in the remedies provided by ERISA. *See* MTD at 19. The Board of Trustees' characterization of the Supreme Court as issuing a wholesale admonition against interstitial lawmaking is misplaced. A careful reading of the cases cited by the Board of Trustees shows that the Supreme Court's concern against interstitial lawmaking centered on the provision of remedies for beneficiaries and the plan—parties that Congress clearly intended to protect through specific and detailed statutory remedies when enacting ERISA. In *Great-West*, the Supreme Court held that Section

15

502(a)(3) of ERISA authorizing a participant, beneficiary or fiduciary to obtain other appropriate equitable relief did not allow for enforcement of a reimbursement provision allowing a plan to recover beneficiary payments made by the plan  *See* 534 U.S. at 220-21.  The Supreme Court noted that while other sections of ERISA provided for relief without reference to whether the relief sought was legal or equitable, Congress did not do so in Section 502(a)(3) and limited such relief to "equitable relief."  *Id.* at 221.  Similarly, in *Mertens*, the Supreme Court held that Section 502(a)(3) did not allow for beneficiaries to seek monetary damages from non-fiduciaries alleged to have knowingly participated in a fiduciary's breach.  *See* 508 U.S. 248.  The Supreme Court further noted that it was not willing to "adjust" Congress's balancing of the "tension between the primary [ERISA] goal of benefiting employees and the subsidiary goal of containing pension costs."  *Id.* at 262-63 (internal quotation marks omitted).  The Board of Trustees also cites to the Second Circuit's decision in *Gerosa v. Savasta & Co,* 329 F.3d 317 (2d Cir. 2003), for further support that the Second Circuit has adopted *Great-West and Mertens* and indirectly overruled *Chemung*.  *Gerosa* similarly held that Section 502(a)(3) did not allow for trustees to seek restitution against a non-fiduciary.  329 F.3d at 323 (2d Cir. 2003).

In *Chemung*, the Second Circuit distinguished its decision from the Supreme Court's decision in *Russell*.[11]  That rationale applies with equal force to *Great-West, Mertens,* and *Gerosa*.  In *Russell*, the Supreme Court was specifically concerned with implying remedies for beneficiaries and participants, for whom ERISA was specifically designed to provide redress. *See Russell*, 473 U.S. at 157-58 (Brennan, J. joined by White, Marshall, and Blackmun, JJ., concurring in judgment); *see also Chemung*, 939 F.2d at 18 (discussing same).  Hesitant to imply

---

[11]  Although the Board of Trustees devote a significant amount of time to the Supreme Court's reasoning in *Russell*, *see* MTD at 17-18, it fails to mention that *Chemung* was decided after *Russell* and that the Second Circuit found that *Russell* was inapposite, as fully explained above.

16

additional redress for a beneficiary whose remedies were explicitly provided for under ERISA, the Supreme Court in *Russell* declined to read into ERISA a remedy for extra-contractual damages for a beneficiary of the plan. *See Russell,* 473 U.S. at 157-58. The *Chemung* court noted that in contrast, claims for indemnification and contribution are concerned with apportioning damages between fiduciaries and have no effect on the overall benefit to the beneficiary or the plan as whole and ERISA does not purport to deal with allocating joint liabilities among fiduciaries. *See Chemung*, 939 F.2d at 17-18. Thus, that Congress failed to include provisions addressing the relationship amongst fiduciaries does not mean that Congress intended to preclude such remedies, as it did in *Russell*. *Id.* The decisions in *Great West*, *Mertens*, and *Gerosa*[12] were similarly motivated by concerns that the remedies the parties sought to enforce infringed on Congress' design of ERISA – to protect and provide remedies for beneficiaries and the plan as a whole. These concerns are not present in BNYM's claims for contribution and indemnification, which is concerned with the allocation of liability between fiduciaries. Thus, under federal common-law of ERISA, the BNYM has a valid claim for indemnification and contribution.[13] *See also Haddock*, 570 F. Supp. 2d at 358-61.

_____

[12] In *Gerosa*, the Second Circuit held that it did not 'mean to say that common-law principles are never relevant to questions involving remedies," and that "[i]n other respects, [it] continue[s] to carry out Congress's intent that [it] develop a federal common law of ERISA based on principles developed in evolution of the law of trusts." 329 F.3d at 323 n.6 (internal quotation marks omitted).

