UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------- x
THE BOARD OF TRUSTEES OF THE : Civil Action No. 09-cv-06273(RMB)(AJP)
SOUTHERN CALIFORNIA IBEW-NECA :
DEFINED CONTRIBUTION PLAN, On : CLASS ACTION
Behalf of Itself and All Others Similarly :
Situated, : REPLY MEMORANDUM OF LAW IN
: SUPPORT OF PLAINTIFF'S MOTION TO
                         Plaintiff, : DISMISS DEFENDANTS' CROSS-CLAIM
: AND STRIKE DEFENDANTS'
        vs. : AFFIRMATIVE DEFENSES
:
THE BANK OF NEW YORK MELLON :
CORPORATION, et al., :
:
                         Defendants. :
:
---------------------------------------------------------- x

## TABLE OF CONTENTS

Page

MOTION TO DISMISS DEFENDANT'S CROSS-CLAIM..........................................................1

I.    The Cross-Claim Fails to State a Claim for Breach of Fiduciary Duty or Co-Fiduciary Duty ......................................................................................................................1

II.    Defendant's Indemnification and Contribution Claims Must Also Be Dismissed ..............5

III.    The Cross-Claim's Inadequate Allegations Demand Dismissal ..........................................9

MOTION TO STRIKE DEFENDANT'S AFFIRMATIVE DEFENSES .....................................10

# TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal*,
    129 S. Ct. 1937 (2009) ............................................................................................. 9, 10

*Bell Atl. Corp. v. Twombly*,
    550 U.S. 544 (2007) ................................................................................................. 9, 10

*BP Corp. N. Am. v. N. Trust Invs., N.A.*,
    692 F. Supp. 2d 980 (N.D. Ill. 2010) ........................................................................ 4, 8

*Chemung Canal Trust Co. v. Sovran Bank/Md.*,
    939 F.2d 12 (2nd Cir. 1991) ................................................................................... 5, 6, 7

*Diduck v. Kaszycki & Sons Contractors, Inc.*,
    974 F.2d 270 (2nd Cir. 1992) ..................................................................................... 6, 7

*Gerosa v. Savasta & Co. Inc.*,
    329 F.3d 317 (2d Cir. 2003) ........................................................................................ 6, 7

*Great-West Life & Annuity Ins. Co. v. Knudson*,
    534 U.S. 204 (2002) .................................................................................................... 6, 7

*Haddock v. Nationwide Fin. Servs.*,
    570 F. Supp. 2d 355 (D. Conn. 2008) ............................................................................ 8

*Harley v. Minn. Minig & Mfg. Co.*,
    42 F. Supp. 2d 898 (D. Minn. 1999) ........................................................................... 3, 4

*Harris Trust & Sav. Bank v. Salomon Bros., Inc.*,
    832 F. Supp. 1169 (N.D. Ill. 1993) .............................................................................. 2, 3

*Liss v. Smith*,
    991 F. Supp. 278 (S.D.N.Y. 1998) .................................................................................. 4

*Mass. Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985) ....................................................................................................... 5, 6

*McDermott v. City of N.Y.*,
    428 N.Y.S. 2d 643 (1980) ................................................................................................ 5

*Mertens v. Hewitt Assocs.*,
    508 U.S. 248 (1993) ...................................................................................................... 6, 7

*Travelers Cas. & Sur. Co. of Am. v. IADA Servs., Inc.*,
    497 F.3d 862 (8th Cir. 2007) ............................................................................................ 7

*Ulico Cas. Co. v. Clover Capital Mgmt, Inc.*,
 217 F. Supp. 2d 311 (N.D.N.Y. 2002) .................................................................................. 2

*Williams v. Provident Inv. Counsel, Inc.*,
 279 F. Supp. 2d 894 (N.D. Ohio 2003) ................................................................................ 5


**STATUTES, RULES AND REGULATIONS**

29 U.S.C. §1002(21)(A) ................................................................................................................ 1

29 U.S.C. §1105(d) ....................................................................................................................... 4

Rule 12(b)(6) ................................................................................................................................. 9

Rule 12(f) ..................................................................................................................................... 10

