UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE BOARD OF TRUSTEES OF THE SOUTHERN
CALIFORNIA IBEW-NECA DEFINED CONTRIBUTION
PLAN,

                                        Plaintiffs,

        vs.

THE BANK OF NEW YORK MELLON CORPORATION, *et
al.*,

                                        Defendants.

09-CV-6273 (RMB) (AJP)

**CONTAINS
CONFIDENTIAL
MATERIAL**

## ANSWER TO THIRD AMENDED COMPLAINT AND COUNTERCLAIMS

        BNY Mellon, N.A. (f/k/a Mellon Bank, N.A.), The Bank of New York Mellon,

and The Bank of New York (together, "Defendant"), by their attorneys Boies, Schiller & Flexner

LLP, for their answer to the Third Amended Complaint (the "Complaint") of the Board of

Trustees of the Southern California IBEW-NECA Defined Contribution Plan (the "IBEW Plan"),

state as follows.  This answer is based upon the information currently available to Defendant.

Defendant reserves the right to amend this answer to the extent permitted by the Federal Rules of

Civil Procedure upon receipt of additional relevant information or for any other appropriate

reason.[1]

        1.        Denies the allegations in Paragraph 1, except admits that Defendant is a

sophisticated financial institution, and refers to the Securities Lending Agreement and Guaranty

---

[1] Except as otherwise indicated, the defined terms used in this Answer and Counterclaims have
the meanings specified in the Complaint.  The use of such defined terms is solely for
convenience and is not intended as an admission of any allegation of fact or law, including the
allegations in the preamble to the Complaint.

(the Securities Lending Agreement") attached as Ex. A[2] to the Complaint for its accurate and complete contents.

2.      Denies the allegations in Paragraph 2, except admits that Defendant is a "sophisticated financial institution" and refers to the Securities Lending Agreement and Securities Lending Guidelines for their complete and accurate contents.

3.      Denies the allegations in Paragraph 3, ███████████████

██████████████████████████████████████████

████████████████████████

4.      Denies the allegations in Paragraph 4.

5.      Denies the allegations in Paragraph 5.

6.      Denies the allegations in Paragraph 6, except admits that Plaintiffs seek through this action to recover for its alleged losses.

7.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 7, except upon information and belief admits that the IBEW Plan's address is 6023 Garfield Avenue, City of Commerce, California.

8.      Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 8, ██████████████████████

████████████████████████

9.      Denies the allegations in Paragraph 9, ███████████



2

███████████████████████████

10.     Denies the allegations in Paragraph 10.

11.     Denies the allegations in Paragraph 11, except admits that Plaintiffs seek relief under the referenced statutes and that this Court has jurisdiction over this action.

12.     Denies the allegations in Paragraph 12, except admits venue is proper in the Southern District of New York.

13.     Defendant is without knowledge or information sufficient to form a belief as to the assertion that the original trust agreement was executed on September 14, 1976.  Denies the remaining allegations in Paragraph 13, except admits that the trust was amended on October 1, 2001 and refers to the amended trust agreement for its complete and accurate contents.

14.     Admits the allegations in Paragraph 14, except denies allegations in the first sentence and denies knowledge or information sufficient to form a belief as to the truth of the allegations in final sentence.

15.     Denies the allegations in Paragraph 15 and refers to the Securities Lending Agreement for its complete and accurate contents.

16.     Denies the allegations in Paragraph 16, except refers to the Securities Lending Agreement, the Securities Lending Guidelines, and Defendant's web site for their complete and accurate contents.

17.     Denies the allegations in Paragraph 17, except refers to Defendant's web site for a complete and accurate description of the information therein.

18.     Denies the allegations in Paragraph 18, except refers to Defendant's web

site for a complete and accurate description of the information therein.

19.   Denies the allegations in Paragraph 19, except admits that Rule 2a-7 of the Investment Company Act of 1940 applies to money market funds registered under that Act and refers to the rule for its complete and accurate contents.

20.   Denies the allegations in Paragraph 20, except admits that on January 29, 1998, a presentation was made to the Southern California IBEW-NECA and refers to the presentation for its complete and accurate contents.

21.   Denies knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 21.

22.   Admits the IBEW Plan enrolled in the securities lending program but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in Paragraph 22.

23.   Admits the first sentence of Paragraph 23 and denies the remaining allegations in the paragraph.  Admits the allegations in the first three sentences of footnote 14 and denies the remaining allegations in that footnote.

24.   Denies the allegations in Paragraph 24, except refers to the Securities Lending Agreement itself for its complete and accurate contents.

25.   Denies the allegations in Paragraph 25, except refers to the Securities Lending Agreement itself for its complete and accurate contents.

26.   Denies the allegations in Paragraph 26, except refers to the Securities Lending Agreement itself for its complete and accurate contents.

27.   Denies the allegations in Paragraph 27, except refers to the Securities Lending Agreement itself for its complete and accurate contents.

28.     Denies the allegations in Paragraph 28, except refers to the Securities Lending Agreement itself for its complete and accurate contents.

29.     Denies the allegations in Paragraph 29, except refers to the Securities Lending Agreement itself for its complete and accurate contents.

30.     Denies the allegations in Paragraph 30, except refers to the Securities Lending Agreement itself for its complete and accurate contents.

31.     Denies the allegations in Paragraph 31, except refers to the Securities Lending Agreement and Securities Lending Guidelines for their complete and accurate contents.

32.     Denies the allegations in Paragraph 32, except refers to the Securities Lending Guidelines itself for its complete and accurate contents.

33.     Denies the allegations in Paragraph 33, except refers to the Securities Lending Guidelines itself for its complete and accurate contents.

34.     Denies the allegations in Paragraph 34, except refers to the Securities Lending Guidelines itself for its complete and accurate contents.

35.     Denies the allegations in Paragraph 35, except refers to the Securities Lending Guidelines for its complete and accurate contents.

36.     Denies the allegations in Paragraph 36, except refers to the Securities Lending Agreement and Securities Lending Guidelines for their complete and accurate contents.

37.     Denies the allegations in Paragraph 37, except refers to the Investment Policy Statement for its complete and accurate contents.

38.     Denies the allegations in Paragraph 38, except refers to the Investment Policy Statement for its complete and accurate contents.

39.     Denies the allegations in Paragraph 39, except refers to the Investment
Policy Statement for its complete and accurate contents.

40.     Denies the allegations in Paragraph 40, except refers to the Investment
Policy Statement for its complete and accurate contents.

41.     The allegations in Paragraph 41 are legal and not factual and so do not call
for a response, but insofar as they are deemed factual, Defendant denies the allegations, except
refers to the Securities Lending Agreement, the Securities Lending Guidelines and the ERISA
statute, which govern the relationship between the parties, for their complete and accurate
contents.

