UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————— x

THE BOARD OF TRUSTEES OF THE
SOUTHERN CALIFORNIA IBEW-NECA
DEFINED CONTRIBUTION PLAN, On
Behalf of Itself and All Others Similarly
Situated,

                      Plaintiff,

    vs.

THE BANK OF NEW YORK MELLON
CORPORATION, et al.,

                  Defendants.

———————————————————— x

:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:
:

Civil Action No. 09-cv-06273(RMB)(AJP)

<u>CLASS ACTION</u>

**COUNTERCLAIM-DEFENDANT'S
MOTION AND INCORPORATED
MEMORANDUM OF LAW TO DISMISS
COUNTERCLAIM-PLAINTIFF'S
COUNTERCLAIM, AND PLAINTIFF'S
MOTION AND INCORPORATED
MEMORANDUM OF LAW TO STRIKE
DEFENDANTS' AFFIRMATIVE
DEFENSES**

## TABLE OF CONTENTS

MOTION TO DISMISS BNYM'S COUNTERCLAIM ...................................................1

PRELIMINARY STATEMENT ............................................................................................1

FACTUAL BACKGROUND ...............................................................................................3

ARGUMENT .........................................................................................................................6

I.      Standard of Review ..................................................................................................6

II.     BNYM Has Failed to State a Claim for Breach of Fiduciary Duty .....................6

        A.      BNYM Lacks Standing to Bring Such a Claim .......................................6

        B.      BNYM Fails to Allege Facts Demonstrating that the Board Was a Fiduciary
                with Respect to the Approved Investments at Issue .................................9

III.    BNYM Has Failed to State a Claim for Breach of Co-Fiduciary Duty Under
        Section 405 ............................................................................................................12

        A.      Section 405(d) Forecloses the Board's Liability Under Sections
                405(a)(2)-(3) ...............................................................................................13

        B.      BNYM Has Failed to Allege Sufficient Facts to Support a Claim Under
                Section 405(a)(1) .......................................................................................14

IV.     BNYM's Contribution and Indemnification Claims Should Also Be Dismissed..............16

        A.      BNYM's Claims for Contribution and Indemnification Are Premature ..............16

        B.      There Is No Cause of Action for Contribution and Indemnification Under
                ERISA ..........................................................................................................17

        C.      Even if the Court Were to Recognize a Cause of Action for Contribution or
                Indemnification, These Claims Should Be Dismissed  Under Applicable
                Trust Law .....................................................................................................21

                1.      BNYM Has Failed to Allege that the Board Received any Benefit
                        from the Breach of Trust............................................................................21

                2.      BNYM's Counterclaim Fails to Set Forth Facts to Infer that the
                        Board is "Substantially More at Fault" than BNYM .................................22

V.      Conclusion ..............................................................................................................24

MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES ...................................24

i

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Aks v. Southgate Trust Co.*,
   1992 U.S. Dist. LEXIS 20442 (D. Kan. Dec. 24,1992)...........................................................21

*Ashcroft v. Iqbal*,
   129 S. Ct. 1937 (2009)...........................................................................6, 15, 16, 23

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007).................................................................................... *passim*

*BP Corp. N. Am. v. N. Trust Invs., N.A.*,
   692 F. Supp. 2d 980 (N.D. Ill. 2010) ("*BP*")................................................. *passim*

*Chemung Canal Trust Co. v. Sovran Bank/Md.*,
   939 F.2d 12 (2nd Cir. 1991)...........................................................................19, 20, 21

*Coleman v. Nationwide Life Ins. Co.*,
   969 F.2d 54 (4th Cir. 1992) ...........................................................................21

*Diduck v. Kaszycki & Sons Contractors, Inc.*,
   974 F.2d 270 (2nd Cir. 1992)...........................................................................19, 20

*Fedex Corp. v. N. Trust Co.*,
   2010 WL 2836345 (W.D. Tenn. Jul. 16, 2010) ...............................................16, 21

*Franklin v. Aetna Life Ins. Co.*,
   1988 U.S. Dist. LEXIS 10842 (D.S.C. July 18, 1988) .........................................21

*FSP, Inc. v. Societe Generale*,
   2003 WL 124515 (S.D.N.Y. Jan. 14, 2003) .....................................................16, 17

*FSP, Inc. v. Societe Generale*,
   2005 WL 475986 (S.D.N.Y. Feb. 28, 2005).........................................................25

*Gerosa v. Savasta & Co., Inc.*,
   329 F.3d 317 (2nd Cir. 2003)...........................................................................20

*Great-West Life & Annuity Ins. Co. v. Knudson*,
   534 U.S. 204 (2002)...........................................................................19, 20

*Haddock v. Nationwide Fin. Servs.*,
   570 F. Supp. 2d 355 (D. Conn. 2008) ("*Haddock III*") ..................................6, 21, 22

*Haddock v. Nationwide Fin. Servs., Inc.*,
   2010 WL 2976910 (D. Conn. Jul. 23, 2010) ("*Haddock IV*")..............................7, 8

*Harris Trust & Sav. Bank v. Salomon Bros., Inc.*,
    832 F. Supp. 1169 (N.D. Ill. 1993) ...................................................................12, 13

*Harris Trust and Savs. v. John Hancock Mut. Life Ins. Co.*,
    122 F. Supp. 2d 444 (S.D.N.Y. 2000).......................................................................24

*Hollingshead v. Burford Equip. Co.*,
    747 F. Supp. 1421 (M.D. Ala. 1990) .........................................................................21

*Kim v. Fujikawa*,
    871 F.2d 1427 (9th Cir. 1989) ...................................................................................21

*Lerner v. Fleet Bank, N.A.*,
    318 F.3d 113 (2d Cir. 2003).........................................................................................6

*Lowen v. Tower Asset Mgmt., Inc.*,
    829 F.2d 1209 (2d Cir. 1987).......................................................................11, 13, 25

*Makarova v. United States*,
    201 F.3d 110 (2d Cir. 2000).........................................................................................6

*Mars Assocs., Inc. v. N. Y. City Educ. Constr. Fund*,
    513 N.Y.S.2d 125 (N.Y. App. Div. 1987) ................................................................17

*Mass. Mut. Life Ins. Co. v. Russell*,
    473 U.S. 134 (1985) ("*Russell*").....................................................................7, 8, 18

*McDermott v. City of N.Y.*,
    428 N.Y.S.2d 643 (1980)...........................................................................................17

*Mertens v. Hewitt Assocs.*,
    508 U.S. 248 (1993).......................................................................................18, 19, 20

*Murphy v. New Milford Zoning Comm'n*,
    402 F.3d 342 (2d Cir. 2005).........................................................................................6

*Openshaw v. Cohen, Klingenstein & Marks, Inc.*,
    320 F. Supp. 2d 357 (D. Md. 2004) ..........................................................................21

*Plumbers Local 93 Health and Welfare and Pension Fund v. DiPietro Plumbing Co.*,
    1999 U.S. Dist. Lexis 6913 (N.D. Ill. Apr. 30, 1999)...............................................21

*Radutzky v. Wallert*,
    1988 U.S. Dist. LEXIS 15152 (E.D.N.Y. Dec. 30, 1988) .....................................7, 8

*Scalp & Blade, Inc. v. Advest, Inc.*,
    755 N.Y.S.2d 140 (N.Y. App. Div. 2002) ................................................................23

*Schloegel v. Boswell,*
766 F. Supp. 563 (S.D. Miss. 1991) ....................................................... 21

*Shechter v. Comptroller of City of N.Y.,*
79 F.3d 265 (2d Cir. 1996) ................................................................... 24

*Shinew v. Wszola,*
2009 WL 1076279 (E.D. Mich. Apr. 21, 2009) ...................................... 25

