UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x

THE BOARD OF TRUSTEES OF THE            :   Civil Action No. 1:09-cv-06273 (RMB)
SOUTHERN CALIFORNIA IBEW-NECA           :
DEFINED CONTRIBUTION PLAN, On Behalf of :   CLASS ACTION
Itself and All Others Similarly Situated, :
                                        :
                         Plaintiff,     :
                                        :   **ECF Case**
           vs.                          :
                                        :   *Contains Confidential*
THE BANK OF NEW YORK MELLON             :   *Information*
CORPORATION, et al.,                    :
                                        :
                         Defendants.    :

————————————————————————

**PLAINTIFF'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'
MOTION FOR SUMMARY JUDGMENT, THE BOARD'S REPLY MEMORANDUM IN
SUPPORT OF ITS MOTION TO DISMISS THE BANK OF NEW YORK MELLON'S
COUNTERCLAIMS, AND THE BOARD'S MOTION AND INCORPORATED
MEMORANDUM OF LAW FOR SUMMARY JUDGMENT ON
THE BANK OF NEW YORK MELLON'S COUNTERCLAIMS**

**TABLE OF CONTENTS**

I.     INTRODUCTION ...................................................................................................1

II.    STATEMENT OF FACTS .....................................................................................2

     A.    The Board of Trustees Properly Delegated Investment Management
            Decisions to Sophisticated Fiduciaries ....................................................2

     B.    With Assurances of No Losses in 30 Years, Plaintiff Enters into the SLP
            with BNYM to Offset Custodial Fees.......................................................3

     C.    Defendant Become Increasingly Wary of a Lehman Bankruptcy ...........6

     D.    BNYM Aggressively Sought to Protect Its Own Assets but Left Their
            Clients on the Hook for Billions in Losses. ............................................7

     E.    Relying On Speculation Of A Governmental Bailout, Defendant Takes No
            Steps to Protect Plaintiff's Investments .................................................8

     F.    Lehman Files for Bankruptcy Protection.................................................9

III.   LEGAL STANDARD.............................................................................................10

IV.   ARGUMENT.........................................................................................................11

     A.    DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT
            WITH RESPECT TO PLAINTIFF'S ERISA SECTION 404 CLAIM.................11

          1.    Technical Compliance with the Guidelines' Credit Rating Does
                Not Demonstrate a Lack of Evidence of Defendant's Imprudence ..........11

          2.    The Conduct of Plaintiff's Other Investment Managers Does Not
                Demonstrate a Lack of Evidence of Defendant's Imprudence .................14

                a.    Plaintiff's Other Investment Managers Do Not Provide
                      Benchmarks for BNYM's Prudence .............................................14

                b.    Defendant Took Steps to Mitigate Their Own Lehman
                      Exposures but Failed to Do Anything to Protect Plaintiff's
                      Securities.......................................................................................16

          3.    Hindsight Evaluations Are Unnecessary When Contemporaneous
                 Documents Show Defendant's Imprudence................................................17

i

4.      Defendant's Investigation and Monitoring Processes Were
        Insufficient and Alerted Defendant That Lehman Was Not a
        Prudent Investment ....................................................................................18

5.      Defendant's Discussions With Lehman are Irrelevant .............................20

6.      Defendant Failed to Adequately Diversify Plaintiff's Portfolio ...............21

7.      Feinstein and Logue's Reports Are Admissible, Probative And
        Provide Strong Support for Plaintiff's Claim ...........................................22

B.      DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT
        WITH RESPECT TO PLAINTIFF'S ERISA SECTION 406 CLAIM................25

C.      THE BANK OF NEW YORK MELLON'S COUNTERCLAIMS
        SHOULD BE DISMISSED OR IN THE ALTERNATIVE PLAINTIFF IS
        ENTITLED TO SUMMARY JUDGMENT.........................................................27

1.      Defendant Alone Was Responsible for the Prudence of the SLP's
        Collateral Investments and has Failed to State a Claim Against
        Plaintiff .....................................................................................................27

2.      The Record Establishes that the Board Fulfilled Its Responsibilities
        To Supervise BNYM And Is Entitled to Summary Judgment..................29

V.    CONCLUSION.............................................................................................................30

# TABLE OF AUTHORITIES

## CASES

*Alto v. Hartford Life Ins. Co.*,
   2011 WL 1330863 (S.D.N.Y. Mar. 31, 2011) ................................................................27, 28

