UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| THE BOARD OF TRUSTEES OF THE SOUTHERN CALIFORNIA IBEW-NECA DEFINED CONTRIBUTION PLAN, | 09-CV-6273 (RMB) |
| Plaintiff, | **ECF Case** |
| v. | *Contains Confidential Information* |
| THE BANK OF NEW YORK MELLON CORPORATION, et al., | |
| Defendants. | |

**MEMORANDUM OF LAW IN FURTHER SUPPORT
OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT
AND IN OPPOSITION TO PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT**

BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-2300

*Attorneys for Defendants The Bank of New York Mellon, The Bank of New York, and BNY Mellon, N.A.*

August 19, 2011

## TABLE OF CONTENTS

TABLE OF CONTENTS ...................................................................................................... i

TABLE OF AUTHORITIES............................................................................................. iii

PRELIMINARY STATEMENT ........................................................................................ 1

ARGUMENT .................................................................................................................... 2

I.     THE DISPOSITIVE FACTS ARE NOT IN DISPUTE ................................................ 2

II.    BNYM IS ENTITLED TO SUMMARY JUDGMENT
ON PLAINTIFF'S ERISA SECTION 404 CLAIM ....................................................... 5

       A.    BNYM Is Entitled to Summary Judgment Because It Is
Undisputed That the Purchase of the Lehman Note Was
Prudent and that BNYM Actively Monitored the Investment............................... 5

       B.    No Basis Exists for the Fact Finder to Conclude that BNYM
was Imprudent. ................................................................................................... 8

             1.   BNYM Acted Prudently When It Purchased the Lehman Note. ...................... 8

             2.   The Lehman Note at All Times Complied with the Guidelines. ...................... 9

             3.   Investment Professionals Monitored and Made Reasoned
Judgments as to Whether the Lehman Note Should Have
Been Sold........................................................................................................ 9

             4.   Other Investment Professionals "Acting in a Like Capacity"
—including Plaintiff's Investment Managers—Also Held
Lehman at the Time of Its Bankruptcy.......................................................... 10

             5.   No Evidence Indicates that BNYM Foresaw Lehman's Bankruptcy............. 12

       C.    Plaintiff's Assertion that BNYM Acted Differently with Respect
to BNYM's and Plaintiff's Lehman Exposure Mischaracterizes
the Record and Is Irrelevant as a Matter of Law. .................................................. 12

             1.   BNYM's Actions in Its Non-Fiduciary Capacity Were
Consistent with Its Fiduciary Actions. .......................................................... 12

             2.   Plaintiff's Argument Is Legally Foreclosed. ................................................. 14

       D.    Plaintiff's Section 404 Claim Also Fails Because It Focuses Solely
on One Investment, as Opposed to the Entire Investment Portfolio. .................... 16

E.   Plaintiff's "Concentration" Argument Fails Because BNYM
     Complied with Plaintiff's Diversification Requirements and
     Plaintiff Failed to Show Causation. .................................................................... 18

F.   Plaintiff's Expert Opinions Do Not Create a Genuine Dispute
     as to Any Material Fact Sufficient to Defeat Summary Judgment. ....................... 19

III.   BNYM IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S
       ERISA SECTION 406 CLAIM ..................................................................................... 20

IV.   IF THE COURT DENIES BNYM'S SUMMARY JUDGMENT MOTION,
      MEMBERS OF THE BOARD ARE ALSO NOT ENTITLED TO SUMMARY
      JUDGMENT ON BNYM'S COUNTERCLAIMS ......................................................... 23

CONCLUSION .................................................................................................................... 25

# TABLE OF AUTHORITIES

## Cases

*Bd. of Trs. of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*,
    2011 WL 3477219 (S.D.N.Y. Aug. 5, 2011) .................................................. 14, 15, 16, 21

*Bd. of Trs. of the City of Birmingham Emps. Ret. Sys. v. Comerica Bank*,
    767 F. Supp. 2d 793 (E.D. Mich. 2011) ........................................................................ 18

