UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

THE BOARD OF TRUSTEES OF THE
SOUTHERN CALIFORNIA IBEW-NECA
DEFINED CONTRIBUTION PLAN,

                    Plaintiff,

                    v.

THE BANK OF NEW YORK MELLON
CORPORATION, et al.,

                    Defendants.

09-CV-6273 (RMB)

**ECF Case**

***Contains Confidential
Information***


# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION
## FOR RECONSIDERATION OF ORDER DENYING SUMMARY JUDGMENT


BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue
New York, New York 10022
Telephone: (212) 446-2300

*Attorneys for Defendants The Bank of New
York Mellon, The Bank of New York, and BNY
Mellon, N.A.*

January 25, 2012

## TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................................ ii

PRELIMINARY STATEMENT ............................................................................... 1

LEGAL STANDARD............................................................................................... 4

ARGUMENT .......................................................................................................... 5

I.    THE COURT SHOULD GRANT SUMMARY JUDGMENT
    ON THE SECTION 406 CLAIM. ................................................................. 5

    A.    The Court Overlooked Plaintiff's New Section 406 Theory and
        Instead Relied Upon A Section 406 Argument That Plaintiff Abandoned.................... 6

        1.  Plaintiff Has Taken Three Distinct Positions Under Section 406............................ 7

    B.    There Is No Disputed Question of Fact Regarding the Prudence
        of Defendant's Act of Investing Plaintiff's Collateral in the Lehman Note ................ 10

    C.    The December 2011 Decision Overlooks Clear Authority that
        Under Section 406, the Act of Holding A Note or Security Is Not
        A "Prohibited Transaction" ......................................................................... 11

II.    THE COURT SHOULD GRANT SUMMARY JUDGMENT ON
    THE SECTION 404 CLAIM. ..................................................................... 14

    A.    The December 2011 Decision Overlooked That Plaintiff Presented
        No Evidence That Any Other Investment Manager Acted Any
        Differently From BNY Mellon. ................................................................... 14

    B.    The December 2011 Decision Overlooked Controlling Case Law
        and Regulations That Preclude Hindsight Evaluations of Prudence
        in the ERISA Context ................................................................................ 18

    C.    The December 2011 Decision Cited Evidence That Does Not
        Create a Disputed Factual Question as to BNY Mellon's Prudence ............................ 21

CONCLUSION........................................................................................................ 23

# TABLE OF AUTHORITIES

## Cases

*Adams v. Cyprus Amax Minerals Co.,*
    149 F.3d 1156 (10th Cir. 1998) ..................................................................16

*Armstrong v. LaSalle Bank Nat'l Ass'n,*
    446 F.3d 728 (7th Cir. 2006) ....................................................................22

*Buffa v. N.J. State Dep't of Judiciary,*
    56 F. App'x 571 (3d Cir. 2003) ..................................................................5

*Chao v. Merino,*
    452 F.3d 174 (2d Cir. 2006)......................................................................20

*DiFelice v. Fiduciary Counselors, Inc.,*
    398 F. Supp. 2d 453 (E.D. Va. 2005)
    *aff'd,* 497 F.3d 410 (4th Cir. 2007)..........................................................22

*Donovan v. Bierwirth,*
    680 F.2d 263 (2d Cir. 1982)................................................................3, 12

*Frisenda v. Incorp. Village of Malverne,*
    775 F. Supp. 2d 486 (E.D.N.Y. 2011) ......................................................13

*Hedgeco, LLC v. Schneider,*
    No. 08-CV-494, 2009 WL 1309782 (S.D.N.Y. May 7, 2009) ..................5

*Heffernan v. Straub,*
    655 F. Supp. 2d 378 (S.D.N.Y. 2009).......................................................4

*Henry v. Champlain Enterprises, Inc.,*
    445 F.3d 610 (2d Cir. 2006).....................................................................19

*In re Beacon Assocs. Litig.,*
    --- F. Supp. 2d ----, 2011 WL 4443957 (S.D.N.Y. Sep. 26, 2011) ...........4

*In re Citigroup ERISA Litig.,*
    662 F.3d 128 (2d Cir. Oct. 19, 2011)........................................................21

*Katsaros v. Cody,*
    744 F.2d 270 (2d Cir. 1984).................................................................20, 21

*McCabe v. Capital Mercury Apparel,*
    752 F. Supp. 2d 396 (S.D.N.Y. 2010).......................................................22

*Microsoft Corp. v. AGA Solutions, Inc.*,
    No. 05-CV-5796, 2009 WL 1033784 (E.D.N.Y. Apr. 17, 2009) ............................5

*Pension Trust Fund of Pension, Hospitalization & Benefit Plan of Elec. Indus.*,
    No. 00-2013, 2003 WL 21143087 (E.D.N.Y. Jan. 16, 2003) ...................................13

*Nobile v. Pension Comm. of Pension Plan for Employees of New Rochelle Hosp.*,
    611 F. Supp. 725 (S.D.N.Y. 1985) ............................................................................

