UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

———————————————————————— x

THE BOARD OF TRUSTEES OF THE
SOUTHERN CALIFORNIA IBEW-NECA
DEFINED CONTRIBUTION PLAN, On
Behalf of Itself and All Others Similarly
Situated,

                        Plaintiff,

            vs.

THE BANK OF NEW YORK MELLON
CORPORATION, et al.,

                        Defendants.

————————————————————————

: Civil Action No. 1:09-cv-06273 (RMB)
:
: CLASS ACTION
:
: **PLAINTIFF'S MEMORANDUM OF LAW**
: **IN OPPOSITION TO DEFENDANTS'**
: **MOTION FOR RECONSIDERATION OF**
: **ORDER DENYING SUMMARY**
: **JUDGMENT**
:
: ECF Case
:
: *Contains Confidential Information*

## <u>TABLE OF CONTENTS</u>

I.     PRELIMINARY STATEMENT .......................................................................................1

II.    ARGUMENT ............................................................................................................2

    A.    Reconsideration of a Previous Order Is an "Extraordinary Remedy" ...................2

    B.    This Court Already Considered – and Rightfully Rejected – Defendant's
        Section 404 Argument ..........................................................................................4

        1.    Reconsideration Is Not a Substitute for Appeal...........................................4

        2.    BNYM's Apples-to-Oranges Comparison Was Already Rejected.............4

    C.    Defendant's Section 406 Argument Is Both Wholly Inappropriate for a
        Reconsideration Motion and Legally Infirm.........................................................6

        1.    The Law Is Clear that Reconsideration Does Not Allow Second
            Bites at the Apple.......................................................................................6

        2.    Section 406(b)(1) Imposes *No* Transaction Requirement for
            Establishing Liability .................................................................................8

        3.    Even Assuming Such a Requirement, Numerous Transactions by
            BNYM Support Plaintiff's Section 406 Claim .........................................11

III.   CONCLUSION......................................................................................................12

## <u>TABLE OF AUTHORITIES</u>

**CASES**

*Bahrami v. Ketabchi*,
    2010 WL 1948599 (S.D.N.Y. May 13, 2010) ........................................................2

*Brown v. Barnhart*,
    2005 WL 1423241 (S.D.N.Y. Jun. 16, 2005) ............................................... *passim*

*Corines v. American Physicians Ins. Trust*,
    769 F. Supp. 2d 584 (S.D.N.Y. 2011) ..................................................................7

*Donovan v. Bierwirth*,
    680 F.2d 263 (2d Cir. 1982) .................................................................................9

*Greenes v. Vijax Fuel Corp.*,
    2004 WL 1516804 (S.D.N.Y. Jul. 7, 2004) .........................................................3

*Griffin Industries, Inc. v. Petrojam, Ltd.*,
    72 F. Supp. 2d 365 (S.D.N.Y. 1999) ...................................................................7

*In re Health Mgmt. Sys., Inc. Sec. Litig.*,
    113 F. Supp. 2d 613 (S.D.N.Y. 2000) .................................................................2

*Lockheed Corp. v. Spink*,
    517 U.S. 882 (1996) .............................................................................................9

*Lowen v. Tower Asset Mgmt., Inc.*,
    829 F.2d 1209 (2d Cir. 1987) .............................................................................10

*Meisel v. Grunberg*,
    2011 WL 280797 (S.D.N.Y. Jan. 15, 2011) .....................................................3, 4

*Rafter v. Liddle*,
    288 Fed. Appx. 768 (2d Cir. 2008) ......................................................................7

*Tibble v. Edison Int'l*,
    639 F. Supp. 2d 1122 (C.D. Cal. Jul. 31, 2009) ..............................................9, 10

*Wright v. Or. Metallurgical Corp.*,
    360 F.3d 1090 (9th Cir. 2004) ..............................................................................9

The Board of Trustees (the "Board") of the Southern California IBEW-NECA Defined Contribution Plan ("Plaintiff," "IBEW," or the "Plan") respectfully submits this memorandum of law in opposition to the Motion for Reconsideration of Order Denying Summary Judgment (the "Motion") [Dkt. Nos. 213-215] filed by Defendants BNY Mellon, N.A., The Bank of New York, and The Bank of New York Mellon (collectively, "Defendant" or "BNYM") on January 25, 2012.

## I.    PRELIMINARY STATEMENT

Motions for reconsideration may not be used to re-litigate failed arguments or to present entirely new arguments on the heels of an unfavorable ruling.  Yet, Defendant now seeks to do both. For this reason alone, its Motion should be summarily rejected.