[13] The Board of Trustees also cite to a decision by the Eighth Circuit. In *Travelers Cas. & Sur. Co. of Am. v. IADA Servs., Inc.*, 497 F.3d 862 (8th Cir. 2007), the Eighth Circuit adopted the dissent in *Chemung* and held that ERISA does not provide a right to contribution or indemnification from a co-fiduciary absent express Congressional consent. The Eighth Circuit reasoned that since the Supreme Court rejected the right to contribution among co-responsible parties under Title VII and antitrust statutes, Congress's failure to include contribution and indemnification as a remedy should also be seen as an affirmative rejection of those remedies. *Id.* at 864-66. But, the Eighth Circuit ignores the fact that Title VII and antitrust statutes do not have the same type of foundation in the common law that ERISA has and that Congress has

### C.   The Bank's Claims for Indemnification and Contribution are Further Supported By Applicable Trust Law

A claim for indemnification and contribution under ERISA is governed by trust law. *See Chemung*, 939 F.2d at 16. The Board of Trustees asserts that even if it breached its fiduciary duties, it is not liable to BNYM for indemnification and contribution because BNYM has failed to allege that the Board of Trustees received any benefit from the breach or that the Board of Trustees is substantially more at fault than the Defendants. *See* MTD at 21-22.

Section 258 of the Second Restatement of Trusts states:

> (1) Except as stated in Subsection 2, where two trustees are liable to the beneficiary for breach of a trust, each of them is entitled to contribution from the other, except that
>
> > (a) if one of them is substantially more at fault than the other, he is not entitled to contribution from the other but the other is entitled to indemnity from him; or
> >
> > (b) if one of them receives a benefit from the breach of trust, the other is entitled to indemnity from him to the extent of the benefit; and for any further liability, if neither is more at fault than the other, each is entitled to contribution.

Restatement (Second) of Trusts § 258 (1959). The Board of Trustees does not fall under either provision.

### 1.   The Bank Has Alleged that the Board of Trustees is Substantially More at Fault or of Equal Fault

*First*, BNYM has alleged that the Board of Trustees is "substantially more at fault" than Defendant. BNYM alleges that the Board of Trustees retained discretion over the IBEW Plan's assets to the extent that it delineated Guidelines to limit BNYM's activities and reserved the right

---

explicitly provided guidance that the courts may consider common law principles of trust law when interpreting and applying ERISA. *See Haddock*, 570 F. Supp. 2d at 361 (permitting a claim for contribution and indemnification among co-fiduciaries because the court was "bound to follow the law of the Second Circuit" and because it found "the Eighth Circuit's reasoning in *Travelers Casualty* to be unpersuasive.")

to direct liquidation of investments of the Collateral that it believed was not in the best interest of the IBEW Plan. CC ¶ 16. Thus, as explained *supra* in Sections 1.B and C and alleged by BNYM, the Board of Trustees had a fiduciary duty, at all times, to direct and establish guidelines for the investment of the Collateral and monitor the continuing appropriateness of the investment of the Collateral. CC ¶20. The Board of Trustees knew that the separate account which held the investments of the Collateral included Lehman floating rate notes. CC ¶ 19. Yet, the Board of Trustees never directed BNYM to liquidate the investments and thus, BNYM was not aware of the Board of Trustees professed belief that the Lehman floating rate notes were not consistent with the Guidelines and the IPS, as now alleged by the Board of Trustees. CC ¶¶ 19, 30. By putting itself in the position as the overseer of BNYM's investment activities through the Guidelines, the IPS and its right to direct BNYM's investment of the Collateral as provided for under the Agreement, the Board of Trustees owed a duty to the IBEW Plan to inform BNYM the Lehman floating rate notes were not consistent with the Guidelines and the IPS and to liquidate the Lehman floating rate notes based on publicly available information around the time of Lehman's collapse. Given the Board of Trustees' monitoring duties to the IBEW Plan, it is substantially more at fault, or at least equally at fault, for the breach. *See* REST 2D TRUSTS § 258(1)(a) comment (e) ("The mere fact that one of the trustees did not actively participate in the breach of trust does not necessarily put him in the position of being substantially less at fault.")

Furthermore, BNYM need not allege "substantial fault" to recover for contribution. Section 258(1)(a) states that "where two trustees are liable to the beneficiary … each … is entitled to contribution from the other, *except that* if one them is substantially more at fault than the other." Restatement (Second) of Trusts § 258(1)(a) (emphasis added). *If* one party is more at fault, then the other is entitled to indemnification from the party substantially more at fault. *Id.*

19

Here, BNYM has alleged that the Board of Trustees is more at fault and is thus entitled to indemnification.  But even if the Court were to find that the Board of Trustees is only equally at fault, BNYM is still entitled to contribution.

        **2.**       **The Bank Does Not Need To Allege That the Board of Trustees Received A Benefit**

The Board of Trustees contends that "no claim for indemnification or contribution lies against the fiduciary who received no benefit."  *See* MTD at 21.  The Board of Trustees misreads Restatement (Second) of Trusts Section 258(1).  Section 258(1)(b) provides that where one party receives a benefit from its breach of fiduciary duty, it is liable to a breaching co-fiduciary for indemnification to the extent of the benefit.  *See* Restatement (Second) of Trusts §258(1)(b) ("where two trustees are liable to the beneficiary … each … is entitled to contribution from the other, *except that* if one of them receives a benefit from the breach of trust, the other is entitled to indemnity from him to the extent of the benefit")  Thus, the receipt of a benefit is not an element of a claim for contribution or indemnification which BNYM is required to allege, rather it is a defense against a claim for contribution or indemnification.