Rule 8 ............................................................................................................................................ 9

Plaintiff/Cross-Claim-Defendant The Board of Trustees of the Southern California IBEW-NECA Defined Contribution Plan ("Plaintiff" or the "Board"), respectfully submits this Reply Memorandum of Law in Support of its Motion to Dismiss Defendants' Cross-Claim and Strike Defendants' Affirmative Defenses ("Motion") [Dkt. No. 112].[1]

### MOTION TO DISMISS DEFENDANT'S CROSS-CLAIM

### I. The Cross-Claim Fails to State a Claim for Breach of Fiduciary Duty or Co-Fiduciary Duty

In the first of many arguments conflating the parties' respective fiduciary duties under ERISA,[2] Defendant alleges that the Board breached its fiduciary duties to the Plan by failing to monitor Defendant's Collateral investments or otherwise notify Defendant of any concerns over such investments. *See* Defendants' Memorandum of Law in Opposition to Plaintiffs' Motion to Dismiss Defendants' Cross-Claim and Strike Defendants' Affirmative Defenses [Dkt. No. 115] ("Opposition" or "Opp.") at 9. As a preliminary matter, Defendant lacks standing to bring such a claim because it does so solely for its own benefit, not the Plan's. *See* Motion at 6-8. However, even assuming Defendant's standing, the Board was not a fiduciary with respect to the Plan's Collateral investments, thus precluding Defendant's claim. In this context, a person is a fiduciary under ERISA only to the extent he "exercises any authority or control respecting management or disposition of its assets." 29 U.S.C. §1002(21)(A). As Plaintiff appointed Defendant to be the Investment Manager of the Collateral, Defendant had ***full discretionary authority*** over the management and disposition of the

---

[1] Defendants The Bank of New York Mellon Corporation and BNY Mellon, National Association's (collectively, "BNY Mellon" or "Defendant") Answer to Second Amended Class Action Complaint and Cross-Claim [Dkt. No. 91] will herein be referred to as the "Cross-Claim."

[2] The allegations of the Second Amended Class Action Complaint ("SAC") and all of its defined terms are incorporated by reference herein. References to the SAC are cited as "SAC at ¶__."

1

Plan's Collateral investments.  Indeed, Defendant was "authorized and directed, ***without obtaining any further approval from [the Plan]***, to invest and reinvest all or substantially all of the Cash Collateral received in any Approved Investment" and thus had "full investment discretion" within the scope of pre-determined investment Guidelines.  SAC, Exs. A and C.

Since Defendant cannot dispute the propriety of its appointment, it diverts the Court's attention by blurring the lines between ***the Board's*** fiduciary duty to delegate Securities Lending Program ("SLP") investment authority to a sophisticated expert such as Defendant, and ***its own*** duty to manage the Plan's Collateral account with which it had been entrusted.  *See* Opp. at 6.  With regard to the Plan's SLP assets, the Board fulfilled its fiduciary duty under ERISA by hiring an investment fiduciary (*i.e.* Defendant) with the appropriate expertise to manage and invest the Plan's Collateral.  *See* SAC at ¶¶13, 47.  This delegation of responsibility fits precisely into ERISA's statutory scheme, and any suggestion to the contrary should be flatly rejected.  *See* Opp. at 6.  *See also Ulico Cas. Co. v. Clover Capital Mgmt, Inc.*, 217 F. Supp. 2d 311, 316 (N.D.N.Y. 2002) ("ERISA's purpose of clearly locating legal obligations will be vitiated if plaintiffs are required to engage in an after-the-fact sorting out of actions, statements and states of mind among possible fiduciaries to determine which is legally responsible").[3]

Moreover, in light of it having received full discretionary authority over the Collateral investments, Defendant's reliance on *Harris Trust & Sav. Bank v. Salomon Bros., Inc.*, 832 F. Supp. 1169 (N.D. Ill. 1993), is misplaced.  There, the court declined to dismiss counterclaims for breach of fiduciary duty because it could not conclude that the trustees "had no decisionmaking authority" over the trust's purchases of certain investments.  *Id.* at 1178.  "Nowhere d[id] plaintiffs allege that [the