42.     The allegations in Paragraph 42 are legal and not factual and so do not call
for a response, but insofar as they are deemed factual, Defendant denies the allegations, except
refers to the Securities Lending Agreement and Securities Lending Guidelines for their complete
and accurate contents.

43.     Denies the allegations in Paragraph 43, except refers to the ERISA statute
for its complete and accurate contents.

44.     Denies the allegations in Paragraph 44, except refers to the ERISA statute
for its complete and accurate contents.

45.     Denies the allegations in Paragraph 45, except refers to the ERISA statute
for its complete and accurate contents.

46.     Denies the allegations in Paragraph 46, except refers to the January 29,
1998 presentation, the Securities Lending Guidelines, and Plaintiffs' Investment Policy
Statement for their complete and accurate contents.

47.    Denies the allegations in Paragraph 47, except denies knowledge or information sufficient to form a belief as to the accuracy of the quotation from the referenced Trust Agreement.[3]

48.    Denies the allegations in Paragraph 48, except refers to the ERISA statute for its complete and accurate contents.

49.    Denies the allegations in Paragraph 49, except admits it sent a letter to Plaintiffs in 2002 and refers to the letter for its complete and accurate contents.

50.    Denies knowledge or information sufficient to form a belief as to the truth of the first two sentences in Paragraph 50.  Denies the remaining allegations in Paragraph 50, except admits that Defendant made presentations to all its securities lending clients and refers to those presentations for their complete and accurate contents.

51.    Denies the allegations in Paragraph 51.

52.    Denies the allegations in Paragraph 52, ███████████████

███████████████████████████████████

███████████████████

53.    Denies the allegations in Paragraph 53, ███████████████

███████████████████████████████████

███████████████████████████████████

███████████████████████████

54.    Denies the allegations in Paragraph 54, except refers to the web site quoted in footnote 18 for its complete and accurate contents.

_____

█████████████████████████████████████
███████████████████████████

55.     Denies the allegations in Paragraph 55, except admits that credit risks are a vital component of fixed-income investing.

56.     Denies the allegations in Paragraph 56.

57.     Denies the allegations in Paragraph 57.

58.     Denies the allegations in Paragraph 58, ███████████████

█████████████████████████████████████████

59.     Denies the allegations in Paragraph 59, except refers to the August 23, 2007 nabCapital Ltd. report for its complete and accurate contents.

60.     Denies the allegations in Paragraph 60, except refers to the December 14, 2007 Punk Ziegel & Co. report for its complete and accurate contents.

61.     Denies the allegations in Paragraph 61, ████████████████

██████████████████████████

62.     Denies the allegations in Paragraph 62, except refers to the agenda for the meeting for its complete and accurate contents.

63.     Denies the allegations in Paragraph 63, ███████████████

███████████████████████████████████████

██████████

64.     Denies the allegations in Paragraph 64, except refers to the March 17, 2008 article in *BusinessWeek* for its complete and accurate contents.

65.     Denies the allegations in Paragraph 65, except refers to the March 17, 2008 *Dow Jones Newswires* article for its complete and accurate contents.

66.     Denies the allegations in Paragraph 66, except refers to the March 17, 2008 article in *Dow Jones Business News* for its complete and accurate contents.

67.     Denies the allegations in Paragraph 67, except refers to the March 17, 2008 *The Huffington Post* article for its complete and accurate contents.

68.     Denies the allegations in Paragraph 68, except refers to the March 17, 2008 *Wall Street Journal* article for its complete and accurate contents.

69.     Denies the allegations in Paragraph 69, except refers to the March 17, 2008 *Wall Street Journal* article for its complete and accurate contents.

70.     Denies the allegations in Paragraph 70, except refers to the March 17, 2008 article in *BusinessWeek* for its complete and accurate contents.

71.     Denies the allegations in Paragraph 71, except admits the committee met and refers to the agenda for the meeting for its complete and accurate contents.

72.     Denies the allegations in Paragraph 72, ███████████████████████████████████████████████████████████████████████████

73.     Denies the allegations in Paragraph 73, ███████████████████████████████████████████████████████████████████████████

74.     Denies the allegations in Paragraph 74, ███████████████████████████████████████████████████████████████████████████

75.     Denies the allegations in Paragraph 75, ███████████████████████████████████████████████████████████████████████████

76.     Denies the allegations in Paragraph 76, except refers to the March 29,

2008 *Wall Street Journal* article for its complete and accurate contents.

       77.      Denies the allegations in Paragraph 77.

       78.      Denies the allegations in Paragraph 78, ████████████

████████████████████████████████████████

████████████████████████████

       79.      Denies the allegations in Paragraph 79, except admits the committee met

and refers to the agenda for the meeting for its complete and accurate contents.

       80.      Denies the allegations in Paragraph 80, ████████████

████████████████████████████████████████

████████████████████████████████

       81.      Denies the allegations in Paragraph 81, ████████████

████████████████████████████████████████

████████████████████████

       82.      Denies the allegations in Paragraph 82.

       83.      Denies the allegations in Paragraph 83, except admits the committee met

and refers to the agenda for the meeting for its complete and accurate contents.

       84.      Denies the allegations in Paragraph 84, ████████████

████████████████████████████████████████

████████████████████████████

       85.      Denies the allegations in Paragraph 85, except refers to the June 2, 2008

*Dow Jones Newswires* article for its complete and accurate contents.

       86.      Denies the allegations in Paragraph 86, except admits that on June 3,

2008, a *Wall Street Journal* article was circulated to Standish employees and refers to the June 3,

2008 *Wall Street Journal* article for its complete and accurate contents.

87.     Denies the allegations in Paragraph 87 █████████████

████████████████████████████████████████████████████████

███████████████████████████████

88.     Denies the allegations in Paragraph 88, except admits that on June 4,

2008, a *Wall Street Journal* article was circulated to Standish employees and refers to the June 4,

2008 *Wall Street Journal* article for its complete and accurate contents.

89.     Denies the allegations in Paragraph 89, except admits that a Wachovia

Fixed Income Research report was sent to employees of Defendant and refers to the report for its

complete and accurate contents.

90.     Denies the allegations in Paragraph 90, except refers to the June 4, 2008

*The New York Post* article for its complete and accurate contents.

91.     Denies the allegations in Paragraph 91, except admits that a list of

discussion topics was circulated to various employees of Defendant and refers to the document

for its complete and accurate contents.