*Solow Bldg. Co., LLC v. ATC Assocs., Inc.,*
388 F. Supp. 2d 136 (E.D.N.Y. 2005) .................................................. 16

*State St. Bank and Trust Co. v. Denman Tire Corp.,*
240 F.3d 83 (1st Cir. 2001) ................................................................. 21

*Sunderlin v. First Reliance Standard Life Ins. Co.,*
235 F. Supp. 2d 222 (W.D.N.Y. 2002) ................................................. 24

*Travelers Cas. and Sur. Co. of Am. v. IADA Servs., Inc.,*
497 F.3d 862 (8th Cir. 2007) .............................................................. 20

*Travelers Prop. Cas. Corp. v. Winterthur Int'l,*
2002 WL 1391920 (S.D.N.Y. June 25, 2002) ...................................... 17

*Trs. of the Auto Mechs. Local No. 701 Pension and Welfare Funds v. Union Bank of Cali.,*
630 F. Supp. 2d 951 (N.D. Ill. 2009) ..................................................... 5

*Ulico Cas. Co. v. Clover Capital Mgmt, Inc.,*
217 F. Supp. 2d 311 (N.D.N.Y. 2002) ............................................ 12, 25

*Williams v. Provident Inv. Counsel, Inc.,*
279 F. Supp. 2d 894 (N.D. Ohio 2003) ........................................... 17, 21

Counterclaim-Defendant The Board of Trustees (the "Board") of the Southern California IBEW-NECA Defined Contribution Plan ("Plaintiff" or the "Plan"), respectfully requests that the Court dismiss Counterclaim-Plaintiff The Bank of New York Mellon's ("BNYM") Counterclaim pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure.  Plaintiff also respectfully requests that the Court strike Defendants' affirmative defenses pursuant to Rule 12(f).[1]

## MOTION TO DISMISS BNYM'S COUNTERCLAIM

## PRELIMINARY STATEMENT

In response to the well-pleaded allegations of the Third Amended Class Action Complaint ("TAC")[2] that Defendants breached their fiduciary duties under the Employee Retirement Income Security Act, 29 U.S.C. §§1001, *et seq*. ("ERISA") in maintaining imprudent investments in Lehman Brothers Holdings, Inc. ("Lehman") floating rate notes with the Plans' Collateral, BNYM has brought a counterclaim against the Board (the "Counterclaim") [Dkt. No. 144].  At bottom, the Counterclaim is nothing more than an attempt to shift BNYM's liability to the Board – a nominal plaintiff who received no benefit from Defendants' breach and bore no responsibility for Defendants' maintenance of the Collateral investments.

Indeed, while BNYM once held itself out as a sophisticated investment manager and "the global leader in the securities lending industry," (TAC at ¶1), it now claims that the Board – comprised of volunteers in the electrical profession who do not have BNYM's investment expertise – should have provided constant supervision over BNYM's discretionary investment decisions.

---

[1] All defendants in the underlying litigation filed affirmative defenses and will herein be referred to as "Defendants."  BNYM is the only defendant in the underlying litigation to file a counterclaim.

[2] References to the TAC are cited as "TAC at ¶__."  The allegations of the TAC and all of its defined terms are incorporated by reference herein.

Essentially, BNYM alleges that although it was appointed as agent and Investment Manager for the Plan with respect to the Securities Lending Program ("SLP"), the Board should have reviewed and evaluated every discretionary investment decision made by BNYM under the same criteria that BNYM – a sophisticated, expert Investment Manager – was expected to follow.  Based on this illogical theory, BNYM seeks to eliminate or lessen its liability for its own conduct by holding the Board liable for breach of fiduciary duty and co-fiduciary duty, and by pursuing claims of contribution and indemnity against the Board.  Such claims are inconsistent with the principles of trust law undergirding ERISA.

Notwithstanding the specious nature of its allegations, BNYM fails to state claims upon which relief can be granted.  Specifically, BNYM lacks standing to pursue claims for breach of fiduciary and co-fiduciary duty because it does ***not*** bring the claims solely for the Plan's benefit.  Moreover, as BNYM was appointed by the Board as Investment Manager for the Plan's SLP assets, BNYM is the ***sole*** fiduciary with respect to Approved Investments, as defined in the Agreement, and ERISA forecloses the Board's liability for BNYM's breaches of fiduciary duty arising out of such investments.

BNYM's claims for contribution and indemnity should also be dismissed.  As a preliminary matter, these claims are not ripe for adjudication at this juncture because no liability has been imposed on BNYM.  Further, no such causes of action exist under ERISA.  And, even if the Court were to consider such causes of action, BNYM's claims for contribution and indemnification fail under applicable trust principles.  Finally, the Counterclaim lacks sufficient factual content to state a claim for relief that is plausible on its face.  Accordingly, for all the reasons set forth herein, the Court should summarily dismiss BNYM's Counterclaim.

## FACTUAL BACKGROUND

Plaintiff filed the TAC on March 11, 2011.  The TAC alleges that Defendants breached their fiduciary duties to the Plan and Class Plans under ERISA, the Securities Lending Agreement and Guaranty (the "Agreement"), the Securities Lending Guidelines (the "Guidelines"), and the Plan's Investment Policy Statement ("IPS").  *See* TAC, Exhibits A, C, and D, respectively.

The TAC alleges that in 1998, Plaintiff entered into the Agreement with Defendants.  TAC at ¶2.  Under the Agreement, Defendants provided investment management services to Plaintiff as its fiduciary under ERISA.  *Id.*  Defendants had *full discretion* to loan the Plan's securities to borrowers in return for Collateral and also had *full discretion* to invest that Collateral.  *Id.* While Plaintiff kept abreast of the performance of the SLP through communications, meetings and presentations made by Defendants, it relied on Defendants to make prudent investment decisions as required by ERISA, the Agreement, the Guidelines executed by the parties, correspondence, and the IPS.  *Id.* at ¶¶ 2, 49, 50, 51.  The clear investment objective under each was to earn a sufficient return to ensure safety of principal over all other considerations.  *Id.* at ¶ 2.  Under the Agreement, Defendants were paid 40% of any profit earned from Collateral investments but had no liability if the investments lost money, except due to its own negligence, bad faith, willful misconduct, or failure to act in accordance with the Prohibited Transaction Class Exemption 81-6.  *Id.*  The Plan participated in the SLP as a means to offset custodial fees associated with maintaining its trust funds.  *Id.* at ¶1.

As the Plan's Investment Manager, Defendants made various investments with the Plan's Collateral.  In particular, they invested the Collateral in Lehman floating rate notes.  The TAC alleges that beginning in 2007, and continuing into 2008, it became increasingly apparent to the market and Defendants that there was tremendous uncertainty surrounding Lehman's financial stability.  *Id.* at ¶3. By August of 2008, Defendants' concern about Lehman's financial uncertainty was so great that Defendants, who served Lehman in a clearing bank capacity, required additional

3

collateral from Lehman as a condition to Lehman's continued operations with Defendants. *Id.* Additionally, in the summer and fall of 2008, executives within Defendants' SLP attempted to minimize the bank's exposure in securities lending loans to Lehman, for which Defendants would ultimately be held liable should Lehman collapse. *Id.*

The TAC further alleges that despite Defendants' concerns regarding Lehman's stability and their own actions to minimize bank exposure to a Lehman default, Defendants surprisingly took no action with respect to the Collateral investments it made on behalf of the Plan and the Class Plans. *Id.* at ¶4. Although Defendants could have divested the Lehman Note and other similar Lehman investments at any point during 2007 through 2008, and significantly minimized or eliminated any losses, Defendants instead held on to the Lehman investments. *Id.* In such a way, Defendants took a gamble with the Plan's and the Class Plans' money for which they bore no risk of loss. *Id.* Defendants took this gamble because under the Agreement, Defendants had no risk of loss but were paid 40% of any profit. *Id.*

When Lehman declared bankruptcy on September 15, 2008, the Plans suffered nearly two billion dollars in losses. *Id.* at ¶5. The TAC alleges that Defendants' gamble of holding on to the Lehman investments violated the Agreement, the Guidelines, the IPS, and their fiduciary duties under ERISA by: (1) failing to adhere to the key objective of safety of principal and corpus being paramount over all other considerations; (2) failing to diversify the Collateral investments; (3) imprudently maintaining the investments in Lehman despite growing uncertainty over Lehman's financial stability; and (4) acting in their own self-interest by failing to modify their risky investment strategy because they were the beneficiaries of profits but none of the losses. *Id.* Plaintiff filed the TAC to recover losses to both principal and profits caused by Defendants' breaches of thier fiduciary duty to the Plans. *Id.* at ¶6.