*Anderson v. Liberty Lobby, Inc.*,
   477 U.S. 242 (1986)................................................................................................................10

*Bd. of Trs. of the City of Birmingham Emps. Ret. Sys. v. Comerica Bank*,
   767 F. Supp. 2d 793 (E.D. Mich. 2011)................................................................................15

*Boucher v. U.S. Suzuki Motor Corp.*,
   73 F.3d 18 (2d Cir. 1996) ......................................................................................................14

*Brock v. Robbins*,
   830 F.2d 640 (7th Cir. 1987) .................................................................................................16

*Bulgaro v. Ivy Asset Mgmt. Corp.*,
   2010 WL 3938369 (S.D.N.Y. Oct. 6, 2010) .........................................................................18

*Bussian v. RJR Nabisco, Inc.*,
   223 F.3d 286 (5th Cir. 2000) .................................................................................................11

*Celotex Corp. v. Catrett*,
   477 U.S. 317 (1986) (White, J concur)..................................................................................10

*Chao v. Merino*,
   452 F.3d 174 (2d Cir. 2006)...................................................................................................19

*Daubert v. MerrellDow Pharms.*,
   509 U.S. 579 (1993)................................................................................................................22

*DiFelice v. U.S. Airways, Inc.*,
   497 F.3d 410 (4th Cir. 2007) .................................................................................................16

*Donovan v. Bierwirth*,
   538 F. Supp. 463 (E.D.N.Y. 1981) ........................................................................................16

*Highland Capital Mgmt., L.P. v. Schneider*,
   551 F. Supp. 2d 173 (S.D.N.Y. 2008)....................................................................................24

*Hunt v. Magnell*,
   758 F. Supp. 1292 (D. Minn. 1991).................................................................................10, 18

*In re Am. Int'l Grp., Inc. ERISA Litig. II*,
2011 WL 1226459 (S.D.N.Y. Mar. 31, 2011) .......................................................29

*In re Citigroup ERISA Litig.*,
2009 WL 2762708 (S.D.N.Y. 2009) .......................................................18

*In re Complaint of Rationis Enters., Inc. of Pan.*,
2003 WL 203210 (S.D.N.Y. Jan. 29, 2003) .......................................................23

*In re Fresh Del Monte Pineapples Antitrust Litig.*,
2009 WL 3241401 (S.D.N.Y. Sept. 30, 2009) (Berman, J.)........................................24

*In re Hartford Fin. Services*,
2010 WL 135186 (D. Conn. Jan. 13, 2010).......................................................18

*In re Lehman Bros. Sec. & ERISA Litig.*,
683 F. Supp. 2d 294 (S.D.N.Y. 2010).......................................................18

*In re Regions Morgan Keegan ERISA Litig.*,
692 F. Supp. 2d 944 (W.D. Tenn. 2010).......................................................15

*In re Unisys Sav. Plan Litig.*,
74 F.3d 420 (3d Cir. 1996).......................................................11

*Kumho Tire Co. v. Carmichael*,
526 U.S. 137 (1999).......................................................22

*Lingis v. Motorola, Inc.*,
649 F. Supp. 2d 861 (N.D. Ill. 2009) .......................................................28

*Liss v. Smith*,
991 F. Supp. 278 (S.D.N.Y. 1998).......................................................21, 28

*LNC Invs., Inc. v. First Fid. Bank, N.A. N.J.*,
173 F.3d 454 (2d Cir. 1999).......................................................16

*Lowen v. Tower Asset Mgt., Inc.*,
829 F.2d 1209 (2d Cir. 1987).......................................................25, 29

*Moench v. Robertson*,
62 F.3d 553 (3d Cir. 1995).......................................................18

*Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc.*,
182 F.3d 157 (2d Cir. 1999).......................................................10

*Newton v. Van Otterloo*,
756 F. Supp. 1121 (N.D. Ind. 1991) .......................................................30

*Nissan Fire & Marine Ins. Co., Ltd. v Fritz Cos, Inc.*,
   210 F.3d 1099 (9th Cir. 2000) ...................................................................................10

*Raskin v. Wyatt Co.*,
   125 F.3d 55 (2d Cir. 1997)........................................................................................23