*Bd. of Trs. of Local 295/Local 851-IBT Employer Pension Fund*
    *v. Callan Assocs., Inc.*,
    1999 WL 159893 (2d Cir. Mar. 17, 1999) ....................................................................... 6

*Burns v. Bank of Am.*,
    655 F. Supp. 2d 240 (S.D.N.Y. 2008) ............................................................................. 8

*Bussian v. RJR Nabisco, Inc.*,
    223 F.3d 286 (5th Cir. 2000) ........................................................................................... 7

*DiFelice v. U.S. Airways, Inc.*,
    497 F.3d 410 (4th Cir. 2007) .................................................................................... 17, 18

*Keir v. Unumprovident Corp.*,
    2010 WL 3566878 (S.D.N.Y. Sept. 14, 2010) ........................................................... 7, 21

*In re AIG, Inc. ERISA Litig. II*,
    2011 WL 1226459 (S.D.N.Y. Mar. 31, 2011) ............................................................... 24

*In re Lehman Bros. Sec. & ERISA Litig.*,
    683 F. Supp. 2d 294 (S.D.N.Y. 2010) ........................................................................... 12

*In re Morgan Stanley ERISA Litig.*,
    696 F. Supp. 2d 345 (S.D.N.Y. 2009) ........................................................................... 15

*In re Regions Morgan Keegan ERISA Litig.*,
    692 F. Supp. 2d 944 (W.D. Tenn. 2010) ....................................................................... 18

*In re State Street Bank & Trust Co. Fixed Income Funds Inv. Litig.*,
    772 F. Supp. 2d 519 (S.D.N.Y. 2011) ........................................................................... 19

*Laborers Nat'l Pension Fund v. N. Trust Quantitative Advisors, Inc.*,
    173 F.3d 313 (5th Cir. 1999) ......................................................................................... 16

*Malletier v. Dooney & Bourke, Inc.*,
    561 F. Supp. 2d 368 (S.D.N.Y. 2008) ............................................................................. 2

*McCabe v. Capital Mercury Apparel*,
    752 F. Supp. 2d 396 (S.D.N.Y. 2010) ...................................................5, 10

*Shanehchian v. Macy's, Inc.*,
    2011 WL 883659 (S.D. Ohio Mar. 10, 2011) .............................................. 18

*Silverman v. Mutual Benefit Life Ins. Co.*,
    138 F.3d 98 (2d Cir. 1998) ........................................................................ 19

*St. Vincent Catholic Med. Ctrs. v. Morgan Stanley Inv. Mgmt. Inc.*,
    2010 WL 4007224 (S.D.N.Y. Oct. 4, 2010) ..........................................5, 6, 10

*Willett v. Blue Cross & Blue Shield of Alabama*,
    953 F.2d 1335 (11th Cir. 1992) ................................................................. 25

*Young v. Daughters of Jacob Nursing Home*,
    2011 WL 2714208 (S.D.N.Y. July 12, 2011) .............................................. 22

<u>Rules and Statutes</u>

Fed. R. Civ. P. 12 ...................................................................................... 23

S.D.N.Y. Local Rule 56.1 ............................................................................. 1

29 U.S.C. § 1104 (ERISA § 404) ..............................................................5, 16

29 U.S.C. § 1104(a)(1)(B) (ERISA § 404(a)(1)(B)) ........................................ 10

29 U.S.C. § 1106 (ERISA § 406) ...........................................................20, 21

29 C.F.R. § 2550.404a-1 ............................................................................ 16

145 Cong. Rec. S13883, S13912 (Nov. 4, 1999) .......................................... 15

## PRELIMINARY STATEMENT

In its opening brief ("Def. Br."), BNYM[1] sets forth a series of facts that entitle it to summary judgment.  Plaintiff's opposition brief ("Pl. Br.") puts **none** of these facts in dispute:



Plaintiff seeks to obscure them through a dump of extraneous factual assertions and conclusory legal arguments.  Whereas S.D.N.Y. Local Rule 56.1 requires a "short and concise" response to Defendant's Rule 56.1 statement, admitting or denying the asserted facts with citations to admissible factual evidence in the record, Plaintiff effectively submitted a 207-page response[2] replete with non-responsive and unsupported factual assertions and improper legal argument. However, nothing in Plaintiff's submission creates a genuine issue of material fact as to the