*Nordwind v. Rowland*,
    584 F.3d 420 (2d Cir. 2009)........................................................................................13

*SCF Arizona v. Wells Fargo Bank, N.A.*,
    No. 09-CV-9513, 2011 WL 3874889 (S.D.N.Y. Sep. 1, 2011)................................18

*Shrader v. CSX Transp., Inc.*,
    70 F.3d 255 (2d Cir. 1995).........................................................................................4

*St. Vincent Catholic Medical Centers v. Morgan Stanley Inv. Mgmt. Inc.*,
    No. 09-CV-9730, 2010 WL 4007224 (S.D.N.Y. Oct. 4, 2010)........................19, 22

*Tardd v. Brookhaven Nat. Lab.*,
    No. 04-CV-3262, 2007 WL 1423642 (E.D.N.Y. May 8, 2007) ...............................5

*Tibble v. Edison International*,
    639 F. Supp. 2d 1122 (C.D. Cal. July 31, 2009)....................................................12

*United States v. Mason Tenders Dist. Counsel of Greater N.Y.*,
    909 F. Supp. 882 (S.D.N.Y. 1995) ..........................................................................20

*Wright v. Or. Metallurgical Corp.*,
    360 F.3d 1090 (9th Cir. 2004) .............................................................................12, 13

## Rules and Statutes

29 U.S.C. § 1104 (ERISA § 404) ...............................................................1, 12, 13, 14

29 U.S.C. § 1106 (ERISA § 406) .........................................................................1, 5, 11

29 U.S.C. § 1132 (ERISA § 502) ..................................................................................13

29 C.F.R. § 2550.404a-1 ..........................................................................................18, 19

U.S. Dept. of Labor, Prohibited Transaction Exemption 2006-16,
    71 F.R. 63786 (Oct. 31, 2006) ....................................................................................8

## PRELIMINARY STATEMENT

At an earlier stage of this case, the Court reconsidered its entry of judgment in favor of Defendants The Bank of New York Mellon, The Bank of New York, and BNY Mellon, N.A. (together, "BNY Mellon"), and thereafter granted Plaintiff's request to vacate it.  Here, justice will be served by the Court's reconsideration of its summary judgment decision, dated December 9, 2011 (hereinafter the "December 2011 Decision"), which BNY Mellon respectfully submits will lead to an order vacating the prior denial of summary judgment.

In its December 2011 Decision, the Court denied BNY Mellon's motion for summary judgment on both counts of the third amended complaint.  Specifically, the Court concluded that genuine disputed questions of fact exist regarding whether: (1) "Defendants dealt with the assets of the Plan in Defendants' own interest or for their own account"; *see* Dec. 2011 Decision at 7, (citing 29 U.S.C. § 1106(b)(1)) (hereinafter the "section 406 claim") and (2) whether, with respect to the Plan's assets, BNY Mellon acted "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  *Id.* at 6 (citing 29 U.S.C. § 1104(a)(1)(B)) (hereinafter the "section 404 claim").[1]

With respect to the section 406 claim, the December 2011 Decision may have overlooked dispositive record evidence and authority that would likely, if considered, have altered the conclusion reached by the Court.  In the course of the four complaints filed by Plaintiff and its briefing on BNY Mellon's motions, Plaintiff presented the Court with three distinct and conflicting theories as to BNY Mellon's purported liability under the section 406 claim.  At various times, Plaintiff's section 406 claim alleged that BNY Mellon is liable due to: (1) its

---

[1] References herein to the "Plan" or the "DC Plan" denote the Southern California IBEW-NECA Defined Contribution Plan.  Plaintiff is the Board of Trustees of the Plan.

imprudent investment of Plaintiff's collateral in the Lehman Note; (2) a conflict of interest in its compensation structure with respect to the Lehman Note; and (3) its imprudent maintenance of the Lehman Note, *i.e.* failure to sell, in the face of known risks. Plaintiff vacillated among those positions throughout this litigation until recently, when it appears to have finally settled on the maintenance position as its theory of liability for its section 406 claim.

The effect of Plaintiff's vacillating section 406 claim is that – if Plaintiff's recent statements are taken at face value – neither the Court's December 2011 Decision nor BNY Mellon's summary judgment briefing addressed the new "maintenance" theory. Instead, the December 2011 Decision focused on Plaintiff's now-abandoned position regarding alleged imprudence of the initial investment and BNY Mellon's arguments addressed Plaintiff's abandoned arguments with respect to the Plan's compensation structure. This confusion – understandable in light of the muddled record created by Plaintiff's shifting positions – appears to have led the Court to adopt Plaintiff's argument that the initial investment was imprudent, even though the record unambiguously demonstrates that Plaintiff has abandoned that position and that there is no disputed question of fact as to the prudence of the initial decision to invest in the Lehman Note.

Because the December 2011 Decision focused on Plaintiff's abandoned imprudence allegation, the Court has not yet addressed Plaintiff's new "maintenance" theory. Respectfully, the Court should carefully examine Plaintiff's new and unfounded theory of section 406 liability because it disregards well-established law that: (1) liability under section 406 requires that defendant engage in a "prohibited transaction;" and (2) section 406 has no application to circumstances where, as here, a defendant merely *maintains* an investment and *refrains* from entering into a "transaction." Plaintiff's new "maintenance" theory requires that this Court

2

fashion a new and sweeping theory of liability under Section 406 that has already been rejected by the Second and Ninth Circuits in *Donovan v. Bierwirth*, 680 F.2d 263, 270 (2d Cir. 1982) (Friendly, J.) ("We read this section of the statute as ***requiring a transaction between the plan and a party having an adverse interest***.") and *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1101 (9th Cir. 2004) (holding that defendant's decision "to ***continue*** to hold 15% of Plan assets in employer stock was not a 'transaction'").  For that reason, justice will be served by reconsideration of Plaintiff's unfounded "maintenance" theory.