Worse, Defendant has misled the Court in its attempt to revisit the December 9, 2011 order (the "Order") [Dkt. No. 204] denying summary judgment on Plaintiff's ERISA sections 404 and 406 claims.  BNYM leads the Court to believe that the Plan's other investment managers holding Lehman notes at the time of Lehman's bankruptcy shared a "primary goal" with BNYM and even operated under "the same investment criteria," and that these facts somehow support Defendant's prudence and therefore foreclose Plaintiff's section 404 claim.  Motion at 3.  But this simply is not true – neither the predicate fact, nor the suggested conclusion.  Defendant cannot escape section 404 liability based on decisions made by other investment managers who served IBEW in ***different*** capacities under ***different*** risk parameters and with ***different*** investment aims as compared to BNYM.  As this Court previously found, at a minimum, "genuine, disputed questions of fact" exist regarding whether BNYM discharged its duties with respect to IBEW's collateral account with the "care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."  Order at 6.

1

Nor can Defendant escape the plain language of section 406(b)(1), which belies any purported transaction requirement: "A fiduciary with respect to a plan shall not **deal with** the assets of the plan in his own interest or for his own account."  29 U.S.C. §1106(b)(1).[1]  To be sure, Defendant offers no controlling support for imputing a transaction requirement to section 406(b)(1) where its statutory language is otherwise clear; the cases cited in Defendant's Motion speak instead to section 406(a) or 406(b)(2), which **do** include the word "transaction."  As the Court already held, there exist disputed questions of fact regarding whether BNYM "dealt with the assets of the Plan" in its own interest or for its own account by maintaining Plaintiff's Lehman investment, for which it bore no risk of loss, despite internal concerns "about Lehman name risk."  Order at 7.  Thus, even on their merits, Defendant's arguments for reconsideration still fall flat.  BNYM's Motion should therefore be denied in light of the Court's informed, well-reasoned Order.

## II.   ARGUMENT

### A.   Reconsideration of a Previous Order Is an "Extraordinary Remedy"

Defendant agrees that "'reconsideration of a previous order is an **extraordinary remedy** to be employed sparingly in the interests of finality and conservation of scarce judicial resources,'" and that reconsideration "may be granted only upon a showing of **exceptional circumstances**."  Defendants' Memorandum of Law in Opposition to Plaintiff's Motion to Vacate Judgment, and in Support of Defendants' Motion for Attorneys' Fees and Litigation Expenses [Dkt. No. 71] ("Defendants' Reconsideration Opp.") at 5 (citing *In re Health Mgmt. Sys., Inc. Sec. Litig.*, 113 F. Supp. 2d 613, 614 (S.D.N.Y. 2000) (Berman, J.) and *Bahrami v. Ketabchi*, 2010 WL 1948599, at *2

---

[1]     Internal citations and quotations are omitted, and emphasis is added, unless otherwise noted.

(S.D.N.Y. May 13, 2010) (Berman, J.)) (emphasis in original).  Here, BNYM has utterly failed to meet this onerous burden.

To be sure, "[a] motion for reconsideration is not designed to allow wasteful repetition of arguments already briefed, considered and decided." *Meisel v. Grunberg*, No. 07-11610, 2011 WL 280797, at *1 (S.D.N.Y. Jan. 15, 2011).  Nor should a court "grant a motion for reconsideration in order to allow a party to advance new facts, issues or arguments not previously presented to the Court." *Id*.  "A motion for reconsideration is not a substitute for appeal," or "a second bite at the apple for a party dissatisfied with a court's ruling." *Brown v. Barnhart*, No. 04-2450, 2005 WL 1423241, at *1 (S.D.N.Y. Jun. 16, 2005).

Significantly, BNYM's Motion fails to identify a single federal rule under which it seeks reconsideration of the Order.  Defendant's pre-motion letter of December 22, 2011 identified only Local Civil Rule 6.3, albeit in a footnote.  *See* Dkt. No. 206 at 1 n.1.  Courts routinely hold that Local Civil Rule 6.3 is to be "narrowly construed and strictly applied in order to avoid repetitive arguments," which limitations "ensure finality[] and [] prevent a losing party from plugging the gaps of a lost motion with additional matters." *Greenes v. Vijax Fuel Corp.*, No. 02-0450, 2004 WL 1516804, at *1 (S.D.N.Y. Jul. 7, 2004); *see also Meisel*, 2011 WL 280797, at *1; *Brown*, 2005 WL 1423241, at *1.  Rule 60 of the Federal Rules of Civil Procedure prescribes certain avenues for relief from court orders.  *See generally* Plaintiff's Motion and Incorporated Memorandum of Law to Alter, Amend or Grant Relief from Order of Dismissal for Purposes of Filing Second Amended Class Action Complaint [Dkt. No. 65]; Defendants' Reconsideration Opp.  Given BNYM's failure to cite even one federal rule, let alone establish its requisites, or offer one presentable argument that would allow for reconsideration in the first place, the Court should swiftly deny Defendant's Motion without any regard to its substance.