**IV.**    **The Court Should Deny the Board of Trustees' Motion To Strike Defendant's Affirmative Defenses**

The Board of Trustees moves to strike all of Defendant's affirmative defenses from its Answer to the Second Amended Complaint and Cross-Claim.  The Board of Trustees asserts that the Bank has failed to put Plaintiff on notice of the basis for the defense and that certain affirmative defenses, including numbers 6, 9, 10, 11, 12, 13, 19, and 20, are irrelevant to the question of the Bank's liability.

Rule 12(f) provides that "the court may order stricken from any pleading any insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Motions to strike are generally disfavored so that parties may be afforded the opportunity to

support their contentions in more depth at trial. *See Byas v. N.Y. City Dep't of Corr.*, 173 F.R.D. 385 (S.D.N.Y. 1997); *Chacko v. Dynair Servs., Inc.*, No. 96 CV 2220, 1998 WL 199866 (E.D.N.Y. Mar. 15, 1998) (motion to strike is an extraordinary remedy).  Motions to strike are to be granted only when it appears to a certainty that a defense would fail despite any state of facts which could be proved.  *Aga Correa & Son v. Nautical Gold Creations*, No. 05 Civ. 624, 2005 WL 823927, at *1 (S.D.N.Y. Apr. 6, 2005).  Furthermore, there must be a showing that the inclusion of the defense will result in prejudice to the plaintiff.  *Breedlove v. Cabou*, 296 F. Supp. 2d 253, 275 (N.D.N.Y. 2003).

The Bank has pled each of its affirmative defenses with sufficient factual specificity as to meet the requirements of Rule 8.  The fair notice pleading requirement is met if the defendant sufficiently articulated the defense so that plaintiff was not a victim of unfair surprise.  In some cases, merely pleading the name of the affirmative defense is sufficient.  *Book v. Moulton*, No. 05 CV 0875, 2005 WL 3307361, at *1 (N.D.N.Y. Dec. 6, 2005).  Defendant has alleged a factual basis in support of each affirmative defense to put Plaintiff on notice of each of its defenses.  *See* Additional Defenses ("Def.") No. 4 (The IBEW Plan's claims are barred in whole or in part, because Defendant acted in accordance and consistent with the terms of the asserted Securities Lending Agreements.); Def. No. 7 (The IBEW Plan's claims are barred in whole or in part, because Defendant acted without negligence in all respects relevant to the IBEW Plan's involvement with the securities lending program); Def. No. 16 (The IBEW Plan's claims are barred in whole or in part, because the investment in Lehman floating rate notes complied with any applicable diversification requirement).  This is all that is required of Defendant at this preliminary stage of the proceedings.

Affirmative defense numbers 6, 9, 10, 11, 12, 13, 19, and 20 state defenses which are material to the Bank's defense to Plaintiff's allegations.  For example, the Board of Trustees' ERISA claims against the Bank for breach of fiduciary duties only succeed if the Bank is a fiduciary to the IBEW Plan and the alleged acts were taken in a fiduciary capacity.  *See* Def. Nos. 6, 19.  Affirmative defenses numbers 9, 10 and 20 state factual circumstances that when proven will bar, in whole or part, Plaintiff's breach of fiduciary against the Bank.  Lastly, affirmative defenses numbers 11, 12 and 13 present disputed issues of law which Defendant should be provided an opportunity to articulate beyond this preliminary stage of litigation. Courts are generally very reluctant to determine disputed or substantial issues of law on a motion to strike.  *Aga Correa & Son*, 2005 WL 823927, at *1 (S.D.N.Y. Apr. 6, 2005).

Furthermore, Plaintiff has failed to articulate how it will suffer undue prejudice by the inclusion of these defenses.  As explained above, Defendant has adequately provided Plaintiff with notice of its defenses and Plaintiff has shown no other prejudice that it will suffer.   Rule 8 does not require Defendant to provide more factual support.

## CONCLUSION

For all the foregoing reasons, the Bank respectfully requests that the Court deny the Plaintiff's Motion to Dismiss Defendant's Cross-Claims, and deny the Plaintiff's Motion to Strike Defendant's Affirmative Defenses.

Dated: January 10, 2011
New York, New York

By: _____/s/_____
Damien J. Marshall
dmarshall@bsfllp.com
Christopher E. Duffy
cduffy@bsfllp.com
Vincent Y. Liu
vliu@bsfllp.com
BOIES, SCHILLER & FLEXNER LLP

575 Lexington Avenue, 7th Floor
New York, New York 10022
Tel.: 212-446-2300
Fax: 212-446-2350

Carl E. Goldfarb
cgoldfarb@bsfllp.com
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, Florida 33301
Tel.: 954-356-0011
Fax: 954-356-0022

*Attorneys for Defendants The Bank of New York
Mellon Corporation and BNY Mellon, N.A.*

23