---

[3]  Internal quotations and citations are omitted, and emphasis is added, unless otherwise noted.

investment manager] exercised sole authority over [the trust's] assets." *Id*. The court thus found it "possible that [the trustees] retained and exercised actual control over the disposition of [the trust's] assets such that it owed the fund a fiduciary duty of care." *Id*. Here, in stark contrast, the Board has repeatedly alleged that it delegated full discretionary authority over the Plan's Collateral investments to Defendant – its Investment Manager – and therefore never exercised any actual control over the challenged investments or any of the Plan's other SLP assets. *See* Motion at 9-10; SAC at ¶24, Exs. A and C. As fiduciary responsibility for the Collateral investments lied solely in the hands of Defendant, Plaintiff was not a fiduciary for those assets and cannot be held liable for Defendant's mismanagement of such assets.

Nevertheless, both the Cross-Claim and Opposition make vague references to the Board's supposed duty to monitor the Plan's Collateral investments. *See* Opp. at 9. Once again, Defendant has purposefully conflated its duties with the Board's; even its own caselaw cannot save Defendant's position. For instance, in *Harley v. Minn. Minig & Mfg. Co.*, 42 F. Supp. 2d 898 (D. Minn. 1999), the plan's fiduciaries had invested millions in an inherently risky hedge fund without properly vetting the fund's managers and investment strategy, both of which proved inadequate. *Id*. at 901-04. After investing, the plan simply relied upon the hedge fund's investment managers to implement their own strategies. *Id*. at 902. Given the court's concern over plan personnel failing to sufficiently investigate the hedge fund's management before deciding to invest, it found that, "***in the circumstances of this case,*** a fact finder could conclude that resort to some kind of outside assistance would have been necessary to satisfy [defendant's] duty of reasonable prudence." *Id*. at 908. No similar circumstances exist here. First, certainly Defendant does not challenge its own investment management expertise. Next, before enrolling in BNY Mellon's SLP, the Board not only conferred with a sophisticated Investment Consultant, but also worked with Defendant to establish acceptable parameters governing

3

its management of the Plan's Collateral. *See* Motion at 9-10. Thus, Plaintiff appropriately relied upon Defendant as its appointed SLP Investment Manager, and *Harley* lends no support here.[4]

Further, in perhaps the most glaring example of its deliberate ignorance, Defendant would hold the Board liable for breach of co-fiduciary duty in connection with Defendant's mismanagement of the Board' SLP assets. *See* Opp. at 10-11. Again, Plaintiff's delegation to BNY Mellon of full discretionary authority over the Plan's Collateral investments necessarily precludes Defendant's claim. But even assuming *arguendo* that the Board is a fiduciary with respect to the Plan's SLP assets, ERISA section 405(d) insulates the Board from liability for the acts or omissions of its appointed investment managers. *See* 29 U.S.C. §1105(d). As Defendant is admittedly the Plan's SLP Investment Manager (*see* Opp. at 10), Plaintiff cannot be held liable for breach of co-fiduciary duty under ERISA sections 405(a)(2) and (3). *See* Motion at 13. Moreover, the Board's liability under section 405(a)(1) is foreclosed where the Cross-Claim is completely devoid of any allegation that Plaintiff actively participated in or actively concealed BNY Mellon's imprudent investment decisions made in the exercise of its discretionary authority over the Plan's Collateral account. *See id.* at 14; *see also BP Corp. N. Am. v. N. Trust Invs., N.A.*, 692 F. Supp. 2d 980, 985 n.4 (N.D. Ill. 2010) (co-fiduciary liability under section 405(a)(1) precluded where defendant failed to allege that plaintiffs "somehow participated in the decisions to manage the Index Lending Funds or the collateral pools").