92.     Denies the allegations in Paragraph 92, ███████████████

██████████████████████████████████████████████████████

█████████

93.     Denies the allegations in Paragraph 93, except refers to the June 9, 2008

*Dow Jones Newswires* article for its complete and accurate contents.

94.     Denies the allegations in Paragraph 94, except refers to the June 9, 2008

*Dow Jones Newswires* article for its complete and accurate contents.

95.     Denies the allegations in Paragraph 95, ██████████████████

██████████████████████████████████████████

████████████████████

96.     Denies the allegations in Paragraph 96, except admits that on June 9, 2008, an employee of Defendant sent an e-mail to various employees of Defendant and refers to the e-mail for its complete and accurate contents.

97.     Denies the allegations in Paragraph 97, except admits that on June 10, 2008, an e-mail was sent to various employees of Defendant and refers to the e-mail for its complete and accurate contents.

98.     Denies the allegations in Paragraph 98, except admits that on June 10, 2008, a *Wall Street Journal* article was circulated to Standish employees and refers to the June 10, 2008 *Wall Street Journal* article for its complete and accurate contents.

99.     Denies the allegations in Paragraph 99, except refers to the June 10, 2008 *Wall Street Journal* article for its complete and accurate contents.

100.    Denies the allegations in Paragraph 100, except admits that on June 10, 2008, a Wall Street Journal article was circulated to Standish employees and refers to the June 10, 2008 Wall Street Journal article for its complete and accurate contents.

101.    Denies the allegations in Paragraph 101, except admits that on June 10, 2008, an e-mail was sent to various employees of Defendant and refers to the e-mail for its complete and accurate contents.

102.    Denies the allegations in Paragraph 102, except admits that on June 10, 2008, ████████████████████████████████████████ ████████████████

103.    Denies the allegations in Paragraph 103, ████████████████████

████████████████████████████████████████████

████████████████████████

104.    Denies the allegations in Paragraph 104, ████████████████

██████████████████████████████████████

105.    Denies the allegations in Paragraph 105, ████████████████

████████████████████████████████████████████

██████████████████████████

106.    Denies the allegations in Paragraph 106, except refers to the June 13, 2008 *Wall Street Journal* articles for their complete and accurate contents.

107.    Denies the allegations in Paragraph 107, except refers to the June 13, 2008 *Wall Street Journal Online* article for its complete and accurate contents.

108.    Denies the allegations in Paragraph 108, except admits that committee met and refers to the agenda for the meeting for its complete and accurate contents.

109.    Denies the allegations in Paragraph 109, except admits that on June 17, 2008, an e-mail was sent to employees of Defendant by Wachovia Capital Markets, LLC and refers to the e-mail for its complete and accurate contents.

110.    Denies the allegations in Paragraph 110, except admits that on June 19, 2008, an article was e-mailed to various employees of Defendant and refers to the June 19, 2008 e-mail for its complete and accurate contents.

111.    Denies the allegations in Paragraph 111.

112.    Denies the allegations in Paragraph 112, except refers to the July 7, 2008 *Barron's* article for its complete and accurate contents.

113.    Denies the allegations in Paragraph 113, except admits that committee met

and refers to the agenda for the meeting for its complete and accurate contents.

114.    Denies the allegations in Paragraph 114, ███████████████

████████████████████████████████████████████████████████

████████████████████████████████

115.    Denies the allegations in Paragraph 115, except refers to the July 15, 2008 *Wall Street Journal* article for its complete and accurate contents.

116.    Denies the allegations in Paragraph 116, except admits that committee met and refers to the agenda for the meeting for its complete and accurate contents.

117.    Denies the allegations in Paragraph 117, except refers to the July 22, 2008 *Bloomberg* article for its complete and accurate contents.

118.    Denies the allegations in Paragraph 118, except refers to the July 24, 2008 Morgan Stanley report for its complete and accurate contents.

119.    Denies the allegations in Paragraph 119, ███████████████

████████████████████████████████████████████████████████

████████████████████████████████

120.    Denies the allegations in Paragraph 120, ███████████████

█████████████████████████████████████████████

121.    Denies the allegations in Paragraph 121, except refers to the August 11, 2008 *WSJ Blog* article for its complete and accurate contents.

122.    Denies the allegations in Paragraph 122, except admits that on August 18, 2008, a *Wall Street Journal* article was circulated to Standish employees and refers to the e-mail for its complete and accurate contents.

123.    Denies the allegations in Paragraph 123, ███████████████

████████████████████████████████████████████

████████████

124.    Denies the allegations in Paragraph 124, except admits that on August 21, 2008, a *Wall Street Journal* article was circulated to Standish employees and refers to the August 21, 2008 *Wall Street Journal* article for its complete and accurate contents.

125.    Denies the allegations in Paragraph 125, except refers to the August 22, 2008 *Wall Street Journal* article for its complete and accurate contents.

126.    Denies the allegations in Paragraph 126, except refers to the August 22, 2008 *Wall Street Journal* article for its complete and accurate contents.

127.    Denies the allegations in Paragraph 127, except admits that on September 2, 2008, a *Wall Street Journal* article was circulated to Standish employees and refers to the September 2, 2008 *Wall Street Journal* article for its complete and accurate contents.

128.    Denies the allegations in Paragraph 128, ████████████████████
████████████████████████████████████████████
████████████████████████████

129.    Denies the allegations in Paragraph 129, except admits that on September 4, 2008, a *Wall Street Journal* article was circulated to Standish employees and refers to the September 4, 2008 *Wall Street Journal* article for its complete and accurate contents.

130.    Denies the allegations in Paragraph 130, ████████████████████
████████████████████████████████████████████████
████████████████████████████

131.    Denies the allegations in Paragraph 131, except refers to the September 9, 2008 *Dow Jones Newswires* articles for their complete and accurate contents.

132.    Denies the allegations in Paragraph 132, ███████████

██████████████████████████████████████████████

████████████████████

133.    Denies the allegations in Paragraph 133, █████████████

██████████████████████████████████████████

██████████████████

134.    Denies the allegations in Paragraph 134, █████████████

██████████████████████████████████████████████

█████████████████████

135.    Denies the allegations in Paragraph 135, █████████████

████████████████████████████████████████████████

███████████████████████████

136.    Denies the allegations in Paragraph 136, except refers to the September 10, 2008 *Dow Jones Newswires* article for its complete and accurate contents.

137.    Denies the allegations in Paragraph 137, except refers to the September 10, 2008 *Wall Street Journal* article for its complete and accurate contents.

138.    Denies the allegations in Paragraph 138, except refers to the September 10, 2008 *Wall Street Journal* article for its complete and accurate contents.