In response, Defendants filed their Answer to Third Amended Class Action Complaint ("Answer") and Counterclaim on March 25, 2011.[3]  BNYM alleges four counterclaims against the Board:  (i) Breach of Fiduciary Duty (CC at ¶¶31-35); (ii) Breach of Co-Fiduciary Duty (CC at ¶¶36-39); (iii) Equitable Indemnification (CC at ¶¶40-44); and (iv) Contribution (CC at ¶¶45-47).[4]  In support of this Counterclaim, BNYM argues that if it is found liable for breaches of its fiduciary duties to the Plan, then the Board also breached its fiduciary duties to the Plan, and that such breaches "caused, entirely or in part, any alleged losses by the IBEW Plan."  CC at ¶5.  *See also id.* at ¶¶30, 35, 39, 43, and 47.  For the reasons stated below, BNYM's allegations fail to state claims upon which relief can be granted.  Accordingly, this Court should dismiss the Counterclaim pursuant to Rules 12(b)(1) and (6).

---

[3] References to BNYM's Counterclaim will be cited as "CC at ¶__."

[4] BNYM's Counterclaim is procedurally improper and should be dismissed.  The appropriate mechanism for BNYM's claims is a third-party complaint.  While the Board is a party to this action as a representative of the Plan, it is not a party to this action in its capacity as a fiduciary, and thus a third-party suit is the appropriate vehicle for bringing suit against the Board.  *See BP Corp. N. Am. v. N. Trust Invs., N.A.*, 692 F. Supp. 2d 980, 985-86 (N.D. Ill. 2010) ("*BP*") (demanding third-party complaint instead of counterclaim); *Trs. of the Auto Mechs. Local No. 701 Pension and Welfare Funds v. Union Bank of Cali.*, 630 F. Supp. 2d 951, 952 (N.D. Ill. 2009) ("[defendant's] counsel had mistakenly conceptualized its potential rights by bringing what counsel characterized as a Counterclaim rather than as a Third Party Complaint-after all, this action was brought by Trustees in their collective institutional capacity, while the so-called Counterclaim sought to impose individual liability on the Trustees because they had assertedly violated their own fiduciary obligations to the [Plan].  That meaningful distinction should have been apparent to [defendant's] counsel, for they were admittedly not seeking to reduce the amount of the [Plan's] potential recovery (which would have been the consequence of a true Counterclaim), as contrasted with attempting to shift some of [defendant's] liability for that recovery to the individual Trustees (as might be appropriate if both [defendant] and those individuals had been guilty of breaching their respective fiduciary obligations).").  However, as is further detailed herein, a third-party complaint should not be allowed because it would be futile.  Thus, dismissal should be with prejudice.

## ARGUMENT

### I.       Standard of Review

Dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction is proper where the court "lacks the statutory or constitutional power to adjudicate it." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).  Ripeness of an alleged claim is a jurisdictional prerequisite.  *See Murphy v. New Milford Zoning Comm'n*, 402 F.3d 342, 347-48 (2d Cir. 2005).[5]

Rule 12(b)(6) allows a plaintiff to challenge the legal sufficiency of a defendant's counterclaim in the same manner that defendant may challenge the sufficiency of a plaintiff's complaint.  *See generally Haddock v. Nationwide Fin. Servs.*, 570 F. Supp. 2d 355, 358 (D. Conn. 2008).[6]  In order to survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  This plausibility standard requires "more than a sheer possibility that a defendant has acted unlawfully," and "more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009).  Indeed, "a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555.

### II.      BNYM Has Failed to State a Claim for Breach of Fiduciary Duty

#### A.       BNYM Lacks Standing to Bring Such a Claim

Count I of the Counterclaim ostensibly seeks to bring a claim for breach of fiduciary duty against the Board on behalf of the Plan.  CC at ¶¶31-35.  However, BNYM lacks standing to bring

---

[5] The standards for dismissal under Rules 12(b)(1) and 12(b)(6) are identical.  *See Lerner v. Fleet Bank, N.A.*, 318 F.3d 113, 128 (2d Cir. 2003).

[6] Internal quotations and citations are omitted, and emphasis is added, unless otherwise noted.

such a claim because it pursues this claim solely for its own benefit.  Accordingly, this claim should be dismissed.[7]

ERISA provides that any relief granted for ERISA violations must go to the Plan itself and **not** to individuals bringing suit for such violations.  *See Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 140 (1985) ("*Russell*").  Indeed, claims brought pursuant to ERISA must be made on behalf of the Plan as a whole, and **not** for the benefit of an individual participant, beneficiary or fiduciary.  *See Russell*, 473 U.S. at 144 ("the entire text of §409 persuades us that Congress did not intend that section to authorize any relief except for the plan itself"); *see also BP*, 692 F. Supp. 2d at 984 (noting that in *Russell,* the Supreme Court "held quite clearly that the recovery for a violation of Section 409 must 'inure to the benefit of the plan as a whole' and 'Congress did not intend that section to authorize any relief except for the plan itself'") (quoting *Russell*, 473 U.S. at 140, 144); *Haddock v. Nationwide Fin. Servs., Inc.*, No. 3:01cv1552, 2010 WL 2976910, at *3 (D. Conn. Jul. 23, 2010) ("*Haddock IV*") (noting that defendant's counterclaim "may be pursued **if, and only if**, it is solely in the interest of the [Plans'] participants and beneficiaries and for the exclusive purpose of providing benefits to participants and beneficiaries"); *Radutzky v. Wallert*, No. 87 C 4340, 1988 U.S. Dist. LEXIS 15152, at *7 (E.D.N.Y. Dec. 30, 1988) (dismissing counterclaims for joint and several liability that defendant fiduciary purported to bring on behalf of the plan under Section 409 because "in asserting plaintiff's joint and several liability, defendants [did] not seek to recover additional

---

[7] As an initial matter, BNYM has failed to provide a legal basis for its breach of fiduciary duty claim.  In Count I, BNYM fails to cite a provision under which the Board can be held liable.  CC at ¶¶31-35.  While Section 404(a)(1) – the **only** section cited by BNYM in this Count – sets forth a fiduciary's duties, this provision does not provide for liability under ERISA.  *See* 29 U.S.C. §1104(a)(1).  Rather, statutory liability for breach of fiduciary duty under ERISA is governed by Section 409, 29 U.S.C. §1109.  Although BNYM only vaguely references this provision in the Jurisdiction section of its Counterclaim, the Board will treat this claim as being brought pursuant to Section 409.  CC at ¶11.  This defect alone, however, warrants dismissal.

funds for the Funds. Rather, they [sought] to diminish their own exposure by apportioning some of

the liability to plaintiffs."). Here, BNYM does not purport to bring its breach of fiduciary duty

counterclaim solely for the benefit of the Plan but rather clearly seeks to offset its own liability and

potential damages. *See*, *e.g.*, CC at ¶35 ("If BNYM or any affiliate is found liable, the equities in

this require the Board of Trustees to bear their full share of responsibility for any alleged losses as a

result of their own breaches of fiduciary duties to the IBEW Plan."). This is precisely the type of

counterclaim that the District of Connecticut rejected in *Haddock IV* and is not permitted under