*Saint Vincent Catholic Med. Ctrs v. Morgan Stanley Inv. Mgmt. Inc.*,
   2010 WL 4007224 (S.D.N.Y. Oct. 4, 2010) .............................................................20

*Schwartz v. Interfaith Med. Ctr.*,
   715 F. Supp. 1190 (E.D.N.Y. 1989) .........................................................................26

*Scott v. City of N.Y.*,
   591 F. Supp. 2d 554 (S.D.N.Y. 2008).......................................................................25

*Shanehchian v. Macy's, Inc.*,
   2011 WL 883659 (S.D. Ohio Mar. 10, 2011) ...........................................................15

*U.S. Info. Sys., Inc. v. Int'l. Bhd. of Elec. Workers Local Union No. 3, AFL-CIO*,
   313 F. Supp. 2d 213 (S.D.N.Y. 2004).......................................................................24

*United States v. Daly*,
   842 F.2d 1380 (2d Cir. 1988)....................................................................................23

## I.    INTRODUCTION

In 2007 and 2008, BNYM's securities lending program, a product which had generated tens of millions of dollars of profits for BNYM in prior years, was facing a crisis that endangered its entire business model.  BNYM had made huge collateral investments in bonds issued by Wall Street broker-dealers, with whom they transacted billions of dollars of business annually.  Yet many of these institutions, who had fueled the growth of mortgage-backed securities ("MBS") and other unstable securities, were suffering mammoth losses as the financial instruments they created collapsed around them, threatening their very existence.  Near the top of the list of these crippled giants was Lehman Brothers Holdings, Inc. ("Lehman"), whose substantial positions in sub-prime MBS was causing the cost of insuring against its default to sky-rocket through late 2007 and 2008.



However, BNYM became increasingly concerned about Lehman's stability throughout 2008. The undisputed evidence demonstrates that BNYM, and specifically personnel within its Securities Lending Program ("SLP"



The record is replete with genuine issues of material fact regarding Defendant's prudence. Fundamentally, the record demonstrates that despite strong, ever-increasing internal concern about Lehman and unprecedented efforts to protect their own assets, Defendant took no steps to protect Plaintiff's investment in the Lehman Note because they believed that Lehman was "too big to fail," and that the government would not allow Lehman to default.  A reasonable person could easily find that what amounted to nothing more than political forecasting was imprudent, especially considering the ultra-conservative risk profile of the SLP, and the fact that Defendant was taking unprecedented steps to protect their own assets.  On this record, Defendant is not entitled to summary judgment.

Finally, Defendant's counterclaims not only fail to state a claim, but the record demonstrates that Plaintiff is entitled to summary judgment on such claims.

**II.     STATEMENT OF FACTS**

     **A.     The Board of Trustees Properly Delegated Investment Management Decisions to Sophisticated Fiduciaries**





**B.** **With Assurances of No Losses in 30 Years, Plaintiff Enters into the SLP with BNYM to Offset Custodial Fees**







**C.      Defendant Become Increasingly Wary of a Lehman Bankruptcy**





**D.**     **BNYM Aggressively Sought to Protect Its Own Assets but Left Their Clients on the Hook for Billions in Losses.**





**E.**     **Relying On Speculation Of A Governmental Bailout, Defendant Takes No Steps to Protect Plaintiff's Investments**





**F.     Lehman Files for Bankruptcy Protection**



### III.    LEGAL STANDARD

The party moving for summary judgment has both an initial burden of production as well as the ultimate burden to establish that there is "no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FRCP 56(a).  "[T]he moving party bears a heavy burden of demonstrating the absence of any material issues of fact."  *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n, Inc*., 182 F.3d 157, 160 (2d Cir. 1999).  "[I]n reviewing a Rule 56 motion, a district court must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion."  *Id.*

"It is not enough to move for summary judgment . . . with a conclusory assertion that the [opposing party] has no evidence to prove his case." *Celotex Corp. v. Catrett*, 477 U.S. 317, 328 (1986) (White, J concur).  Indeed, "if a moving party fails to carry its initial burden of production, the nonmoving party has no obligation to produce anything, even if the nonmoving party would have the ultimate burden of persuasion at trial."  *Nissan Fire & Marine Ins. Co., Ltd. v Fritz Cos, Inc.,* 210 F.3d 1099, 1102-03 (9th Cir. 2000).