---

[1]     Capitalized terms have the same meaning as they do in BNYM's opening brief.
[2]     In response to BNYM's 24-page Rule 56.1 Statement, Plaintiff submitted a 37-page response ("Pl. Resp. Stmt.") that largely incorporates by reference its own 170-page Rule 56.1 Statement ("Pl. 56.1 Stmt.") ostensibly submitted in support of Plaintiff's motion for summary judgment on Defendant's counterclaim.

dispositive facts.  Accordingly, BNYM is entitled to summary judgment.[3]

## ARGUMENT

### I.   THE DISPOSITIVE FACTS ARE NOT IN DISPUTE

Despite Plaintiff's attempt to muddy the record, Plaintiff's own admissions demonstrate that there is no dispute as to the dispositive facts listed above.



---

[3]     The Court should reject Plaintiff's attempt to subvert page limits.  During the proceeding held on March 9, 2011, this Court ruled that the main briefs for summary judgment motions are limited to 25 pages.  ***After BNYM filed its 25-page brief***, however, Plaintiff requested an increase of page limits for its brief and the Court increased Plaintiff's page limit to 30.  D.E. 167. Plaintiff's brief fully incorporated by reference its 170-page Rule 56.1 Statement.  Pl. Br. at 2.  A court in this district had admonished parties for submitting "shamefully long" Rule 56.1 statements.  *Malletier v. Dooney & Bourke, Inc.*, 561 F. Supp. 2d 368, 373 n.1 (S.D.N.Y. 2008). The Court should reject Plaintiff's gamesmanship, and limit its considerations to the facts and arguments actually presented in Plaintiff's brief, not those "incorporated by reference" from Plaintiff's "shamefully long" Rule 56.1 Statement.
[4]     "Ex. _" followed by a number refers to exhibits of Declaration of Christopher E. Duffy, submitted with Defendant's opening brief dated May 25, 2011.  "Ex. _" followed by a letter refers to exhibits of Declaration of Damien J. Marshall, submitted with this Reply.







As shown in BNYM's opening brief, and further explained below, because these facts are undisputed, BNYM is entitled to summary judgment.

## II.   BNYM IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S ERISA SECTION 404 CLAIM

### A.   BNYM Is Entitled to Summary Judgment Because It Is Undisputed That the Purchase of the Lehman Note Was Prudent and that BNYM Actively Monitored the Investment.

This type of Monday morning quarterbacking is insufficient to survive summary judgment.  The law is well settled that "***fiduciaries are not required to be prescient or infallible in their decision-making***."  *McCabe v. Capital Mercury Apparel*, 752 F. Supp. 2d 396, 410 (S.D.N.Y. 2010) (emphasis added) (holding that ERISA fiduciary was entitled to summary judgment against Plaintiff's allegation that it used a valuation that was one year out of date "because it reasonably appeared to maximize returns for Plan participants"); *see also St. Vincent Catholic Med. Ctrs. v. Morgan Stanley Inv. Mgmt. Inc.*, 2010 WL 4007224, at *4

(S.D.N.Y. Oct. 4, 2010) (failure to state a claim when "plaintiffs premise their theory of liability on the poor results of the investments" rather than on the process that led to the investment).

Accordingly, "[w]hen a plaintiff challenges the fiduciary's decision to pursue a certain investment, the Court's 'task' is to inquire whether the individual trustees, at the time they engaged in the individual transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment." *St. Vincent*, 2010 WL 4007224 at *3 (citing *Henry v. Champlain Enters., Inc.*, 445 F.3d 610, 618 (2d Cir. 2006)).  Applying this standard, the Second Circuit has held that a fiduciary's investigation fulfills ERISA's standard of prudence if the investigation's methodologies are "accepted in the investment community." *Bd. of Trs. of Local 295/Local 851-IBT Employer Pension Fund v. Callan Assocs., Inc.*, 1999 WL 159893, at *2 (2d Cir. Mar. 17, 1999) (affirming judgment for defendant because "chosen method . . . was accepted in the investment community").