Similarly, the December 2011 Decision may have overlooked several critical parts of the summary judgment record in denying BNY Mellon's motion for summary judgment on Plaintiff's section 404 claim, including the near uniform actions of investment managers in holding Lehman notes, and the ample admissions made by Plaintiff's binding Rule 30(b)(6) deposition testimony.  Plaintiff presented no evidence showing that ***any*** investment manager acted differently than BNY Mellon did with regard to investments in Lehman notes.  Indeed, the record was uncontroverted that numerous other investment managers, including securities lending agents, money market fund managers, and numerous pension fund managers all held Lehman notes at the time of Lehman's collapse.  Moreover, the testimony of Plaintiff's 30(b)(6) designee admits that ████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████████
██████████████████████████████████████████
██████████████████████████████████████████

█████████████████████████████████ In light of these undisputed facts, the relevant "prudent man" standard compels only one conclusion – that is BNY Mellon, who acted in a like capacity, with like aims, at the same time as these concededly prudent managers, was prudent in purchasing and maintaining the Lehman Note.

Each of these overlooked facts and admissions independently and together demonstrate the absence of any genuine dispute on the material facts relevant to Plaintiff's section 404 claims.

## LEGAL STANDARD

Courts in this District grant motions for reconsideration in circumstances where "the court has overlooked controlling decisions or factual matters that were put before it on the underlying motion . . . and which, had they been considered, might have reasonably altered the result before the court." *Heffernan v. Straub*, 655 F. Supp. 2d 378, 380 (S.D.N.Y. 2009) (internal citation and quotation marks omitted). The standard is "strict," but the moving party may prevail on such a motion if it "'can point to controlling decisions or data that the court overlooked – matters, in other words, that might reasonably be expected to alter the conclusion reached by the court.'" *In re Beacon Assocs. Litig.*, --- F. Supp. 2d ---, 2011 WL 4443957, at *2 (S.D.N.Y. Sep. 26, 2011) (quoting *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 256-57 (2d Cir. 1995)); *see also Heffernan*, 655 F. Supp. 2d at 381-82 (granting motion for reconsideration because the Court overlooked controlling law and "conceded facts" that plaintiff's speech "occurred with great regularity for years prior to the adverse employment act").

---

████████████████████████████████████████████████

A motion for reconsideration is an appropriate vehicle for vacating and reversing a Court's prior denial of a motion for summary judgment. *E.g.*, *Buffa v. N.J. State Dep't of Judiciary*, 56 F. App'x 571, 575 (3d Cir. 2003) (affirming order granting motion for reconsideration of District Court's previous denial of summary judgment, where district court had initially ruled that plaintiff's disability status was material issue of contested fact despite defendants not disputing that plaintiff had "disability" under relevant law); *Hedgeco, LLC v. Schneider*, No. 08-CV-494, 2009 WL 1309782, at *1 (S.D.N.Y. May 7, 2009) (granting defendants' motion for reconsideration and entering summary judgment in their favor because Court overlooked lack of evidence supporting plaintiff's damages); *Microsoft Corp. v. AGA Solutions, Inc.*, No. 05-CV-5796, 2009 WL 1033784, at *4 (E.D.N.Y. Apr. 17, 2009) (granting reconsideration of denial of plaintiff's motion for summary judgment because court overlooked previously submitted evidence sufficient to establish that defendant's owner had acted knowingly); *Tardd v. Brookhaven Nat'l Lab.*, No. 04-CV-3262, 2007 WL 1423642, at *2-3 (E.D.N.Y. May 8, 2007) (granting defendants' motion for reconsideration of denial of summary judgment in employment discrimination case because Court overlooked deposition testimony relating to positive working conditions and plaintiff's positive relationship with supervisors).

## ARGUMENT

## I.   THE COURT SHOULD GRANT SUMMARY JUDGMENT ON THE SECTION 406 CLAIM.

In denying summary judgment on the section 406 claim, the December 2011 Decision incorrectly concluded that a genuinely disputed question of fact exists regarding whether "Defendants dealt with the assets of the Plan in Defendants' own interest or for their own account." *See* Dec. 2011 Decision at 7, (citing 29 U.S.C. § 1106(b)(1)).  This conclusion overlooks three important considerations with respect to the section 406 claim, each of which is

5

an appropriate reason for the Court to reconsider its prior denial of BNY Mellon's motion for summary judgment. *First,* the December 2011 Decision relies in part on an argument that Plaintiff abandoned. *Second*, the December 2011 Decision overlooks record evidence that there is no factual dispute as to the prudence of BNY Mellon's act of investing the Plan's collateral in the Lehman Note. *Third,* the December 2011 Decision overlooks the clear authority holding that the act of holding a note or security is not a "prohibited transaction" under section 406.

### A.    The Court Overlooked Plaintiff's New Section 406 Theory and Instead Relied Upon A Section 406 Argument That Plaintiff Abandoned

The December 2011 Decision relies in part on a section 406 argument that Plaintiff abandoned.  In reaching the conclusion that Plaintiff has a triable section 406 claim, the Court found that "Plaintiff's claim is based on Defendants' ***separate and subsequent act of imprudently investing*** the collateral in the Lehman Note."  Dec. 2011 Decision at 4-5 (citing Pl.'s Mem of Law in Opp'n to Def.'s Mot. to Dismiss, dated Dec. 8, 2009 at 23) (emphasis added; internal brackets, quotations and ellipses omitted).  There is no dispute that this finding as to the basis of Plaintiff's section 406 claim is incorrect: Plaintiff has admitted on numerous occasions that its section 406 claim is ***not*** based on the act of ***investing*** in the Lehman Note, but instead "on Defendants' affirmative action in ***maintaining the Lehman Investments*** while at the same time recognizing Lehman risk and mitigating their own exposure but not their clients . . . ." Pl.'s Dec. 30, 2011 Letter to the Court at 2 (emphasis added); *see also* Jan. 18, 2012 H'ring Tr. at 10:23-11:4 ("They ***maintained*** the Lehman investments in the face of known risks and, at the same time, they were managing their relationship and lending and financing Lehman Brothers, their ongoing Lehman Brothers relationship for their own profitable interest, while at the same time not managing the interests of my clients . . . .") (emphasis added).