**B.     This Court Already Considered – and Rightfully Rejected –
         Defendant's Section 404 Argument**

**1.     Reconsideration Is Not a Substitute for Appeal**

Defendant's request for reconsideration of IBEW's section 404 claim must fail in the first

instance because it "relies on law and arguments that were already briefed in the underlying papers

that the court has already considered and decided." *Meisel*, 2011 WL 280797, at \*1 (denying motion

for reconsideration).  This is precisely the type of "wasteful repetition of arguments" that courts in

this District routinely reject on motions for reconsideration.  *Id.*  Plaintiff properly refuted BNYM's

apples-to-oranges comparison of itself to the Plan's other investment managers once before – in its

July 25, 2011 summary judgment opposition brief, herein incorporated by reference.  *See* Dkt. No.

181 (the "SJ Opposition") at 14-16.  The Order itself confirms that the conduct of Plaintiff's other

investment managers does not foreclose its section 404 claim here.  *See* Order at 6 (acknowledging

Defendant's argument for summary judgment based on the supposed prudence of IBEW's other

investment managers holding Lehman).  BNYM thus has no right to re-litigate an argument that was

already presented, considered, and rejected.

**2.     BNYM's Apples-to-Oranges Comparison Was Already
         Rejected**

To be sure, Plaintiff has already established that its other investment managers holding

Lehman are of no consequence to this action.  Should the Court even consider the merits of

Defendant's section 404 argument – which it should not – Plaintiff directs the Court to its SJ

Opposition, which more fully describes the differences between BNYM's investment directives and

those asked of Plaintiff's other investment managers.  *See* SJ Opposition at 14-16.

Briefly, it is entirely disingenuous for Defendant to argue that BNYM and the Plan's other investment managers[2] acted in a "'like capacity' and with 'like aims' under the same 'circumstances then prevailing.'"  Motion at 15.  To the contrary, the Plan's other investment managers served in **different** capacities under **different** risk parameters and with **different** investment aims as compared to BNYM.  SJ Opposition at 14-16.  All were tasked with wildly disparate earnings expectations and operated under entirely different risk/return profiles.  For example, Plaintiff's participation in Defendant's securities lending program (the "Program") earned the Plan an incremental return of



universally recognized as "relatively risk-free."  *Id*. at 15.

Defendant's reference to the Plan's Investment Policy Statement ("IPS"), *see* Motion at 14-15, is meritless for reasons already rightfully rejected by the Court, *see* Order at 6, and also because BNYM ignores that the IPS is but one part of the investment manager's relationship with the Plan

_____

[2]      Yet again, Defendant points to the actions of McMorgan & Co. to support its untenable position.  *See* Motion at 3, 14-18.  Plaintiff has explained that McMorgan was **not** one of the Plan's investment managers at the time of Lehman's bankruptcy.  *See* Plaintiff's Rule 56.1 Statement of Material Undisputed Facts [Dkt. No. 176] ("SOF"), herein incorporated by reference, at ¶36.  Thus, while Plaintiff objects to **any** comparisons between BNYM and the Plan's other investment managers, Plaintiff further objects to any comparisons to investment managers having **no affiliation** with the Plan.

and thus only requires capital preservation **within the context** of each manager's expected returns. ████████████████████████████████████████████ Opposition at 14-15. Even assuming there is no dispute that WAMCO acted "prudently" in managing the Plan's assets, a point which Plaintiff has not "conceded," none of the above absolves Defendant of section 404 liability here for maintaining risky Lehman investments wholly unsuitable for the Plan's securities lending collateral account. Moreover, it strains credulity to argue that the Court somehow "overlooked" any of this material which was already presented and decided in the Court's Order denying summary judgment.[3] Therefore, as the Court already found, there remain genuine, disputed questions of fact concerning the prudence of BNYM's management of the Plan's securities lending assets. Order at 6.