In response, Defendant boldly argues that, "by necessary extension," if it should be held liable for failing to divest inherently risky Lehman floating rate notes, the Board should be held liable for

---

[4] Defendant also cites *Liss v. Smith*, 991 F. Supp. 278 (S.D.N.Y. 1998), for the irrefutable proposition that ERISA fiduciaries bear the general responsibility of monitoring their appointees' performances and taking action where necessary. *See* Opp. at 9. However, nowhere has Defendant alleged that the Board has ever failed to do so. Indeed, the Board's willingness to take action to rectify its appointees' poor performances is self-evident by this litigation.

the same. *See* Opp. at 11. Defendant's flawed logic is based on its mistaken belief that the Board – a group of volunteers from the electrical profession – should have known what a sophisticated investment manager like BNY Mellon knew about the disputed investments' risk profiles, and that it should have directed its appointed Investment Manager to rid the Plan's account of these investments. *See id*. Once more, Defendant proposes to eviscerate the foundation of ERISA and hold Plaintiff liable for its own imprudent investment decisions. Because BNY Mellon has not – and cannot – show that the Board neglected any purported duties with respect to the Plan's SLP assets, its claims for breach of fiduciary duty and co-fiduciary duty cannot stand as a matter of law.

## II.     Defendant's Indemnification and Contribution Claims Must Also Be Dismissed

Defendant's claims for indemnification and contribution similarly fail for a number of reasons. First, such claims are premature where Defendant's liability has yet to be determined and no claimant has been paid. *See* Motion at 15-16; *see also Travelers Prop. Cas. Corp. v. Winterthur Int'l*, 02 Civ. 2406, 2002 WL 1391920 (S.D.N.Y. June 25, 2002); *McDermott v. City of N.Y.*, 428 N.Y.S. 2d 643 (1980). Regardless, notwithstanding the Second Circuit's decision in *Chemung Canal Trust Co. v. Sovran Bank/Md.*, 939 F.2d 12 (2nd Cir. 1991), claims for indemnification and contribution are invalid under ERISA. *See Williams v. Provident Inv. Counsel, Inc.*, 279 F. Supp. 2d 894, 899 (N.D. Ohio 2003) ("There is . . . almost universal acknowledgment that ERISA does not speak to, much less expressly authorize, a right of contribution among ERISA fiduciaries.").

Indeed, in *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 146 (1985), the Supreme Court refused to allow for extracontractual compensatory or punitive damages under ERISA where the statute's "carefully integrated civil enforcement provisions . . . provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly." The Court was "reluctant to tamper with an enforcement scheme crafted with such evident care as the one in ERISA," and it noted that "[t]he presumption that a remedy was deliberately omitted from a statute is

strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement." *Id*. at 147.  Subsequent decisions from both the Supreme Court and the Second Circuit confirm that *Chemung* is no longer good law.  *See* Motion at 17-19.

Since the *Chemung* opinion was issued, the Supreme Court has repeatedly reiterated its "unwillingness to infer causes of action in the ERISA context . . . ." *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 254-259 (1993) (declaring that "[t]he authority of courts to develop a federal common law under ERISA is not the authority to revise the text of the statute"); *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002) (holding that ERISA did not authorize trustees to enforce reimbursement provision of an ERISA plan as an equitable remedy).  Even the Second Circuit has recognized that the underpinnings of *Chemung* have not survived these subsequent Supreme Court decisions.  *See Gerosa v. Savasta & Co. Inc.*, 329 F.3d 317 (2d Cir. 2003).

In a companion case to *Chemung*, the Second Circuit considered in *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 279 (2nd Cir. 1992), whether a non-fiduciary may be liable for breach of fiduciary duties under ERISA.  Relying on *Chemung*, the court held that, despite no such implied right of action existing under ERISA, courts could utilize "interstitial lawmaking" and imply such a cause of action under federal common law.  *Id*. at 280-81.  However, in *Gerosa* a decade later, the Second Circuit revisited this exact analysis: "We think, however, that this aspect of *Diduck* has not survived subsequent Supreme Court determinations." *Gerosa*, 329 F.3d at 322.  "Twice in its most recent term, the Court has repeated its belief that ERISA's express remedies, as the product of long and careful study and compromise, should remain exclusive.  We see little room in this framework for judicially-created, 'interstitial' remedies." *Id*.