139.    Denies the allegations in Paragraph 139, █████████████

██████████████████████████████████████████████

████████████████████████

140.    The allegations in Paragraph 140 cite privileged materials that should be stricken from the pleading, and, therefore, no response is required.

141.   Denies the allegations in Paragraph 141, ███████████████

████████████████████████████████████████████████████████

███████████████████████

142.   Denies the allegations in Paragraph 142, ███████████████

████████████████████████████████████████████████████████

███████████████████████

143.   Denies the allegations in Paragraph 143, ███████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████████

144.   Denies the allegations in Paragraph 144, ███████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████████

145.   Denies the allegations in Paragraph 145, ███████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████████

146.   Denies the allegations in Paragraph 146, ███████████████

██████████████████████████████████████████████

████████████████████████████████████████████████████████

147.   Denies the allegations in Paragraph 147.

148.   Denies the allegations in Paragraph 148, except refers to the September 11, 2008 *Wall Street Journal* articles for their complete and accurate contents.

149.   Denies the allegations in Paragraph 149, except refers to the September 11, 2008 *Wall Street Journal Online* articles for their complete and accurate contents.

150.   Denies the allegations in Paragraph 150, ███████████████

████████████████████████████████████████████████████

151.   Denies the allegations in Paragraph 151, ███████████████

██████████████████████████████████████████████

152.   Denies the allegations in Paragraph 152, except admits that on September 12, 2008, Daily Credit Comments were circulated and refers to the document for its complete and accurate contents.

153.   Denies the allegations in Paragraph 153, except admits that on September 12, 2008, employees of Defendant circulated a *Wall Street Journal* article and refers to the September 12, 2008 *Wall Street Journal* article for its complete and accurate contents.

154.   Denies the allegations in Paragraph 154, except refers to the September 12, 2008 *Dow Jones Newswires* article for its complete and accurate contents.

155.   Denies the allegations in Paragraph 155, ███████████████

██████████████████████████████████████████████████████

██████████████

156.   Denies the allegations in Paragraph 156, except admits that an employee sent an e-mail and refers to the e-mail for its complete and accurate contents.

157.   Denies the allegations in Paragraph 157, except refers to the September 13, 2008 *Wall Street Journal* articles for their complete and accurate contents.

158.   Denies the allegations in Paragraph 158, ███████████████

███████████████████████████████████████████████████████

████████████████

159.   Denies the allegations in Paragraph 159, ███████████████

████████████████████████████████████████████

████████████████

160.   Denies the allegations in Paragraph 160, ████████████████

████████████████████████████████████████████

████████████

161.   Denies the allegations in Paragraph 161, ████████████████

████████████████████████████████████████████████

████████████

162.   Denies the allegations in Paragraph 162, except admits that on September 14, 2008, an e-mail was circulated among employees of Defendant and refers to the e-mail for its complete and accurate contents.

163.   Denies the allegations in Paragraph 163, ████████████████

████████████████████████████████████████████

████████████

164.   Denies the allegations in Paragraph 164, ████████████████

████████████████████████████████████████████

████████████████████████

165.   Denies the allegations in Paragraph 165, ████████████████

████████████████████████████████████████████

████████████████████

166.   Admits the allegations in Paragraph 166.

167.   Denies the allegations in Paragraph 167, ████████████████

████████████████████████████████████████████

████████████████████

168.     Denies the allegations in Paragraph 168, except admits that on September 15, 2008, an e-mail was circulated to SMAM employees and refers to the e-mail for its complete and accurate contents.

169.     Denies the allegations in Paragraph 169, except admits that on September 15, 2008, an e-mail was circulated to SMAM employees and refers to the e-mail for its complete and accurate contents.

170.     Denies the allegations in Paragraph 170, ████████████████████

████████████████████████████████████████████████

████████████████████████

171.     Denies the allegations in Paragraph 171.

172.     Denies the allegations in Paragraph 172.

173.     Denies the allegations in Paragraph 173.

174.     Denies the allegations in Paragraph 174.

175.     Denies the allegations in Paragraph 175.

176.     Denies the allegations in Paragraph 176.

177.     Denies the allegations in Paragraph 177.

178.     Denies the allegations in Paragraph 178.

179.     Denies the allegations in Paragraph 179.

180.     Denies the allegations in Paragraph 180, except refers to the Lehman Examiner's Report for its complete and accurate contents.

181.     Denies the allegations in Paragraph 181, except admits that on March 11, 2010 the Lehman Examiner's Report was made publicly available and refers to the Report for its

complete and accurate contents.

182.   Denies the allegations in Paragraph 182, except refers to the Lehman Examiner's Report for its complete and accurate contents.

183.   Denies the allegations in Paragraph 183, except refers to the Lehman Examiner's Report for its complete and accurate contents.

184.   Denies the allegations in Paragraph 184, except refers to the Lehman Examiner's Report for its complete and accurate contents.

185.   Denies the allegations in Paragraph 185, except admits that the Lehman Note had a market price of $93.50 per $100 of par on September 11, 2008 and refers to the Lehman Examiner's Report for its complete and accurate contents.

186.   Denies the allegations in Paragraph 186, except refers to the Securities Lending Agreement for its true and accurate contents.

187.   Denies the allegations in Paragraph 187, except refers to the Securities Lending Agreement for its complete and accurate contents.

188.   Denies the allegations in Paragraph 188, except refers to Defendant's internal e-mails for their complete and accurate contents.

189.   Denies the allegations in Paragraph 189, ███████████████████
████████████████████████████████████████████████
███████

190.   Denies the allegations in Paragraph 190 ███████████████████
██████████████████████████████████████████████
███████

191.   Denies the allegations in Paragraph 191, ████████████████████

████████████████████████████████████████████████████████

███████████████████████████████

192.    Denies the allegations in Paragraph 192, █████████████████████

████████████████████████████████████████████████████████

██████████████████████████

193.    Denies the allegations in Paragraph 193, █████████████████████

█████████████████████████████████████████████████████

████████████

194.    The allegations in Paragraph 194 cite privileged materials that should be stricken from the pleading, and, therefore, no response is required.

195.    Denies the allegations in Paragraph 195, ████████████████████

██████████████████████████████████████████████.

196.    Denies the allegations in Paragraph 196, except admits the market prices for the Lehman Note on the specified dates.

197.    Denies the allegations in Paragraph 197, except admits the market prices for the Lehman Note on September 11, 2008.

198.    Denies the allegations in Paragraph 198, except admits that e-mails were sent on the referenced dates and refers to the e-mails for their complete and accurate contents.