*Russell*:

> Nationwide's theory of damages also makes little sense given its litigation posture as
> Plan fiduciaries. As I stated above, Nationwide is pursuing its counterclaim only in
> the event that it is found to have breached its fiduciary duty to the Plans; *it is simply
> trying to pin its monetary liability on the Trustees.* Nonetheless, Nationwide does
> not deny that it received the revenue sharing payments that the Trustees seek to
> disgorge, and does not contend that the Trustees received any personal benefits, other
> than perhaps better services and value for their Plans, from the purported revenue
> sharing scheme. *Nationwide's position, therefore, is internally inconsistent.* The
> defendants claim to represent the Plans' interests in their counterclaim against the
> Trustees; but, for Nationwide to reach its counterclaim, it must first be found to have
> breached its fiduciary duty and garnered the revenue sharing payment proceeds, the
> net profits of which would be deemed payable to the Plans. *If the defendants were
> truly acting in the Plans' interests, it would seem that Nationwide, the possessor of
> the revenue sharing payments' net profits, should be the party that disgorges the
> monetary relief, and not the Trustees.*

*Haddock IV*, 2010 WL 2976910, at *7.

Similarly, if this Court finds that Defendants are liable for breaches of their fiduciary duties,

the Plan and Plan participants will be made whole by the award against Defendants. Accordingly, as

the only beneficiary of BNYM's breach of fiduciary duty claim would be BNYM itself, this claim is

not permitted by ERISA and should be dismissed. *See Russell*, 473 U.S. at 144; *BP,* 692 F. Supp. 2d

at 984; *Haddock IV*, 2010 WL 2976910, at *3; *Radutzky*, 1988 U.S. Dist. LEXIS 15152, at *7.

**B.      BNYM Fails to Allege Facts Demonstrating that the Board Was a Fiduciary with Respect to the Approved Investments at Issue**

Aside from BNYM's lack of standing to bring a claim against the Board for breach of fiduciary duty, the claim is also implausible on its face because BNYM has not alleged facts to support that the Board was a fiduciary with respect to the Approved Investments at issue in this case. *See Twombly*, 550 U.S. at 570.  Under ERISA, a person is a fiduciary only to the extent he acts in a fiduciary capacity.  ERISA §3(21)(A) states:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. §1002(21)(A).  Under this provision, the Board is only a fiduciary to the extent that it selected the Defendants to be the Investment Manager of the Collateral.  The Board's decision to delegate investment responsibilities to Defendants was based on Defendants' representations as to their 30 years of SLP experience without losses and on advice of the Plan's Investment Consultant, Wurts and Associates.  *See* TAC at ¶22.  This delegation was permissible both under ERISA and various Plan documents, which BNYM does not dispute.  *See* 29 U.S.C. §1102(c)(3); TAC at ¶47, Exs. C and D.[8]  Thus, in hiring Defendants as an investment fiduciary with the responsibility and

---

[8] The Agreement and Declaration of Trust of the Southern California IBEW-NECA Pension Plan ("Trust Agreement") provides that "Trustees may . . . allocate in whole or part the investment powers and authority herein set forth to a committee of Trustees, or delegate such powers and authority to an Investment Manager . . . . If an Investment Manager is appointed . . . no Trustee shall be liable for the Acts or omissions of the Investment Manager, and no Trustee shall be obligated to invest or otherwise manage any asset of the plan." TAC at ¶47.

expertise to invest the Collateral, the Board fully and properly fulfilled its fiduciary duties. *See* TAC at ¶¶13, 47.

In appointing Defendants as the Investment Manager[9] and agent for the Plan with respect to the SLP, the Board allowed Defendants ***full discretion*** within the scope of the Agreement and the Guidelines.   TAC at ¶24.   Specifically, Defendants were "***authorized*** and directed, ***without obtaining any further approval*** from Lender [the Plan], to invest and reinvest all or substantially all of the Cash Collateral received in any Approved Investment" (TAC, Ex. A at 6) and had "***full investment discretion***" within the scope of pre-determined Guidelines.   TAC, Ex. C at 1.   Most importantly to Plaintiff's case and the investments at hand, pursuant to the Agreement, BNYM had sole and exclusive authority over maintenance and disposition of the Plan's Approved Investments. TAC, Ex. A at 6 ("all Collateral, Approved Investments and Proceeds credited to the Collateral Account shall be controlled by, and subject only to the instructions of, [BNYM], and [BNYM] shall not be required to comply with any instructions of Lender [the Plan] with respect to the same.").[10] Thus, through the Board's appointment of BNYM as Investment Manager with full discretionary authority, BNYM was the ***sole*** ERISA fiduciary with responsibility, authority, and control over the management or disposition of the Plan's Approved Investments, including the Lehman floating rate

---

[9] Defendants have acknowledged that they are the Plan's Investment Manager.   In executing the Guidelines, Defendants acknowledged that "As an authorized representative of Bank of New York, ***provider of investment management services*** to the Southern California I.B.E.W.-N.E.C.A. Defined Contribution Plan, I hereby acknowledge receipt on behalf of Bank of New York and agree on behalf of Bank of New York to ***conduct investment management services*** in accordance with the terms of this addendum ***as well as the Investment Policy Statement*** as set by the Board of Trustees".   *See* TAC at ¶35, Exhibit C.   Defendants have also admitted that it is an ERISA fiduciary to the Plan through its provision of securities lending services.   Defendants Answer to Third Amended Complaint ("Ans.")  at ¶2; CC at ¶ 10.

[10] The Agreement also provides that BNYM "reserves the right, ***in its sole discretion***, to liquidate any Approved Investment and credit the net proceeds to the Collateral Account." TAC, Ex. A at 6.

notes here at issue.  Accordingly, it is BNYM **and only** BNYM who is the ERISA fiduciary for the decisions it made as the Plan's Investment Manager to maintain the Plan's Collateral in the Lehman floating rate notes.  As the Board was not the investment fiduciary for Approved Investments, it could not have breached any fiduciary duties to the Plan with respect to those investments.

Despite this, BNYM alleges that the Board breached its fiduciary duties to the Plan by failing to monitor and review BNYM's investment decisions, failing to notify BNYM of questions as to its investment decisions, and failing to notify BNYM of any "concerns" it had regarding BNYM's investments in Lehman.  CC at ¶¶33-34.  BNYM improperly reaches these conclusions by suggesting that the Board's recognized duty to monitor BNYM's **performance** somehow brings with it a duty to monitor and review each and every investment decision by BNY Mellon.[11]  *Id.* at ¶20. Indeed, there is no legal authority under ERISA to support BNYM's averment that the Board is supposed to know, let alone **required** to know, the individual characteristics of each investment made on behalf of the Plan by its delegated Investment Manager.

ERISA does not permit BNYM to shift its liability to the Board in this manner.  Rather, under ERISA, once an Investment Manager is appointed by a named fiduciary (*i.e.*, the Board), the named fiduciary cannot be held liable for the acts or omissions of the Investment Manager.  *See Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1219 (2d Cir. 1987) ("The plain intent of this statutory structure is to allow plan trustees to delegate investment authority to a professional advisor who then becomes a fiduciary with a duty of care and duty of loyalty to the plan while the trustees' legal responsibilities regarding the wisdom of investments are correspondingly reduced."); *see also*

---

[11] Coincidentally, the Board more than adequately fulfilled its duty to monitor BNYM's performance through ongoing presentations, meetings and communications with BNYM personnel.  *See, e.g.*, TAC at ¶¶2, 49, 50, 51.