If a moving party does meet its initial burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986).  However, "the fiduciary standard imposed by ERISA requires essentially the application of a reasonableness standard.  Rarely will such a determination be appropriate on a motion for summary judgment." *Hunt v. Magnell*, 758 F. Supp. 1292, 1301 (D. Minn. 1991) (citing *Pension Fund—Mid Jersey Trucking Indus.—Local 701 v. Omni Funding Grp.*, 731 F.Supp. 161, 169 (D.N.J. 1990)).

## IV.     ARGUMENT

### A.     DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO PLAINTIFF'S ERISA SECTION 404 CLAIM

Defendant has failed to meet their initial burden of production because none of their contentions, even if they were accepted, point to the absence of a triable issue.  Further, even if the Court finds that Defendant has met their initial burden, which it should not, there are genuine issues for trial that preclude granting Defendants' Motion for Summary Judgment [Dkt. No. 163] ("Def. MSJ" or the "Motion").

#### 1.     Technical Compliance with the Guidelines' Credit Rating Does Not Demonstrate a Lack of Evidence of Defendant's Imprudence



n any case, "blind reliance on credit or other ratings is inconsistent with fiduciary standards."  *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 301 (5th Cir. 2000); *see also In re Unisys Sav. Plan Litig.*, 74 F.3d 420, 436 (3d Cir. 1996) (Whether the rating

11

was a reliable measure of financial status and whether the rating was evaluated correctly under the

circumstances are "matters which must be decided at trial").





**2.     The Conduct of Plaintiff's Other Investment Managers Does Not Demonstrate a Lack of Evidence of Defendant's Imprudence**

      **a.     Plaintiff's Other Investment Managers Do Not Provide Benchmarks for BNYM's Prudence**

Defendant claims that their prudence in holding the Lehman Note can be evaluated by reference to Plaintiff's other investment managers.[5]  Def. MSJ at 15.  It is mistaken.   Such comparisons are exactly the type of "unrealistic" or "'apples and oranges comparison'" that is routinely rejected and even excluded from evidence.  *Boucher v. U.S. Suzuki Motor Corp.*, 73 F.3d 18, 21 (2d Cir. 1996).





Defendant's reliance on the "modern portfolio theory" is misplaced.  Motion at 17-18.

"[M]odern portfolio theory is no defense to [] allegations of breach of the fiduciary duty of prudent

management."  *Shanehchian v. Macy's, Inc.*, 2011 WL 883659, at *5 (S.D. Ohio Mar. 10, 2011); *see*

*also Bd. of Trs. of the City of Birmingham Emps. Ret. Sys. v. Comerica Bank*, 767 F. Supp. 2d 793,

800 (E.D. Mich. 2011) (fiduciary must determine 'whether the ***particular*** investment is reasonably

designed, as part of the overall portfolio, to further the purposes of the plan"); *In re Regions Morgan*

*Keegan ERISA Litig.*, 692 F. Supp. 2d 944, 962-63 (W.D. Tenn.  2010) (rejecting defendants'

"'modern portfolio theory assertions'" and holding that plaintiffs had stated a claim by alleging that

---

[7]      The Lehman Brothers Aggregate Bond Index was renamed the Barclay's Capital U.S. Aggregate Bond Index in November 2008.  SOF ¶ 28, n.2.

"Defendants failed to take action when they knew or should have known that investment in the Bond Funds had become imprudent."); *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 423 (4th Cir. 2007) ("a fiduciary must initially determine, and continue to monitor, the prudence of *each* investment option available to plan participants").

There is no evidence in the record that Defendant evaluated whether the Lehman Note was adequate in light of other investments in Plaintiff's SLP portfol

Lastly, Defendant's "modern portfolio theory" fails because Defendant has not even attempted to establish the prudence of the remainder of Plaintiff's portfolio.  Just as an investment is not imprudent simply because it loses money, an investment is not prudent simply because it did not sustain a loss.  Astley Decl., App. X, Tab C at ¶33; *see also Donovan v. Bierwirth*, 538 F. Supp. 463, 471 (E.D.N.Y. 1981) ("luck or good fortune is no substitute for a trustee's duty of inquiry"); *Brock v. Robbins*, 830 F.2d 640, 646-47 (7th Cir. 1987) (fiduciary can be imprudent but escape liability under ERISA if the plan did not suffer a loss).