Here, there is no dispute that BNYM meets this standard.  ██████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████

███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████
███████████████████████████████████████████████████████████



█████████ Under the law cited above, BNYM is entitled to summary judgment.

████████████████████████████

████████████████████████████████

██████████████████████████████

██████████████████████████ Plaintiff must adduce **some** evidence supporting this assertion—and there is **none**.  *See Keir v. Unumprovident Corp.*, 2010 WL 3566878, at *9 (S.D.N.Y. Sept. 14, 2010) ("to defeat summary judgment, a plaintiff must adduce some evidence from which a reasonable jury could conclude that the defendant took some adverse action" that affected plaintiff).

*Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 301 (5th Cir. 2000).

[6] ██████████████████████████████████████



**B.     No Basis Exists for the Fact Finder to Conclude that BNYM was Imprudent.**

        1.   <u>BNYM Acted Prudently When It Purchased the Lehman Note</u>.

2.   <u>The Lehman Note at All Times Complied with the Guidelines</u>.

3.   <u>Investment Professionals Monitored and Made Reasoned Judgments as to Whether the Lehman Note Should Have Been Sold</u>.



4.  <u>Other Investment Professionals "Acting in a Like Capacity"—including Plaintiff's Investment Managers—Also Held Lehman at the Time of Its Bankruptcy</u>.





5. <u>No Evidence Indicates that BNYM Foresaw Lehman's Bankruptcy</u>.

**C.**   **Plaintiff's Assertion that BNYM Acted Differently with Respect to BNYM's and Plaintiff's Lehman Exposure Mischaracterizes the Record and Is Irrelevant as a Matter of Law.**

1. <u>BNYM's Actions in Its Non-Fiduciary Capacity Were Consistent with Its Fiduciary Actions</u>.





     2.  <u>Plaintiff's Argument Is Legally Foreclosed</u>.

Moreover, evidence of actions taken by BNYM or of BNYM's knowledge or "state of mind" in its non-fiduciary capacity cannot support a claim for breach of fiduciary duty.  In *Bd. of Trs. of the AFTRA Ret. Fund v. JPMorgan Chase Bank, N.A.*, 2011 WL 3477219 (S.D.N.Y. Aug. 5, 2011) ("*AFTRA*"), the plaintiff claimed that JPMorgan Chase ("JPM") had violated ERISA when it simultaneously (1) held investments in an issuer for its securities lending clients and

14

(2) extended repo funding to the same issuer, which gave JPM's commercial lending division a higher lien on the issuer's assets than its clients in the case of the issuer's bankruptcy.

Judge Scheindlin granted summary judgment to JPM holding that, as a matter of law, JPM's private-side actions were not taken "in a fiduciary capacity" for purposes of ERISA liability, and thus could not serve as the basis of an ERISA claim. *Id.* at *10 (quoting *In re Morgan Stanley ERISA Litig.*, 696 F. Supp. 2d 345, 353 (S.D.N.Y. 2009)).  In granting summary judgment, Judge Scheindlin observed that, "Since 1913, federal law has also permitted national banks to manage trust accounts while simultaneously engaging in commercial lending," and in 1999, Congress passed the Graham-Leach-Bliley Act, which "authorized a financial institution to serve in both a fiduciary and non-fiduciary capacity."  *Id.* at *1 n.10 (citing testimony of Sen. Evan Bayh, 145 Cong. Rec. S13883, S13912 (Nov. 4, 1999)).  Judge Scheindlin also noted that the SEC has

> repeatedly encouraged financial institutions possessing material inside information to adopt internal procedures . . . to prevent material inside information acquired by the bank's commercial department from being communicated to persons in the trust department who have discretion to invest for, or give advice to trust customers with regard to, investing in publicly traded securities.  It is these procedures which are usually referred to as the Wall or Chinese Wall.

*Id.* at *2 (quotation omitted).