6

### 1.     Plaintiff Has Taken Three Distinct Positions Under Section 406

The muddled record created by Plaintiff with respect to its section 406 claim effectively prevented the Court and BNY Mellon from addressing Plaintiff's new section 406 argument. The apparent confusion by the Court and BNY Mellon as to the basis of Plaintiff's section 406 claim is understandable: Plaintiff has taken three distinct positions with respect to that claim and has vacillated between them throughout this litigation.  Each of those positions identified different conduct by BNY Mellon that allegedly violated section 406.

Plaintiff initially challenged the transaction through which it was agreed that BNY Mellon would receive compensation for its securities lending services.  In its original Complaint, dated July 13, 2009, and Amended Complaint, dated October 29, 2009, Plaintiff based its Section 406 claim solely on the allegation that BNY Mellon "invested the Collateral for the express purpose of *making investments for its own financial benefit and earning profits for itself and at the expense of the Plans*."  Am. Compl. (Dkt. #27) ¶ 89 (emphasis added); *see also* Compl.  (DKT #1) ¶ 78.

On December 8, 2009, Plaintiff changed its position and instead challenged BNY Mellon's "*decision to invest Collateral in Lehman notes*."  Opp'n. to Mot. to Dismiss (Dkt. #34) at 23.  In its Opposition to Defendant's Motion to Dismiss, Plaintiff moved away from its initial position, stating that its section 406 claim "is not based on the fact that Defendant loaned securities, received Collateral, or was paid a fee for doing so."  *Id.* at 23.  Instead, Plaintiff asserted that this claim was based on BNY Mellon's "*decision to invest* Collateral in Lehman notes," *i.e.* the initial purchase of the Lehman Note.  *Id.* (emphasis added); *see also id.* at 22 (section 406 claim based "solely" on "*the imprudent investment* of the Collateral in Lehman" which "was purchased on or about March 23, 2007").  The Court understandably relied upon this

statement by Plaintiff when it concluded that Plaintiff's section 406 claim was based on BNY

Mellon's "'*separate and subsequent act of imprudently investing* the collateral' in the Lehman

Note." Dec. 2011 Decision at 4-5 (quoting Pl.'s Mem of Law in Opp'n to Def.'s Mot. to

Dismiss (Dkt. #34) at 23) (emphasis added; internal brackets, quotations and ellipses omitted).

Despite the clear statement in its December 8, 2009 opposition that its section 406

argument was based on the investment in the Lehman Notes, Plaintiff reverted to its original

position on September 21, 2010, when it filed the Second Amended Complaint. In that

complaint, Plaintiff again asserted that its section 406 claim was based on the allegation that

BNY Mellon "invested the Collateral for the express purpose of making investments for its own

financial benefit and earning profits for itself and at the expense of the Plans." Second Am.

Compl. (Dkt. #89) ¶ 242. Similarly, when Plaintiff filed its Third Amended Complaint on March

11, 2011 ("TAC"), it again reasserted its original position, under the Section 406 heading, that

"Defendant dealt with the Collateral, a Plan asset, in its own interest or for its own account *in*

*that* it invested the Collateral for the express purpose of making investments for its own financial

benefit and earning profits for itself and at the expense of the Plans." *See* TAC ¶ 242 (emphasis

added). This allegation – and the section 406 claim generally – appeared to attack the overall

structure of the revenue-sharing arrangement, under which BNY Mellon's sole compensation for

its securities lending services consists of 30% of revenues earned on Plaintiff's assets.[3]

---

[3] BNY Mellon's receipt of compensation cannot support a Section 406 claim, which the Court
appeared to recognize in its December 2011 Decision by acknowledging that "§ 406(b)(1) of
ERISA 'shall not apply to the **payment** to a fiduciary [*e.g.*, BNY Mellon] . . . of **compensation
for services** rendered in connection with loans of plan assets that are securities." *See* Dec. 2011
Decision at 4 (quoting U.S. Dept. of Labor, Prohibited Transaction Exemption 2006-16, 71 F.R.
63786 (Oct. 31, 2006) ("PTE 2006-16"), at §1(c) (Ex. 27)) (emphasis and alterations added in
December 2011 Decision).

Amid these shifting section 406 positions, Plaintiff's argument in its July 25, 2011 opposition to BNY Mellon's motion for summary judgment appears to be based on three separate arguments. *First*, Plaintiff argued that BNY Mellon acted imprudently in its decision to continue "to hold the Lehman Note," which Plaintiff described as "heads I win; tails you lose." Opp'n to Mot. for Summ. J. (Dkt. #181) at 25 ("Defendant violated its duty of loyalty by maintaining the Lehman Note"). *Second*, Plaintiff defended its position that BNY Mellon acted improperly as the result of its fee structure, stating that BNY Mellon's "contention that ***its agreed fees are exempted from Section 406 claims is simply incorrect***, as explained previously." *Id.* at 27 (emphasis added). This language suggests that Plaintiff considered BNY Mellon's "agreed fees" to be a violation of section 406. Although Plaintiff ended this section of its brief with the argument that BNY Mellon's "violation of ERISA §406 is not about the revenue split itself," Plaintiff plainly implied that the revenue split – not by itself but in combination with other factors Plaintiff cited – constituted the alleged violation of section 406. *Finally*, Plaintiff cited to its December 8, 2009 opposition to motion to dismiss to make the argument that the "agreed fees" were not "exempted from Section 406." *Id.* at 27. As noted above, Plaintiff's December 8, 2009 position was that the section 406 claim was based on BNY Mellon's initial "decision to invest Collateral in Lehman notes."