### C. Defendant's Section 406 Argument Is Both Wholly Inappropriate for a Reconsideration Motion and Legally Infirm

#### 1. The Law Is Clear that Reconsideration Does Not Allow Second Bites at the Apple

Likewise, the Court cannot be said to have "overlooked" an entirely new argument never before presented in the underlying motion papers. Such is the case for BNYM's argument here that a supposed transaction requirement forecloses IBEW's section 406 claim in this action.[4] Nowhere in

---

[3]     The Court should similarly reject Defendant's inappropriate attempt to re-litigate whether BNYM gave "appropriate consideration" to its Lehman concerns, "was diligent in performing its investigative and evaluative duties," and therefore acted prudently under section 404 in maintaining Plaintiff's risky Lehman investment. *See* Motion at 18-23.  Defendant already presented this same argument in its moving papers and may not now use this Motion as an appeal. *See* Memorandum of Law in Support of Defendants' Motion for Summary Judgment [Dkt. No. 163] (the "SJ Motion") at 18-20; *Brown*, 2005 WL 1423241, at *1 ("motion for reconsideration is not a substitute for appeal"). The Court already found that, much like Defendant's apples-to-orange comparison of the Plan's investment managers, this argument too provides no support for summary judgment on IBEW's section 404 claim.  Order at 6.

[4]     To be clear, the basis for Plaintiff's section 406 claim has been consistently conveyed since Defendant's first motion to dismiss, to which Plaintiff responded in opposition on December 8, 2009 (over two years ago). Dkt. No. 34.  Therein, Plaintiff unequivocally stated that its section 406 claim

its underlying papers did BNYM even suggest, let alone argue, that Plaintiff's section 406 claim

somehow requires a disloyal "transaction," and that such a transaction is lacking here.  Defendant's

attempt at the proverbial "second bite at the apple" at this juncture must not be countenanced.  *Rafter*

*v. Liddl*e, 288 Fed. Appx. 768, 769 (2d Cir. 2008) (reconsideration "motions are not vehicles for

taking a second bite at the apple"); *Corines v. American Physicians Ins. Trust*, 769 F. Supp. 2d 584,

593-94 (S.D.N.Y. 2011) ("A motion for reconsideration is not, however, a 'second bite at the apple'

for a party dissatisfied with a court's ruling," nor is it "appropriate to use a motion for

reconsideration as a vehicle to advance new theories a party failed to articulate in arguing the

underlying motion."); *Brown*, 2005 WL 1423241, at *1 (same); *Griffin Industries, Inc. v. Petrojam,*

*Ltd.*, 72 F. Supp. 2d 365, 368 (S.D.N.Y. 1999) ("The [reconsideration] motion is not a vehicle for

presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a

second bite at the apple.").  For this reason alone, reconsideration must be denied.

---

is centered not on the structure itself of BNYM's securities lending fee arrangement with IBEW, but
rather on BNYM's "discretionary investment of [Plaintiff's] Collateral in high risk securities as
opposed to safe investments in an imprudent attempt to generate higher yield[s] . . . ."  *Id.* at 23-24.
Defendant's "heads I win; tails you lose" collateral reinvestment strategy, in which it profited from
all investment gains but bore no risk of loss, has been heavily dissected throughout this litigation.  It
was under this strategy that BNYM continued to hold Plaintiff's risky Lehman note despite internal
concern over Lehman's financial stability and various efforts to proactively reduce ***Defendant's*** own
exposure to a potential Lehman default, but not Plaintiff's or the putative class members'.
Moreover, considerations of its own profitable business relationship with Lehman affected BNYM's
decision to hold Plaintiff's and other participants' Lehman investments in the face of ongoing
concern.  To the extent Plaintiff's theory of liability has evolved during the course of this litigation,
it has merely done so to conform with all the new evidence that has come to light.  Furthermore, to
the extent the Court's Order focused on the parties' fee arrangement itself, this was merely the
byproduct of ***Defendant*** having asked for summary judgment on grounds it apparently now wishes
to supplement or altogether abandon.  *See* SJ Motion at 22-24.  But a motion for reconsideration is
no means for doing so.  *Brown*, 2005 WL 1423241, at *1; *see also* Defendants' Reconsideration
Opp. at 6 (even Defendant agrees that a reconsideration motion cannot be a "do-over" "to undo its
prior tactical decisions").