Tellingly, the Second Circuit rejected the lower court's attempts to distinguish both *Mertens* and *Great-West*.  Instead, the court reasoned that such Supreme Court jurisprudence "makes evident

6

that we are no longer free to fill in unwritten gaps in ERISA's civil remedies. Accordingly . . . the Supreme Court has instructed that it is not for us to decide the best ERISA remedial scheme." *Id*. The Second Circuit's decisions in both *Chemung* and *Diduck* were clearly based on "interstitial lawmaking." Thus, where that court has now held that "the limited text of ERISA's civil remedies is inconsistent with judicial discovery of new liabilities," neither *Chemung* nor *Diduck* remains good law. *See id*. at 323 n.6.

Defendant attempts to avoid this inescapable conclusion by theorizing that *Mertens*, *Great-West*, and *Gerosa* do not speak to "allocation of liability between fiduciaries." *See* Opp. at 17. But this argument misses the mark. Defendant's myopic view conveniently ignores how the Second Circuit has now adopted the Supreme Court's broad directives to refrain from filling in "unwritten gaps" or otherwise "decid[ing] the best ERISA remedial scheme." *Gerosa*, 329 F.3d at 322. As the Eighth Circuit has recognized, clearly *Chemung* cannot survive these directives. *See Travelers Cas. & Sur. Co. of Am. v. IADA Servs., Inc.*, 497 F.3d 862, 866 (8th Cir. 2007) ("Since the Second Circuit's decision in *Chemung Canal*, moreover, the Supreme Court has reiterated more than once its admonition that notwithstanding the authority to fashion certain rules of federal common law under ERISA, the statute's 'carefully crafted and detailed enforcement scheme provides strong evidence that Congress did *not* intend to authorize other remedies that it simply forgot to incorporate expressly.'") (emphasis in original).

Further, even if the Court were to ignore this binding Second Circuit and Supreme Court jurisprudence – which it should not – Defendant's claims for indemnification and contribution still fail because: (1) it has not alleged that the Board received any benefit from the purported breach; and (2) Defendant was "substantially more at fault" than the Board. *See* Motion at 21-24. The law of trusts would govern any potential recovery under indemnification or contribution, and pursuant to the

7

Restatement (Second) of Trusts §258, where two fiduciaries breach their duties but only one receives any benefit, no claim for indemnification or contribution lies against the fiduciary who received no benefit. *See* Restatement (Second) of Trusts §258(1)(b); *see also Haddock v. Nationwide Fin. Servs.*, 570 F. Supp. 2d 355, 364 (D. Conn. 2008) (defendant could not, as a matter of law, seek contribution or indemnification for a damages award in the absence of any allegation that trustees directly benefitted in some way from the breach). Here, the volunteers making up the Board received no remuneration for their services, yet Defendant pocketed 40% of all SLP profits earned by the Plan. Accordingly, Defendant is not entitled to indemnification or contribution from the Board.

In addition, Defendant's allegations do not support an inference that Plaintiff was "substantially more at fault" than Defendant. The Restatement (Second) of Trusts dictates that "if one [fiduciary] is substantially more at fault than the other, he is not entitled to contribution from the other . . . ." Restatement (Second) of Trusts §258(1)(a). As it was ***Defendant*** who held full discretionary authority over the Plan's Collateral investments, and as it was ***Defendant*** who selected and maintained the doomed Lehman investments, it is absurd to suggest that the Board was somehow "substantially more at fault" for the alleged breach. *See* Opp. at 19. Once again, Defendant asks this Court to turn the provisions of ERISA on their head to avoid liability for its own mismanagement of the Plan's Collateral account. Defendant has baldly alleged that the Board failed to object to or otherwise monitor the Plan's Collateral investments in Lehman. Such conclusory allegations of purported inaction cannot save Defendant's claims for indemnification and contribution here. *See* Motion at 23; *see also BP*, 692 F. Supp. 2d at 985 (in rejecting their counterclaim, holding that defendants were unable to seek indemnification from plaintiffs because their allegations were based on acts of ***nonfeasance*** and ***not malfeasance***).