199.    Denies the allegations in Paragraph 199.

200.    Denies the allegations in Paragraph 200.

201.    Denies the allegations in Paragraph 201, except admits the price of the Lehman Note on September 15, 2008.

202.    Denies the allegations in Paragraph 202.

203.   Denies the allegations in Paragraph 203, except refers to the Securities Lending Guidelines and Plaintiffs' Investment Policy Statement for their complete and accurate contents.

204.   Denies the allegations in Paragraph 204, except refers to the Securities Lending Guidelines for their complete and accurate contents.

205.   Denies the allegations in Paragraph 205, except refers to the Securities Lending Guidelines for their complete and accurate contents.

206.   Denies the allegations in Paragraph 206, except refers to Plaintiffs' Investment Policy Statement for its complete and accurate contents.

207.   Denies the allegations in Paragraph 207.

208.   Denies the allegations in Paragraph 208.

209.   Denies the allegations in Paragraph 209.

210.   Denies the allegations in Paragraph 210.

211.   Denies the allegations in Paragraph 211, except refers to the ERISA statute and the Securities Lending Agreement for their complete and accurate contents.

212.   Denies the allegations in Paragraph 212.

213.   Denies the allegations in Paragraph 213.

214.   Denies the allegations in Paragraph 214.

215.   Denies the allegations in Paragraph 215.

216.   Denies the allegations in Paragraph 216, except admits that the IBEW Plan purports to bring a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of the alleged putative class, and denies that such a class may properly be certified.

217.   Denies the allegations in Paragraph 217.

218.    Denies knowledge or information sufficient to form a belief as to the truth of the allegations in the first sentence of Paragraph 218 and denies the allegations in the second sentence.

219.    Denies the allegations in Paragraph 219.

220.    Denies the allegations in Paragraph 220.

221.    Denies the allegations in Paragraph 221.

222.    Denies the allegations in Paragraph 222, ███████████████

███████████████████████████████████████████

███████████████████████████

223.    Repeats and realleges the responses already made to Paragraphs 1-222.

224.    Denies the allegations in Paragraph 224, except refers to the Securities Lending Agreement, Securities Lending Guidelines, and the ERISA statute for their complete and accurate contents, and states that at all times Defendant's conduct complied with all applicable legal standards.

225.    Denies the allegations in Paragraph 225, except refers to the Securities Lending Agreement, Securities Lending Guidelines, and the ERISA statute for their complete and accurate contents.

226.    Denies the allegations in Paragraph 226, except refers to the Securities Lending Agreement, Securities Lending Guidelines, and the ERISA statute for their complete and accurate contents.

227.    Denies the allegations in Paragraph 227, except refers to the Securities Lending Agreement, Securities Lending Guidelines, and the ERISA statute for their complete and accurate contents, and states that at all times Defendant's conduct complied with all

applicable legal standards.

228.    Denies the allegations in Paragraph 228, except refers to the Securities Lending Agreement, Securities Lending Guidelines, and the ERISA statute for their complete and accurate contents.

229.    Denies the allegations in Paragraph 229.

230.    Denies the allegations in Paragraph 230.

231.    Denies the allegations in Paragraph 231.

232.    Denies the allegations in Paragraph 232.

233.    Denies the allegations in Paragraph 233.

234.    Denies the allegations in Paragraph 234.

235.    Denies the allegations in Paragraph 235.

236.    Denies the allegations in Paragraph 236.

237.    Denies the allegations in Paragraph 237, except refers to the ERISA statute for its complete and accurate contents.

238.    Denies the allegations in Paragraph 238.

239.    Denies the allegations in Paragraph 239.

240.    Repeats and realleges the responses already made to Paragraphs 1-222.

241.    Denies the allegations in Paragraph 241, except refers to the Securities Lending Agreement, Securities Lending Guidelines, and the ERISA statute for their complete and accurate contents.

242.    Denies the allegations in Paragraph 242.

243.    Denies the allegations in Paragraph 243.

244.    Denies the allegations in Paragraph 244.

245.     Denies the allegations in Paragraph 245.

All allegations not expressly admitted are denied.

## ADDITIONAL DEFENSES

For further and separate defenses to the causes of action alleged by Plaintiffs in the Complaint, and without admitting that it has the burden of proof on any fact, issue, element of a cause of action, or any of these matters, or that anything stated herein is intended or shall be construed as an acknowledgment that any particular issue or subject matter is relevant to Plaintiffs' allegations, Defendant alleges as follows.  Defendant reserves the right to amend these defenses and to assert additional defenses to the full extent permitted by the Federal Rules of Civil Procedure.

### First Defense

1.     Plaintiffs' claims fail to state a claim for which relief can be granted.

### Second Defense

2.     Plaintiffs' claims are not ripe.

### Third Defense

3.     Plaintiffs' claims are barred, in whole or in part, because Defendant acted in accordance with all applicable laws.

### Fourth Defense

4.     Plaintiffs' claims are barred, in whole or in part, because Defendant acted in accordance and consistent with the terms of the asserted Securities Lending Agreement.

### Fifth Defense

5.     Plaintiffs' claims are barred, in whole or in part, because pursuant to the Securities Lending Agreement, Plaintiffs bears any risk of loss with regard to the investment of

cash collateral.

**Sixth Defense**

6.     Plaintiffs' claims are barred in whole or in part because there was no fiduciary relationship between the Defendant and the IBEW Plan.

**Seventh Defense**

7.     Plaintiffs' claims are barred, in whole or in part, because Defendant acted without negligence in all respects relevant to the IBEW Plan's involvement with the securities lending program.

**Eighth Defense**

8.     Plaintiffs' claims are barred, in whole or in part, because to the extent Defendant exercised discretion regarding the investments in Lehman floating rate notes, Defendant acted properly and within the scope of its discretion.

**Ninth Defense**

9.     Plaintiffs' claims are barred, in whole or in part, because they are based on the performance of a single investment of cash collateral rather than the totality of investments made pursuant to the Securities Lending Agreements.

**Tenth Defense**

10.     Plaintiffs' claims are barred, in whole or in part, because the investment in the Lehman floating rate notes was fully disclosed to the IBEW Plan and therefore the IBEW Plan assumed the risk of the investment and ratified the investment.

**Eleventh Defense**

11.     Plaintiffs' claims are barred, in whole or in part, for failure to mitigate damages.

**Twelfth Defense**

12.     Plaintiffs' claims are barred, in whole or in part, by the doctrine of contributory negligence.

**Thirteenth Defense**

13.     Plaintiffs' claims are barred, in whole or in part, by the *in pari delicto* doctrine because Plaintiffs' culpability for any losses to the IBEW Plan is at least substantially equal to the culpability of Defendant.

**Fourteenth Defense**

14.     Plaintiffs' claims are barred, in whole or in part, because Defendant's challenged actions and decisions were prudent as a matter of law and fact.