*Harris Trust & Sav. Bank v. Salomon Bros., Inc.*, 832 F. Supp. 1169, 1178 (N.D. Ill. 1993) (trustee cannot be held liable for acts and omissions of appointed investment manager), citing, *inter alia*, 29 C.F.R. §2509.75-8, FR-14 Q&A ("Department of Labor stated that named fiduciaries can delegate managerial authority over plan assets to an investment manager, thereby ***releasing the named fiduciary*** from liability for the acts or omissions of the person to whom authority was delegated.") *and* H.R. Conf. Rep. No. 1280, 93rd Cong., 2d Sess. (1974), *reprinted in* 1974 U.S.C.C.A.N. 4639, 5038, 5082 (Congress explained that "as long as the named fiduciary had chosen and retained the investment manager prudentially, the named fiduciary ***would not be liable*** for the acts or omissions of the manager); *Ulico Cas. Co. v. Clover Capital Mgmt, Inc.*, 217 F. Supp. 2d 311, 316 (N.D.N.Y. 2002) (fiduciary obligations of an investment manager require it to exercise independent professional judgment; "ERISA's purpose of clearly locating legal obligations will be vitiated if plaintiffs are required to engage in an after-the-fact sorting out of actions, statements and states of mind among possible fiduciaries to determine which is legally responsible").

Accordingly, as the Board was not a fiduciary with respect to the Approved Investments and is not liable for Defendant's discretionary investment decisions regarding Approved Investments, BNYM cannot state a claim against the Board for breach of fiduciary duty, and thus its claim should be dismissed.

## III.    BNYM Has Failed to State a Claim for Breach of Co-Fiduciary Duty Under Section 405

BNYM next alleges that the Board is liable as a co-fiduciary under Section 405 of ERISA. CC at ¶¶36-39. As the Board, through its appointment of BNYM as Investment Manager, was not a fiduciary with respect to the Approved Investments, it follows that it cannot be held liable for a breach of co-fiduciary duty, and that this claim fails as a matter of law. However, even assuming

*arguendo* that the Board is a fiduciary with respect to the Approved Investments – which it is not – BNYM has still failed to state a claim for breach of co-fiduciary duty as set forth below.

### A.    Section 405(d) Forecloses the Board's Liability Under Sections 405(a)(2)-(3)

Section 405(a), which provides for co-fiduciary liability, states that a fiduciary with respect to a plan shall be liable for a breach of fiduciary responsibility of another fiduciary with respect to the same plan in three circumstances: (1) if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach; (2) if, by his failure to comply with section 404(a)(1) in the administration of his specific responsibilities which give rise to his status as a fiduciary, he has enabled such other fiduciary to commit a breach; or (3) if he has knowledge of a breach by such other fiduciary, unless he makes reasonable efforts under the circumstances to remedy the breach. 29 U.S.C. §1105(a).

However, as further detailed above, Section 405 also **limits** a fiduciary's liability based on a co-fiduciary's misconduct if the co-fiduciary is an appointed investment manager.  29 U.S.C. §1105(d); *see also Lowen*, 829 F.2d at 1219; *Harris*, 832 F. Supp. at 1178; *BP*, 692 F. Supp. 2d at 982 ("Where fiduciaries have appointed investment managers, they are insulated from liability pursuant to Section 405(a)(2)-(3).").

As detailed in Section II.B above and in the TAC, the Board appointed BNYM as Investment Manager for the Plan with respect to the SLP assets, and BNYM had exclusive control and authority over all Approved Investments, including the Lehman notes at issue in this case.  Accordingly, under Section 405(d), the Board is not liable for BNYM's acts or omissions and was not under an obligation to invest or otherwise manage any asset of the plan which was subject to the exclusive domain of BNYM.  Thus, any claim by BNYM based on Sections 405(a)(2) and (3) is foreclosed. *See BP*, 692 F. Supp. 2d at 982.

### B.     BNYM Has Failed to Allege Sufficient Facts to Support a Claim Under Section 405(a)(1)

As a result, assuming *arguendo* that the Board is a fiduciary with respect to the Approved Investments – which it is not – the Board's only potential liability to the Plan for BNYM's breaches of its fiduciary duty lies under Section 405(a)(1). *See* 29 U.S.C. §1105(d). Under Section 405(a)(1), a co-fiduciary may be liable ***only*** "if he participates knowingly in, or knowingly undertakes to conceal, an act or omission of such other fiduciary, knowing such act or omission is a breach." *Id.* at §1105(a)(1). Section 405(a)(1) "requires ***active participation*** in a co-fiduciaries breach." *BP*, 692 F. Supp. 2d at 985 n.4.

As an initial matter, BNYM's Counterclaim fails to state a claim under Section 405(a)(1) for breach of co-fiduciary duty as a matter of law because it is utterly devoid of allegations that the Board knowingly participated in or undertook to conceal BNYM's breaches of fiduciary duty. 29 U.S.C. §1105(a)(1). Indeed, BNYM has denied that it breached its fiduciary duties to the Plan (CC at ¶¶4, 30), and its Counterclaim simply alleges that to the extent BNYM is found liable for breaches of fiduciary duty, the Board is also liable as a co-fiduciary. CC at ¶38. Thus, in and of itself, BNYM's denial of liability demonstrates that the Board could not possibly be an "active participant" in breaches of fiduciary duty that BNYM supposedly did not commit. Likewise, BNYM's Counterclaim fails as a matter of law because it contains no allegations that the Board actively participated in or concealed BNYM's imprudent investment decisions made in the exercise of its discretionary authority over Approved Investments. *See BP*, 692 F. Supp. 2d at 985 n.4 (a remedy under Section 405(a)(1) is unavailable where the defendant made no allegations that the plaintiffs "somehow participated in the decisions to manage the Index Lending Funds or the collateral pools"). Indeed, the gravamen of BNYM's Counterclaim is the Board's failure to monitor. CC at ¶¶33, 38.

Fatal to the claim, however, is the fact that **nonfeasance** (even if it is assumed to have occurred) is distinct from **malfeasance** and is not actionable. *BP*, 692 F. Supp. 2d at 985.

Moreover, BNYM's Counterclaim lacks sufficient factual content to allow the Court to draw an inference that the Board was an active participant in BNYM's breaches of fiduciary duty. *See Iqbal*, 129 S. Ct. at 1949. Indeed, the TAC alleges that Defendants breached their fiduciary duties in the following manner: (1) maintaining the Plans' Collateral Investments in Lehman despite their knowledge as a sophisticated Investment Manager that Lehman's financial outcome was uncertain (TAC at ¶¶207-210); (2) acting in their own interests and not the Plans' by reducing their own Lehman exposure while at the same time failing to act to limit the Plans' exposure to the Investments (TAC at ¶¶211-212); (3) failing to diversify the Investments made with Plan assets and in so doing, increasing Plaintiff's risk of large losses (TAC at ¶213); and (4) failing to conduct independent due diligence regarding Lehman (TAC at ¶¶214-215). Yet, BNYM's Counterclaim is wholly lacking in factual averments that the Board knowingly participated in or undertook to conceal these breaches.

Indeed, rather than setting forth facts as to the Board's active participation in BNYM's breaches of fiduciary duty with regard to Approved Investments, BNYM's claim for co-fiduciary duty liability is that the Board failed to monitor or review BNYM's discretionary investment decisions with respect to the Collateral. For example, the Counterclaim makes the following conclusory allegation: "[t]he Board of Trustees had knowledge of, enabled, or participated knowingly in the failure to monitor and review the performance of BNYM with regard to the investment of securities lending collateral, and knowingly participating, enabling, and failing to remedy the investment – the purchase or maintenance of Lehman floating rate notes." CC at ¶38.