**b.     Defendant Took Steps to Mitigate Their Own Lehman Exposures but Failed to Do Anything to Protect Plaintiff's Securities**

A far more probative benchmark to evaluate BNYM's prudence in connection with the SLP is readily available –  the conduct of BNYM itself in managing its own exposure to Lehman.  *See LNC Invs., Inc. v. First Fid. Bank, N.A. N.J.*, 173 F.3d 454, 459-60 (2d Cir. 1999) (fiduciary duty requires "such diligence and such prudence in the care and management [of the trust], as in general, prudent men of discretion and intelligence in such matters, *employ in their own like affairs*'").

16

### 3.    Hindsight Evaluations Are Unnecessary When Contemporaneous Documents Show Defendant's Imprudence

Defendant incorrectly claims that Plaintiff is relying on a hindsight evaluation of Lehman's collapse to argue that Defendant was imprudent in purchasing and continuing to hold the Lehman Note through September 14, 2008.  Def. MSJ at 18-21. 

Defendant's citation to this Court's Decision and Order (Dkt. No. 59) ("April 2010 Opinion") is similarly misleading.  Def. MSJ at 20.  The Court stated that relying solely "upon quotations from

17

news articles" was insufficient to state a claim.  April 2010 Opinion at 11.  Defendant's claim that "BNYM cannot be liable for investing in Lehman unless it 'actually or constructively knew about Lehman's imminent collapse,'" is an erroneous statement of law.  Def. MSJ at 20.  The legal standard articulated in *In re Lehman Bros. Sec. & ERISA Litig.*, 683 F. Supp. 2d 294, 301 (S.D.N.Y. 2010) (*citing Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1995)), was referring to the standards of prudence for an ERISA claim in the context of an employee stock ownership program ("ESOP"). By its own terms, the *Moench* standard does not apply to an ERISA claim where a fiduciary has discretion over the investments in which it invests.  *See Moench*, 62 F.3d at 568-69 (distinguishing ESOPs from pension plans); *In re Hartford Fin. Services*, 2010 WL 135186, *1 (D. Conn. Jan. 13, 2010) (holding that *Moench*'s presumption of prudence does not apply unless a fiduciary is "restricted to investment in the employer's stock.").  For this same reason, *In re Citigroup ERISA Litig.*, 2009 WL 2762708, at *25 (S.D.N.Y. 2009), can offer no guidance.  Motion at 19.

### 4.  Defendant's Investigation and Monitoring Processes Were Insufficient and Alerted Defendant That Lehman Was Not a Prudent Investment

Defendant's contentions regarding their monitoring of Lehman are similarly unpersuasive. Motion at 21-22.  The question is not simply whether Defendant "*should* have known that Lehman would enter bankruptcy." *Id.* at 21.  Rather, the question is whether Defendant "exercise[d] care and diligence and use[d] its best judgment in evaluating each investment within the plan portfolio." *Bulgaro v. Ivy Asset Mgmt. Corp.*, 2010 WL 3938369, at *3 (S.D.N.Y. Oct. 6, 2010).  "ERISA fiduciaries must monitor investments with reasonable diligence and dispose of investments which are improper to keep."  *Hunt v. Magnell*, 758 F. Supp. 1292, 1299 (D. Minn. 1991).

Plaintiff does not dispute that BNYM reviewed "relevant press coverage and analyst reports, and monitor[ed] changes in credit agency ratings." Def. MSJ at 22. ████████████

████████████████████████████████████████



Considering tha

t cannot be said  that such cursory monitoring was reasonable as a matter of law considering

the unpredicted volatility in the financial markets at the time – particularly with respect to entities

such as Lehman that had significant subprime exposure.  *See Chao v. Merino*, 452 F.3d 174, 182 (2d

Cir. 2006) ("If a fiduciary was aware of a risk to the fund, he may be held liable for failing to

investigate fully the means of protecting the fund from that risk").

Simply stated, there is a genuine issue of material fact with respect to whether it was prudent for BNYM to entrust Plaintiff's investments to rumors and political forecasting that ███████



██████████████ h a purported belief ███████ is also inconsistent with BNYM's efforts to protect its own assets.

*Saint Vincent Catholic Med. Ctrs v. Morgan Stanley Inv. Mgmt. Inc.*, 2010 WL 4007224 (S.D.N.Y. Oct. 4, 2010), is inapposite. Motion at 21-22. There, "plaintiffs premise[d] their theory of liability on the poor results of the investments." *Id.* at *4. Here, Plaintiff's theory of liability is based on the actual knowledge and conduct of BNYM regarding Lehman's risks and its failure to take any action to reduce that risk to Plaintiff.