Chinese walls prevent "not only the leakage of nonpublic information, but also (1) banks' commercial relationships from 'influencing the advice and decisions made by the fiduciary in its fiduciary capacity' and (2) the 'theoretical possibility' that a bank might 'extend[] credit in order to improve the performance of its trust accounts.'"  *Id.* at *16 (alterations in original; citation omitted).  If courts were to deem the Chinese wall legally irrelevant when considering breach of fiduciary duty claims, banks would be forced to abandon either their "public" or "private"

business to avoid liability for accidental conflicts of interest, "thereby 'negating the legislative will and public policy expressed in decades of legislation and regulation.'" *Id.* Thus, for the purposes of an ERISA breach of fiduciary duty claim against a bank's "public" side business, there is "*no significance to individual [bank] private-side employees' views* . . . or the reasons" for which they took private-side actions, because they were "*not acting in a fiduciary capacity when [they] expressed those views* or [undertook those actions]." *Id.* at \*19. "In short, a bank's liability to its fiduciary clients cannot turn on its state of mind when [undertaking private-side actions such as] extending financing to its non-fiduciary clients."[10] *Id.* at \*17.

███████████████████████████████████

███████████████████████████████████

██████████████

**D.    Plaintiff's Section 404 Claim Also Fails Because It Focuses Solely on One Investment, as Opposed to the Entire Investment Portfolio.**

Summary judgment on Plaintiff's Section 404 claim is also appropriate because Plaintiff improperly focuses its prudence claim on one investment out of an entire portfolio of investments. The modern portfolio theory is well integrated into ERISA law concerning a fiduciary's investment activities. *See* Def. Br. at 17-18.  *See* 29 C.F.R. § 2550.404a-1; *see also Laborers Nat'l Pension Fund v. N. Trust Quantitative Advisors, Inc.*, 173 F.3d 313, 317 (5th Cir. 1999) ("the fiduciary shall be required to act as a prudent investment manager *under the modern*

---

[10]    While the claim before Judge Scheindlin was for a breach of the duty of loyalty rather than the duty of prudence, logic compels the application of the same analysis to imprudence claims.  A Chinese wall obviates conflicts of interest because it prevents the public side from learning of the *existence* of private-side relationships, views, and actions.  Thus, when a Chinese wall is in effect, private-side knowledge cannot be imputed to the public-side fiduciary because the private side is "*not acting in a fiduciary capacity*" when it expresses view about or takes actions towards issuers in which the public side holds an investment.  *Id.* at \*19. ████████████████
████████████████████████████████████

***portfolio theory***") (emphasis added).

████████████████████████████████████████████

████████████████████████████████ Plaintiff purports to cite cases

that reject the modern portfolio theory defense.  Pl. Br. at 15-16.  Plaintiff, however, distorts the

law.  First, the only Circuit-level case Plaintiff cited as purportedly rejecting the modern

portfolio theory defense, *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410 (4th Cir. 2007), actually

supports application of the principle here:

> The district court properly noted that 'the portfolio management theory ... teaches that an
> investment in a risky security as part of a diversified portfolio is, in fact, an appropriate
> means to increase return while minimizing risk.' *DiFelice*, 436 F. Supp. 2d at 789; *see
> also* Charles J. Goetz, *Cases and Materials on Law and Economics* 128-29 (1984).
> Moreover, the court correctly recognized, *DiFelice*, 436 F. Supp. 2d at 789, that modern
> portfolio theory has been adopted in the investment community and, for the purposes of
> ERISA, by the Department of Labor.

*Id*. at 423.  The *DiFelice* court simply found that the defense did not apply in that case because

the defendant was attempting to include as a "portfolio" not just the investments in the

undiversified fund at issue but also other investment options that the plaintiff could have

theoretically chosen:

> This is so because a fiduciary cannot free himself from his duty to act as a prudent
> man simply by arguing that other funds, which individuals may or may not elect
> to combine with a company stock fund, could theoretically, in combination, create
> a prudent portfolio.