Plaintiff appears not to have settled on a single position until ***after*** the Court issued its Decision & Order on December 9, 2011. In its letter to the Court dated December 30, 2011, Plaintiff finally stated its position without equivocation: "Plaintiff's theory of liability rests on Defendants' affirmative action in maintaining the Lehman investments. . . ." *See also* Jan. 18, 2012 H'ring Tr. at 10:23-24 (the relevant "transaction" for Section 406 claim was the fact that BNY Mellon "maintained the Lehman investments in the face of known risks").

9

**B.**     **There Is No Disputed Question of Fact Regarding the Prudence of Defendant's Act of Investing Plaintiff's Collateral in the Lehman Note**

The December 11 Decision – which appears to adopt Plaintiff's abandoned position that there is a dispute of fact as to the prudence of the decision to invest in the Lehman Note – is contradicted by numerous admissions by Plaintiff establishing that the initial investment in the Lehman Note was prudent.  *See* Court Exhibit A (Dkt. #209) (collects Plaintiff's admissions).

In the first place, Plaintiff's liability expert ███████████████████████████████ ████████████████████████████████████████████████████████████████████████ ██████████ ██████████████████████████████████████████████████████ ██████████████████████████████████████████████ ████████████████████████████████████████████ ██████████ ██████████████████████████████████████████[4]      ██████████ admission is consistent with Plaintiff's admission in its Memorandum in Opposition to Defendants' Motion for Summary Judgment ████████████████████████ ████████████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████████████████ █████████████████████████████████████████████████████████████████████████ ██████████████

Additionally, in its Responses to Defendants' First Set of Requests for Admission, Plaintiff ████████████████████████████████████████████████████████████████

---

[4] All references to "Ex. __" in this memorandum of law indicate exhibits to the Declaration of Vincent Liu filed in support of BNY Mellon's motion for summary judgment on May 25, 2011. References to "____ Dep." indicate deposition testimony submitted by BNY Mellon in the Appendix of Testimony accompanying its motion for summary judgment.



Through these admissions and its evolving section 406 arguments, there is little question that by the time of the December 11 Decision, Plaintiff had abandoned its previous position that BNY Mellon's section 406 liability was based on its "decision to invest Collateral in Lehman notes." Pl.'s Mem of Law in Opp'n to Def.'s Mot. to Dismiss, dated Dec. 8, 2009 at 23. By permitting the section 406 claim to survive summary judgment on this basis, the December 2011 Decision overlooked what Plaintiff now admits was the actual basis of their summary judgment argument – that is that BNY Mellon's *continued holding* of the Lehman Notes beyond June 2007 was imprudent.

      C.    **The December 2011 Decision Overlooks Clear**
                **Authority that Under Section 406, the Act of Holding**
                <u>**A Note or Security Is Not A "Prohibited Transaction"**</u>

Plaintiff wrongly asserts a legal proposition that section 406 does not require that defendants engage in a prohibited transaction. *See* Jan. 18, 2012 H'ring Tr. at 10:15-20, 11:17-13:4. Crucially, section 406 does not create liability for ***refraining*** from undertaking a particular transaction. Plaintiff's sweeping interpretation of section 406 is contradicted by the plain language of section 406 and by case law from the Second and Ninth Circuits. On its face, section 406 applies to certain "prohibited transactions." 29 U.S.C. § 1106. Consistent with the

plain statutory language of section 406, in *Donovan*, 680 F.2d at 270 (Friendly, J.), the Second

Circuit recognized that section 406 applies to certain "transactions:"

> We read this section of the statute as ***requiring a transaction between the plan and a party having an adverse interest*** . . . . We see no reason to think Congress intended the expansive interpretation of the various specific prohibitions of s 406 urged by the Secretary, particularly in light of the inclusion of the sweeping requirements of prudence and loyalty contained in s 404.

*Id.* at 270.[5]

It is because section 406 does not apply to a decision to refrain from entering into a

transaction, as the Ninth Circuit has explained, that section 406 cannot apply to a theory of

liability such as the one espoused by Plaintiff in this case:

> Plaintiffs fail to identify any transaction that falls within § 1106(a)(1) or (b). They have pointed to nothing akin to a "sale, exchange, or leasing of property, . . . [or] the lending of money or extension of credit," all commercial bargains defined by the Supreme Court in *Lockheed* as falling under § 1106. *Lockheed*, 517 U.S. at 893, 116 S.Ct. 1783 (internal quotation marks omitted). The decision by the Oremet Defendants to *continue* to hold 15% of Plan assets in employer stock was not a "transaction." It was merely a lawful decision to remain in full compliance with the explicit language of the Plan's terms. Plaintiffs therefore fail to state a claim for violation of § 1106 based on the Plan fiduciaries' decision to adhere to the Plan's terms.

*Wright*, 360 F.3d at 1101 (emphasis in original);[6] *see also, e.g., Tibble v. Edison Int'l*, 639

F. Supp. 2d 1122, 1127 (C.D. Cal. July 31, 2009) ("Plaintiffs argue that by 'failing to act,' SCE

---

[5] In the hearing before this Court on January 18, 2012, Plaintiff's counsel wrongly asserted that *Donovan* stands for the proposition that section "406 is to be broadly construed. *Donovan* specifically says, there are sweeping requirements for the duty of loyalty." *See* Jan. 18, 2012 H'ring Tr. at 12:18-13:4. Plaintiff's counsel's assertion misstates the point of the *Donovan* decision: it is precisely because of the "sweeping requirements of prudence and loyalty contained ***in section 404***" that the *Donovan* court limits the applicability of section 406 to require a "transaction." *Donovan*, 680 F.2d at 270 (emphasis added). Plaintiff's counsel failed completely in the January 18 hearing to identify with precision any "transaction."