2.      **Section 406(b)(1) Imposes *No* Transaction Requirement for Establishing Liability**

Nevertheless, should the Court even entertain Defendant's new argument – which it should not – it will find that Plaintiff's section 406 claim stands on its merits.  To be sure, section 406(b)(1) mandates that "[a] fiduciary with respect to a plan shall not ***deal with the assets of the plan*** in his own interest or for his own account."  29 U.S.C. §1106(b)(1).  IBEW's underlying opposition brief and SOF fully describe how BNYM "dealt with" the Plan's securities lending assets in its own interest, not in the Plan's interest.  *See, e.g.*, SJ Opposition at 25-27.  Faced with the Court's Order and the convincing evidence upon which it relies, Defendant now hopes to deflect the Court's attention to a requirement that does not exist.  The plain language of section 406(b)(1) does ***not*** require a transaction nor even include the word "transaction."  *See* 29 U.S.C. §1106(b)(1).  For section 406(b)(1) liability to inure, a fiduciary must simply "deal with" the plan's assets in his own interest or for his own account.  *Id.*  Try as it might, BNYM cannot rewrite section 406(b)(1) to suit its needs in this case.

To be sure, none of the caselaw upon which Defendant relies supports an imposition of a transaction requirement here.  *See* Motion at 12-13.  Importantly, though section 406(b)(1) lacks any mention of a "transaction, " other provisions of section 406, including section 406(a)(1), (b)(2), and (b)(3), ***do reference*** a "transaction" to impose liability.  *See* 29 U.S.C. §1106(a)(1) ("A fiduciary with respect to a plan shall not ***cause the plan to engage in a transaction*** . . ."); *id.* at §1106(b)(2) ("A fiduciary with respect to a plan shall not in his individual or in any other capacity ***act in any transaction*** . . ."); *id.* at §1106(b)(3) ("A fiduciary with respect to a plan shall not receive any consideration for his own personal account from any party dealing with such plan in connection ***with a transaction*** involving the assets of the plan.").  Thus, decisions simply referencing section 406 or

8

even section 406(b) could likely have no application to section 406(b)(1) in particular, and therefore no application to Plaintiff's ERISA claims here.

In fact, BNYM relies heavily on *Donovan v. Bierwirth*, 680 F.2d 263 (2d Cir. 1982), but there the Second Circuit clearly limited its analysis to section 406(b)(2), ***not*** section 406(b)(1). *See id*. at 270 ("The only such prohibition that is arguably applicable is s 406(b)(2)").[5] As shown above, section 406(b)(2) addresses fiduciaries having "act[ed] in any transaction" involving the plan on behalf of a party whose interests are adverse to the interests of the plan. 29 U.S.C. §1106(b)(2). Thus, it is of no moment to Plaintiff's section 406(b)(1) claim here that the Second Circuit previously held that ERISA section 406(b)(2) liability requires a transaction between the plan and a party having an adverse interest to the plan.

Likewise, the Ninth Circuit Court of Appeals quoted language from section 406(a)(1)(A) and (a)(1)(B) – for which liability is clearly premised on "engag[ing] in a transaction" – in barring the plaintiff's claims for lack of an identified "transaction" in *Wright v. Or. Metallurgical Corp.*, 360 F.3d 1090, 1101 (9th Cir. 2004). *See* Motion at 12. The *Wright* court also cited *Lockheed Corp. v. Spink*, 517 U.S. 882 (1996), in support of this finding. Significantly, the Supreme Court in *Lockheed* was considering a claim under ERISA section 406(a)(1)(D), which, again, specifically requires a transaction. *See* 517 U.S. at 888. These cases therefore provide BNYM no support here.

Defendant goes on to cite *Tibble v. Edison Int'l*, 639 F. Supp. 2d 1122, 1127 (C.D. Cal. Jul. 31, 2009). Motion at 12. *Tibble*, in turn, relies on *Wright*, which itself relies on *Lockheed*. For the reasons described above, these decisions are inapplicable to IBEW's section 406(b)(1) claim. Further, the *Tibble* court rejected the plaintiffs' section 406(b)(1) claim only because they had failed

---

[5]      Defendant conveniently omitted this portion of the court's opinion from its Motion. *See* Motion at 12.

to identify "any conduct by Defendants in the statutory time period that amounts to a 'transaction' ***or a 'dealing'*** with the assets of the plan in [the fiduciary's] own interest or for [the fiduciary's] own account." *Tibble*, 639 F. Supp. 2d at 1126.[6]  In contrast, IBEW's claim here suffers from no such defect, as shown herein and in Plaintiff's SJ Opposition.