### III. The Cross-Claim's Inadequate Allegations Demand Dismissal

Finally, even if the Court were to accept that Defendant's claims for breach of fiduciary duty, breach of co-fiduciary duty, indemnification, and contribution were permissible under ERISA and other applicable law, these claims still fail under Rule 8 pleading standards.  That is, even assuming that:  (1) Defendant has standing to assert its claims; (2) the Board is a fiduciary with respect to the Plan's SLP assets; (3) the Board breached its fiduciary duties with respect to the Plan's Collateral investments; and (4) claims for indemnification and contribution were permitted under ERISA and applicable trust principles, each of Defendant's cross-claims must be independently dismissed for failure to meet the pleading standards defined by the Supreme Court in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 129 S. Ct. 1937 (2009).

In order to survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim for relief that is plausible on its face."  *Twombly*, 550 U.S. at 570.  Such a standard requires "more than a sheer possibility that a defendant has acted unlawfully," and "more than an unadorned, the-defendant-unlawfully-harmed-me accusation."  *Iqbal*, 129 S. Ct. at 1949.  "[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do . . . ."  *Twombly*, 550 U.S. at 555.  When read in this context, Defendant's Cross-Claim falls woefully short.

To be sure, Defendant's allegations contain little more than threadbare recitals of each claim's elements.  For example, while Defendant generically asserts that the Board breached its fiduciary and co-fiduciary duties by failing to monitor the Plan's Collateral investments or otherwise express concerns, it provides no factual support whatsoever as to what investment information the Board did or did not review.  Defendant conclusorily suggests that the Board "knowingly" participated in the alleged breach, but fails to explain how.  The Cross-Claim is also devoid of any factual support indicating what benefit Plaintiff received as a result of its alleged breach, or suggesting how Plaintiff

9

could even plausibly be "substantially more at fault" for the Lehman collateral investments. These are the type of "naked assertions" explicitly rejected by the Supreme Court. *See Iqbal*, 129 S. Ct. at 1949.

Moreover, Defendant successfully advanced this same argument in attacking Plaintiff's Amended Class Action Complaint, which certainly contained more factual support than Defendant even attempts to plead here. *See* Dkt. No. 59. If the Amended Complaint's detailed allegations could not survive *Twombly*, then surely the Cross-Claim's conclusory allegations similarly fail. For the reasons set forth herein as well as in the Motion, Defendant's Cross-Claim should be dismissed.

## MOTION TO STRIKE DEFENDANT'S AFFIRMATIVE DEFENSES

As described in the Motion, each of Defendant's affirmative defenses also fails to satisfy appropriate pleading standards and should therefore be stricken pursuant to Rule 12(f). *See* Motion at 24-25. None of the defenses, as currently pled, put Plaintiff on notice of the basis for the defense. Moreover, certain of the defenses – including defenses numbers 6, 9, 10, 11, 12, 13, 19, and 20 – are either improper or legally baseless in that they seek to shift liability to Plaintiff for various purported breaches of fiduciary duty, which is entirely irrelevant to whether Defendant is liable for its own breaches of fiduciary duty. In response, Defendant has offered little more than recitals of certain of its affirmative defenses and corresponding conclusions as to their adequacy. *See* Opp. at 21-22. Accordingly, to avoid undue prejudice, Plaintiff respectfully requests that the Court enter an order striking Defendant's affirmative defenses or, at a minimum, requiring that Defendant provide additional factual support to put Plaintiff on notice of the basis for each of its defenses. Plaintiff also respectfully requests that the Court hear oral argument on its Motion, which it believes will aid in the Court's determination of the issues discussed herein.

| | |
|---|---|
| DATED: January 18, 2011 | ROBBINS GELLER RUDMAN<br>  &amp; DOWD LLP<br>PAUL J. GELLER (*pro hac vice*)<br>STEPHEN R. ASTLEY (*pro hac vice*)<br>ELIZABETH A. SHONSON (*pro hac vice*)<br>SABRINA E. TIRABASSI (*pro hac vice*) |

                                      */s/ Stephen R. Astley*
                                    STEPHEN R. ASTLEY

120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

***Attorneys for Plaintiff and Proposed Class***

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on January 18, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

>                    */s/ Stephen R. Astley*
>                    STEPHEN R. ASTLEY