**Fifteenth Defense**

15.     Plaintiffs' claims are barred, in whole or in part, because Defendant's actions and decisions with regard to its own transactions with Lehman were independent of its actions and decisions relating to its Securities Lending Program.

**Sixteenth Defense**

16.     Plaintiffs' claims are barred, in whole or in part, because the investments in Lehman floating rate notes complied with any applicable diversification requirements.

**Seventeenth Defense**

17.     Plaintiffs' claims are barred, in whole or in part, because Defendant's challenged actions and decisions were in the exclusive interest of the IBEW Plan and other purported Class Members.

**Eighteenth Defense**

18.     Plaintiffs' claims are barred, in whole or in part, because Defendant acted

in accordance with ERISA.

### Nineteenth Defense

19.   Plaintiffs' ERISA claims are barred to the extent they are based on alleged actions not taken in a fiduciary capacity.

### Twentieth Defense

20.   Plaintiffs' fiduciary duty claims under ERISA are barred because the limitations period expired before Plaintiffs filed the Complaint.

### Twenty First Defense

21.   Plaintiffs cannot meet the requirements for maintaining a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure.

### COUNTERCLAIMS

Counterclaim-Plaintiff The Bank of New York Mellon (hereinafter "BNYM" or "Counterclaim-Plaintiff") brings the following counterclaims against Plaintiffs/Counterclaim-Defendants the Board of Trustees of the Southern California IBEW-NECA Defined Contribution Plan (the "Board of Trustees").

### INTRODUCTORY ALLEGATIONS

1.   The Board of Trustees serves as a named fiduciary of the IBEW Plan.  In that capacity, the Board of Trustees has overall authority and control over the investment of assets of the IBEW Plan.

2.   Among other responsibilities, the Board of Trustees has overall discretionary authority and control over the investments of the IBEW Plan under ERISA, including the selection of investment options for the IBEW Plan and the investment of IBEW

Plan assets. The Board of Trustees has a fiduciary responsibility for conducting appropriate investigations and due diligence in connection with these responsibilities.

3.      BNYM is an ERISA fiduciary to the IBEW Plan to the extent it exercises discretionary authority in providing securities lending services to the IBEW Plan. BNYM is the counterparty to the Securities Lending Agreement which forms the basis for the IBEW Plan's claim asserted by the Board of Trustees in this action.

4.      In this action, the Board of Trustees on behalf of the IBEW Plan brought a claim alleging breach of fiduciary duties under ERISA. Plaintiffs contend that the acquisition and maintenance of Lehman floating rate notes was a breach of fiduciary duties and that the IBEW Plan has been damaged by those actions. BNYM denies Plaintiffs' claims and denies any liability of itself or any affiliate for any damages alleged by Plaintiffs.

5.      The Lehman floating rate notes were purchased and maintained in compliance with applicable guidelines that the Board of Trustees agreed to and approved. If Plaintiffs establish that BNYM or any affiliate breached any fiduciary duties to the IBEW Plan and that the IBEW Plan has been damaged as a result, then the Board of Trustees also breached its fiduciary duties to the fund by: (1) failing to monitor and review investment of collateral pursuant to the Securities Lending Agreement and the Board of Trustees' Investment Policy Statement; (2) failing to notify BNYM of any questions concerning the investment of collateral pursuant to the Securities Lending Agreement or the purported belief that investments were not consistent with the investment guidelines specified in the Securities Lending Guidelines and the Board of Trustees' Investment Policy Statement; and (3) failing to notify BNYM of any concerns about the Lehman floating rate notes before the failure of Lehman. In that event, the

breaches of fiduciary duties by the Board of Trustees caused, entirely or in part, any alleged losses by the IBEW Plan.

## PARTIES AND JURISDICTION

6.     BNYM is a New York-state chartered bank with its principal place of business in New York, New York.

7.     The Board of Trustees is the trustee of the IBEW Plan, which was established on June 1, 1985, and is located at 6023 Garfield Avenue, City of Commerce, California.

8.     

9.

10.

11.     As a fiduciary to the IBEW Plan, BNYM has standing to bring this action under 29 U.S.C. §§ 1132(a)(2) and (a)(3). Section 1132 empowers ERISA plan fiduciaries to bring civil actions for appropriate relief under Section 1109 of Title 29 of the United States Code. Section 1132(a)(3) empowers ERISA plan fiduciaries to bring civil actions for equitable relief to enforce, and seek redress for violations of, the provisions of ERISA and terms of the IBEW Plan.

12.     The IBEW Plan provides retirement benefits to participants and is a "pension plan" within the meaning of 29 U.S.C. § 1002(2)(a).  As such, it is subject to, and must be maintained in accordance with, ERISA.

13.     The Board of Trustees is a fiduciary of the IBEW Plan within the meaning of 29 U.S.C. § 1002(21).  As a fiduciary of the IBEW Plan, the Board of Trustees is individually liable to the IBEW Plan for breaches of fiduciary duties under 29 U.S.C. § 1109(a).

14.     This Court has subject matter jurisdiction over these counterclaims pursuant to 28 U.S.C. § 1331 and § 502(e)(1)-(2) of ERISA, 29 U.S.C. § 1132(e)(1)-(2), because these claims arose under federal law, *i.e.* ERISA.  The Court also has jurisdiction under 28 U.S.C. § 1367 because these claims are related to the claims alleged in Plaintiffs' Third Amended Complaint and are a part of the same case or controversy.

15.     Venue over these counterclaims is proper in the Southern District of New York because a substantial number of the Counterclaim-Defendant's actions giving rise to the Counterclaims asserted herein occurred in this District and because the alleged breach occurred in this District and because of the forum selection clause in the Securities Lending Agreement.

## THE BOARD OF TRUSTEES DIRECTED THE INVESTMENT OF IBEW PLAN ASSETS

16.     In the Securities Lending Guidelines and the Board of Trustees' Investment Policy Statement, the Board of Trustees directed how collateral from securities lending was to be invested.

17.     The Board of Trustees, at all times, had a duty to perform necessary and prudent due diligence, and to conduct a necessary and prudent investigation, in connection with and prior to giving the foregoing directions regarding investment of IBEW Plan assets.  Such duties of due diligence and investigation required the Board of Trustees to know and

understand, among other things, the characteristics of investments in which IBEW Plan assets are to be invested, including how collateral from securities lending was invested.

18.     The cash collateral received from borrowers of Plaintiffs' securities was invested, at relevant times, in a segregated fund.  The Board of Trustees directed, approved, ratified, and acquiesced in this investment of cash collateral in the segregated Plaintiff fund.