This allegation is precisely the type rejected by the Supreme Court as a "naked assertion" devoid of any further factual enhancement, *Iqbal*, 129 S. Ct. at 1949, and similarly rejected by this

Court in dismissing Plaintiff's Amended Class Action Complaint. Dkt. No. 59. Indeed, to the extent BNYM has alleged that the Board had "knowledge" of its actions (*see* CC at ¶38), such allegations are nothing more than a formulaic recitation of an element of liability under Section 405(a)(1), wholly insufficient to meet Rule 8(a) pleading standards under *Iqbal*. 129 S. Ct. at 1949-50 ("[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice.").[12] Accordingly, BNYM's Counterclaim is factually deficient and fatally defective under *Twombly* and *Iqbal*.

## IV.   BNYM's Contribution and Indemnification Claims Should Also Be Dismissed

### A.   BNYM's Claims for Contribution and Indemnification Are Premature

Similarly, BNYM has failed to state claims for contribution and indemnification.[13] As an initial matter, BNYM's claims for contribution and indemnification are premature at this juncture as BNYM's liability for its breaches of fiduciary duty has not yet been determined. Indeed, "[a] claim resting on contingent future events that may occur as anticipated or may not occur at all, is ***not ripe for adjudication***." *FSP, Inc. v. Societe Generale*, No. 02 CV 4786, 2003 WL 124515, at *4 (S.D.N.Y. Jan. 14, 2003). "Claims concerning indemnification obligations . . . are not ripe for adjudication until liability has been imposed upon the party to be indemnified." *Id.* Federal courts generally decline to award declaratory relief in indemnification actions. *Solow Bldg. Co., LLC v.*

_____

[12] Likewise, BNYM fails to plead facts demonstrating that the Board participated knowingly in, or knowingly undertook to conceal, an act or omission of BNYM, ***knowing that such act or omission was a breach***. 29 U.S.C. at §1105(a)(1).

[13] Claims for contribution and indemnity are virtually identical, and, accordingly, courts treat them interchangeably in their analysis. *See Fedex Corp. v. N. Trust Co.*, No. 08-2827, 2010 WL 2836345, at *3 (W.D. Tenn. Jul. 16, 2010) (acknowledging that "[c]ontribution is essentially a subset of indemnity," and "treat[ing] the claims for contribution and indemnification interchangably and apply[ing] the same analysis"). To avoid duplication and for purposes of brevity, the Board will address these claims collectively.

*ATC Assocs.*, *Inc.*, 388 F. Supp. 2d 136, 139-40 (E.D.N.Y. 2005) (noting that decisions about indemnity should be postponed until the underlying liability has been established, because making any decision earlier would consume judicial time in order to produce a decision that may turn out to be irrelevant).  *See also Travelers Prop. Cas. Corp. v. Winterthur Int'l*, 02 Civ. 2406, 2002 WL 1391920 (S.D.N.Y. June 25, 2002) (deciding that a declaratory judgment for indemnification was not ripe where the underlying liability had not yet been established).  Likewise, under New York law, an action for contribution or indemnification does not exist until the party seeking contribution or indemnification has made payment to a claimant.  *McDermott v. City of N.Y.*, 428 N.Y.S.2d 643 (1980); *Mars Assocs., Inc. v. N. Y. City Educ. Constr. Fund*, 513 N.Y.S.2d 125 (N.Y. App. Div. 1987).  Here, BNYM's claims for contribution and indemnification are not ripe for adjudication as liability has not yet been imposed upon BNYM.  *See Societe Generale*, 2003 WL 124515, at *4 (holding that "[t]he subject action is not justiciable to the extent it seeks a declaration regarding defendant's obligation to defend and indemnify plaintiff with regard to potential, unfiled claims, and seeks reimbursement for losses arising from the eight filed actions and future, anticipated claims").  For this reason alone, BNYM's claims for contribution and indemnity should be dismissed under Rule 12(b)(1).

> **B.    There Is No Cause of Action for Contribution and Indemnification Under ERISA**

In any event, BNYM's claims for contribution and equitable indemnification are not valid claims under ERISA.  *See Williams v. Provident Inv. Counsel, Inc.*, 279 F. Supp. 2d 894, 899 (N.D. Ohio 2003) ("There is . . . almost universal acknowledgment that ERISA does not speak to, much less expressly authorize, a right of contribution among ERISA fiduciaries.").  Accordingly, in order to recognize a common law claim for contribution or indemnification, a court would have to imply

remedies into ERISA's comprehensive statutory scheme.  Such an approach is contrary to that consistently espoused by the United States Supreme Court.

In *Russell*, the Supreme Court considered whether a fiduciary to an employee benefit plan could be held personally liable to a plan participant or beneficiary for extracontractual compensatory or punitive damages under ERISA.  473 U.S. at 136.  The Supreme Court held that there was no support for such damages in the text of the statute and thus no ***express authority*** for such damage awards.  *Id.* at 144.  Moreover, the Supreme Court determined that there was no ***implied authority*** for a cause of action for extracontractual compensatory or punitive damages under ERISA.  *Id.* at 148.  In so holding, the Supreme Court analyzed the structure of ERISA and its legislative history and stated:

> The six carefully integrated civil enforcement provisions found in § 502(a) of the statute as finally enacted, however, ***provide strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly***. The assumption of inadvertent omission is rendered especially suspect upon close consideration of ERISA's interlocking, interrelated, and interdependent remedial scheme, which is in turn part of a "comprehensive and reticulated statute."

*Id.* at 146.  The Supreme Court further held that it was "reluctant to tamper with an enforcement scheme crafted with such evident care as the one in ERISA" and that "[w]here a statute expressly provides a particular remedy or remedies, a court must be chary of reading others into it."  *Id.* at 147. Moreover, the Supreme Court noted that "[t]he presumption that a remedy was deliberately omitted from a statute is strongest when Congress has enacted a comprehensive legislative scheme including an integrated system of procedures for enforcement."  *Id.* at 147.

Further, since *Russell*, the Supreme Court has repeatedly refused to recognize other implied relief or remedies not included in ERISA's statutory provisions.  *See Mertens v. Hewitt Assocs.*, 508 U.S. 248, 254-259 (1993) (reiterating its "unwillingness to infer causes of action in the ERISA context, since that statute's carefully crafted and detailed enforcement scheme provides strong

18

evidence that Congress did ***not*** intend to authorize other remedies that it simply forgot to incorporate expressly," and holding that "[t]he authority of courts to develop a federal common law under ERISA is not the authority to revise the text of the statute") (emphasis in original); *see also Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 209 (2002) (holding that ERISA Section 502(a)(3) did not authorize trustees to enforce reimbursement provision of an ERISA plan as an equitable remedy). Accordingly, Supreme Court precedent establishes that there is no express or implied authority for a cause of action for contribution or indemnity under ERISA.

While in *Chemung Canal Trust Co. v. Sovran Bank/Md.*, 939 F.2d 12, 16 (2nd Cir. 1991), a divided panel of the Second Circuit held that a defendant in an ERISA case may bring claims for contribution and indemnity pursuant to the federal common law of ERISA, *Chemung* is no longer good law. Its holding cannot survive the Supreme Court's decisions in *Mertens* and *Great-West*. The Second Circuit itself has reached the same conclusion with respect to a companion case to *Chemung*. Indeed, following its issuance of the *Chemung* opinion, the Second Circuit considered in *Diduck v. Kaszycki & Sons Contractors, Inc.*, 974 F.2d 270, 280-81 (2nd Cir. 1992), whether a court may impose liability against a non-fiduciary for breach of fiduciary duties under ERISA. *Id.* at 279. The Second Circuit relied on *Chemung* in holding that although no such implied right of action existed under ERISA, courts could find a need for "interstitial lawmaking" and imply such a cause of action under the federal common law. *Id.* at 280-81. Thus, the Second Circuit's decisions in both *Diduck* and *Chemung* were premised on the idea that courts can engage in interstitial lawmaking to fill in gaps in the remedies provided by ERISA.