### 5.    Defendant's Discussions With Lehman are Irrelevant

Defendant's claim about representations made by Lehman "to the market and to BNYM in particular," do not point to an absence of evidence regarding Defendant's imprudence. Def. MSJ at 12-13.  Defendant's insinuation that it relied on Lehman's reassurances about the strength of its balance sheet (Def. MSJ at 12-13) is contradicted by the record ██████████████



### 6.    Defendant Failed to Adequately Diversify Plaintiff's Portfolio

"Section 404(a)(1)(C) requires fiduciaries to discharge their duties 'by diversifying the investments of the plan so as to minimize the risk of large losses.'" *Liss v. Smith*, 991 F. Supp. 278, 301 (S.D.N.Y. 1998).  The Guidelines also required diversification.  SOF ¶¶94-96; Astley Decl., App. X, Tab D at 23-26.  "The trustee should not normally invest all or an unduly large portion of plan funds in a single security, or in any one type of security, or even in various types of securities that depend on the success of one enterprise." *Liss*, 991 F. Supp. at 301.  Adequate diversification "depends upon the facts and circumstances surrounding each plan and investment." *Id.*  Here,



21



      **7.**      **Feinstein and Logue's Reports Are Admissible, Probative And Provide Strong Support for Plaintiff's Claim**

Federal Rule of Evidence 702 allows for the testimony of a qualified expert witness if: "(1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable principles and methods, and (3) the witness has applied the principles and methods reliably to the facts of the case." Fed.R.Evid. 702.  Under *Daubert v. MerrellDow Pharms.,* 509 U.S. 579 (1993), a trial judge assesses the expert's "qualifications" and the "reliability" of the proposed testimony to determine whether the expert will assist the trier of fact to understand or determine a fact in issue. 509 U.S. at 593. The objective is to "make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field." *Kumho Tire Co. v. Carmichael,* 526 U.S. 137, 152 (1999).  *Daubert* makes the district court a "gatekeeper . . .

[d]isputes as to the validity of the underlying data go to the weight of the evidence, and are for the fact-finder to resolve." *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997).

Defendant does not challenge the qualifications of Feinstein or Logue, which are set forth in detail in their reports.  Astley Decl., App. X, Tab A at ¶¶6-16, Exs. 2, 3; Astley Decl., App. X, Tab D at 1-2, Exs. 1, 2.  Defendant's specific challenges to their reports amount to little more than disagreement with their conclusions, which is not a basis on which to disregard their testimony.  *In re Complaint of Rationis Enters., Inc. of Pan.*, 2003 WL 203210, at *2 (S.D.N.Y. Jan. 29, 2003).



may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed."); *U.S. Info. Sys., Inc. v. Int'l. Bhd. of Elec. Workers Local Union No. 3, AFL-CIO*, 313 F. Supp. 2d 213, 237 (S.D.N.Y. 2004) (holding that while expert report consisting solely of background information would be unnecessary, using such information "to describe the setting in which the parties were operating," was appropriate when followed by economic analysis); *compare In re Fresh Del Monte Pineapples Antitrust Litig.*, 2009 WL 3241401, *16 (S.D.N.Y. Sept. 30, 2009) (Berman, J.) (expert report in question was apparently "'not based on any economic analysis'").

Defendant's attack on Logue is similarly deficient.  While it contends that his opinions invade the province of the jury (Motion at 25), it ignores that its very own expert, Peavy, is offered for the very same purpose.  Putting that aside, the fact remains that under Federal Rule of Evidence 704, an expert can opine on "an ultimate issue to be decided by the trier of fact." *See also Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 179-83 (S.D.N.Y. 2008) ("While the expert can make factual conclusions that embrace an ultimate issue to be decided by the fact-finder, the expert cannot give testimony stating ultimate legal conclusions based upon those facts, nor can that testimony track the language of the statute or the law that the defendants are accused of violating").