*Id*. at 423; *see also id.* at 424 n.8 ("Here, in contrast, modern portfolio theory alone cannot

protect U.S. Airways, which offered the Company Fund-an undiversified investment alternative-

just because it also offered *other* investment choices that made a diversified portfolio

theoretically possible"). ████████████████████████████████████

11

**E.** **Plaintiff's "Concentration" Argument Fails Because BNYM Complied with Plaintiff's Diversification Requirements and Plaintiff Failed to Show Causation.**

---

[11] The out-of-district trial court opinions cited by Plaintiff are similarly inapposite. *See Shanehchian v. Macy's, Inc.*, 2011 WL 883659, at *5 (S.D. Ohio Mar. 10, 2011) (citing *DiFelice* for its legal proposition in connection with motion to certify class); *Bd. of Trs. of the City of Birmingham Emps. Ret. Sys. v. Comerica Bank*, 767 F. Supp. 2d 793, 800 (E.D. Mich. 2011) (holding that modern portfolio theory cannot be a defense "***at the pleadings stage***" but is available in later stages); *In re Regions Morgan Keegan ERISA Litig.*, 692 F. Supp. 2d 944, 962 n.14 (W.D. Tenn. 2010) (the court did not dismiss the case at the ***pleading stage*** but noted the cases that addressed the modern portfolio theory defense "during later stages of litigation"). None of these opinions reject, or allow Plaintiff to avoid, the modern portfolio theory in this case. And, in any event, numerous other courts have confirmed the applicability of the modern portfolio theory. Plaintiff quotes *DiFelice*'s statement that "a fiduciary must initially determine, and continue to monitor, the prudence of each investment option available to plan participants." Pl. Br. at 16. It is undisputed that BNYM did precisely that.



Finally, Plaintiff's concentration argument fails because it cannot show that the alleged "concentration" caused any loss.  "A plaintiff in an ERISA case 'must show some causal link between the alleged breach of . . . dut[y] and the loss plaintiff seeks to recover." *In re State Street Bank & Trust Co. Fixed Income Funds Inv. Litig.*, 772 F. Supp. 2d 519, 542 (S.D.N.Y. 2011) (quoting *Silverman v. Mutual Benefit Life Ins. Co.*, 138 F.3d 98, 104 (2d Cir. 1998)). Here, Plaintiff has offered ***no*** evidentiary link between the alleged concentration and any loss resulting from the Lehman Note, and its diversification claim fails for this reason as well.

**F.     Plaintiff's Expert Opinions Do Not Create a Genuine Dispute as to Any Material Fact Sufficient to Defeat Summary Judgment.**





**III.    BNYM IS ENTITLED TO SUMMARY JUDGMENT ON PLAINTIFF'S ERISA SECTION 406 CLAIM**







Plaintiff has failed to show any evidence that BNYM engaged in self dealing.

Unsupported innuendo and speculation are insufficient to survive summary judgment.

## IV.   IF THE COURT DENIES BNYM'S SUMMARY JUDGMENT MOTION, MEMBERS OF THE BOARD ARE ALSO NOT ENTITLED TO SUMMARY JUDGMENT ON BNYM'S COUNTERCLAIMS[13]



---

[13]     The Court should focus on only the substantive summary judgment motion instead of the technicalities of pleading, as the Board insists.  To the extent the Court considers the technical arguments based on Fed. R. Civ. P. 12 raised by Plaintiff, BNYM incorporates by reference its previous response to the Board's previous motion.  *See* Def. Br. at 3 n.7.





## <u>CONCLUSION</u>

For the reasons set forth above, BNYM respectfully requests that the Court grant its

motion for summary judgment.

Dated:  August 19, 2011                         Respectfully submitted,
          New York, New York

                                        _____/s/_____
                                        Jonathan D. Schiller
                                        JSchiller@BSFLLP.COM
                                        Damien J. Marshall
                                        DMarshall@BSFLLP.COM
                                        Christopher E. Duffy
                                        CDuffy@BSFLLP.COM
                                        BOIES, SCHILLER & FLEXNER LLP
                                        575 Lexington Avenue, 7th Floor
                                        New York, New York 10022
                                        Tel.: 212-446-2300
                                        Fax: 212-446-2350

                                        *Attorneys for Defendants The Bank of New York
                                        Mellon, The Bank of New York, and BNY
                                        Mellon, N.A.*