[6] In the January 18 hearing before the Court, Plaintiff's counsel argued that *Wright* is inapposite because it involves an employee stock ownership plans ("ESOP"). *See* Jan. 18, 2012 H'ring Tr. at 10:8-14) ("They are relying on noncontrolling authority that's in the context of an ESOP case"). A plan's status as an ESOP is relevant only to section 404, and does not affect the

engaged in a prohibited transaction.  As explained above, however, *a fiduciary's failure to act cannot form the basis for a prohibited transaction under § 1106*.") (emphasis added; internal citation omitted).

      Here, as discussed above, Plaintiff and its experts ████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████████████████
████████████████████████████████████████████████████████████
████████████████████████████████████████████████████
████████████████████████████████████████████████████████████[7]

      Under the sound reasoning of cases such as *Donovan*, *Wright*, and *Tibble*, Plaintiff's imprudence theory in this case cannot trigger liability under section 406.  With the record devoid

---

analysis under section 406.  Section 404 contains a carve-out of certain requirements for ESOP. Under Section 404(a)(2), an "eligible individual account plan," including an ESOP, does not violate the diversification and prudence requirements of Section 404 "by acquisition or holding of qualifying employer real property or qualifying employer securities."  29 U.S.C. § 1104(a)(2). By contrast, section 406(b) contains no such carve-out for, or any reference to, ESOP.  Thus section 406(b)'s prohibition of certain "Transactions between plan and fiduciary" is unaffected by a plan's status as an ESOP.  The *Wright* court's analysis and application of section 406 is similarly unaffected by considerations related to ESOPs.  In fact, the *Wright* court did not even mention the plan's ESOP status in its section 406 analysis.  *See Wright*, 360 F.3d at 1100-01.

[7] To the extent that Plaintiff's section 406 claim was based on the "act of imprudently investing the collateral in the Lehman Note," it would be indistinguishable from its section 404 claim, and subject to dismissal for that independent reason.  *E.g.*, *Neely v. Pension Trust Fund of Pension, Hospitalization & Benefit Plan of Elec. Indus.*, No. 00-2013, 2003 WL 21143087, at *12–13 (E.D.N.Y. Jan. 16, 2003) (granting motion to dismiss on basis that "a plaintiff's [ERISA] § 502(a)(3) claim should be dismissed when the § 502(a)(3) claim seeks relief duplicative of the relief sought on a claim for benefits under [ERISA] § 502(a)(1)(B)"); *Nordwind v. Rowland*, 584 F.3d 420, 432-33 (2d Cir. 2009) (affirming district court's dismissal of breach of fiduciary duty claim as duplicative of legal malpractice claim); *Frisenda v. Incorp. Village of Malverne*, 775 F. Supp. 2d 486, 518 (E.D.N.Y. 2011) ("to the extent that plaintiff also may be attempting to assert an equal protection claim based upon retaliation for First Amendment activity (rather than under a class-of-one theory), such a claim is completely duplicative of the First Amendment retaliation claim and, therefore, should not go forward. . . .  Accordingly, defendants' motion for summary judgment on the plaintiff's equal protection claim is granted.").

of any evidence of anything that could qualify as a prohibited transaction, the Court should have granted summary judgment on the section 406 claim.

## II.     THE COURT SHOULD GRANT SUMMARY JUDGMENT ON THE SECTION 404 CLAIM.

In denying summary judgment on the section 404 claim in this action, the December 2011 Decision overlooked several important parts of the summary judgment record, each of which independently demonstrates the absence of any genuine dispute on the material facts relevant to Plaintiff's claims.

### A.     The December 2011 Decision Overlooked That Plaintiff Presented No Evidence That Any Other Investment Manager Acted Any Differently From BNY Mellon.

The December 2011 Decision held that the law required BNY Mellon to act "with the care, skill, prudence, and diligence *under the circumstances then prevailing* that a *prudent man* acting in a *like capacity* and *familiar with such matters* would use in the conduct of an *enterprise of a like character* and with *like aims*." 29 U.S.C. § 1104(a)(1)(B) (describing "Prudent man standard of care") (emphasis added).  Here, Plaintiff failed to create any material issue of fact as to whether BNY Mellon met that standard.  Indeed, Plaintiff presented *no* evidence that any investment manager acted any differently from BNY Mellon did with regard to the Lehman notes.  Moreover, the undisputed evidence showed that numerous investment managers – including other securities lending agents, money market fund managers, and pension fund managers – acted exactly as BNY Mellon did and held Lehman notes up to Lehman's collapse.  Critically, the record establishes conclusively that ███████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████



Acting in this "like capacity" and with "like aims" under the same "circumstances then prevailing,"



███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████████████

███████████████████████████████████████████

███████████████████████████████████████████████████

███████████████████████████████████████████████████

██████████████████████████████████████████

█████████████████████████████   These dispositive facts foreclose any need for a bench

trial on the section 404 claim.[9]

Most important, the summary judgment record establishes – via the uncontroverted

testimony of Plaintiff's 30(b)(6) designee ████████████████████████████████████████

█████████████████████████████████████████████████

████████████████████████████████████████████████████

████████████████████████████████

███████████████████

████████████████████████████████

---

[9] If the Court denies this motion for reconsideration, it will require a bench trial, notwithstanding Plaintiff's jury demand.  *See Adams v. Cyprus Amax Minerals Co.*, 149 F.3d 1156, 1161 (10th Cir. 1998) (claim for ERISA benefits "is analogous to a trust action and therefore equitable in nature," meaning no jury right attaches); *Nobile v. Pension Comm. of Pension Plan for Employees of New Rochelle Hosp.*, 611 F. Supp. 725, 727 (S.D.N.Y. 1985) (collecting cases that "have definitively ruled that ERISA provides no right to a jury").