Furthermore, common sense dictates that fiduciaries should not escape liability under ERISA by simply holding investments that have become unsuitable for the plan's account, thereby avoiding the requisite "transaction" for ERISA accountability.  The purpose of section 406 would not be served if that were the case.  *See Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1213 (2d Cir. 1987) ("Such protection of beneficiaries and notice to fiduciaries requires that Section 406(b) be broadly construed").  Even the plain language of section 406(b)(1) supports this common sense view.  Had Congress intended section 406(b)(1) to apply only to "transactions," it would have specified so, as it did in sections 406(a), (b)(2), and (b)(3).  Instead, Congress prohibited any fiduciary from "deal[ing] with" the assets of a pension plan in his own interest or for his own account.  29 U.S.C. §1106(b)(1).  Here, BNYM affirmatively maintained Plaintiff's risky Lehman note and failed to mitigate Lehman exposure while simultaneously: (i) restricting any ***new*** purchases of Lehman notes; (ii) taking proactive measures to limit ***its own*** exposure to a potential Lehman default; and, perhaps most importantly, (iii) ensuring the stability of its own profitable relationship with Lehman.  This amounts to an actionable "dealing" in Defendant's own interest in violation of ERISA section 406(b)(1).

---

[6]      In framing its decision in such a way, the *Tibble* court recognizes the fundamental difference between section 406(b)(1) and sections 406(a), (b)(2), and (b)(3).

### 3.    Even Assuming Such a Requirement, Numerous Transactions by BNYM Support Plaintiff's Section 406 Claim

Finally, even assuming Defendant's erroneous transaction requirement, Plaintiff has proferred voluminous evidence identifying various BNYM transactions supporting any such requirement.  First, Defendant's conscious decision to **hold** Plaintiff's Lehman note rather than sell in the face of mounting concern over Lehman constitutes a transaction for purposes of ERISA



resulted in myriad transactions by BNYM to protect itself from a potential Lehman default while it continued to hold Plaintiff's risky Lehman note, for which Plaintiff alone bore all risk of loss.  Thus, the Court correctly found that genuine, disputed questions of fact exist regarding BNYM's loyalty to the Plan in maintaining its Lehman investment.[7]  Order at 7.

---

[7]     The Court should also reject Defendant's argument that Plaintiff's section 406 claim is duplicative of its section 404 claim.  *See* Motion at 13 n.7.  First, this argument is procedurally barred on a reconsideration motion because it was never before presented in BNYM's underlying motion.  *Brown*, 2005 WL 1423241, at *1.  Regardless, Plaintiff's claims are undeniably distinct and rely on distinct ERISA provisions and supporting evidence.

## III.     CONCLUSION

For all the reasons described above, Defendant offers no valid basis to revisit the Court's well-founded summary judgment Order, and its request for reconsideration should be summarily rejected.[8]

_____

[8]      Defendant wrongly assumes that a categorical bar on jury trials in ERISA actions will require a bench trial here.  Motion at 16 n.9.  Plaintiff is seeking damages, not equitable ERISA benefits, and is therefore entitled to a trial by jury.  The caselaw Defendant cites does not provide otherwise. Regardless, Defendant has not moved to strike Plaintiff's jury demand, so its argument here is irrelevant in any event.

DATED:  February 9, 2012

ROBBINS GELLER RUDMAN
  & DOWD LLP
PAUL J. GELLER (*pro hac vice*)
STEPHEN R. ASTLEY (*pro hac vice*)
ELIZABETH A. SHONSON (*pro hac vice*)
SABRINA E. TIRABASSI (*pro hac vice*)
JESSE S. JOHNSON (*pro hac vice*)


_____
          */s/ Stephen R. Astley*
          STEPHEN R. ASTLEY

120 East Palmetto Park Road, Suite 500
Boca Raton, FL  33432
Telephone:  561/750-3000
561/750-3364 (fax)

ROBBINS GELLER RUDMAN
  & DOWD LLP
SAMUEL H. RUDMAN
DAVID A. ROSENFELD
58 South Service Road, Suite 200
Melville, NY  11747
Telephone:  631/367-7100
631/367-1173 (fax)

*Attorneys for Plaintiff and Proposed Class*


## CERTIFICATE OF SERVICE

       I HEREBY CERTIFY that on February 9, 2012, I electronically filed the foregoing with the

Clerk of the Court using the CM/ECF system, which will send a Notice of Electronic Filing to all

counsel of record.


          _____*/s/ Stephen R. Astley*_____
          STEPHEN R. ASTLEY