19.     The segregated Plaintiff fund acquired and held Lehman floating rate notes.  The Board of Trustees knew that the segregated Plaintiff fund acquired and held Lehman floating rate notes.  The Board of Trustees directed (via the investment guidelines in the Securities Lending Guidelines and the Board of Trustees' Investment Policy Statement), approved, ratified, and acquiesced in this investment of cash collateral.

## THE BOARD OF TRUSTEES HAS A DUTY AND OPPORTUNITY TO MONITOR THE INVESTMENT OF IBEW PLAN ASSETS

20.     The Board of Trustees has a duty to continuously monitor investments after such investments were made because an ERISA fiduciary's appointment and termination power carries with it the concomitant duty to monitor the performance of the appointed fiduciary and to take action upon discovery that the appointed fiduciaries are not performing properly.

21.     █████████████████████████

██████████████████████████████

████████████████████

22.     ██████████████████████████

███████████████████████████████████

████████████████████████ .

## THE BOARD OF TRUSTEES OWED THE IBEW PLAN IMPORTANT DUTIES

23.     The Board of Trustees was required to act with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent person acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims, in connection with:  (1) determining to participate in securities lending; (2) directing and establishing guidelines for the investment of collateral in connection with securities lending; and (3) monitoring the continuing appropriateness of participation in securities lending and the investment of collateral in connection with securities lending.

24.     In connection with the Board of Trustees' direction as to how to invest IBEW Plan assets, the Board of Trustees had a fiduciary duty to give appropriate consideration to such facts and circumstances as the risk of loss and the opportunity for gain; the diversification of the IBEW Plan's portfolio; the liquidity and current return of the IBEW Plan's portfolio relative to the anticipated cash flow requirement of the IBEW Plan; and the projected return of the IBEW Plan's portfolio relative to the funding objectives of the IBEW Plan.  That duty included, without limitation, a responsibility to understand and assess, among other things, the structure, risks, and costs of securities lending and collateral investment.

25.     In connection with the Board of Trustees' duty to monitor investments made with the IBEW Plan assets, the Board of Trustees had a fiduciary duty to give appropriate consideration to such facts and circumstances as the risk of loss and the opportunity for gain; the diversification of IBEW Plan's portfolio; the liquidity and current return of the IBEW Plan's portfolio relative to the anticipated cash flow requirement of the IBEW Plan; and the projected return of the IBEW Plan's portfolio relative to the funding objectives of the IBEW Plan.  That

duty included, without limitation, a responsibility to understand and assess, among other things, the structure, risks, and costs of securities lending and collateral investment.

26.     The Board of Trustees had the foregoing fiduciary duties when it initially directed the participation in securities lending and directed the permitted investments for collateral from securities lending.  The Board of Trustees had such fiduciary duties on an ongoing basis after each investment, to ensure that each was and continued to be in compliance with applicable standards; that it satisfied the needs of such trusts; and that it continued to be an appropriate investment.

27.     The Secretary of Labor has concluded that:

> At reasonable intervals the performance of trustees and other fiduciaries should be reviewed by the appointing fiduciary in such manner as may be reasonably expected to ensure that their performance has been in compliance with the plan and statutory standards, and satisfies the needs of the plan.

29 C.F.R. § 2509.75-8 at FR-17.

28.     At all times, the Board of Trustees was required itself to have the requisite expertise, knowledge, and information to understand how to fulfill the foregoing fiduciary duties, including to understand the structure of, and the nature of the risks, costs, and potential returns of securities lending.  If the Board of Trustees lacked that expertise, knowledge, and information, they were required to consult experts or others in order to fulfill their fiduciary duties.

## IF THE BOARD OF TRUSTEES'S ALLEGATIONS ARE TRUE, IT FAILED TO FULFILL THE FIDUCIARY DUTIES THAT IT OWED TO THE IBEW PLAN

29.     In this case, the Board of Trustees alleges that acts and omissions of BNYM or its affiliates breached fiduciary duties that BNYM owed to the IBEW Plan.  BNYM denies all such allegations, but if those allegations were established, in whole or in part, then the

Board of Trustees would be wholly liable for any injuries and damages to the IBEW Plan, because as the named fiduciary of the IBEW Plan with, and retaining, control over the plan investments, the Board of Trustees was substantially more at fault than was BNYM for such injuries and damages.  For example, the Board of Trustees takes the position that the segregated Plaintiff fund should have never have contained any investment in Lehman floating rate notes and that, based on publicly available information, BNYM or its affiliates should known to liquidate investments in Lehman floating rate notes before Lehman's collapse.

      30.     Assuming that any of these allegations is found to be true in this case— which BNYM denies—the Board of Trustees committed a primary and active breach of trust and fiduciary duty such that it is substantially more at fault than BNYM or its affiliates for any alleged losses to the IBEW Plan.  Such an alleged failure by the Board of Trustees would amount to inadequate due diligence and investigation at the time of making the investment or selecting it as an investment option, and in monitoring it thereafter, and would constitute a failure to administer the trust investments diligently and prudently, and for those reasons, among others, would violate the Board of Trustees' duties under ERISA.  For example, if—as the Board of Trustees alleges—the segregated Plaintiffs fund should never have contained any investment in Lehman floating rate notes, then the Board of Trustees breached its duty by permitting and failing to object to such investment.  Likewise, if—as the Board of Trustees alleges—based on publicly available information, BNYM or its affiliates should have known to liquidate investments in Lehman floating rate notes before Lehman's collapse, then the Board of Trustees breached its duty by failing to object to such investment and failing to direct that it should be liquidated.

**Count I**
**(Breach of Fiduciary Duty)**

31.     BNYM repeats and realleges the allegations in paragraphs 1 through 37 of these Counterclaims as if fully set forth herein.

32.     The Board of Trustees, as a fiduciary of the IBEW Plan, was obligated to discharge its duties with the care, loyalty, skill, produce and diligence necessary to safeguard IBEW Plan assets and ensure that the assets are invested in the interest of the IBEW Plan, the participants, and the beneficiaries, pursuant to 29 U.S.C. § 1104(a)(1).

33.     The Board of Trustees breached its fiduciary duties to the IBEW Plan by (1) failing to monitor and review investment of collateral pursuant to the Securities Lending Agreement; (2) failing to notify BNYM of any questions concerning the investment of collateral pursuant to the Securities Lending Agreement or the purported belief that investments were not consistent with the investment guidelines specified in the Securities Lending Guidelines and the Board of Trustees' Investment Policy Statement; and (3) failing to notify BNYM of any concerns about the Lehman floating rate notes before the failure of Lehman.