The Second Circuit has since recognized that this precise aspect of its opinion in *Diduck* – which also underlies *Chemung* – did not survive subsequent Supreme Court holdings, including those of *Mertens* and *Great-West*. The court stated:

> *We think, however, that this aspect of Diduck has not survived subsequent Supreme Court determinations.*  In *Mertens*, the Court rejected the central holding of *Diduck*, finding that non-fiduciaries who knowingly participate in a fiduciary breach cannot be liable for ordinary money damages. In rejecting several arguments based on ERISA's general purposes, *the Court emphasized ERISA's comprehensiveness, as well as the clear text of the ERISA civil remedies provisions, which in combination it argued provided strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.  Twice in its most recent term, the Court has repeated its belief that ERISA's express remedies, as the product of long and careful study and compromise, should remain exclusive.  We see little room in this framework for judicially-created, "interstitial" remedies*.

*Gerosa v. Savasta & Co.*, *Inc.*, 329 F.3d 317, 322 (2nd Cir. 2003).

Moreover, the Second Circuit rejected the district court's attempts to distinguish *Mertens* and

*Great-West*, finding that:

> Nor are we convinced by the District Court's efforts to distinguish *Mertens* and *Great-West*.  The arguments it offers, although quite thoughtful, are ultimately not in keeping with the Supreme Court's directives. . . . *Great-West* is quite explicit, however, that it is . . . *not our job to find reasons for what Congress has plainly done.*  That comment, taken in the context of other recent Court opinions applying a strong presumption that creation of an express remedy clearly forecloses others, makes evident that *we are no longer free to fill in unwritten gaps in ERISA's civil remedies.*  Accordingly, . . . the Supreme Court has instructed that it is not for us to decide the best ERISA remedial scheme.

*Id*.  As *Diduck* and *Chemung* are both based on interstitial remedies, it is evident that the Second

Circuit's holding in *Gerosa* that "the limited text of ERISA's civil remedies is inconsistent with

judicial discovery of new liabilities" applies with equal force to *Chemung*.  *See id*. at 323 n.6.  The

Eight Circuit – in the only appellate decision directly addressing the issue of contribution or

indemnification claims after the Supreme Court's decisions in *Great-West* and *Mertens* – has also

acknowledged as much.  *See Travelers Cas. and Sur. Co. of Am. v. IADA Servs., Inc.*, 497 F.3d 862,

866-67 (8th Cir. 2007) ("Since the Second Circuit's decision in *Chemung Canal*, moreover, the

Supreme Court has reiterated more than once its admonition that notwithstanding the authority to

fashion certain rules of federal common law under ERISA, the statute's carefully crafted and

detailed enforcement scheme provides strong evidence that Congress did *not* intend to authorize

other remedies that it simply forgot to incorporate expressly.") (emphasis in original).[14]

C.   **Even if the Court Were to Recognize a Cause of Action for Contribution or Indemnification, These Claims Should Be Dismissed Under Applicable Trust Law**

1.   **BNYM Has Failed to Allege that the Board Received any Benefit from the Breach of Trust**

Even if the remedies of contribution and equitable indemnification are available, the Second

Circuit has stated that trust law and the Restatement (Second) of Trusts §258 (1959) govern such

claims. *Chemung*, 939 F.2d at 16. Under the Restatement, where two fiduciaries breach their duties

but only one receives any benefit, ***no claim for indemnification or contribution lies against the***

***fiduciary who received no benefit***. *See* Restatement (Second) of Trusts §258(1)(b); *see also*

*Haddock v. Nationwide Fin. Servs.*, 570 F. Supp. 2d 355, 364 (D. Conn. 2008) ("*Haddock III*")

(holding that defendant had no right, as a matter of law, to seek contribution or indemnification for a

---

[14] Other circuits have previously found that there is no right to contribution or indemnification under ERISA. *See, e.g., Kim v. Fujikawa*, 871 F.2d 1427, 1432 (9th Cir. 1989). *See also State St. Bank and Trust Co. v. Denman Tire Corp.*, 240 F.3d 83, 89 (1st Cir. 2001) ("courts are careful not to allow federal common law to rewrite ERISA's carefully crafted statutory scheme, and recognize that federal common law will only give rise to a claim pursuant to ERISA in the limited class of cases where the issue in dispute is of central concern to the federal statute"); *Coleman v. Nationwide Life Ins. Co.*, 969 F.2d 54, 58 (4th Cir. 1992) (same). Numerous district courts across the country have also rejected a cause of action for contribution or indemnification under ERISA. *See, e.g., FedEx Corp.*, 2010 WL 2836345, at *4; *Openshaw v. Cohen, Klingenstein & Marks, Inc.*, 320 F. Supp. 2d 357, 364 (D. Md. 2004) (dismissing defendant's counterclaim for contribution because "ERISA's structure counsels against the creation of a cause of action for contribution"); *Williams*, 279 F. Supp. 2d at 900 ("Congress did not intend the courts to create a right of contribution among ERISA co-fiduciaries."); *Plumbers Local 93 Health and Welfare and Pension Fund v. DiPietro Plumbing Co.*, No. 94 C 7378, 1999 U.S. Dist. Lexis 6913, at *15 (N.D. Ill. Apr. 30, 1999); *Aks v. Southgate Trust Co.*, Civil Action No. 92-2193, 1992 U.S. Dist. LEXIS 20442, at *38-*40 (D. Kan. Dec. 24,1992); *Schloegel v. Boswell*, 766 F. Supp. 563, 569 (S.D. Miss. 1991); *Hollingshead v. Burford Equip. Co.*, 747 F. Supp. 1421, 1445 (M.D. Ala. 1990); *Franklin v. Aetna Life Ins. Co.*, C/A No. 7:87-3384-17, 1988 U.S. Dist. LEXIS 10842, at *2-*11 (D.S.C. July 18, 1988).

damages award arising out of revenue sharing payments from trustees in the absence of any allegation that the Trustees directly benefitted in some way from the revenue sharing payments). Here, BNYM does not, and cannot, plead facts to support that the Board received any benefit from BNYM's alleged breaches.  Indeed, the Board was comprised of volunteers who received *no* compensation for their work in this capacity.  *See* TAC at ¶47.  Only BNYM received a benefit from its breach in that it received 40% of the profits made from the Collateral investments, although it bore none of the risk of loss.  *Id*. at ¶29.  The remaining 60% of any profits went to the Plan, not to the Board.  *Id.*  Accordingly, under the Restatement (Second) of Trusts §258(1)(b), BNYM is not entitled to indemnity or contribution from the Board for the Plan's losses.  Indeed, to allow it to seek contribution from the Board would "permit it to retain some of the benefit of its breach, which is contrary to the principles of the law of trusts."  *Haddock III*, 570 F. Supp. 2d at 364.

## 2. BNYM's Counterclaim Fails to Set Forth Facts to Infer that the Board is "Substantially More at Fault" than BNYM

Additionally, BNYM has not set forth facts to infer that the Board is substantially more at fault than BNYM and, thus, under applicable trust principles, BNYM is not entitled to contribution. *See BP*, 692 F. Supp. 2d at 985 (holding that even if ERISA allowed for indemnification between co-fiduciaries, such a right was limited to circumstances in which a passive trustee seeks indemnification from a more culpable active trustee).  Under the Restatement (Second) of Trusts §258(1)(a), "if one [fiduciary] is substantially more at fault than the other, he is not entitled to contribution from the other. . . ."  Indeed, comment d to this Section provides in pertinent part that:

> Where a breach of trust is committed and one of two trustees is substantially more at fault than the other, although both are liable to the beneficiary for the breach of trust, *the loss should ultimately be borne by the trustee who is more at fault.*

> In determining whether one trustee is so substantially more at fault that he should bear the whole of the loss resulting from a breach of trust, the following factors are to be considered: (1) whether he fraudulently induced the other to join in the breach of trust; (2) whether he intentionally committed a breach of trust and the other was at

most guilty of negligence; (3) *whether because of his greater experience he controlled the conduct of the other, as in the case where he was an attorney and the other was a person without business experience who was accustomed to rely upon his judgment*; (4) *whether he alone committed the breach of trust and the other is liable only because of an improper delegation, or failure to exercise reasonable care to prevent him from committing a breach of trust, or neglect to take proper steps to compel him to redress the breach of trust*.