Dr. Logue is not offering a legal opinion nor will he be telling the would-be-trier-of-fact how to decide.  Rather, based on his education, experience, and background, Logue evaluated a volume of evidence regarding Defendant's SLP, how it is operated, the various protocols in place regarding investment risk and monitoring, fiduciary oversight and responsibility, as well as how the Defendant conducted itself during the relevant period.  *See generally* Astley Decl., App. X, Tab D.  Based on his extensive analysis, and its application to his experience as a fiduciary, Logue opined that Defendant's conduct did not live up to industry standards.  Astley Decl., App. X, Tab D at 26.

Defendant and its experts are free to disagree, but their disagreement is not a basis for excluding such testimony. *Scott v. City of N.Y.*, 591 F. Supp. 2d 554, 563 (S.D.N.Y. 2008) (expert testimony in industry practices is a "common occurrence in civil litigation").

### B. DEFENDANT IS NOT ENTITLED TO SUMMARY JUDGMENT WITH RESPECT TO PLAINTIFF'S ERISA SECTION 406 CLAIM

The duty of loyalty codified in ERISA §406(b) provides that "a fiduciary with respect to a plan shall not . . . deal with the assets of the plan in his own interest or for his own account." 29 U.S.C. §1106(b). Section 406(b) is "broadly construed," and requires that "liability be imposed even where there is 'no taint of scandal, no hint of self-dealing, no trace of bad faith.'" *Lowen v. Tower Asset Mgt., Inc.*, 829 F.2d 1209, 1213 (2d Cir. 1987). The Complaint alleges that Defendant violated its duty of loyalty by maintaining the Lehman Note "for its own financial benefit and earning profits for itself and at the expense of the Plans." Complaint ¶242; Motion to Dismiss at 21-24.



25



A trier-of-fact could easily find that the billions of dollars in financing and tens of millions of dollars of profits BNYM made from its relationship with Lehman created conflicts of interests at BNYM which prevented BNYM from independently considering the interests of its clients. *See Schwartz v. Interfaith Med. Ctr.*, 715 F. Supp. 1190, 1196 (E.D.N.Y. 1989) ("too much to expect of

mere mortals" for fiduciaries to act properly with conflicting loyalties).  BNYM was not supposed to



Further, as discussed herein,

Defendant's violation of ERISA §406 is not about the revenue split itself.

### C.  THE BANK OF NEW YORK MELLON'S COUNTERCLAIMS SHOULD BE DISMISSED OR IN THE ALTERNATIVE PLAINTIFF IS ENTITLED TO SUMMARY JUDGMENT

#### 1.  Defendant Alone Was Responsible for the Prudence of the SLP's Collateral Investments and has Failed to State a Claim Against Plaintiff

Defendant[8] devotes all of three sentences in a single footnote in the Motion to defend its

procedurally and substantively deficient counterclaims.  Def. MSJ at 3, n.7.  Rather than address the

Board's varied and compelling arguments to dismiss the counterclaims as a matter of law, Defendant

simply relies upon its earlier opposition to the Board's original motion to dismiss the then-existing

cross-claims.  Dkt. Nos. 112, 115.  That briefing, however, the substance of which the Court never

ruled on and which Plaintiff hereby incorporates by reference, demonstrates that Defendant's claims

are deficient and that they should be dismissed.  Dkt. Nos. 112, 117.

Dismissal is further warranted because Defendant has ignored – and therefore conceded –

new legal arguments presented for the first time in the Board's new motion to dismiss.  *See Alto v.*

*Hartford Life Ins. Co.*, 2011 WL 1330863 (S.D.N.Y. Mar. 31, 2011) (failure to address argument

---

[8]      The Bank of New York Mellon is the only Defendant that asserted counterclaims against the Board.



functions as a concession).  Specifically, the Board sets forth in its motion to dismiss that the

If the Court were to accept that the counterclaims are permissible under ERISA and other applicable law, they still fail under Federal Rule of Civil Procedure 8 pleading standards because Defendant's allegations offer little more than threadbare recitals of each claim's element – precisely the types of "naked assertions" explicitly rejected by the United States Supreme Court and this Court as well.  Motion to Dismiss at 15-16, 23; Dkt. No. 150.  For these and all the other reasons articulated in the Board's Motion to Dismiss, as well as its earlier motion to dismiss briefing with respect to Defendant's initial cross-claims [Dkt. Nos. 112, 117], Defendant's four counterclaims fail as a matter of law and should be dismissed.