In light of the facts set out above, the search for the relevant "prudent man" – that is, one who acted in a like capacity as BNY Mellon, with like aims as BNY Mellon, at the same time that BNY Mellon made the decisions now under attack – begins and ends with McMorgan and WAMCO. Their investments in Lehman constitute undisputed record evidence about the way in which parties similarly situated to BNY Mellon acted with respect to investments in Lehman debt. They behaved in an identical manner to BNY Mellon, and Plaintiff has already admitted that this identical behavior was prudent. Moreover, the record contained undisputed evidence that numerous other investment managers acted in conformity with BNY Mellon ▮▮▮▮▮ ▮▮▮▮▮. Indeed, there was *no* evidence that any investment manager acted any differently than BNY Mellon.

Based on this testimony, the record obviously contains an undisputed, material factual basis for concluding that BNY Mellon acted prudently with the Plan's assets. ▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Although Plaintiff's counsel "argues" a

section 404 position, there is, in the record before the Court, no *genuine* dispute of *facts* that a "prudent man" would have acted differently than BNY Mellon. Therefore, the Court should have granted BNY Mellon's motion for summary judgment on the section 404 claim.

In denying summary judgment, the Court relied in part on the recent decision in *SCF Arizona v. Wells Fargo Bank, N.A.*, No. 09-CV-9513, 2011 WL 3874889 (S.D.N.Y. Sep. 1, 2011). However, the claims in *SCF Arizona* were based exclusively on breaches of contractual and fiduciary duties under Arizona law, not ERISA duties. *See* Exhibit A to the accompanying Declaration of Vincent Y. Liu (SCF Arizona's First Amended Complaint dated Feb. 11, 2010). As a non-ERISA decision, *SCF Arizona* is inapposite to the claims in the instant action.

In light of the foregoing facts that the December 2011 Decision apparently overlooked, there is no basis for its conclusion, *see* Dec. 2011 Decision at 6, that whether BNY Mellon complied with the "prudent man standard of care" is a "genuine, disputed question[] of fact."

### B. The December 2011 Decision Overlooked Controlling Case Law and Regulations That Preclude Hindsight Evaluations of Prudence in the ERISA Context

The Court's December 2011 Decision also overlooked 29 C.F.R. § 2550.404a-1(b), which provides that an ERISA fiduciary satisfies its duties under ERISA § 404(a)(1)(B) as long as the fiduciary has given "appropriate consideration" to relevant facts and circumstances, and "acted accordingly."[10]  The regulation reads in relevant part:

(b) *Investment duties.*

(1) With regard to an investment or investment course of action taken by a fiduciary of an employee benefit plan pursuant to his investment duties, *the requirements of section 404(a)(1)(B) of the Act set forth in subsection (a) of this section are satisfied if the fiduciary*:

---

[10] BNY Mellon cited 29 C.F.R. § 2550.404a-1(b) at pages 18 and 21 of its May 25, 2011 memorandum of law in support of its motion for summary judgment.

(i) ***Has given appropriate consideration to those facts and circumstances that, given the scope of such fiduciary's investment duties, the fiduciary knows or should know are relevant to the particular investment or investment course of action involved***, including the role the investment or investment course of action plays in that portion of the plan's investment portfolio with respect to which the fiduciary has investment duties; and

(ii) Has acted accordingly.

(2) For purposes of paragraph (b)(1) of this section, "appropriate consideration" shall include, but is not necessarily limited to,

(i) A determination by the fiduciary that the particular investment or investment course of action is reasonably designed, as part of the portfolio (or, where applicable, that portion of the plan portfolio with respect to which the fiduciary has investment duties), to further the purposes of the plan, taking into consideration the risk of loss and the opportunity for gain (or other return) associated with the investment or investment course of action, and

(ii) Consideration of the following factors as they relate to such portion of the portfolio:

(A) The composition of the portfolio with regard to diversification;

(B) The liquidity and current return of the portfolio relative to the anticipated cash flow requirements of the plan; and

(C) The projected return of the portfolio relative to the funding objectives of the plan.

(Emphasis added.)

As another judge in this District has explained, "When a plaintiff challenges the fiduciary's decision to pursue a certain investment, the Court's 'task is to inquire whether the individual trustees, at the time they engaged in the challenged transactions, employed the appropriate methods to investigate the merits of the investment and to structure the investment.'" *St. Vincent Catholic Medical Centers v. Morgan Stanley Inv. Mgmt. Inc.*, No. 09-CV-9730, 2010 WL 4007224, at *3 (S.D.N.Y. Oct. 4, 2010) (quoting *Henry v. Champlain Enterprises, Inc.*, 445 F.3d 610, 618 (2d Cir. 2006) (Sotomayor, J.)); *see also id.* (explaining that a "fiduciary's investigative process, therefore, is critical to determining [under] ERISA whether the duty of

19

prudence is satisfied.") (citing *United States v. Mason Tenders Dist. Counsel of Greater N.Y.*, 909 F. Supp. 882, 887 (S.D.N.Y. 1995)).

      Here, the summary judgment record contains ***no evidence*** that BNY Mellon's procedures were deficient, or that it ever failed to give "appropriate consideration" to matters relating to the Lehman Note. ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████ Thus, there is no genuine factual dispute that BNY Mellon's investments were insufficiently diversified.