34.     BNYM was not aware that the Board of Trustees believed that Lehman floating rate notes were not consistent with the investment guidelines specified in the Securities Lending Guidelines and the Board of Trustees' Investment Policy Statement. The Board of Trustees was in the best position to prevent the alleged harm complained of by Plaintiff in its Third Amended Complaint. The Board of Trustees' breaches, therefore, actually and proximately caused the damages to the IBEW Plan alleged by Plaintiff.

35.     The Board of Trustees is liable to make good on such losses to the IBEW Plan caused by its breaches. In addition, as set forth below, the Board of Trustees is further subject to other equitable relief, including equitable indemnification, contribution, declaratory

relief, and any other relief that the Court deems appropriate.  If BNYM or any affiliate is found liable, the equities in this case require the Board of Trustees to bear their full share of responsibility for any alleged losses as a result of their own breaches of fiduciary duties to the IBEW Plan.

### Count II
### (Breach of Co-Fiduciary Duty)

36.     BNYM repeats and realleges the allegations in paragraphs 1 through 42 of these Counterclaims as if fully set forth herein.

37.     The Board of Trustees is liable as a co-fiduciary under 29 U.S.C. § 1105, which provides that a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility for another fiduciary if, *inter alia*, (1) he participates knowingly in an act or omission of such other fiduciary, knowing such act or omission is a breach, (2) by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach, or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach.

38.     BNYM and the Board of Trustees are co-fiduciaries of the IBEW Plan. The Board of Trustees had knowledge of, enabled, or participated knowingly in the failure to monitor and review the performance of BNYM with regard to the investment of securities lending collateral, and knowingly participating, enabling, and failing to remedy the investment - the purchase or maintenance of Lehman floating rate notes.

39.     If BNYM or any affiliate is liable for breaches of fiduciary duty to the IBEW Plan, then the Board of Trustees is also liable as co-fiduciary for breaches of fiduciary duty to the IBEW Plan.

## Count III
## (Equitable Indemnification)

40.    BNYM repeats and realleges the allegations in paragraphs 1 through 46 of these Counterclaims as if fully set forth herein.

41.    If the IBEW Plan sustained any damages as alleged by Plaintiff, those damages were caused entirely by the wrongful conduct of the Board of Trustees' breaches of fiduciary duty and not by BNYM or its affiliates.

42.    If BNYM or any affiliate is found liable for breach of fiduciary duty, BNYM is entitled to equitable indemnification under the federal common law of ERISA and under 29 U.S.C. § 1132(a)(2) and (3), which allow a fiduciary to "obtain other appropriate equitable relief."

43.    In the event BNYM were found liable to the IBEW Plan for losses as alleged in the Third Amended Complaint herein, such liability of BNYM would be entirely derivative, resulting not from any fiduciary breach by BNYM, but from the fiduciary breaches of the Board of Trustees.  Therefore, under federal common law and ERISA, BNYM is entitled to equitable indemnification from the Board of Trustees.

44.    BNYM has incurred expenses of attorney's fees, court costs, and other litigation expenses defending against Plaintiff's claims in this action.  By reason of the foregoing, BNYM is entitled to recover from the Board of Trustees such reasonable attorneys' fees, court costs, and other litigation expenses necessarily incurred in the underlying action. The amount of such expenses continues to accrue.

## Count IV
### (Contribution)

45.     BNYM repeats and realleges the allegations in paragraphs 1 through 51 of these Counterclaims as if fully set forth herein.

46.     If BNYM or any affiliate is found liable for breach of fiduciary duty, Defendant is entitled to contribution under the federal common law of ERISA and under 29 U.S.C. § 1132(a)(2) and (3), which allow a fiduciary to "obtain other appropriate equitable relief."

47.     In the event BNYM were found liable to the IBEW Plan for losses as alleged in the Third Amended Complaint herein, such losses were caused in whole or in part by the acts or omissions of the Board of Trustees.  As a result of these acts or omissions, the Board of Trustees should be required:

        a.     to pay a share of BNYM's judgment in proportion with the comparative fault of the Board of Trustees in causing any losses to the IBEW Plan; and

        b.     to reimburse BNYM for any damages awards or payments made to the IBEW Plan in excess of BNYM's proportional share of any alleged damages, if any.

### PRAYER FOR RELIEF

WHEREFORE, BNYM prays that this Court enter judgment in its favor and against the Board of Trustees, and that this Court award the following relief:

        a.     A declaratory judgment that if BNYM or any affiliate is found to have breached any fiduciary duty under ERISA (which Defendant denies), the Board of Trustees also have breached their respective duties under ERISA

and should be held individually liable to the IBEW Plan for any losses arising therefrom;

b.    A declaratory judgment that the breaches of fiduciary duty by the Board of Trustees was the actual and proximate cause of any injuries and damages suffered by the IBEW Plan, if any, and that the Board of Trustees shall indemnify BNYM, either completely or partially, for any sums which may be recovered against BNYM by the IBEW Plan;

c.    In the event a judgment is entered against BNYM or any affiliate, the judgment will be entered as judgment to be paid in full by, or in proportion with, the comparative fault of the Board of Trustees, relating to the rights of contribution or equitable indemnification alleged herein;

d.    An award of BNYM's attorneys' fees and costs, including attorneys' fees and costs under ERISA and 29 U.S.C. § 1132(g) and pursuant to the Securities Lending Agreement; and

e.    Such other or further relief as this Court may deem just and proper.

Dated: March 25, 2011              Respectfully submitted,
       New York, New York

/s/ Damien J. Marshall
Damien J. Marshall
dmarshall@bsfllp.com
Christopher E. Duffy
cduffy@bsfllp.com
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue, 7th Floor
New York, New York 10022
Tel.: 212-446-2300
Fax: 212-446-2350

Carl E. Goldfarb
cgoldfarb@bsfllp.com
BOIES, SCHILLER & FLEXNER LLP
401 East Las Olas Boulevard, Suite 1200
Fort Lauderdale, Florida 33301
Tel.: 954-356-0011
Fax: 954-356-0022

*Attorneys for Defendants The Bank of New
York Mellon Corp., BNY Mellon, N.A., and The
Bank of New York Mellon*

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that I caused a true and correct copy of the foregoing ANSWER

TO THIRD AMENDED COMPLAINT AND COUNTERCLAIMS to be served via electronic

mail and U.S. Mail on March 25, 2011 to Plaintiff through its counsel:

> Stephen R. Astley
> ROBBINS GELLER RUDMAN & DOWD LLP
> 120 East Palmetto Park Road, Suite 500
> Boca Raton, Florida  33432

> /s/ Damien J. Marshall
> Damien J. Marshall