Restatement (Second) of Trusts §258, comment d.

BNYM's Counterclaim attempts to meet this requirement of trust law by alleging that the Board is "substantially more at fault" than BNYM because the Board "approved, ratified, and acquiesced" to BNYM's investments of securities lending collateral (CC at ¶¶18-19, 29), failed to object to BNYM's investments and direct their liquidation (CC at ¶30), and failed to monitor and review BNYM's investment of Collateral (*id.*). As with BNYM's other claims, this argument turns the provisions of ERISA on their head. Additionally, BNYM has failed to set forth any factual content supporting the "naked assertion" that the Board is substantially more at fault than BNYM for investment decisions *BNYM* made pursuant to *its* discretionary authority over Approved Investments as the Board's Investment Manager. *Twombly*, 550 U.S. at 570; *Iqbal*, 129 S. Ct. at 1949. *See also* Dkt. No. 59 (dismissing Plaintiff's ERISA claims for lack of factual enhancement).

At best, BNYM's conclusory allegations concerning the Board's conduct are nothing more than allegations of *nonfeasance*, insufficient to demonstrate that the Board was substantially more at fault than BNYM. *See BP*, 692 F. Supp. 2d at 985 (rejecting defendants' counterclaim and finding that they were unable to seek indemnification from plaintiffs because the allegations were based on acts of *nonfeasance* and *not malfeasance*).[15] In sharp contrast, BNYM's own allegations establish

---

[15] *See also Scalp & Blade, Inc. v. Advest, Inc.*, 755 N.Y.S.2d 140 (N.Y. App. Div. 2002) (citing Restatement [Second] of Trusts § 258) (investment advisor who was delegated investment authority by trustees, and who was also a member of the board of trustees, was not entitled to contribution from fellow trustees for alleged mismanagement of the trust fund because he was "substantially

that its conduct in maintaining the Approved Investments in Lehman were acts of ***malfeasance***. Indeed, BNYM has admitted that it made and maintained all of the Investments pursuant to its discretionary authority as a sophisticated Investment Manager for the Plan.  Ans. at ¶2. Accordingly, these allegations fail to pass muster.

## V.  Conclusion

For the reasons set forth herein, BNYM has failed to state a counterclaim upon which relief can be granted.  Accordingly, the Court should dismiss BNYM's Counterclaim with prejudice because any proposed amendments to the Counterclaim would be futile, and this was BNYM's second opportunity to plead sufficient facts to support its claims against the Board.

## MOTION TO STRIKE DEFENDANTS' AFFIRMATIVE DEFENSES

Plaintiff moves pursuant to Rule 12(f) to strike Defendants' affirmative defenses from their Answer and hereby incorporates the Preliminary Statement and Factual Background *supra*.  For each affirmative defense, Defendants have failed to satisfy the standard for pleading an appropriate affirmative defense.  First, not a single affirmative defense, as pled, has put Plaintiff on notice of the basis for the defense.  *Shechter v. Comptroller of City of N.Y.*, 79 F.3d 265, 270 (2d Cir. 1996) (striking affirmative defense; noting that affirmative "defenses which amount to nothing more than mere conclusions of law and are not warranted by any asserted facts have no efficacy").  The

---

more at fault for the investment losses sustained by plaintiffs," and because he was the "one who benefitted from the investment activity"); *Harris Trust and Savs. v. John Hancock Mut. Life Ins. Co.*, 122 F. Supp. 2d 444, 464 (S.D.N.Y. 2000) ("Hancock was substantially more at fault than its co-fiduciaries; it therefore is not entitled to contribution"), *modified in part on other grounds*, 137 F. Supp. 2d 351 (S.D.N.Y. 2001), *rev'd in part on other grounds*, 302 F.3d 18 (2d Cir. 2002); *Sunderlin v. First Reliance Standard Life Ins. Co.*, 235 F. Supp. 2d 222, 237 (W.D.N.Y. 2002) (holding that employer who failed to provide a summary plan description was "substantially more at fault" than co-defendant insurance company because the employer's own actions caused plaintiff's damages).

*Twombly* plausibility standard applies with equal force to a motion to strike an affirmative defense under Rule 12(f) as to a motion to dismiss under Rule 12(b). *See FSP, Inc. v. Societe Generale*, No. 02CV4786GBD, 2005 WL 475986, at *8 (S.D.N.Y. Feb. 28, 2005) ("[a] motion to strike an affirmative defense, pursuant to Fed.R.Civ.P. 12(f), is also governed by the same standard applicable to a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6)").  Boilerplate affirmative defenses that provide little or no factual support can have the same detrimental effect on the cost of litigation as poorly worded complaints. *See Shinew v. Wszola,* Civil Action No. 08-14256, 2009 WL 1076279, at *1-*3 (E.D. Mich. Apr. 21, 2009).

For others, including affirmative defenses 6, 9, 10, 11, 12, 13, 19, and 20, even assuming certain facts, the defenses are either improper or legally baseless.  In each of these defenses, Defendants attempt to shift liability to the Board for various alleged breaches of the Board's duties to the Plan, which is irrelevant to whether Defendants are liable for their own breaches of fiduciary duty and, moreover, unacceptable under the tenets of ERISA law.  *See Lowen*, 829 F.2d at 1219 (declining to permit defendant to shift its ERISA liability to plaintiff); *Ulico Cas. Co.*, 217 F. Supp. 2d at 316 (fiduciary obligations of an investment manager require it to exercise independent professional judgment; "ERISA's purpose of clearly locating legal obligations will be vitiated if plaintiffs are required to engage in an after-the-fact sorting out of actions, statements and states of mind among possible fiduciaries to determine which is legally responsible").

To allow the affirmative defenses to remain in the litigation as pled will cause undue prejudice to Plaintiff, as the purpose of requiring affirmative defenses to be pleaded is to avoid surprise and to give Plaintiff an opportunity to respond.  Accordingly, as this was Defendants' second opportunity to provide adequate factual support for their defenses but failed to do so, Plaintiff respectfully requests the entry of an order striking Defendants' affirmative defenses with prejudice.

DATED:  April 21, 2011                    ROBBINS GELLER RUDMAN
                                             & DOWD LLP
                                          PAUL J. GELLER (*pro hac vice*)
                                          STEPHEN R. ASTLEY (*pro hac vice*)
                                          ELIZABETH A. SHONSON (*pro hac vice*)
                                          SABRINA E. TIRABASSI (*pro hac vice*)
                                          JESSE S. JOHNSON (*pro hac vice*)


                                                    */s/ Stephen R. Astley*
                                          STEPHEN R. ASTLEY

                                          120 East Palmetto Park Road, Suite 500
                                          Boca Raton, FL  33432
                                          Telephone:  561/750-3000
                                          561/750-3364 (fax)

                                          ROBBINS GELLER RUDMAN
                                             & DOWD LLP
                                          SAMUEL H. RUDMAN
                                          DAVID A. ROSENFELD
                                          58 South Service Road, Suite 200
                                          Melville, NY  11747
                                          Telephone:  631/367-7100
                                          631/367-1173 (fax)

                                          **Attorneys for Plaintiff and Proposed Class**

26

CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on April 21, 2011, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all counsel of record.

_____/s/ Stephen R. Astley_____
STEPHEN R. ASTLEY