---

9       Defendant notes that the Board retained the power to terminate BNYM.  *See*  Dkt. No. 115 at 3.  However, the case law cited by Defendant merely confirms that the Board was required to review the performance of its fiduciaries at reasonable intervals, nothing more.  *Liss v. Smith*, 991 F. Supp. 278, 311 (S.D.N.Y. 1998).  Defendant's suggestion that the Board had a duty to monitor individual investments after properly appointing a fiduciary has been expressly rejected.  *Lingis v. Motorola, Inc.*, 649 F. Supp. 2d 861, 882 (N.D. Ill. 2009) ("members of the Board who were tasked with appointing—and, if necessary, removing—members of the Committee were not required to monitor the prudence of the individual investments offered under the Plan").

2.    **The Record Establishes that the Board Fulfilled Its Responsibilities To Supervise BNYM And Is Entitled to Summary Judgment**

Even if Defendant's claims were not properly subject to dismissal, which they are, the record demonstrates that the Board fulfilled any duty to monitor Defendant in connection with the SLP investments, and Plaintiff is therefore entitled to summary judgment with respect to such counterclaims.  The Guidelines, as well as controlling law, allowed and expected that the Board would delegate fiduciary duties to professional investment managers who would manage the Plan's assets.  SOF ¶12;  *Lowen v. Tower Asset Mgt., Inc.*, 829 F.2d 1209, 1219 (2d Cir. 1987) (ERISA allows "plan trustees to delegate investment authority to a professional advisor who then becomes a fiduciary with a duty of care and duty of loyalty to the plan while the ***trustees' legal responsibilities regarding the wisdom of investments are correspondingly reduced***"); Motion to Dismiss at 11.

Having properly delegated fiduciary duty over the SLP, Defendant could only succeed on its claims for failure to monitor by establishing that Plaintiff "utterly 'failed to establish a procedure for monitoring [BNYM] and [failed] to review those fiduciaries' performance.'"  *In re Am. Int'l Grp., Inc. ERISA Litig. II*, 2011 WL 1226459, at *10 (S.D.N.Y. Mar. 31, 2011).  The record demonstrates



29

Defendant has cited no case law to support the notion that the Board was required to monitor individual investments after having delegated such authority to expert fiduciaries.[10]  BNYM was well compensated for acting as an investment manager and assuming the fiduciary duties associated with that role.  A finding that the Board was not entitled to rely on BNYM in these circumstances would render the appointment of an investment manager meaningless and would eviscerate the structures established by ERISA.  Absent "notice of possible misadventure by their appointees," the Board was entitled to rely on BNYM to fulfill its fiduciary duties and prudently manage its investments.  *Newton v. Van Otterloo,* 756 F. Supp. 1121, 1132 (N.D. Ind. 1991); *see also* Motion to Dismiss at 11 (collecting cases) .



*Id.*  Because Defendant's counterclaims are both legally and factually unsustainable, such claims should be dismissed, or Plaintiff is entitled to summary judgment.

## V.    CONCLUSION

For the reasons set forth above, Defendant's motion for summary judgment must be denied and its counterclaims dismissed.  Notwithstanding, the record also demonstrates that the Board is entitled to summary judgment on the counterclaims.

DATED:  July 25, 2011                    ROBBINS GELLER RUDMAN
                                           & DOWD LLP
                                         PAUL J. GELLER (*pro hac vice*)
                                         STEPHEN R. ASTLEY (*pro hac vice*)
                                         ELIZABETH A. SHONSON (*pro hac vice*)
                                         SABRINA E. TIRABASSI (*pro hac vice*)
                                         JESSE S. JOHNSON (*pro hac vice*)


                                                   */s/ Stephen R. Astley*
                                         STEPHEN R. ASTLEY

                                         120 East Palmetto Park Road, Suite 500
                                         Boca Raton, FL  33432
                                         Telephone:  561/750-3000
                                         561/750-3364 (fax)

                                         ROBBINS GELLER RUDMAN
                                           & DOWD LLP
                                         SAMUEL H. RUDMAN
                                         DAVID A. ROSENFELD
                                         58 South Service Road, Suite 200
                                         Melville, NY  11747
                                         Telephone:  631/367-7100
                                         631/367-1173 (fax)

                                         *Attorneys for Plaintiff and Proposed Class*

31

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on July 25, 2011, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all

counsel of record.


_____*/s/ Stephen R. Astley*_____
STEPHEN R. ASTLEY

32