      The mere fact that one of BNY Mellon's investments of the Plan's assets – and only one – resulted in an as-yet unrealized loss to the Plan is insufficient to support a claim under section 404. The December 2011 Decision appears to have reached a different conclusion about the significance of one negative result, and in doing so overlooked a controlling Second Circuit decision requiring that a fiduciary's "actions are not to be judged 'from the vantage point of hindsight.'" *Chao v. Merino*, 452 F.3d 174, 182 (2d Cir. 2006) (quoting *Katsaros v. Cody*, 744

---

████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

F.2d 270, 279 (2d Cir. 1984)).  The Second Circuit reiterated this directive just two months ago

when it wrote: "We judge a fiduciary's actions based upon information available to the fiduciary

at the time of each investment decision and not 'from the vantage point of hindsight.'"  *In re*

*Citigroup ERISA Litig.*, 662 F.3d 128, 140 (2d Cir. 2011) (quoting *Chao*).

       As this Court ruled in a prior opinion in this case, "Plaintiff's allegation that there was, in

hindsight, a loss of principal from the investment of the Plan's collateral in the Lehman floating

rate note is not, without further 'factual enhancement,' sufficient to sustain a claim under ERISA

§§ 404 or 406."  *See* April 2010 Order at 9.  Here, the summary judgment record lacked any

"factual enhancement" that could render BNY Mellon's decision to maintain its buy-and-hold

strategy on the Lehman Note to be imprudent when the decision was made.  The absence of any

record evidence in this regard is perhaps most clearly highlighted by the fact that ▌▌▌▌▌▌

▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

▌▌▌▌▌▌▌  When viewed through anything but the impermissible prism of hindsight, there can

no genuine dispute that BNY Mellon's holding of the Lehman Note through bankruptcy was

anything other than a prudent decision ▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌▌

    **C.**    **The December 2011 Decision Cited Evidence That Does Not**
              **Create a Disputed Factual Question as to BNY Mellon's Prudence**

       The December 2011 Decision cited to three pieces of evidence for its conclusion that a

disputed question of fact exists on whether BNY Mellon discharged its duties under the "prudent

man" standard.  Dec. 2011 Decision at 6.  The cited evidence includes the facts that (1) BNY

Mellon "classified Lehman as a purchase-restricted issuer" in November 2007, such that new

purchases of Lehman "Lehman investments were disallowed;" (2) some of BNY Mellon's committees held meetings in April, May, and June 2008 where "various dangers in the SLP business were discussed, including an observation at one of the meetings that that 'Lehman . . . is trying to acquire more capital in case of bankruptcy,'" and (3) two employees of BNY Mellon exchanged emails on June 6, 2008, stating that "Are we doing anything different because of Lehman" and "Not so far." *Id.*

The cited evidence does not create a factual dispute as to BNY Mellon's prudence. Rather, such evidence **confirms** that BNY Mellon was diligent in performing its investigative and evaluative duties. *See St. Vincent*, 2010 WL 4007224, at *3 (explaining that a "fiduciary's investigative process, therefore, is critical to determining [under] ERISA whether the duty of prudence is satisfied"). Contrary to the conclusion of December 2011 Decision, each of the cited evidence establishes the uncontroverted fact that, leading up to Lehman's bankruptcy, BNY Mellon's professionals actively monitored, discussed, and evaluated the potential risks posed by Lehman and made a reasonable decision to hold the Lehman Note. Lehman's eventual bankruptcy is irrelevant to this analysis, as "fiduciaries are not required to be prescient or infallible in their decision-making." *McCabe v. Capital Mercury Apparel*, 752 F. Supp. 2d 396, 410 (S.D.N.Y. 2010).

The law cannot place an investment manager on such a "razor's edge." *Armstrong v. LaSalle Bank Nat'l Ass'n*, 446 F.3d 728, 734 (7th Cir. 2006). Thus, "a decision that involves a balancing of competing interests under conditions of uncertainty requires an exercise of discretion, and the standard of judicial review of discretionary judgments is abuse of discretion." *Id.*; accord *DiFelice v. Fiduciary Counselors, Inc.*, 398 F. Supp. 2d 453, 467 (E.D. Va. 2005) ("considerations of the inherent unpredictability of financial markets entitle a fiduciary's

22

investment judgments to 'substantial latitude'"), *aff'd*, 497 F.3d 410 (4th Cir. 2007).

## CONCLUSION

At an earlier stage of this case, the Court reconsidered its entry of judgment in favor of BNY Mellon, and granted Plaintiff's request to vacate it.  Here, justice will be served by the Court's reconsideration of its December 2011 Decision, which BNY Mellon respectfully submits will lead to an order vacating the prior denial of summary judgment.

For the reasons set forth herein, BNY Mellon respectfully requests that the Court grant its motion for reconsideration of the Court's prior denial of BNY Mellon's motion for summary judgment on both counts of the Third Amended Complaint, and direct the Clerk of Court to enter judgment in BNY Mellon's favor and close this case.

Dated: January 25, 2012
     New York, New York

Respectfully submitted,

_____/s/_____

Jonathan D. Schiller
JSchiller@BSFLLP.COM
Damien J. Marshall
DMarshall@BSFLLP.COM
BOIES, SCHILLER & FLEXNER LLP
575 Lexington Avenue, 7th Floor
New York, New York 10022
Tel.: 212-446-2300
Fax: 212-446-2350

*Attorneys for Defendants The Bank of New York Mellon, The Bank of New York, and BNY Mellon, N.A.*

23